FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
8:51 am, Sep 17, 2025
JEFFREY P. COLWELL, CLERK

AMBER DOE
Propia Persona
8306 #2020 WILSHIRE BLVD
LOS ANGELES, CALIFORINA 90211
PH: 424-533-4363
Amberslitigation@gmail.com

UNITED STATES DISTRICT COURT

FOR THE
DISTRICT OF COLORADO

| | |
|---|---|
| Amber Doe,<br>Plaintiff,<br>vs.<br>Sequoia Capital Operations LLC<br>Et Al,<br>Defendant. | **COMPLAINT FOR HUMAN TRAFFICKING, CIVIL RICO, TORTURE, AND VIOLATIONS OF CONSTITUTIONAL, CIVIL, AND HUMAN RIGHTS**<br><br>CASE NO:<br>JUDGE:<br>DEPT: |

Amber DOE
(A Canadian citizen of American Ancestors and survivor of cross-border human trafficking, sexual slavery, and judicial persecution),

Plaintiff,

v.

SEQUOIA CAPITAL OPERATIONS, LLC, et al.,
Defendants.

# PRELIMINARY STATEMENT

## I

1. This is not a civil dispute. It is a legal reckoning, a moral indictment, and a demand for judicial restoration. The Plaintiff, *Amber Doe*, a multi-ethnic Canadian citizen born of American ancestry, stands before this Court as a survivor of a vast and deliberately concealed criminal enterprise — a transnational human trafficking syndicate enabled by systemic judicial corruption and state-sponsored legal terrorism.

2. This enterprise is not limited to rogue actors or isolated events; it is a criminal racketeering organization under the definition of *18 U.S.C. § 1961*, sprawling across nearly every federal judicial circuit in the United States, multiple Canadian provinces, and numerous international jurisdictions. Protected by state collusion, corporate financing, and judicial complicity, the enterprise has evaded accountability through calculated obstruction, coercion, and procedural abuse.

3. For over two decades, Plaintiff has been stalked, trafficked, raped, tortured, mutilated, silenced, and defrauded across borders by a coordinated criminal conspiracy that includes:

- Billionaire traffickers and financiers, most notably *Michael Goguen* and his agents within *Sequoia Capital*;

- Global white-collar law firms including *Quinn Emanuel Urquhart & Sullivan*, *Glaser Weil LLP*, and *Lenczner Slaght*;
- At least 118 attorneys who used the legal system to sanitize and shield sex trafficking operations;
- Judges — state and federal — who, acting under color of law, converted courtrooms into platforms for forced labor, judicial retaliation, and obstruction of justice;
- Transnational organized crime syndicates, including the *Hells Angels*, *Bratva (Russian mafia)*, *Cosa Nostra*, *Yakuza*, and Latin American drug cartels.

4. These actors, acting in unlawful concert, operated a criminal syndicate that deployed rape, coercion, enslavement, forged contracts, and corrupted legal institutions as mechanisms of human exploitation. The conspiracy spans:

- United States territories and states: California (North, South, Central), New York, New Jersey, Texas, Florida, Pennsylvania, Illinois, Michigan, Louisiana, Georgia, Arizona, Oregon, Washington, Colorado, Minnesota, Ohio, Indiana, North Carolina, South Carolina, Tennessee, Utah, Virginia, Connecticut, Massachusetts, Alaska, Hawaii, Puerto Rico, U.S. Virgin Islands, Guam, Washington D.C., among others;
- Canadian provinces: Ontario, Manitoba, British Columbia, Quebec, Alberta;
- International territories: United Kingdom (England), Spain, China, Japan, Macau, the Bahamas, British Virgin Islands, and the European Union at large.

II. Modus Operandi of the Enterprise

5. Plaintiff was first trafficked at age fifteen, betrayed by familial actors and delivered into the control of the *Hells Angels*, who served as logistical enforcers for the broader trafficking pipeline.

6. Thereafter, she was trafficked across a web of criminal fronts including strip clubs, shell corporations, luxury real estate, and private aviation registered under proxy entities, all under the guise of:

- "Elite modelling" and talent contracts designed to entrap under false pretenses;
- "Exotic dancing" in clubs owned or protected by organized crime groups;

- "Private VIP events" attended by tech billionaires, political officials, and hedge fund managers.

7. During her captivity, Plaintiff was:

- Sold and resold to ultra-wealthy clients, often by her own lawyers;
- Enslaved, sodomized, surgically mutilated, and denied emergency medical care;
- Transported across borders using private aircraft registered to law firms and shell companies;
- Coerced into fraudulent contracts prepared by legal counsel who also served as traffickers;
- Silenced through threats of death, retaliation, and state-backed judicial terrorism;
- Relentlessly pursued and punished for seeking justice.

III. Judicial Trafficking and Procedural Enslavement

8. Upon seeking legal redress, Plaintiff encountered a secondary form of trafficking: *judicial enslavement*. For over a decade, the Plaintiff was subjected to weaponized litigation, wherein attorneys, judges, and state actors conspired to obstruct justice, retaliate against disclosures, and perpetuate her silencing.

9. A cartel of at least 118 lawyers, operating across multiple jurisdictions, facilitated:

- The labelling of Plaintiff as a "vexatious litigant" solely for reporting rape, trafficking, obstruction of justice and systemic corruption;
- The denial of fee waivers and procedural access while enabling billionaires to weaponize the courts for retaliatory purposes;
- The issuance of *illegal gag orders*, *ex parte judgments*, and *sham bench trials* — held every time without jurisdiction, notice, or lawful process;
- The direct seizure and looting of Plaintiff's medical funds, housing, service animal resources, and basic protections under fraudulently obtained judgments, sweeping Marva injunctions  restraining orders.

10. These acts constitute not mere misconduct, but an ongoing RICO conspiracy and gross abuse of legal authority under the color of law — in clear violation of the U.S. Constitution, the Trafficking Victims Protection Act (TVPA), and international human rights conventions.

## IV. Relief Sought and Legal Authority

11. This action is brought under the following statutory and treaty authorities:

- Trafficking Victims Protection Act (TVPA) – 18 U.S.C. §§ 1581–1597
- Civil RICO – 18 U.S.C. §§ 1961–1968
- Civil Rights Statutes – 42 U.S.C. §§ 1983, 1985, 1986
- Alien Tort Statute – 28 U.S.C. § 1350
- Crime Victims' Rights Act (CVRA) – 18 U.S.C. § 3771

12. International legal instruments invoked include:

- The Palermo Protocol (UN Convention Against Transnational Organized Crime)
- Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW)
- International Covenant on Civil and Political Rights (ICCPR)
- Convention Against Torture (CAT)

## V. Jurisdiction and Venue

13. Venue is proper and necessary in each district where the Plaintiff was trafficked, where any predicate act of the RICO enterprise occurred, or where Defendants reside or maintain operations. Proper jurisdictions include but are not limited to: SDNY, EDNY, DNJ, DPA, NDCA, SDFL, TXND, DDC, DVI, and DOR.

14. Jurisdiction is also established under:

- 18 U.S.C. § 1595 (civil remedies for trafficking victims)
- 18 U.S.C. § 1965 (RICO venue and process)

- 28 U.S.C. §§ 1331, 1343, 1350 (federal question, civil rights, and alien tort)
- 28 U.S.C. §§ 1391, 1404, 1406 (venue and transfer statutes)
- Fed. R. Civ. P. 15 and Fed. R. Civ. P. 20 (joinder and amendment)

15. Plaintiff reserves the right to amend, sever, or transfer this Complaint to any and all federal districts where the enterprise operated, and where harm was inflicted, so as to secure a neutral forum untainted by judicial corruption and collusion.

VI. Demand for Protection and Justice

16. Plaintiff invokes her full constitutional, statutory, and international rights as a human being, as a survivor of global trafficking, and as a litigant entitled to access courts without retaliation or obstruction.

17. She demands:

- Compensatory, treble, and punitive damages from private and corporate actors;
- Declaratory and injunctive relief against public officials and judges acting ultra vires;
- Protective orders under the CVRA and whistleblower protections;
- Immediate cessation of all retaliatory litigation, gag orders, ex parte actions, and court-sponsored persecution.

18. This is not merely a Complaint. It is a cry for judicial integrity, a constitutional invocation, and a reckoning long overdue. The Plaintiff stands not only for herself, but for thousands of girls and women rendered voiceless by the very systems sworn to protect them.

Let me know when you're ready to proceed with the next section (jurisdictional statement, legal theory, etc.), or if you would like this version exported to PDF, DOCX, or another format for filing.

## PARTIES

## II.

**1.** Plaintiff Amber Doe is a citizen and national of Canada, a survivor of severe human trafficking, sexual slavery, rape, torture, forced labor, medical mutilation, and judicial persecution committed by the Defendants and their co-conspirators. Plaintiff brings this action pursuant to:

- Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1591 et seq.;
- Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.;
- 18 U.S.C. § 1595 (Private Right of Action);
- 42 U.S.C. § 1983 (Civil Rights Violations under Colour of State Law);
- 42 U.S.C. § 1985 (Civil Conspiracy to Deprive Civil Rights);
- 42 U.S.C. § 1986 (Neglect to Prevent Civil Rights Conspiracies);
- The Alien Tort Statute (ATS), 28 U.S.C. § 1350 (for violations of customary international law);
- The Convention Against Torture (CAT);
- The Palermo Protocol; and
- All applicable federal, state, and international law.

**2.** Sequoia Capital Operations, LLC, together with its wholly-owned subsidiaries, affiliates, shell companies, and associated entities, constitutes a central financial nucleus of the transnational trafficking enterprise. Its subsidiaries include but are not limited to:

- Sequoia Capital Franchise Partners, L.P.
- Sequoia Capital IX, L.P.
- Sequoia Entrepreneurs Annex Fund, L.P.
- Sequoia Heritage, LLC
- Sequoia Capital Growth III Principals Fund, LLC

- Sequoia Capital Franchise Fund, L.P.
- Sequoia Capital Growth Partners III, L.P.
- Sequoia Capital Growth Fund III, L.P.
- Sequoia Capital Global Equities, LLC (SCGE Management, L.P.)
- Sequoia Capital India LLP
- Sequoia Capital China Fund, L.P.
- Sequoia Capital Canada LLP
- Sequoia Capital Israel LLP
- Sequoia Capital Consultants, Inc.
- Sequoia Fund Management (Cayman) Ltd.
- Sequoia Capital Wealth Partners

**3.** Michael Lewis Goguen is an American billionaire, venture capitalist, and the principal financier, director, and architect of a transnational human trafficking, sexual slavery, torture, and financial extortion enterprise targeting the Plaintiff and similarly situated victims. Goguen maintains residences and business operations in Montana, California, and New York, and has directed criminal acts throughout the United States and internationally.

**4.** Two Bear Capital and its affiliates — including Two Bear Capital Operations LLC, Two Bear Ranch, Two Bear Farm, Two Bear Air Rescue Foundation, Two Bear Air 1, LLC, Two Bear Security LLC, Crystal Slopeside LLC, Valley Oak LLC, Whitefish Frontiers LLC, Proof Research Inc., and the Michael L. Goguen Trust — operate as instrumentalities, money laundering fronts, and shell entities that furthered the trafficking, financial racketeering, and judicial obstruction against Plaintiff.

**5.** Quinn Emanuel Urquhart & Sullivan LLP and its named attorneys ~ including but not limited to John B. Quinn, Kathleen Sullivan, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, Michael F. Grady, Christopher Tayback, William C. Price, Mark Holsher, Suong Nguyen, Joseph C. Sarles, Patrick Doolittle, Margaret Caruso, Michael Lifrak, Megan M. Kerr, Sara Cork, Sara Pollack, Alex Gerbi, Ted Greeno, Aidan O'Rourke, Gregory Pantlin, Harry Olivar, Alex Spiro —

orchestrated legal obstruction, bribery of judicial officers, subornation of perjury, and fraudulent litigation to silence Plaintiff, obstruct justice, and shield the trafficking enterprise across multiple jurisdictions.

**6.** Glaser Weil LLP and its attorneys, including but not limited to Patricia Glaser and Jill Basinger, conspired with other co-defendants to fabricate legal claims, engage in judicial manipulation, Procure multi million dollar fraudulent judgements, enforce illegal gag orders, and obstruct redress through extrajudicial means.

**7.** Goodwin Procter LLP, through attorney Anthony McCusker and others, and Wilson Sonsini Goodrich & Rosati LLP, through attorney Keith Eggleton and others, actively conspired to perpetrate fraud upon the court, suppress evidence of trafficking, and launder reputational risk by participating in retaliatory litigation and strategic silencing of Plaintiff.

**8.** Kirkland & Ellis LLP, via David Klein, facilitated cover-ups of abuse and trafficking-linked investments through litigation support and strategic concealment of material facts affecting both U.S. and international jurisdictions.

**9.** Baker Marquart LLP / Waymaker LLP, through Ryan Baker and stalking pervert Christopher Reynolds, joined in acts of obstruction, spoliation, and malicious prosecution to derail Plaintiff's pursuit of justice in California.

**10.** Lenczner Slaght LLP, including attorneys Monique Jilesen and Sahar Talebi , participated directly in fraudulent legal proceedings in Ontario, laundered void California judgments, and perpetrated transnational judicial fraud, resulting in the illegal enforcement of a Mareva injunction that deprived Plaintiff of all personal assets, housing, and medical security

**11.** Paoli & Purdy LLP, including William Paoli and Court Purdy, Bisnar Chase Personal Injury Lawyers LLP, including Brian Chase and Scott Ritsima, Brown & Charbonneau LLP, including Gregory Brown, and Sherman Law, including Richard Sherman, were all engaged in ongoing acts of malicious prosecution, collusive abandonment, and procedural sabotage of Plaintiff's legal claims.

**12.** The Law Offices of Rivers J. Morrell III, through Rivers J. Morrell III, and Day, Day & Brown, though Alan Brown and Nemecek & Cole LLP, through Frank W. Nemecek, Jonathan B. Cole, Marshall R. Cole, Michael W. Feenberg, Michael McCarthy, Mark Schaeffer, Claudia Stone, and Marta Alcumbrac, operated in coordination with enterprise attorneys to weaponize process, draft fraudulent pleadings, and interfere with judicial impartiality.

**13.** Herb Fox Law Offices, enabled fraudulent appellate filings, post-judgment concealment tactics, and obstruction of post-removal proceedings, all to shield perpetrators and suppress Plaintiff's constitutional and international legal rights.

**14.** Hospitality and Corporate Facilitators, including Marriott International, Inc., Sheraton Gateway Toronto, and Rosewood Hotels & Resorts LLC, knowingly permitted trafficking operations, allowed sexual and physical abuse to occur on their premises, and failed to report or intervene despite red flags and repeated opportunities to do so. These corporations enabled human rights violations in exchange for continued enterprise patronage.

**15.** Media & Defamation Co-Defendants, including New York Post (NYP Holdings), Vox Media, Fox Corporation, Fox News, Rupert Murdoch, Bloomberg L.P., NBCUniversal, and MSNBC, knowingly participated in coordinated defamation, psychological warfare, and reputational sabotage by publishing enterprise-approved propaganda and smears targeting Plaintiff to silence whistleblowing and destroy public credibility.

**16.** State Actor Defendants — including various state and federal judges, California Attorney General Rob Bonta, Governor Gavin Newsom, judicial council officials, state bar representatives, civil rights commission members, and regulatory agency personnel — are identified solely in their official capacities for purposes of injunctive and declaratory relief. Plaintiff does not seek monetary damages from any judicial officer or government official. These Defendants are named only to the extent necessary to enjoin ongoing constitutional violations and to obtain equitable redress for systemic misconduct committed under colour of law, in violation of 42 U.S.C. §§ 1983, 1985, and 1986, the U.S. Constitution, and applicable international treaties. No claim for personal or monetary liability is asserted against any current or former government official or judge.

**17.** John Does 1–100 and all unidentified corporate shells, facilitators, traffickers, attorneys, and enterprise operatives will be named as discovery proceeds.

## LEGAL THEORY

## III.

This Complaint arises from a widespread, coordinated, and transnational criminal enterprise involving human trafficking, child-sex trafficking, sexual slavery, torture, obstruction of justice, and systemic legal persecution. The enterprise operates across multiple jurisdictions and legal systems, with both private and state actors~ including billionaires, multinational law firms, venture capital firms, judges, and government officials, working in concert to traffic, violate, and silence the Plaintiff, a multi-ethnic Canadian citizen of American descent and survivor of modern-day slavery.

Over the span of more than two decades, the Plaintiff has been:

- Repeatedly raped, sodomized, trafficked, and medically mutilated;
- Imprisoned, drugged, and sold under false contracts of elite modeling, escorting, and performance;
- Coerced into signing legal documents under duress and threat of murder;
- Sabotaged by 118 lawyers acting in bad faith under the guise of representation;
- Retaliated against through the use of courts, fraudulent judgments, gag orders, and coordinated legal fraud.

The actors involved did not simply fail to protect the Plaintiff—they knowingly facilitated and profited from her exploitation. The abuse alleged is not merely criminal in nature. It rises to the level of crimes against humanity under U.S. law, customary international law, and binding treaty obligations.

STATUTORY AND CUSTOMARY LAW FRAMEWORK

The following legal doctrines provide the basis for Plaintiff's claims against private and public co-conspirators:

U.S. Federal Law

- Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§ 1581–1597
- Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968

- Civil Rights Statutes, 42 U.S.C. §§ 1983, 1985, 1986
- 18 U.S.C. § 242, Deprivation of Rights under Color of Law
- 18 U.S.C. § 1596, Extraterritorial Jurisdiction for TVPA Violations
- 28 U.S.C. § 1350, Alien Tort Statute (ATS)

Binding International Instruments (Enforceable via ATS, TVPA, and RICO)

- Palermo Protocol on Trafficking in Persons
- Rome Statute, Article 7: Enslavement, Torture, Persecution
- Convention Against Torture (CAT)
- Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW)
- International Covenant on Civil and Political Rights (ICCPR)
- Universal Declaration of Human Rights (UDHR)

The rights violated here—freedom from torture, slavery, persecution, and legal abuse—are protected not only by domestic law but also by *jus cogens* norms: the highest form of international legal obligation, from which no derogation is permitted.

## IMMUNITY DOES NOT APPLY

No Defendant in this action, whether a private actor, attorney, law firm, financier, judge, or state official, may invoke judicial immunity, sovereign immunity, prosecutorial discretion, or the political question doctrine in defense of:

- Human trafficking
- Rape and torture
- Fraud upon the court
- Obstruction of justice
- Crimes against humanity

- Civil rights violations under color of law

All acts alleged in this Complaint were:

- Committed outside the bounds of lawful authority;
- Executed in furtherance of a transnational criminal conspiracy;
- Undertaken with actual knowledge of illegality; and
- Carried out with the intent to silence, destroy, and erase the Plaintiff's ability to seek redress.

State actors named in their official capacity are not shielded from injunctive and declaratory relief, as established in *Ex Parte Young*, 209 U.S. 123 (1908). Further, immunity doctrines do not protect any actor from liability where they participate in or enable systemic rape, slavery, and obstruction of justice.

Plaintiff specifically seeks:

- Monetary, declaratory, and injunctive relief from private and corporate defendants;
- Injunctive and equitable relief only from state actors and judicial officials sued in their official capacities, where ongoing violations of constitutional and human rights continue.

## CONCLUSION

This is not a conventional civil matter. It is a reckoning, a test of whether the U.S. legal system will uphold its own laws, confront entrenched legal corruption, and provide redress to a survivor of state-enabled slavery.

The Complaint pleads severe and substantiated claims, supported by over two decades of evidence, sealed court filings, government correspondence, forensic documentation, and whistleblower disclosures. The Plaintiff has been denied remedy in every jurisdiction due to systemic obstruction and legal retaliation. This Court now bears the responsibility to enforce the rule of law.

To dismiss or delay this action on technicalities would render this Court complicit in the trafficking, torture, and silencing of a human being who has already survived the unimaginable.

Justice cannot be deferred.
This Complaint is the reckoning.

## JURISDICTION AND VENUE

## IV.

Venue and Jurisdiction – District of Colorado

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions giving rise to the claims occurred in this District. Plaintiff was trafficked and subjected to coercive acts, sexual violence, retaliatory stalking, financial exploitation, and unlawful surveillance across Denver, Boulder, Aspen, and the surrounding Colorado corridor, where members and proxies of the trafficking enterprise acted in furtherance of the criminal scheme.

This included the use of Denver- and Aspen-based strip clubs, elite escort networks tied to ski resort tourism, hospitality and luxury real estate infrastructure, financial institutions, and corporate shells to perpetuate Plaintiff's exploitation, launder criminal proceeds, and silence her through threats, fraud, and systemic obstruction.

Defendants, including those affiliated with Defendant Michael Goguen, Sequoia Capital, Quinn Emanuel LLP, Wilson Sonsini LLP, and Goodwin Procter LLP, maintained commercial relationships, legal interventions, and criminal affiliations within this District. The Denver metropolitan area also functioned as a central transportation, financial, and criminal hub, where interstate and international trafficking activities were facilitated through Denver International Airport, luxury mountain resorts, and Colorado-based banking and investment channels.

Accordingly, the District of Colorado constitutes a critical physical, legal, and economic node of the conspiracy, rendering venue proper under § 1391(b)(2). Plaintiff expressly reserves the right to amend this section as discovery reveals further jurisdictional ties and continuing acts of trafficking, concealment, and retaliation within this District.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including but not limited to the Trafficking

Victims Protection Act (18 U.S.C. §§ 1590, 1591, 1595), the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968), the Alien Tort Statute (28 U.S.C. § 1350), and related federal constitutional and statutory provisions.

Supplemental jurisdiction is proper under 28 U.S.C. § 1367 over Plaintiff's related state-law claims, as they arise from the same nucleus of operative facts as the federal causes of action. Defendants' conduct also violates multiple provisions of Colorado law, including but not limited to:

- C.R.S. § 18-3-504 (Human Trafficking of a Minor for Involuntary Servitude or Sexual Servitude) – by knowingly recruiting, transporting, harboring, or obtaining Plaintiff for exploitation through coercion, fraud, or force;
- C.R.S. § 18-3-402 (Sexual Assault) – by subjecting Plaintiff to sexual violence through force, threats, or incapacity to resist;
- C.R.S. § 18-8-302 (Bribery) – by corruptly offering or accepting things of value to influence judges, attorneys, or public officers in relation to Plaintiff's trafficking, silencing, and exploitation;
- C.R.S. § 18-8-404 (Official Misconduct) – by public officials willfully failing to perform duties owed to Plaintiff and instead using their offices to further Defendants' trafficking enterprise;
- C.R.S. § 13-21-131 and § 13-21-135 (Civil Remedies for Human Trafficking Victims) – by engaging in human trafficking activities and causing ongoing harm to Plaintiff, entitling her to civil remedies including compensatory and punitive damages;

together with Colorado common-law causes of action, including fraud, civil conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, and unjust enrichment.

Plaintiff expressly invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to adjudicate these state-law claims arising from the same nucleus of operative facts as her federal claims.

1.
    - 28 U.S.C. § 1331 – Federal question jurisdiction arises from the constitutional and statutory claims presented herein, including under the U.S. Constitution, RICO, TVPRA, and 42 U.S.C. § 1983;

- 28 U.S.C. § 1332(a)(2) – Diversity jurisdiction exists because Plaintiff is a Canadian citizen and Defendants are citizens or entities of the United States, with an amount in controversy exceeding $75,000;
- 28 U.S.C. § 1343(a)(3)–(4) – Civil rights enforcement jurisdiction for violations of constitutional rights and federal civil rights statutes;
- 28 U.S.C. § 1350 – Alien Tort Statute jurisdiction over violations of international human rights norms, including obligations under the Palermo Protocol, CEDAW, and customary international law;
- 28 U.S.C. § 1367 – Supplemental jurisdiction over all related state, provincial, territorial, and international causes of action that form part of the same case or controversy;
- 18 U.S.C. §§ 1961–1968 – RICO jurisdiction for enterprise-related racketeering, obstruction, and conspiracy activities spanning multiple states and foreign jurisdictions;
- 18 U.S.C. § 1595(a) – Civil remedy jurisdiction under the Trafficking Victims Protection Reauthorization Act for violations of 18 U.S.C. §§ 1581–1594;
- 42 U.S.C. § 1983 – Redress for deprivations of rights under color of state law, including collusion by public officials to obstruct justice and enable trafficking.
- This was not isolated misconduct but a coordinated, cross-border enterprise involving U.S. state actors, private law firms, Canadian judicial officers, multinational financial institutions, and international organized crime groups. The coordinated nature of this enterprise, its funding, transportation, and concealment mechanisms render it a subject of universal jurisdiction under international criminal law.

2. This Court has personal jurisdiction over all named Defendants because:

- Defendants engaged in continuous and systematic contacts within this forum;
- Federal Rule of Civil Procedure 4(k)(1)(A) and corresponding long-arm statutes in each applicable state confer personal jurisdiction over Defendants for acts committed or directed into the forum;
- Federal Rule of Civil Procedure 4(k)(2) establishes jurisdiction over foreign defendants whose nationwide conduct gives rise to federal claims and who lack sufficient contacts with any single state;

- 18 U.S.C. § 1965(b) (RICO) authorizes nationwide jurisdiction over all members of a racketeering enterprise where one member is found;
- Defendants purposefully availed themselves of the laws, markets, and instrumentalities of each U.S. forum where this Complaint may be filed;
- Constitutional due process is satisfied by Defendants' intentional, coordinated participation in human trafficking, media defamation, litigation abuse, and enterprise activity in numerous U.S. jurisdictions.

3. Venue is proper in any U.S. District Court under:
   - 28 U.S.C. § 1391(b)(1)–(3) – A substantial portion of the events, injuries, and enterprise activities occurred within multiple federal districts;
   - 28 U.S.C. § 1391(c)(2) – Corporate Defendants are deemed to reside in any judicial district where they are subject to personal jurisdiction;
   - 18 U.S.C. § 1965(a)–(b) – RICO's venue and "ends of justice" provisions allow for consolidated venue where one or more defendants reside or may be found;
   - In districts such as New York, New Jersey, Florida, Texas, Pennsylvania, California, Illinois, Georgia, Nevada, Illinois, US Virgin Islands, New Mexico, Washington D.C., and others, the enterprise committed repeated acts of trafficking, surveillance, fraud, and obstruction, establishing venue in any of those jurisdictions;
   - Forum neutrality is imperative: due to widespread documented corruption and retaliation in California, Montana, Ontario, and D.C., Plaintiff invokes venue in any district offering a neutral, impartial forum for adjudication under the "ends of justice" doctrine.

4. Venue is also warranted due to:
   - Enterprise media defendants publishing defamatory content from within jurisdictions such as New York, Washington DC, Delaware Montana, Florida, and California;
   - Legal firms coordinating obstruction of justice and fraudulent filings from offices in New York, California, Montana, Florida, Massachusetts, Texas, D.C., and beyond;

- Hotels, clubs, Modelling Agencies, Strip Club Agencies, and financial institutions facilitating trafficking in more than two dozen states;
- State and federal judges, prosecutors, and law enforcement officials in numerous districts being either co-conspirators or willfully blind to the crimes alleged;
- Public and private actors acting under colour of law to deprive Plaintiff of constitutional protections, access to courts, physical safety, and liberty.

## UNIVERSAL JURISDICTION SUMMARY

**The violations alleged in this Complaint transcend the boundaries of any single jurisdiction, court, or nation-state. The transnational nature of the criminal enterprise, including human trafficking, torture, enforced disappearance, sexual slavery, obstruction of justice, and conspiracy to murder, invokes not only the jurisdiction of this Court, but also the universal jurisdiction of all competent tribunals empowered to adjudicate crimes against humanity and gross violations of international law.**

This Court possesses original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, 1350 (Alien Tort Statute), and 1367, as well as jurisdiction under the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Trafficking Victims Protection Reauthorization Act (TVPRA). However, this action is further empowered by the principle of universal jurisdiction, recognized under customary international law and codified in binding treaties and legal instruments, including:

- The Alien Tort Statute (28 U.S.C. § 1350), as interpreted in *Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980), which affirms that U.S. federal courts may adjudicate egregious violations of the law of nations;
- The Palermo Protocol to Prevent, Suppress and Punish Trafficking in Persons, to which the United States is a party;
- The Universal Declaration of Human Rights (UDHR);
- The International Covenant on Civil and Political Rights (ICCPR);

- The Convention Against Torture (CAT);
- The Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW);
- And other peremptory norms (*jus cogens*) prohibiting slavery, torture, enforced disappearance, and trafficking.

These instruments collectively authorize all courts of competent jurisdiction — including this District Court,  to hear cases involving grave violations of international law, regardless of where such acts occurred or the nationality of the parties. In *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the U.S. Supreme Court reaffirmed that certain norms,  such as prohibitions against slavery and torture, are actionable under federal law, even when committed extraterritorially.

The factual record in this Complaint spans more than 25 U.S. states, multiple U.S. territories, and numerous foreign jurisdictions. The Defendants maintain offices, corporate registration, financial accounts, partnerships with law firms, media contracts, and political lobbying networks across these territories. Trafficking transactions occurred through interstate commerce and international enterprise, with a structural design intended to evade detection, bribe public officials, obstruct judicial redress, and silence witnesses and survivors.

Plaintiff has been repeatedly deprived of access to a neutral forum in California and Ontario due to well-documented patterns of judicial corruption, bribery, suppression of meritorious filings, denial of counsel, ex parte sabotage, fraudulent "vexatious litigant" designations, and retaliatory litigation orchestrated by defendants' legal teams. In *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108 (2013), the Court emphasized that jurisdictional bars should not be used to shield actors from accountability when violations of international law are deeply rooted in a transnational context, as they are here.

In light of these obstructions, universal jurisdiction must serve as the legal and moral failsafe. It obligates this Court to uphold the non-derogable rights enshrined in both U.S. constitutional law and international human rights law. No immunity, procedural doctrine, or invocation of forum non conveniens can bar adjudication of claims so grave that they implicate the dignity of human life and the very rule of law itself.

Plaintiff invokes this Court's jurisdiction under both international and domestic law to exercise universal jurisdiction over all Defendants named herein, whether as direct perpetrators, co-conspirators, financial enablers, legal cover, or political beneficiaries of human trafficking, torture, sexual violence, and obstruction of justice across international lines.

Let the record reflect: if justice is denied in one forum, it must be pursued in all others. If all others fail, the doctrine of universal jurisdiction will pierce the veil of impunity.

Plaintiff respectfully declares this Court to be a lawful forum of last resort, invoking its authority to restore justice not only for herself, but for the thousands of women and girls trafficked through this multinational, state-enabled enterprise, and for every survivor whose voice has been silenced by the machinery of corruption.

## STATEMENT OF FACTS

## V.

### A. Introduction: Plaintiff's Ordeal and Jurisdictional Foundation

The acts alleged herein violate peremptory norms of international law (jus cogens), including the prohibitions against slavery, torture, enforced disappearance, and trafficking in persons. These are actionable under the Alien Tort Statute, binding international treaties including the Palermo Protocol, CEDAW, ICCPR, and CAT, and under the universal jurisdiction doctrine recognized in both U.S. and international jurisprudence.

1. Plaintiff Amber Doe("Amber ") is a Canadian citizen born of American born ancestors and survivor of transnational human trafficking, systemic sexual exploitation, torture, forced labor, and severe violations of her civil, constitutional, and internationally recognized human rights.

2. From the age of fifteen, Plaintiff was trafficked across international and U.S. state borders by organized criminal networks, including the Hells Angels, and ultimately fell under the control of Defendant MICHAEL LEWIS GOGUEN, a U.S.-based billionaire financier residing in Montana and conducting interstate and international commercial activities.

3. The events pleaded herein give rise to claims under federal law, including but not limited to: the Trafficking Victims Protection Act (18 U.S.C. §§ 1581 et seq.), the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§

1961-68), 42 U.S.C. § 1983, and related civil rights and constitutional violations, along with pendent claims under state and international law.

B. Pattern of Human Trafficking and Sexual Exploitation

4. Amber was first trafficked by a family member into the hands of the Hells Angels at age fifteen and funnelled into a high-end international sex trafficking circuit marketed as elite modelling.

5. For years, Amber was trafficked through strip clubs, luxury properties, sporting events, and private parties in jurisdictions including the U.S. Virgin Islands, China, Japan, Guam, Puerto Rico, Florida, New York, Michigan, Arizona, Georgia, Texas, New Jersey, Oklahoma, Alberta, Ontario, Quebec, and various European nations.

6. After being Trafficking to Billionaire pedophiles in The US Virgin Islands She was trafficked to Texas. After arriving in Dallas, Texas, Amber was introduced to Defendant Goguen through a VIP club manager affiliated with organized crime. Goguen assumed total coercive control over her, promising safety in exchange for submission.

7. Goguen transported Amber using aircraft and shell corporations, subjected her to forced sexual servitude, psychological domination, and coerced compliance via drugging and sexual violence. He used financial instruments and entities including Sequoia Capital expense accounts to fund this enterprise.

8. Amber was repeatedly drugged and raped, including during a high-profile assault in Toronto, Ontario after discharge from an ICU with a head injury. Goguen used Sequoia Capital's resources to fly her there.

9. Amber was forced by Goguen to create sham entities (e.g., Je Ne Sais Que Enterprises, LLC) to disguise her trafficking and conceal the financial transactions from Goguen's spouses and the IRS. These funds were laundered through offshore number company accounts and U.S. banks.

10. The trafficking escalated to increasingly violent sexual acts. Amber was drugged with substances such as Rohypnol, subjected to forced sodomy, degradation, and sexual torture.

C. Physical Harm and Medical Abuse

11. In 2010, Amber was diagnosed with multiple high-risk HPV strains. Goguen knowingly withheld his STI status and coerced her to continue sexual acts while infected.

12. In 2012, he caused a 7-inch anal tear requiring emergency surgery in London, UK. He paid $100,000 to suppress the incident but evaded all legal accountability.

13. Goguen intensified his psychological abuse when Amber resisted further exploitation, hiring private operatives to surveil her and allegedly attempting to solicit her murder.

D. Coerced Settlement and Legal Entrapment

14. In 2014, under coercion and duress, Amber was forced to terminate her counsel and accept representation from Sequoia capitals elite legal team including Quinn Emanuel LLP, Goodwin Procter LLP, and Wilson Sonsini LLP.

15. On May 23, 2014, Amber was coerced into signing a $40 million settlement agreement drafted by the aforementioned law firms at the Rosewood Sand Hill Hotel in California, a known site of Sequoia Capital Sex Enterprises and Goguen's trafficking operations. The agreement was executed without independent counsel or negotiation. Witnessed and Signed Before Sequoia Capitals Staff Notary.

16. Goguen then immediately braced the contact force her to endure his sexual abuse to seal the deal

17. Only one installment of $10 million was paid. Goguen defaulted, resumed retaliation, and deployed Matthew Marshall, his former security chief (now a convicted felon), to surveil and attempt to assassinate Amber .

18. Only days after the agreement was sign pedophilic serial rapist Goguen materially breached the confidentiality clause of the contract causing her further damage by disseminating her name and images.

E. Obstruction of Justice and Judicial Corruption (2016–2025)

19. Between 2016 and 2025, Amber faced systematic obstruction in U.S. courts. She was sabotaged by attorneys bribed or coerced by Sequoia Capital, Goguen and Quinn Emanuel.

20. Her San Mateo County bench trial was held in absentia while she was incapacitated after major surgery. A $14 million fraudulent judgment, fraudulent restraining order, and illegal unconstitutional gag order were drafted by Quinn Emanuel and  were issued by bribed corrupt Judge Danny Chou, based on falsified evidence and perjured testimony.

21. Her appeals were circumvented. Ontario courts illegally enforced the fraudulent California judgment by issuing a Mareva injunction that illegally froze her assets and her siblings personal assets despite jurisdictional defects and lack of service.

22. Judges Barbara Conway and Cory Gilmore signed asset freezes despite acknowledging in ex parte emails with the Quinn Emanuel lawyers that Amber was not served and that they were basing this mareva injection on the falsified addresses and fake back account numbers in Ontario, forcing her into homelessness  and leaving her with no access to critical medical treatment and a additional surgery during the COVID-19 pandemic.

F. Federal and Interstate Sabotage

23. From 2023 to 2025, Amber filed multiple federal civil rights and trafficking lawsuits in California, New York, D.C., and Montana. All were wrongfully dismissed by biased or conflicted judges, including Maame Frimpong, Steve Kim, Laura Taylor Swain, David. O. Carter and Donald Molloy.

24. Quinn Emanuel unlawfully interfered in the Southern District of New York by submitting ex parte communications via Fedex to Chief Judge Swain of which are in evidence, resulting in the improper transfer of Amber 's case.

25. Amber ’s filings were repeatedly dismissed under inapplicable doctrines such as res judicata despite no prior adjudication on the merits.

G. Legal Fraud, Retaliation, and Vexatious Litigant Designation

26. Amber 's cross-complaints in California were sabotaged. Judges like Nico Dourbetas and Stephanie Bowick dismissed her filings, denied fee waivers, and improperly declared her a vexatious litigant at thew direction go Attorney general Rob Bonta.

27. Amber was denied representation, forced into pro se status, and then criminalized in a fraudulent contempt trial for "defaming" her trafficker. Judges Danny Chou, Elizabeth Lee, Susan Greenberg, and Nina Shapirshteyn invented

the sham proceedings and presided over quasi-criminal proceedings that denied her due process and were held in absence of jurisdiction.

28. Diane Doolittle, of Quinn Emanuel, issued illegal subpoenas in closed cases without jurisdiction or service, violating Amber 's rights.

H. Final Acts of Retaliation and Judicial Complicity

29. As recently as 2025, Amber 's filings to vacate fraudulent judgments were summarily denied without hearing by the Chief Judge of the California Supreme Court . She was subjected to ex parte hearings, surveillance, asset freezes, and denial of medical care.

30. California state bar, law enforcement and the judicial council judges refused to investigate her reports of lawyer embezzlement and judicial fraud, citing her "vexatious" designation. Her complaints to oversight bodies disappeared from dockets and databases.

31. The Governor of California Gavin Newsom and Attorney General Rob Bonta were made aware of over 40 instances of judicial corruption yet refused to intervene.

32. After being subjected to repeated sexual exploitation and trauma, Amber sought to enforce her rights and secure safety from further abuse. In retaliation, Goguen and his legal team, including Quinn Emanuel, Goodwin Procter, and Wilson Sonsini, escalated coercive tactics including surveillance, gaslighting, and deprivation of resources. Plaintiff was deliberately isolated from legitimate legal counsel and forced to engage in proceedings managed by her abusers' attorneys, violating her rights under 18 U.S.C. § 1592 (abuse of legal process to maintain trafficking) and 18 U.S.C. § 1595. The above facts demonstrate a criminal enterprise involving transnational trafficking, judicial corruption, obstruction of justice, financial exploitation, and state complicity.

33. Quinn Emanuel, acting in coordination with Sequoia Capital and Goguen, facilitated the execution of a fraudulent "personal injury settlement agreement" in May 2014 at the Rosewood Sand Hill Hotel, a known site of trafficking and coercion used by Goguen. The agreement was signed under extreme duress, without independent counsel, and witnessed by Sequoia's in-house notary. It purported to settle Plaintiff's claims for $40 million payable in four $10 million installments, but only the first

payment was made. This act constitutes contractual fraud, obstruction of justice, and enforcement of a trafficking-based contract in violation of 18 U.S.C. § 1594 and common law doctrines voiding contracts procured under duress. These facts support Plaintiff's claims under the U.S. Constitution, the TVPA, RICO, 42 U.S.C. §1983, and supplemental claims under international and foreign law. Amber Doe seeks full declaratory, injunctive, equitable, and monetary relief from this Court.

E. Systematic Attorney Sabotage and Fraudulent Proceedings

34. In the lead-up to the 2019 trial, attorneys from Quinn Emanuel arranged a trip to Las Vegas with Amber 's retained counsel, William Paoli. During this meeting, Paoli was allegedly bribed to sabotage Plaintiff's case and failed to appear at trial, abandoning his client without cause.

35. Amber 's judicial proceedings were further obstructed by a $900-per-hour referee appointed from JAMS, former Judge Read Ambler, who continued proceedings despite Amber being physically incapacitated, sedated, and medically prohibited from attending.

36. While Plaintiff was pro se and under post-operative care, bone marrow transplant, including tungsten detoxification, orthopaedic recovery with rods and plates, seizure management, and bone marrow transplant, San Mateo Judge John Grandsaert denied a meritorious motion to continue the trial. This was a clear denial of due process in violation of the Fifth and Fourteenth Amendments and ensured Plaintiff was unrepresented and medically unfit when the fraudulent trial proceeded.

37. On the basis of fabricated testimony and falsified evidence provided by Quinn Emanuel, Judge Danny Chou entered a $14 million default judgment, an illegal gag order, and a fraudulent restraining order, all drafted by Quinn Emanuel Lawyers and issued without trial on the merits, notice, or opportunity to respond.

38. Despite appeals being pending in California appellate courts, the judgment was unlawfully enforced in Canada. The Ontario Superior Court, knowingly ignoring California law which stays judgment enforcement during appeal, executed the judgment with the assistance of Defendant lawyers and judges operating in bad faith and without lawful jurisdiction.

39. Ontario Superior Court Judges Cory Gilmore and Barbara Conway issued a Mareva injunction to freeze Amber 's assets based on fabricated evidence and undisclosed ex parte email communications with the Quinn Emanuel Lawyers.

40. Defendants Monique Jilesen and Sahar Talebi, acting through Lenczner Slaght LLP, falsified banking records, addresses, and corporate documents to fraudulently assert jurisdiction in Ontario. They reclassified Plaintiff as a "corporation" to bypass individual rights and execute asset seizure unlawfully.

41. In written correspondence, Judges Gilmore and Conway admitted Amber had not been served, but nonetheless signed freezing orders which denied Plaintiff access to medical funds, housing, and urgent surgery, forcing her into homelessness during the global COVID-19 pandemic.

42. The asset freeze extended beyond Amber , unlawfully impacting the bank accounts of her siblings and family members without notice, standing, or due process. This action violated constitutional protections, property rights, and international human rights standards.

43. During this time, Quinn Emanuel attorneys actively intercepted and obstructed Amber 's communications with U.S. and Canadian law enforcement, subverting potential criminal investigations into human trafficking, sexual assault, and fraud.

44. Despite full knowledge of the falsified proceedings, Lenczner Slaght LLP and Quinn Emanuel appeared before the Supreme Court of Canada in bad faith, using fabricated evidence and procedural fraud. Amber is currently pursuing claims for fraud, obstruction, and conspiracy against the Canadian Crown and named individuals.

F. Systematic Attorney Sabotage and Fraudulent Proceedings (continued)

45. Plaintiff's legal representation was persistently sabotaged. Her attorneys, Gregory Brown and Herb Fox, embezzled more than $300,000 from her trust account and failed to represent her in her legal malpractice case and failed to file  and execute timely appeals, causing irreparable harm. These actions constitute violations of fiduciary duty, constructive fraud, and obstruction of access to the courts in violation of 42 U.S.C. § 1983.

46. In Orange County JAMS ARBITRATION, Defendant  lawyer/judgePatricia Glaser (Glaser Weil LLP), in conspiracy with JAMS arbitrators and mediators, blocked a $40

million legal malpractice case brought by Amber , depriving her of the opportunity to be heard and redress meritorious claims.

47. Amber 's retained counsel From Paoli and Purdy at who was tampered with and bribed by glaser and her lawyers from Nemecek and Cole, Paoli & Purdy LLP failed to file responses or appear for arbitration, despite full payment by Plaintiff of all attorney fees, arbitration fees, and expert witness costs. Their failure resulted in another default judgment, procured through extrinsic fraud, breach of contract, and deliberate legal malpractice.

48. In 2022, Amber filed a motion in San Mateo Superior Court to vacate the fraudulent judgment under California Code of Civil Procedure § 473(d) for extrinsic fraud. Judge Danny Chou delayed the matter for 90 days, then denied the motion citing false procedural grounds, despite the absence of any statute of limitations for extrinsic fraud.

49. During oral proceedings for the motion to vacate, Quinn Emanuel partner Diane Doolittle brazenly publicly stated, "We don't bribe judges," without provocation. No other party had raised this issue, and her statement was construed as an unsolicited admission relevant to ongoing allegations of judicial bribery and collusion.

50. In a retaliatory action brought by former attorney Rivers Morrell in 2016, shortly after Amber terminated his services under duress, Amber 's cross-complaint was deliberately sabotaged through judicial collusion, attorney conflict, and ex parte judicial interference from Quinn Emanuel.

51. In 2024, Amber 's cross-complaint was systematically undermined by Gouge's counsel and several sets of her prior counsel. Judge Nico Dourbetas, acting on motions orchestrated by Quinn Emanuel and Goguen's defense team, declared Amber a vexatious litigant without proper hearing or findings, depriving her of court access in violation of due process and the First Amendment.

52. In 2024, despite Amber having already been granted a fee waiver and documented as indigent, Judge Dourbetas imposed a $50,000 security bond to maintain her cross-complaint. This unconstitutional demand effectively barred Amber , a trafficking survivor residing in a shelter, from proceeding with claims against billionaires and elite legal institutions.

G. Federal Court Obstruction and International Denial of Justice

55. In March 2023, Plaintiff filed a comprehensive civil complaint in the U.S. District Court In California, naming all primary actors, including state judges, attorneys, billionaires pedophiles, rapists and traffickers, and affiliated corporations for violations under the Trafficking Victims Protection Reauthorization Act (TVPRA), 42 U.S.C. § 1983, and related constitutional and statutory claims. District Judge Maame Frimpong dismissed the complaint without a hearing, erroneously citing res judicata to bar claims against numerous defendants who had never been parties to any prior action.

56. Between 2023 and 2025, Amber filed multiple federal complaints alleging human trafficking, sexual slavery, civil rights violations, obstruction of justice and systemic fraud. Federal judges, including Maame Frimpong, Donald Molloy, Steve Kim, David O. Carter, and Laura Taylor Swain, dismissed these actions under manufactured pretexts, often invoking res judicata or jurisdictional defects not supported by the record.

57. Quinn Emanuel partner Diane Doolittle interfered directly with Amber 's active federal litigation by sending ex parte communications to U.S. District Judge Laura Taylor Swain, including a physical FedEx letter sent to chambers in violation of judicial canons and ethical rules, resulting in procedural interference with a case pending in the Southern District of New York.

58. In July 2023, after Amber 's complaint and fee waiver were accepted in the Southern District of New York, Chief Judge Swain inexplicably transferred the case back to the Central District of California for adjudication, citing Frimpong's prior rulings, despite the fact that federal summons had been approved and service was in progress via the U.S. Marshals Service.

59. Magistrate Judge Steve Kim and District Judge Maame Frimpong then demanded that the case be reassigned to their court in California. When the Clerk's Office refused, citing it as a discovery matter not a 42 U.S.C. § 1983 civil rights claim, Kim and Frimpong bypassed standard assignment procedures and dismissed the complaint without any hearing, briefing, or adjudication on the merits.

60. In August 2023, Plaintiff filed a separate civil complaint in the U.S. District Court for the District of Columbia (Amber Doe v. Vox Media et al.) to pursue relief based on ongoing defamation, interference with federal rights, and trafficking-related injuries. Once again, Quinn Emanuel intervened and manipulated judicial discretion to have the matter dismissed without hearing.

61. Plaintiff then filed in the U.S. District Court for the District of Montana, where Defendant Michael Goguen resides. The case was intercepted and reassigned to Senior Judge Donald Molloy, who had previously presided over criminal proceedings involving Goguen's former security contractor, Matthew Marshall. Judge Molloy denied Amber 's right to proceed, citing frivolous grounds and refusing to consider the merits of her trafficking and constitutional claims.

H. 2016–2024 Orange County Cross-Complaint and Judicial Persecution

62. In 2016, attorney Rivers Morrell, whom Plaintiff had been forced to terminate under duress, filed a $100 million action in Orange County Superior Court (Rivers Morrell v. Baptiste), naming Amber , Goguen, Quinn Emanuel, and Goodwin Procter as defendants. The case was improperly stayed pending the outcome of the fraudulent San Mateo judgment procured without notice or jurisdiction.

63. Defendant Patricia Glaser of Glaser Weil LLP intervened in the Orange County matter and orchestrated the removal of Amber 's retained counsel from Paoli & Purdy LLP through corrupt influence and bribery, thereby sabotaging Amber 's $40 million legal malpractice claim against Glaser Weil. The case was diverted to a confidential arbitration proceeding at JAMS, funded in full by Plaintiff, but hidden from her by her own attorneys.

64. Amber had paid legal fees, arbitration fees, and expert witness costs in full. However, Paoli & Purdy LLP, under Glaser's interference, failed to notify Plaintiff of the scheduled arbitration. As a result, the firm did not appear, and Glaser Weil secured a fraudulent multi-million dollar default judgment despite never serving discovery or proving any claims.

65. Between 2016 and 2024, Amber retained four separate legal teams to defend and prosecute her interests in the Orange County litigation. None filed a proper Answer on her behalf. By 2024, Glaser Weil's counsel, Nemecek & Cole LLP, was representing multiple adverse parties simultaneously, including all of Amber 's former attorneys, Glaser Weil, Rivers Morrell, The Law. Firm of Rivers J Morrell the III and Paoli & Purdy, in a textbook violation of ethical conflict rules and an egregious breach of fiduciary duty.

66. In July 2023, Amber filed a cross-complaint in the Orange County action, which was properly served on all parties. The filing included claims for legal malpractice,

fraud, civil conspiracy, and violations of her federal civil rights under 42 U.S.C. § 1983 and the TVPRA.

67. On September 11, 2023, during a Zoom hearing, Judge Nico Dourbetas granted Amber 's fee waiver on grounds of indigency. However, at the same hearing, Quinn Emanuel attorney Kyle Batter announced a "secret settlement" between Rivers Morrell and Goguen, made without Plaintiff's participation or knowledge, further evidence of collusion and bad faith.

68. Despite having granted Amber 's fee waiver, Judge Dourbetas subsequently issued orders denying all of her motions without legal reasoning. He allowed Quinn Emanuel to proceed with litigation, while simultaneously claiming the case was "stayed against Amber ", a contradictory and unconstitutional posture that deprived Amber of access to the courts.

69. In July 2024, Judge Dourbetas issued an order demanding Amber post a $50,000 bond within 30 days or face dismissal of her cross-complaint. This demand, made of a trafficking survivor living in a shelter, constituted an unlawful denial of access to justice in violation of her rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

70. Amber filed three separate motions for recusal of Judge Dourbetas on grounds of bias, conflict of interest, and judicial misconduct. All were summarily denied without explanation. Multiple attorneys from Quinn Emanuel and other firms submitted joinders supporting the vexatious litigant designation against Amber to silence her and deprive her of any redress against her abusers.

71. In August 2024, Judge Dourbetas dismissed Amber 's case and unlawfully declared her a vexatious litigant, thereby barring her from initiating or continuing any legal proceedings in California without first obtaining permission from the court. This designation, made without due process or findings of frivolous conduct, violated Amber 's rights under the U.S. Constitution, international law protecting trafficking survivors, and California's own procedural standards.

I. Retaliatory and Illegal Subpoenas

72. Plaintiff appealed Judge Dourbetas's dismissal to the California Court of Appeal for the Fourth Appellate District. All of her appeals were summarily dismissed without legal justification, allegedly under undue influence from Quinn Emanuel. In some cases, the appeals disappeared entirely from the docket, indicating tampering with the court record and denial of procedural due process.

73. The State Bar of California, despite receiving multiple bar complaints from Plaintiff supported by detailed evidence, refused to investigate or discipline any attorneys involved in embezzlement, conflict of interest, fraud, falsification of evidence, bribery, stalking, hacking, judge tampering or subornation of perjury. The Bar cited Amber 's status as a "vexatious litigant" as a basis to deny her even the right to report crimes, an unconstitutional deprivation of equal protection and access to remedy.

74. Plaintiff filed judicial complaints against four state court judges in California with the Judicial Council. The complaint documents and the judges' names disappeared from the system without adjudication. When Amber appeared in person at the Judicial Council's offices in San Francisco, she was handed blank dismissal forms with no judge names or investigative records attached.

75. During the same period, Canadian Judges Cory Gilmore and Barbara Conway, cooperating with Quinn Emanuel and Lenczner Slaght LLP, issued ex parte freezing orders and relied on falsified evidence, falsified address, falsified bank accounts creating fake jurisdiction to deny Plaintiff access to her assets and prevent her from funding legal representation or urgent medical care.

76. Staff at Plaintiff's Canadian banking institutions, acting at the direction of Defendant Monique Jilesen, blocked Amber 's transactions and provided unauthorized financial data to Defendants, resulting in unlawful asset seizure and obstruction of Plaintiff's access to life-sustaining treatment and constitutional rights. All of the bank staff who participated in the conspiracy have been terminated.

77. In 2025, Diane Doolittle, acting in bad faith and with no legal jurisdiction, issued subpoenas in a closed California case that had been inactive since 2019. These subpoenas were directed at Google, Verizon, Mint Mobile, T-Mobile, AT&T, Cox Communications Facebook, and other third-party platforms, and document repositories, seeking Amber 's private information without notice, service, or court approval, violating the Stored Communications Act (18 U.S.C. § 2701 et seq.) and Plaintiff's rights under the First and Fourth Amendments.

78. Plaintiff only became aware of these illegal subpoenas after being contacted by Google's Legal Compliance Department in May 2025, who questioned whether she wished to move to quash the subpoenas. These unlawful discovery efforts in a closed case constitute abuse of process and retaliation against a protected individual under 18 U.S.C. § 1592 (obstruction of enforcement) and 18 U.S.C. § 1512(b) (witness tampering and retaliation).

J. Final Acts of Judicial Retaliation and Criminal Fraud

79. In July 2024, Plaintiff filed a motion to vacate a second fraudulent multi-million-dollar judgment entered in 2019 in Los Angeles County Superior Court. The judgment had been procured without Plaintiff's knowledge by Patricia Glaser and her firm, Glaser Weil LLP. Plaintiff only discovered the proceeding in Spring 2024 during an in-person records review at the Los Angeles courthouse.

80. From July to November 2024, Los Angeles Superior court Judge Stephanie Bowick refused to grant Plaintiff's fee waiver on three separate occasions, thereby unlawfully barring her from proceeding with the motion to vacate Glaser Weil LLPs fraudulent multi million dollar judgement. Judge Bowick later held an undisclosed chambers proceeding and summarily denied the motion to vacate, in violation of California due process rights and federal constitutional guarantees.

81. Plaintiff subsequently removed the matter to federal court under 28 U.S.C. § 1441(c) and § 1443 (civil rights removal). In furtherance of the conspiracy to obstruct justice The motion to vacate was improperly dismissed with no legal basis after being brought up on appeal before the U.S. Court of Appeals for the Ninth Circuit.

82. In August 2024, Plaintiff appeared in person in San Mateo County Superior Court for a quasi criminal contempt trial based on allegations of "criminal defamation" of Michael Goguen. Plaintiff had been ordered to appear under threat of arrest for speech protected under the First Amendment. She was instructed by Judge Susan Greenberg to consult the San Mateo County Courts Private Defender's Office, but they failed to return her calls. At a follow-up hearing in October 2024, an attorney named Katrina Steiner appeared in court, unannounced and without prior contact, and falsely claimed to represent Amber .

83. Between October 2024 and March 2025, Steiner conducted no discovery or trial preparation. Amber later discovered that court appointed counsel Katrina Steiner was a close personal friend of Judge Susan Greenberg, who was originally presiding over the contempt trial.

In January 2025 Susan Greenberg was moved to probate. Judge Nina Shapirshteyn was appointed Amber 's repeated requests to proceed pro se or obtain independent counsel were denied in a Marsden hearing, depriving her of her Sixth Amendment right to effective assistance of counsel.

84. Amber subsequently discovered that California Attorney General Rob Bonta and San Mateo Judge Danny Chou had a long-standing personal and professional

relationship, dating back to their shared time clerking for the California Supreme Court, evidence of institutional conflict that was never disclosed to the parties.

85. Between January and March 2025, Judge Nina Shapirshteyn, newly assigned to the matter, denied five of Amber 's meritorious motions:
(1) to vacate the fraudulent judgment;
(2) for new trial;
(3) to disqualify Quinn Emanuel due to financial interest in the prosecution;
(4) for preliminary injunction and temporary restraining order (TRO); and
(5) to vacate the unconstitutional gag order.
The case proceeded to a rigged bench trial in March 2025, despite having been properly removed to federal court in January 2025. Plaintiff's request to proceed pro se was again illegally denied.

86. In March 2025, Judge Shapirshteyn presided over a quasi-criminal bench trial without jurisdiction and in abstentia found Plaintiff guilty of "criminal defamation" of Pedophilic serial rapist and trafficker who exploited at least 5000 girls and women globally since the 1990s, Michael Goguen, a legal impossibility under U.S. constitutional law, as defamation is a civil matter and speech about public figures is protected by the First Amendment.

87. Plaintiff later learned via internet records that she had been assigned no-bail status and was subject to an arrest warrant for a misdemeanour contempt charge stemming from her public exposure of billionaire pedophiles. Despite having no criminal record and posing no threat to the community, Plaintiff was treated more severely than violent felons, murderers and serial rapists further evidence of institutional retaliation and viewpoint discrimination.

K. Supreme Court of California Sabotage and Final Federal Violations

88. In 2024, Plaintiff filed multiple emergency writs with the Supreme Court of California, including a Writ of Certiorari, Writ of Mandamus, Writ of Error Coram Nobis, and applications for Preliminary Injunctions. All were denied by Chief Justice Patricia Guerrero, who cited Amber 's unlawful "vexatious litigant" designation as a barrier to relief, despite that designation itself having been imposed in violation of constitutional rights and without due process.

89. Judges Stephanie Bowick, Danny Chou, and Nina Shapirshteyn each denied motions critical to Plaintiff's survival and legal redress, including motions to vacate fraudulent judgments and to disqualify attorneys with direct financial and ethical

conflicts. These denials cumulatively deprived Plaintiff of access to meaningful judicial remedy and constitute violations of 42 U.S.C. § 1983 and the First, Fifth, and Fourteenth Amendments.

90. Judge Bowick refused to grant Plaintiff's fee waiver and held an unauthorized, closed-door hearing to deny Plaintiff's motion to vacate a judgment procured by fraud and perjury, thereby violating both federal and state due process rights.

91. Judge Shapirshteyn conducted a quasi-criminal contempt trial in March 2025 without jurisdiction, following Plaintiff's federal removal in January. She found Amber "guilty" of criminal contempt in absentia, based on constitutionally protected speech. The trial was rigged, retaliatory, and facially invalid under U.S. law.

92. Between April and May 2025, Diane Doolittle of Quinn Emanuel served illegal subpoenas in the closed 2019 San Mateo matter. Despite discovery having been closed for over six years, she issued subpoenas, using the old case number, via A&A Legal to Google, Yahoo, Mint Mobile Verizon,  Cox communications  T-Mobile, AT&T, and Verizon, without court authorization or service on Amber .

93. In late May 2025, Plaintiff was contacted by Google's Legal Compliance Department regarding these subpoenas, which sought private and protected data. Plaintiff had never received notice of their issuance. These acts constitute clear violations of the Stored Communications Act, abuse of process, and attempted intimidation in retaliation for Amber 's protected litigation and public exposure of criminal misconduct.

94. The above-stated facts represent approximately fifteen percent of the known felonious conduct perpetrated by Defendants and their agents. Plaintiff reserves the right to supplement these facts as discovery proceeds. All named Defendants are subject to joint and several liability, including vicarious liability for the actions of their agents, employees, and co-conspirators under TVPRA, RICO, § 1983, and common law conspiracy doctrines.

# COUNTS LIST

## I. TRAFFICKING, SEXUAL VIOLENCE, TORTURE

Count 1: Federal Human Trafficking
*(TVPRA, 18 U.S.C. §§ 1581–1595)*

Count 2: Rape and Sexual Assault

Count 3: Torture

Count 4: Premises Liability

Count 5: Violation of the Mann Act
*(18 U.S.C. § 2421 et seq.; integrated as predicate acts under TVPRA and RICO)*

Count 6: Violation of the Violence Against Women Act (VAWA)
*(34 U.S.C. § 12361(c))*

Count 7: Peonage and Slavery
*(18 U.S.C. §§ 1581–1590; integrated with Count 1)*

## II. RICO, FRAUD, OBSTRUCTION, CONSPIRACY

Count 8: Racketeering (RICO)
*(18 U.S.C. § 1961 et seq.)*

Count 9: Fraud

Count 10: Fraudulent Inducement

Count 11: Fraud Upon the Court

Count 12: Obstruction of Justice

Count 13: Civil Conspiracy

Count 14: Conspiracy to Commit Fraud on the Court

Count 15: State-Sponsored Obstruction and Retaliation

Count 16: Misfeasance in Public Office
*(applies to judicial actors and cross-border government officials)*

Count 17: Conspiracy to Cause Plaintiff's Death via Deprivation of Medical Care

III. CONTRACT, LEGAL & FIDUCIARY DUTIES

Count 18: Breach of Written Contract

Count 19: Breach of Oral Contract

Count 20: Breach of the Covenant of Good Faith and Fair Dealing

Count 21: Breach of Fiduciary Duty

Count 22: Legal Malpractice

Count 23: Extortion

IV. TORTS, NEGLIGENCE, PERSONAL INJURY

Count 24: Intentional Infliction of Emotional Distress (IIED)

Count 25: Negligent Supervision / Negligent Direction

Count 26: Willful Misconduct
*(may be integrated into Gross Negligence or IIED for emphasis)*

Count 27: Gross Negligence

Count 28: Personal Injury

Count 29: Deceit

Count 30: Concealment

Count 31: Trespass to Chattels

Count 32: Conversion

Count 33: Bad Faith

Count 34: Money Had and Received
*(for equitable restitution)*

## V. INTERFERENCE & ECONOMIC TORTS

Count 35: Tortious Interference with Contractual Relations

Count 36: Tortious Interference with Economic Relations

Count 37: Intentional Interference with Economic Relations

## VI. CIVIL RIGHTS, DISCRIMINATION, AND DIGNITY VIOLATIONS

Count 38: Racial and Gender Discrimination

Count 39: Violation of Plaintiff's Rights Under the U.S. Constitution *(First, Fifth, and Fourteenth Amendments)*

Count 40: Violation of the Universal Declaration of Human Rights (UDHR)

Count 41: Violation of the Law of Nations and Customary International Law: *Crimes Against Humanity*

## VII. REPUTATIONAL & PRIVACY TORTS

Count 42: Defamation

Count 43: Invasion of Privacy

Count 44: Stalking

## VIII. OTHER CLAIMS — CROSS-BORDER / SUPPLEMENTAL (ATS)

Count 45: Violation of the Canadian Victims Bill of Rights *(asserted via Alien Tort Statute or supplemental jurisdiction)*

Count 46: Violation of the Constitution of Canada *(ATS/supplemental jurisdiction claim)*

Count 47: Violation of the Ontario Human Rights Code *(ATS/supplemental claim)*

Count 48: Unjust Enrichment

Count 49: Civil Theft
(Against All Defendants)
Unlawful taking and conversion of Plaintiff's assets, legal property, and funds in violation of civil theft statutes and common law doctrines, including cross-border wire fraud, constructive fraud, and unjust enrichment.

Count 50: Conspiracy to Defraud the Supreme Court of Canada and Obstruct Justice
(Against Canadian and U.S. Defendants)
Defendants colluded to submit forged evidence, conceal criminal acts, and exploit international comity to block Plaintiff's legal redress in Canada, in violation of international comity and justice norms.

Count 51: Civil Rights Violations
(42 U.S.C. §§ 1983, 1985, 1986 — Against Governmental Actors and Co-Conspirators)
Coordinated deprivation of Plaintiff's constitutional rights under colour of law, including right to due process, equal protection, speech, association, bodily integrity, and court access.

Count 52: Abuse of Process
(Common Law Tort — Against All Legal Actor Defendants)
Improper use of legal process (e.g., vexatious litigant designations, fake restraining orders, gag orders) to punish, silence, and isolate Plaintiff.

Count 53: Violation of the Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW)
(Alien Tort Statute / Customary International Law)
Targeting Plaintiff based on gender, survivor status, and reproductive vulnerabilities, in breach of binding international human rights standards.

Count 54: Violation of the International Covenant on Civil and Political Rights (ICCPR)
(ATS — Articles 2, 7, 9, 14, 17, 26)
Denial of Plaintiff's rights to life, dignity, privacy, legal remedy, fair trial, non-discrimination, and redress for torture and arbitrary detention.

Count 55: Declaratory Relief
(28 U.S.C. § 2201 — Against All Defendants)
Request for formal declaration that:

- Prior judgments were procured by fraud and are void;

- Plaintiff's constitutional rights were violated;
- The trafficking and RICO enterprise exists;
- Judicial and governmental conduct was unlawful and unconstitutional.

Count 56: Violation of the U.N. Convention Against Torture (CAT)
(ATS — Against All Defendants)
Subjecting Plaintiff to prolonged physical, psychological, and sexual torture, with impunity, in violation of the U.S.-ratified Convention Against Torture.

Count 57: Pattern of Retaliation Against a Whistleblower / Victim
(Integrated into RICO, TVPRA, and First Amendment Violations)
Systematic silencing through gag orders, housing sabotage, legal abandonment, stalking, and asset deprivation in retaliation for reporting trafficking and corruption.

Count 58: Intentional Infliction of Constitutional Harm
(First, Fifth, Thirteenth, and Fourteenth Amendments)
Escalation of traditional IIED into a constitutional tort by actors under colour of law who engaged in a coordinated effort to deprive Plaintiff of liberty, safety, dignity, and due process.

Count 59: Continuing Violations Doctrine / Ongoing Conspiracy
(Doctrine Preserving Timeliness of All Claims)
All harms alleged constitute a single, uninterrupted course of conduct , beginning with Plaintiff's trafficking and extending through ongoing acts of fraud, suppression, and retaliation , such that no statute of limitations has run under applicable tolling doctrine.

**COUNT SIXTY: CONTINUED HUMAN TRAFFICKING VIA JUDICIAL ENTERPRISE**

Defendants continued the Plaintiff's trafficking through the courts by weaponizing judicial processes to enforce coerced contracts, suppress evidence, obstruct justice, and perpetuate involuntary servitude under colour of law.

# CAUSES OF ACTION

# VI.

## COUNT ONE: FEDERAL HUMAN TRAFFICKING

**(Trafficking Victims Protection Act, 18 U.S.C. § 1591 et seq.; Civil Remedy under 18 U.S.C. § 1595; Extraterritorial Jurisdiction under 18 U.S.C. § 1596; RICO Predicate Acts under 18 U.S.C. § 1961; Alien Tort Statute 28 U.S.C. § 1350; Customary International Law; Palermo Protocol)**

AGAINST:
Sequoia Capital Operations, LLC; Michael Lewis Goguen; Two Bear Capital and affiliates; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; Nemecek and Cole LLP; Brown & Charbonneau LLP; Bisnar Chase LLP; Sherman Law; Rivers J. Morrell III Law Firm; Lenczner Slaght LLP; Monique Jilesen; Sahar Talebi; and all co-conspirators, joint tortfeasors, legal agents, proxy actors, shell entities, and criminal enterprise participants.

1. Incorporation by Reference

Plaintiff Amber Doe realleges and reincorporates by reference all preceding paragraphs of this Complaint, including the Preliminary Statement, Factual Allegations, Jurisdictional Bases, and Legal Frameworks, as though fully set forth herein.

2. Statutory Basis of Action

This Count arises under:

- 18 U.S.C. § 1591 (Sex Trafficking by force, fraud, or coercion)
- 18 U.S.C. § 1590 (Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor)

- 18 U.S.C. § 1593A (Benefitting financially from trafficking)
- 18 U.S.C. § 1594 (Attempt, conspiracy)
- 18 U.S.C. § 1595 (Civil Remedy)
- 18 U.S.C. § 1596 (Extraterritorial Jurisdiction)
- 18 U.S.C. §§ 1961–1968 (Racketeer Influenced and Corrupt Organizations Act - RICO)
- 28 U.S.C. § 1350 (Alien Tort Statute)

This cause of action also invokes customary international law, jus cogens norms, and obligations under the Palermo Protocol, to which the United States and Canada are both State Parties.

3. Core Violations and Enterprise Conduct

Defendants, acting individually and through a joint criminal enterprise, knowingly and deliberately engaged in:

- The recruitment, grooming, drugging, harboring, coercion, psychological degradation, surveillance, financial entrapment, and systemic rape of Plaintiff Amber Doe, beginning when she was a child and continuing across multiple jurisdictions, borders, and years.
- The transport of Plaintiff across state and national boundaries for purposes of sexual exploitation, including but not limited to Texas, California, Florida, New York, Nevada, Montana, Illinois, Ontario, British Columbia, and Caribbean jurisdictions.
- The establishment and operation of a transnational sex trafficking enterprise, with substantial infrastructure funded by Sequoia Capital, concealed via offshore accounts, corporate pass-throughs, and shell LLCs, and protected by legal professionals and corrupted state actors.
- Ongoing concealment and enforcement of this trafficking enterprise through fraudulent contracts, sham litigation, coerced settlements, judicial bribery, ex parte gag orders, vexatious litigant designations, false imprisonment, retaliatory prosecutions, and extrajudicial threats.

4. Enumerated Predicate Acts and Facts

The predicate acts include, without limitation:

a) Recruitment and trafficking of Plaintiff at age 15 through organized crime alliances between the Hells Angels, club owners, and corporate intermediaries for sexual exploitation of girls.
b) Use of strip clubs, elite hotel chains, private jets, Private Islands, yachts, ski resorts, tech conferences, film festivals, and exotic destinations to sexually exploit Plaintiff in exchange for monetary gain.
c) Continuous anal rape, drug-induced sexual assault, and psychological bondage orchestrated by Michael Goguen and his agents, including violent sex acts that caused permanent bodily injury.
d) Really binging Settlements which included a material class that protected plaintiffs confidentiality, particularly the May 23, 2014 $40 million "settlement" executed without legal representation under conditions of duress, isolation, and threats of death.
e) Systemic financial fraud including freezing of Plaintiff's assets and her siblings assets, forging contracts, refusal to pay agreed sums, and laundering proceeds through affiliated funds and shadow networks.
f) Use of corrupted legal counsel and law firms to fabricate judicial records, suborn perjury, engage in fraud upon the court, obstruct criminal investigations, and shield perpetrators from liability.
g) Deployment of private mercenaries, including ex-Marine Matthew Marshall, for illegal surveillance, kidnapping threats, and solicitation of murder-for-hire contracts targeting Plaintiff.
h) Use of U.S. and Canadian state courts to block all redress, denying due process, access to justice, and the most basic constitutional rights—through fraudulent jurisdictional rulings and gag orders.

5. Financial Facilitation and Money Laundering

- Sequoia Capital, Two Bear Capital, and affiliated Goguen entities used venture funds, shell companies, and cryptocurrency transactions to launder trafficking proceeds and pay off lawyers, PIs, and judges.
- Defendant law firms were financially compensated not for legal advocacy, but for active participation in concealing, enabling, and retaliating against a trafficking victim, in violation of 18 U.S.C. §§ 1956 and 1957.

6. International Human Rights Violations

Under the Alien Tort Statute, Defendants' conduct constitutes:

- Slavery and servitude
- Torture and sexual violence
- Trafficking in persons and crimes against humanity

These are non-derogable violations of jus cogens—binding norms of international law—also enforceable under:

- Universal Declaration of Human Rights (Articles 1, 3, 4, 5, 7, 8)
- Convention Against Torture
- Palermo Protocol (obligating criminalization, prevention, and victim protection)

7. Extraterritorial Application

Pursuant to 18 U.S.C. § 1596, this Court has jurisdiction over all violations where:

- Any part of the conduct occurred in the U.S., and
- A defendant is a U.S. national or permanent resident.

This applies to Goguen, Sequoia Capital, Two Bear Capital, and all U.S.-based law firms and attorneys who engaged in acts within and across U.S. borders.

8. Civil RICO Predicate Acts

All conduct constitutes racketeering activity under 18 U.S.C. § 1961(1), including:

- § 1591 – Sex trafficking by force, fraud, or coercion
- § 1951 – Hobbs Act extortion
- § 1952 – Interstate travel in aid of racketeering
- §§ 1956, 1957 – Money laundering
- §§ 1512, 1513 – Witness tampering and retaliation

This enterprise is ongoing, transnational, and profiting from the systemic exploitation of women and children, using judicial systems as a weapon.

9. Injuries to Plaintiff

Plaintiff has suffered:

- Permanent psychological and physical injury, Complex-PTSD, traumatic brain injuries, and medical impairments.
- Unlawful loss of liberty, property, income, shelter and medical care.
- Irrevocable deprivation of rights under the First, Fifth, Thirteenth, and Fourteenth Amendments.
- Complete obstruction of access to courts, counsel, and redress, constituting cruel and unusual punishment under both U.S. and international law.

10. Pattern of Systemic Abuse Across Victims

Plaintiff alleges this enterprise has trafficked and silenced hundreds of women and girls across the United States, Canada, and global jurisdictions. She brings this claim in her individual capacity but reserves the right to move for class certification under FRCP 23, and requests the Court preserve the rights of similarly situated victims.

11. Injunctive Relief Demanded

Plaintiff requests that this Court:

- Permanently enjoin all Defendants from any further participation in, or facilitation of, human trafficking, sexual exploitation, and retaliatory abuse.
- Mandate full financial disclosures of all assets, accounts, investments, and payments tied to the trafficking enterprise, including those held in cryptocurrency, trusts, and offshores.
- Issue protective orders for Plaintiff and all potential class members.
- Refer all evidence to federal authorities for investigation and criminal prosecution.

12. Footnote on Legal Authority

[1] The Palermo Protocol is a binding international treaty requiring all signatory states, including the United States and Canada, to criminalize human trafficking, prosecute offenders, and provide redress to victims. Its obligations are enforceable under domestic U.S. law via the TVPA, ATS, and customary international law.

## COUNT TWO

## SEXUAL ASSAULT, SEXUAL BATTERY, AND RAPE

**(Violations of Federal Law, State Law, Canadian Law, and International Human Rights Law – Universal Jurisdiction Invoked)**
**AGAINST: Michael Lewis Goguen and All Co-Conspirators, Aiders, and Abettors**

Plaintiff hereby incorporates by reference all prior paragraphs as if fully set forth herein.

I. Jurisdiction and Applicable Law

This claim is brought under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. §§ 1591, 1595, and is further supported by overlapping federal, state, provincial, and international human rights instruments, including but not limited to:

- 18 U.S.C. § 2241 (Aggravated Sexual Abuse)
- 18 U.S.C. § 2242 (Sexual Abuse by Threat or Incapacitation)
- 18 U.S.C. § 242 (Deprivation of Rights under Color of Law)
- 28 U.S.C. § 1350 (Alien Tort Statute)

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1350, and 1367. Additionally, jurisdiction is invoked under the doctrine of universal jurisdiction, as codified in:

- The Palermo Protocol to Prevent, Suppress and Punish Trafficking in Persons;

- The Convention Against Torture (CAT);
- The Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW);
- The Universal Declaration of Human Rights (UDHR), Article 5;
- The International Covenant on Civil and Political Rights (ICCPR);
- Filártiga v. Peña-Irala, 630 F.2d 876 (2d Cir. 1980);
- Sosa v. Alvarez-Machain, 542 U.S. 692 (2004).

## II. Multistate and International Factual Predicate

### A. Texas Jurisdiction

Plaintiff was trafficked into and through Texas, particularly Houston and Dallas, where sexual violence, grooming, and coercion were executed. Texas provides no statute of limitations for adult survivors of sexual assault (Tex. Civ. Prac. & Rem. Code § 16.0045).

### B. California Jurisdiction

The most severe rapes, assaults, and coercive captivity occurred on Goguen's California properties, where Plaintiff was held under surveillance and subjected to repeated sexual battery. Goguen's California lawyers facilitated fraudulent documents to silence her.

### C. New York Jurisdiction

In New York, Plaintiff was trafficked, blacklisted, and retaliated against using business, media, and legal networks that operated in complicity with Goguen.

### D. Canada / Ontario Jurisdiction

Plaintiff's captivity extended to Canada, where Goguen's financial enablers operated through shell corporations. Plaintiff suffered cross-border sexual abuse, false imprisonment, and coordinated retaliation. Claims are brought under Doe v. Bennett, [2004] 1 S.C.R. 436, and the Canadian Charter of Rights and Freedoms §§ 7, 12, 15.

## III. Factual Allegations

Michael Goguen engaged in systematic, prolonged sexual violence, including:

- Repeated vaginal and anal rape, often under drug-induced incapacitation;
- Forcible sexual penetration resulting in a 7-inch anal tear, requiring emergency surgery;
- Sexual assault with surveillance present, under threat of murder or perpetual captivity;
- Administration of Rohypnol and other incapacitating agents;
- Non-consensual exposure to high-risk HPV and STIs;
- Use of private security, surveillance drones, coercive contracts, and financial starvation to compel silence and obedience.

These acts were not isolated but systemically planned, funded, concealed, and enforced by Goguen and co-conspirators including Quinn Emanuel, Goodwin Procter, Glaser Weil, and Wilson Sonsini.

## IV. Legal Claims and Harms

The above conduct constitutes:

- Sexual Assault and Battery under the tort laws of Texas, California, New York, and Ontario;
- Aggravated sexual abuse under 18 U.S.C. § 2241 and 2242;
- False imprisonment, intentional infliction of emotional distress, and deprivation of constitutional and bodily integrity rights;
- Tort of Sexual Assault and Intentional Infliction of Mental Suffering under Canadian law.

Judicial retaliation and cover-up campaigns further inflicted severe injury. Plaintiff was:

- Illegally blacklisted from employment, housing, and healthcare;
- Stalked, abducted, and surveilled;
- Denied fair hearings and sabotaged in courts in California, New York, and Ontario;

- Publicly defamed and silenced through coerced settlements and vexatious litigant designations.

## V. Injuries

Plaintiff has suffered and continues to suffer:

- Permanent internal injuries, including loss of reproductive function;
- Chronic pelvic and spinal damage;
- Complex PTSD, suicidality, and trauma-related neurocognitive impairments;
- Loss of safety, shelter, livelihood, and reputation;
- Deprivation of access to justice, compounded by ongoing surveillance and intimidation.

## VI. Relief Sought

Plaintiff seeks judgment against all Defendants, jointly and severally, for:

- General damages: $193,577,054.22
- Special damages: $10,000,000.00
- Loss of earnings: $10,000,000.00
- Punitive damages: not less than $500,000,000.00
- Prejudgment interest at 10% compounded annually from May 23, 2014
- Costs of suit, including attorneys' fees and expert costs

Equitable and Declaratory Relief:

- Permanent injunction prohibiting all contact, surveillance, or retaliation by Defendants;
- Declaratory judgment affirming violations of U.S., Canadian, and international human rights law;

- Injunction barring enforcement of any fraudulent settlements or judgments obtained through coercion;
- Any further restorative relief this Court deems just and proper under universal jurisdiction and equity.

COUNT FOUR: PREMISES LIABILITY

(Against All Defendants, including Sequoia Capital as Lead Tortfeasors)

1. Plaintiff incorporates all prior allegations.
2. Defendants owned, financed, controlled, and utilized numerous commercial and residential premises for human trafficking, rape, torture, surveillance, and obstruction of justice.
3. Premises included:
   - Sequoia Capital corporate properties;
   - Two Bear Ranch, Two Bear Security, Two Bear Capital, Michael Goguen's multiple residences;
   - Rosewood Hotels, Marriott Hotels, Sheraton Hotels;
   - Law firm offices used for coercion, legal sabotage, and forced settlement conferences.
4. The Defendants owed Plaintiff non-delegable duties of care under:
   - Federal premises liability doctrine (Restatement (Second) of Torts §§343–344);
   - State premises liability statutes (Cal. Civil Code §1714(a); New York and Ontario common law);
   - U.S. anti-trafficking laws, 18 U.S.C. § 1595 (TVPA civil remedy).
5. Defendants breached these duties by:

- ◦ Knowingly allowing their premises to be used for trafficking and sexual assaults;
- ◦ Failing to monitor or restrict premises access to known abusers;
- ◦ Financing the use of these premises for criminal enterprise activity.

6. Plaintiff was repeatedly raped, surveilled, trafficked, and harmed on these premises.

Relief Requested:

- $193,577,054.22 in general damages;
- $10,000,000.00 in medical-related special damages;
- Punitive and exemplary damages to punish willful misconduct;
- Pre-judgment interest at 10% compounded;
- Attorneys' fees, security, and injunctive relief.

**COUNT FIVE: VIOLATION OF THE MANN ACT**

(18 U.S.C. §§ 2421, 2422, 2423 – Transportation for Illegal Sexual Activity; Coercion and Enticement; Sex Trafficking)
Against Defendants: SEQUOIA CAPITAL OPERATIONS, LLC; MICHAEL LEWIS GOGUEN; and All Co-Conspirators

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.
2. This cause of action arises under the Mann Act, codified at 18 U.S.C. §§ 2421–2423, which prohibits transporting individuals across state or international lines for the purpose of engaging in criminal sexual activity.
3. Defendant SEQUOIA CAPITAL, acting as the primary financial enabler, materially supported, funded, and conspired with Michael Lewis Goguen to carry out a long-term, organized scheme of cross-border sex trafficking by:

- Financing the travel of Plaintiff across state and international borders, including to Texas, California, New York, and the United Kingdom, for the purpose of her sexual exploitation;
- Providing access to private jets, security personnel, legal defense, and shell companies that facilitated concealment of the Mann Act violations;
- Knowingly assisting and protecting Defendant Goguen while trafficking and sexually abusing the Plaintiff under fraudulent pretenses.

4. Defendant MICHAEL LEWIS GOGUEN, in collaboration with Sequoia Capital and co-conspirators, willfully:
   - Transported Plaintiff for purposes of criminal sexual conduct, including violent sexual assaults, rape, and coerced participation in degrading sexual acts;
   - Used fraud, coercion, and enticement to cause Plaintiff to travel, all under the pretext of romantic partnership, educational sponsorship, or career advancement;
   - Threatened Plaintiff with death, financial ruin, and retaliation to prevent her from escaping or reporting the abuse.
5. Defendants' conduct violates:
   - 18 U.S.C. § 2421 (Interstate transportation for illicit sexual purposes);
   - 18 U.S.C. § 2422 (Coercion and enticement);
   - 18 U.S.C. § 2423 (Transportation for illegal sexual activity);
   - 18 U.S.C. § 371 (Conspiracy to commit federal offenses).
6. Defendants' actions also constitute predicate acts under:
   - 18 U.S.C. § 1591 (Sex Trafficking by Force, Fraud, or Coercion);
   - 18 U.S.C. § 1961(1) (RICO predicate acts including Mann Act violations);
   - 28 U.S.C. § 1350 (Alien Tort Statute), for transnational crimes and human rights violations.

7. SEQUOIA CAPITAL's actual knowledge of Michael Goguen's trafficking activities and deliberate financial and legal protection of his conduct rises to the level of joint enterprise liability and conspiracy under U.S. civil and criminal law.

8. As a direct and proximate result of these violations, Plaintiff suffered:

    - Repeated rape and sexual assault across jurisdictions;
    - Long-term confinement, psychological trauma, and suicidal ideation;
    - Permanent physical injuries, including internal trauma and reproductive harm;
    - Irreparable loss of liberty, reputation, and future economic opportunity.

RELIEF REQUESTED:

Plaintiff seeks judgment against SEQUOIA CAPITAL OPERATIONS, LLC, MICHAEL LEWIS GOGUEN, and all co-conspirators, jointly and severally, as follows:

- Compensatory damages: $193,577,054.22 USD
- Special damages for medical treatment, security, and safe relocation: $10,000,000.00 USD
- Loss of income and future earnings: $10,000,000.00 USD
- Punitive and exemplary damages: Not less than $500,000,000.00 USD
- Prejudgment interest at 10% compounded annually, from May 23, 2014
- Attorneys' fees, costs of suit, and all equitable relief, including:
    - Injunctions prohibiting Defendants from retaliation or contact;
    - Appointment of a monitor for Sequoia's compliance with trafficking laws;
    - A formal court order referring matters for criminal prosecution, where applicable.

**COUNT SIX: VIOLATION OF THE VIOLENCE AGAINST WOMEN ACT (VAWA)**
***(34 U.S.C. § 12361(c); Civil Remedy under 34 U.S.C. § 12361(d); Supplemental Jurisdiction under 28 U.S.C. § 1367)***
AGAINST:
Sequoia Capital Operations, LLC; Michael Lewis Goguen; Two Bear Capital and affiliates; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; and all co-defendants acting as joint tortfeasors and co-conspirators.

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.
2. This cause of action arises under the civil rights remedy provisions of the Violence Against Women Act (VAWA), specifically 34 U.S.C. § 12361(c) and (d), which authorizes a private civil action against any person who commits a crime of violence motivated by gender and results in physical injury, psychological harm, or deprivation of civil rights.
3. Defendants, through coordinated acts and omissions, committed multiple crimes of violence motivated by gender animus, domination, and sexual subjugation, including but not limited to:
    - Violent sexual assaults, anal rape, forced sodomy, and sexual humiliation;
    - Physical beatings and psychological torture designed to coerce compliance and enforce subjugation;
    - Systemic use of financial coercion, unlawful imprisonment, surveillance, and threats of death to maintain control;
    - Collusion among attorneys, law firms, and corporate actors to obstruct legal redress and shield perpetrators.
4. Defendant Sequoia Capital, acting as financier and enterprise organizer, enabled, funded, concealed, and profited from the gender-based violence committed by Michael Goguen and other co-defendants, including acts of trafficking, rape, and sustained physical abuse of Plaintiff and others.

5. The abuse endured by Plaintiff was:

   ◦ Targeted and sustained over a period of years;

   ◦ Motivated by her gender, with the intent to subordinate, control, and silence her;

   ◦ Executed in part through coerced "settlement" agreements and gag orders drafted and executed by Sequoia Capital–funded attorneys;

   ◦ Reinforced through public defamation, private surveillance, and orchestrated retaliation.

6. Defendants' acts constitute "crimes of violence" as defined in 18 U.S.C. § 16 and incorporated into 34 U.S.C. § 12361(d), including:

   ◦ Sexual assault, rape, and attempted murder;

   ◦ Stalking and false imprisonment;

   ◦ Threats, intimidation, and obstruction of justice to prevent Plaintiff from accessing legal recourse.

7. Plaintiff is a woman and was specifically targeted on the basis of her gender. Her status as a trafficking victim was exploited to enforce continued submission through coercive means.

8. As a direct and proximate result of Defendants' VAWA violations, Plaintiff has sustained:

   ◦ Catastrophic physical and psychological injury;

   ◦ Lasting trauma and PTSD;

   ◦ Loss of liberty, safety, housing, legal standing, and constitutional protections;

   ◦ Financial devastation, reputational harm, and the denial of justice in multiple jurisdictions.

9. Pursuant to 34 U.S.C. § 12361(d), Plaintiff seeks the following relief:

   ◦ Compensatory damages in excess of $100,000,000.00;

- Special damages for medical treatment, security, and relocation expenses;
- Punitive and exemplary damages to deter future gender-based violence;
- Pre-judgment interest at 10% compounded annually since 2014;
- Costs of suit and attorney's fees;
- Declaratory and injunctive relief preventing further acts of gender-based abuse and enterprise retaliation.

COUNT SEVEN: PEONAGE AND SLAVERY
*(Violations of 18 U.S.C. §§ 1581–1590; Civil Remedy under 18 U.S.C. § 1595; Predicate Acts under RICO, 18 U.S.C. § 1961; Supplemental Jurisdiction under 28 U.S.C. § 1367)*
AGAINST:
Sequoia Capital Operations, LLC; Michael Lewis Goguen; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; and all affiliated entities and individuals as joint tortfeasors, co-conspirators, and enterprise participants.

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.
2. This cause of action arises under 18 U.S.C. §§ 1581–1590, which prohibit peonage, slavery, involuntary servitude, and forced labor, and under 18 U.S.C. § 1595, which authorizes a civil remedy for victims of such conduct.
3. Defendants knowingly subjected Plaintiff to involuntary servitude, peonage, and conditions functionally indistinguishable from slavery through:
    - Coercive threats of violence, financial ruin, homelessness, and death;
    - The withholding of money, legal status, housing, and protection as forms of control;

- The deliberate orchestration of false legal proceedings and fraudulent settlements to keep Plaintiff entrapped;
- Systematic surveillance, physical abuse, rape, isolation, and denial of medical care;
- Financial exploitation and forced compliance through sham agreements orchestrated by Sequoia Capital-funded attorneys.

4. Defendant Sequoia Capital Operations, LLC was the central financier and organizer of the criminal enterprise that enabled the enslavement and exploitation of the Plaintiff. It:
   - Provided the infrastructure and funding for Goguen's sex trafficking operations;
   - Facilitated false imprisonment, coercive contract execution, and financial bondage;
   - Coordinated with law firms and private security to enforce obedience and suppress dissent.

5. Plaintiff's labor, time, body, and silence were coerced through a fraudulent scheme that deprived her of free will and autonomy, constituting violations of:
   - 18 U.S.C. § 1581 (Peonage)
   - 18 U.S.C. § 1584 (Involuntary Servitude)
   - 18 U.S.C. § 1589 (Forced Labor)
   - 18 U.S.C. § 1590 (Trafficking with respect to peonage and slavery)

6. These actions were committed in part to silence Plaintiff's whistleblowing and preserve the secrecy of the criminal enterprise, thereby ensuring continued financial enrichment of all Defendants.

7. Defendants' conduct constitutes predicate racketeering activity under 18 U.S.C. § 1961(1) and was executed as part of an ongoing RICO enterprise.

8. As a direct and proximate result of this conduct, Plaintiff suffered:
   - Psychological trauma consistent with captivity, servitude, and coerced labor;

- Economic loss, physical deterioration, loss of autonomy, and social isolation;
- Destruction of legal standing and permanent displacement.

9. Pursuant to 18 U.S.C. § 1595, Plaintiff seeks:

- Compensatory damages not less than $150,000,000.00;
- Special damages for ongoing therapy, housing, and protection;
- Punitive damages against each Defendant to deter future conduct;
- Interest at 10% compounded annually from May 23, 2014;
- Injunctive and declaratory relief barring future acts of peonage, servitude, or retaliatory coercion.

## II. RICO, FRAUD, OBSTRUCTION, CONSPIRACY

COUNT EIGHT: RACKETEERING (RICO) AND CROSS-BORDER CRIMINAL ENTERPRISE

*(18 U.S.C. §§ 1961–1968; 28 U.S.C. § 1350 (ATS); Canadian Criminal Code §§ 467.11–467.13; Ontario Human Trafficking Act; Palermo Protocol; CEDAW; CAT; UDHR; Customary International Law)*

AGAINST:
*Sequoia Capital Operations, LLC; Sequoia Capital Franchise Partners, L.P.; Sequoia Capital Growth III Principals Fund, LLC; Sequoia Heritage;Michael Lewis Goguen Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; Bruce Van Dalsem; John Quinn; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Paoli & Purdy LLP; Bisnar Chase LLP; Brown & Charbonneau LLP; Sherman Law;*

*Nemecek & Cole LLP; and all other individuals and entities who knowingly participated in the criminal enterprise.*

1. Jurisdiction and Legal Basis

This claim arises under:

- United States federal law: 18 U.S.C. §§ 1961–1968 (RICO), 28 U.S.C. § 1350 (Alien Tort Statute)
- Canadian law: Criminal Code §§ 467.11–467.13; Ontario Human Trafficking Act, 2017
- International law:
    - *Palermo Protocol to Prevent, Suppress and Punish Trafficking in Persons*
    - *Convention Against Torture (CAT)*
    - *Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW)*
    - *Universal Declaration of Human Rights (UDHR), Articles 5, 7, 8*
    - *Customary international prohibitions on slavery, trafficking, torture, and crimes against humanity*

This Court has subject matter jurisdiction pursuant to:

- 28 U.S.C. § 1331 (federal question),
- 18 U.S.C. § 1964(c) (civil RICO),
- 28 U.S.C. § 1350 (ATS—claims arising under customary international law), and
- 28 U.S.C. § 1367 (supplemental jurisdiction over related state and foreign law claims).

2. RICO Enterprise and Participating Defendants

The Defendants named herein jointly constituted a transnational association-in-fact enterprise as defined by 18 U.S.C. § 1961(4), and a criminal organization under Canadian and international law, operating with a common illegal purpose:

- To traffic, enslave, and exploit Plaintiff sexually, physically, and economically;
- To launder proceeds of human trafficking and evade tax liability using shell companies;
- To obstruct justice through bribery, perjury, judicial sabotage, and fraud;
- To destroy Plaintiff's livelihood, credibility, and liberty through a campaign of surveillance, media blacklisting, and legal persecution;
- To ensure the perpetual functioning of the trafficking and financial racketeering enterprise through coercion, retaliation, and systemic abuse.

3. Predicate Acts and Pattern of Racketeering Activity

Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of repeated violations of state, federal, and international law over a decade-long conspiracy including but not limited to:

- Human Trafficking in violation of 18 U.S.C. §§ 1589–1591 and Canadian/ Ontario trafficking statutes;
- Sexual Assault, Rape, and Torture as predicate acts of violence and abuse;
- Obstruction of Justice and Witness Tampering (18 U.S.C. §§ 1503, 1512, 1513);
- Fraud Upon the Court: including fraudulent service, ex parte orders, falsified evidence, and bribed rulings across California, New York, Texas, Alberta, and Ontario;
- Money Laundering (18 U.S.C. §§ 1956, 1957): funneling payments through shell corporations, equity funds, and offshore trusts;
- Extortion and Coercion: forced settlements, asset seizures, threats to life and liberty;
- Attempted Murder and solicitation to kill Plaintiff via private military operatives under Goguen's employ;

- Retaliation against a whistleblower: including defamation, surveillance, financial sabotage, and the destruction of access to housing, healthcare, and due process;
- Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343): transmitting fabricated court orders and threats to obstruct litigation and manipulate jurisdiction.

These acts were interrelated, continuous, and indicative of a coordinated criminal enterprise whose members knowingly conspired and acted with shared intent.

4. Transnational Nature and Universal Jurisdiction

The racketeering conduct spanned across:

- U.S. states: California, Texas, New York, Montana;
- Canadian provinces: Ontario, Alberta, British Columbia;
- International channels: Switzerland, Belize, and other financial secrecy jurisdictions used to facilitate laundering.

The crimes constitute violations of *jus cogens* norms, and invoke universal jurisdiction under the Alien Tort Statute and international criminal law because they involve:

- Enslavement and trafficking of a human being;
- Repeated torture and inhumane treatment;
- Systematic obstruction of justice using bribery and coercion;
- Attempted extrajudicial killing of a trafficking survivor to silence testimony.

5. Damages Suffered by Plaintiff

As a direct and proximate result of this racketeering scheme, Plaintiff has suffered:

- Severe bodily injuries, including multiple forced surgeries, chronic illness, and irreversible reproductive damage;
- Psychological trauma, Complex PTSD, suicidality, dissociation, and emotional paralysis;

- Complete loss of livelihood: employment, shelter, access to medical care, identity documents, and legal standing;
- Total reputational assassination, blacklisting by financial and media networks;
- Persistent threats to life, safety, and liberty, including surveillance and armed harassment;
- Loss of dignity and bodily autonomy, in violation of U.S., Canadian, and international law.

6. Relief Sought

Plaintiff respectfully demands judgment against all Defendants, jointly and severally, for the following:

a. Compensatory Relief

- General damages: $193,577,054.22 USD
- Special damages (medical care, security, shelter, recovery): $10,000,000.00 USD
- Lost earnings and earning capacity: $10,000,000.00 USD

b. Statutory and Treble Damages

- Treble damages under 18 U.S.C. § 1964(c): $381,000,000.00 USD minimum

c. Equitable and Restorative Relief

- Constructive trust and full accounting of all assets procured through racketeering;
- Permanent injunction barring further retaliation, trafficking, or contact;
- Judicial declaration recognizing the enterprise as a transnational criminal organization violating fundamental rights;
- Prejudgment interest at 10% compounded annually from May 23, 2014;
- Attorneys' fees, expert costs, and litigation expenses;

- Emergency protection and relocation orders under the CVBR and applicable international norms;
- Referral to appropriate criminal and international authorities, including the DOJ, RCMP, UN Special Rapporteurs, and ICC, for prosecution under anti-trafficking and anti-torture frameworks.

7. Conclusion and Universal Declaration

This racketeering enterprise constitutes an egregious and ongoing violation of international criminal law, fundamental human rights, and the constitutional guarantees of the United States and Canada. No statute of limitation, jurisdictional loophole, or corrupted legal instrument can shield the perpetrators from accountability under universal jurisdiction.

Plaintiff demands full dismantlement of the criminal enterprise, and full legal, equitable, and restorative justice under all applicable authorities, without exception.

**COUNT NINE : FRAUD**

AGAINST:
Michael Lewis Goguen; Sequoia Capital; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; William Paoli; Paoli and Purdy LLP; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Richard Sherman; Sherman Law; Gregory Brown; Brown & Charbonneau LLP; Wilson Sonsini Goodrich & Rosati LLP; Anthony McCusker; Nemecek & Cole LLP; and all individually named Defendants and Doe co-conspirators.

1. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff Amber Doe repeats, realleges, and incorporates by reference all preceding paragraphs, facts, and causes of action of this Statement of Claim as if fully set forth herein.

## 2. FRAUDULENT SCHEME

2. The Defendants, individually and collectively, engaged in an intentional, malicious, and highly sophisticated scheme of fraud designed to:

- Defraud Plaintiff out of $40,000,000.00 due under the May 23, 2014 Settlement Agreement;
- Obstruct Plaintiff's access to justice by manufacturing fraudulent legal rulings, orders, and judgments across multiple jurisdictions;
- Induce Plaintiff's attorneys to abandon her cases through bribery, coercion, and collusion;
- Fabricate ex parte orders, false filings, manipulated service records, and perjured testimony in California and Ontario courts to unlawfully extinguish Plaintiff's valid legal claims;
- Conceal critical information, court filings, and hearing dates from Plaintiff to deny her right to be heard and to deprive her of legal redress;
- Fraudulently represent to courts, financial institutions, and law enforcement that Plaintiff was in violation of prior legal rulings, when in fact those rulings were procured through fraud, bribery, perjury, and obstruction;
- Manipulate financial accounts, legal files, and trust accounts to misappropriate funds, including retainer deposits and medical funds reserved for Plaintiff's care;
- Execute fraudulent Mareva injunctions, ex parte seizures, and fraudulent judgment enforcement proceedings in Ontario, California, and cross-border jurisdictions.

## 3. MATERIAL MISREPRESENTATIONS

3. The Defendants knowingly made the following material misrepresentations:

- That the Plaintiff voluntarily waived her rights under the 2014 Settlement Agreement;
- That valid service of legal process occurred where no valid service was effected;
- That Plaintiff failed to prosecute her claims or abandoned cases she fully intended to litigate;
- That judgments entered against Plaintiff were valid, lawful, and not the product of fraud upon the court;
- That opposing counsel acted independently and ethically when in fact they were bribed or coerced by Goguen, Sequoia Capital, and Quinn Emanuel;
- That Plaintiff was the subject of valid contempt orders, gag orders, and vexatious litigant designations, despite complete absence of legal basis for such orders.

4. The Defendants concealed critical documents, hearings, and orders from Plaintiff, including sealed filings, secret hearings, and illicit ex parte proceedings that intentionally denied Plaintiff her right to participate or defend herself.

4. KNOWLEDGE AND INTENT

5. The Defendants acted with full knowledge of the falsity of their representations and omissions, and with the deliberate intent to deceive:

- To permanently deprive Plaintiff of her lawful contractual entitlements and causes of action;
- To insulate themselves from civil, criminal, and regulatory liability for the trafficking enterprise;
- To prevent exposure of criminal conduct involving human trafficking, sexual exploitation, judicial bribery, obstruction of justice, and racketeering.

6. The fraudulent conduct described herein was perpetrated with malice, oppression, and reckless indifference to Plaintiff's rights, health, and survival.

5. RELIANCE AND CAUSATION

7. Plaintiff reasonably relied on Defendants' promises of legal representation, fiduciary loyalty, and the validity of court processes—reliance which was intentionally exploited and weaponized against her.

8. As a direct and proximate result of the Defendants' fraud, Plaintiff suffered:

- Catastrophic financial loss totaling at minimum $193,577,054.22 USD;
- Medical costs and loss of access to critical surgeries and care totaling $10,000,000.00 USD;
- Permanent loss of income, earnings capacity, and career opportunities totaling $10,000,000.00 USD;
- Psychological devastation, including PTSD, complex trauma, and severe depression;
- Reputational destruction and social isolation;
- Ongoing threats to life, liberty, and personal safety.

## 6. VIOLATED LEGAL STANDARDS

9. The Defendants' conduct constitutes fraud and fraudulent concealment under:

- Ontario common law (Bruno Appliance and Furniture, Inc. v. Hryniak, 2014 SCC 8);
- Civil fraud principles under Canadian and U.S. law;
- The Criminal Code of Canada (s. 380, fraud over $5,000);
- The Canadian Tort of Human Trafficking;
- The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.;
- International human rights law, including the Palermo Protocol, CEDAW, and the Universal Declaration of Human Rights.

## 7. DAMAGES REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honourable Court enter judgment in her favour and against Defendants, jointly and severally, as follows:

a. General damages: $193,577,054.22 USD;

b. Special damages for medical, relocation, and therapy expenses: $10,000,000.00 USD;

c. Loss of earnings: $10,000,000.00 USD;

d. Prejudgment interest at 10% per annum compounded annually from May 23, 2014;

e. Punitive and aggravated damages: $500,000,000.00 USD;

f. Treble damages under RICO, TVPA, and applicable international law;

g. Full attorneys' fees, litigation costs, expert fees, security protection, and immediate shelter provisions;

h. Permanent injunctive relief prohibiting any further fraudulent legal proceedings, retaliatory litigation, or enforcement actions;

i. Imposition of constructive trust over all funds, property, or financial assets procured by the Defendants' fraud;

j. Such further relief as this Honourable Court deems just, equitable, and necessary.

**COUNT TEN : FRAUDULENT INDUCEMENT**

AGAINST:
Sequoia Capital Operations, LLC; Sequoia Capital Franchise Partners, L.P.; Michael Lewis Goguen; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Nemecek & Cole LLP; Brown & Charbonneau LLP; and all individually named Defendants and Doe co-conspirators.

## 1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe repeats, realleges, and incorporates by reference all preceding paragraphs, facts, and causes of action as if fully set forth herein.

## 2. LEGAL STANDARD: FRAUDULENT INDUCEMENT

Under New York and federal law, fraudulent inducement occurs where a defendant makes a material misrepresentation with knowledge of its falsity and the intent to induce the plaintiff to rely on it, and the plaintiff reasonably relies on the misrepresentation to her detriment.

## 3. FACTUAL BASIS FOR FRAUDULENT INDUCEMENT

Defendants, led by Sequoia Capital Operations, LLC and its affiliates, knowingly and intentionally induced Plaintiff to enter into the May 23, 2014 Settlement Agreement and related legal stipulations by fraud, deceit, coercion, and strategic concealment of material facts. Specifically:

a. Sequoia Capital, in coordination with Goguen and Quinn Emanuel, falsely represented that the $40 million "settlement agreement" was voluntary, final, and in Plaintiff's best interests—despite knowing that:

- Plaintiff was unrepresented by counsel and under extreme duress at the time;
- The agreement was drafted by conflicted counsel with divided loyalties (Diane Doolittle, John Quinn, and others);
- The purpose of the agreement was not to resolve claims, but to bury evidence of criminal sexual slavery, trafficking, and RICO predicate acts.

b. Defendants affirmatively concealed material information and misrepresented legal processes, including:

- The illegality of the trafficking, exploitation, and rape that underpinned Plaintiff's legal claims;
- The fact that Plaintiff's signature was procured while under financial duress, threats of violence, and medical crisis;

- The intent to later weaponize the coerced agreement as a basis for fraudulent enforcement actions, Mareva injunctions, and retaliatory litigation in California and Ontario.

c. Defendants falsely assured Plaintiff that she would receive:

- Immediate payment of the full $40 million owed;
- Release from further abuse and litigation;
- Legal finality and safety from retaliation.

These statements were false when made and were knowingly deployed as a trap to induce reliance, prevent exposure of the criminal enterprise, and preempt Plaintiff's access to legitimate remedies under U.S., Canadian, and international law.

4. DEFENDANTS' KNOWLEDGE AND INTENT

The fraudulent inducement was:

- Intentional: Defendants orchestrated this scheme with legal sophistication and precise malice.
- Coordinated: Sequoia Capital, Quinn Emanuel, and allied firms acted in lockstep to secure Plaintiff's signature while isolating her from legal advice and recourse.
- Predatory: The scheme exploited Plaintiff's known trauma, financial dependence, medical vulnerability, and absence of legal counsel.

5. RELIANCE AND CAUSATION

Plaintiff reasonably relied on the Defendants' misrepresentations and omissions:

- She signed the agreement believing she had no alternative and that the promises of payment and safety were true.
- She refrained from further legal action, gave up civil and criminal claims, and remained silent due to the induced belief that her safety and dignity would be protected.

As a direct and proximate result, Plaintiff suffered:

- Loss of $40 million in settlement funds promised but never paid;
- Loss of liberty and legal rights, including the right to pursue criminal and civil accountability;
- Compounded trauma, medical deterioration, and social isolation;
- Ongoing harassment and retaliation via fraudulent legal enforcement actions and international asset freezes.

## 6. VIOLATED LEGAL STANDARDS

Defendants' conduct constitutes fraudulent inducement under:

- New York common law (e.g., *First Bank of the Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287 (1st Dept. 1999));
- U.S. federal law, including predicate acts under RICO, TVPA, and fraud statutes;
- Canadian tort law of deceit and fraudulent misrepresentation;
- International law, including Articles 7, 8, and 12 of the Universal Declaration of Human Rights, and the Palermo Protocol;
- Ethical violations by attorneys engaged in coercive settlement practices in violation of professional duties.

## 7. DAMAGES REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honourable Court enter judgment in her favor and against all Defendants, jointly and severally, as follows:

a. General damages: $193,577,054.22 USD;
b. Special damages (medical, relocation, protective measures): $10,000,000.00 USD;
c. Loss of earnings and future income: $10,000,000.00 USD;
d. Prejudgment interest at 10% per annum compounded annually from May 23, 2014;
e. Punitive and aggravated damages: $500,000,000.00 USD;
f. Treble damages under RICO, TVPA, and supplemental jurisdiction principles;
g. Permanent injunctive relief barring enforcement of the fraudulent agreement and any derivative judgments;

h. Constructive trust over all assets acquired by fraud;
i. Restitution and accounting of all misappropriated funds and unjust enrichment;
j. Further relief as the Court deems just, equitable, and necessary.

COUNT ELEVEN: FRAUD UPON THE COURT

(Against All Defendants – Injunctive and Declaratory Relief Only from Judicial and State Actors)

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe repeats, realleges, and incorporates by reference all preceding paragraphs, factual allegations, and causes of action as though fully set forth herein.

II. NATURE OF FRAUD UPON THE COURT

Defendants, acting individually and in concert, engaged in a malicious, deliberate, and systematic enterprise to commit fraud upon multiple courts in the United States, Canada, and internationally, including but not limited to:

- The Superior Court of California (San Mateo, Los Angeles, Orange Counties);
- The United States District Courts (SDNY, CDCA, District of Montana);
- The United States Court of Appeals for the Ninth Circuit;
- The Ontario Superior Court of Justice (Commercial List and Appellate Divisions);
- The California Supreme Court and Court of Appeal;
- The Supreme Court of Canada.

The fraudulent schemes were not confined to adversarial misconduct. They were designed to corrupt the judicial machinery itself, including: bribing judges, staging ex parte communications, falsifying service, suppressing hearings, fabricating evidence, and manufacturing void rulings that destroyed Plaintiff's legal standing.

## III. ELEMENTS OF FRAUD UPON THE COURT

The fraud consisted of, inter alia:

- Filing perjured declarations, false affidavits of service, forged documents, and default motions based on fictitious addresses;
- Bribing judicial officers and clerks for favorable rulings and illegal designations (e.g., vexatious litigant status);
- Suppressing key exculpatory documents, including victim certifications and medical records;
- Engaging in ex parte communications with judges (including Susan Greenberg, Danny Chou, Nina Shapirshteyn, Barbara Conway, Cory Gilmore) to manipulate rulings and calendar motions off-schedule;
- Staging illegal contempt proceedings and issuing punitive monetary gag bonds (e.g., $50,000 by Judge Nico Dourbetas) in complete absence of jurisdiction.

This conduct goes beyond fraud between litigants. It strikes at the institutional integrity of the courts, warranting vacatur of all judgments obtained through fraud.

## IV. SPECIFIC ACTS OF FRAUD

Examples include:

- The Ontario Mareva injunction obtained via falsified affidavits and forged service, used to freeze assets despite California appeals being pending;
- The illegal erasure of Plaintiff's legal identity by converting her into a corporate defendant;
- The secret dismissal of Plaintiff's well-pleaded federal claims in SDNY and CDCA using fabricated jurisdictional arguments;
- Judicial collusion with law firms such as Lenczner Slaght and Quinn Emanuel to falsify nationality, standing, and court access.

## V. LEGAL BASIS FOR RELIEF

Defendants' conduct constitutes fraud upon the court and violates:

- U.S. Federal Common Law: *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *United States v. Throckmorton*, 98 U.S. 61 (1878);
- Ontario Civil Procedure: Rule 59.06 (fraudulent judgments);
- Canadian Common Law: *Canada v. Grenier*, 2005 FCA 348; *Merchant Law Group v. Canada*, 2010 FCA 206;
- Canadian Criminal Code: s. 139 (obstruction), s. 380 (fraud), s. 131 (perjury), s. 465 (conspiracy);
- International Law: The Palermo Protocol, CEDAW, and UDHR.

## VI. STANDING FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff has standing to seek relief because she continues to suffer collateral legal, reputational, and safety harms stemming from the fraudulent orders and rulings:

- Illegal enforcement of judgments across U.S. and Canadian jurisdictions;
- Denial of access to courts and gag orders premised on false filings;
- Legal paralysis and erasure of legal personhood through fraudulently procured orders.

## VII. RELIEF SOUGHT

Plaintiff does not seek damages from judicial officers or state officials. Instead, she seeks the following declaratory and injunctive relief:

### A. Declaratory Relief

1. A declaration that all judgments, designations, gag orders, and rulings procured through fraud upon the court are void ab initio and without legal effect;
2. A declaration that the judicial misconduct described constitutes a violation of Plaintiff's due process and access to courts rights under the First and Fourteenth Amendments.

### B. Injunctive Relief

1. Vacatur of all fraudulent judgments, restraining orders, asset freezes, vexatious litigant designations, contempt citations, and gag orders entered without valid jurisdiction or due process;

2. An order permanently enjoining Defendants from further obstruction, surveillance, retaliation, or use of fraudulently obtained rulings;

3. Structural injunctive relief requiring independent review of all judicial rulings against Plaintiff to purge the record of fraud.

C. Protective Relief

1. An order restoring Plaintiff's full legal standing and court access;

2. An order mandating unsealing of suppressed filings and protective review of Plaintiff's safety concerns arising from retaliatory litigation.

D. Further Relief

Such other and further equitable or injunctive relief as this Honourable Court may deem just, proper, and necessary to uphold Plaintiff's constitutional, international, and human rights.

**COUNT TWELVE: OBSTRUCTION OF JUSTICE**

(Against All Defendants)

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe repeats, realleges, and incorporates by reference all preceding paragraphs, factual allegations, and causes of action as though fully set forth herein.

2. NATURE OF THE OBSTRUCTION SCHEME

Defendants, individually and collectively, engaged in a deliberate, continuous, and systemic pattern of obstruction of justice across civil, criminal, and administrative forums in Canada, the United States, and international jurisdictions.

Defendants acted with specific intent to:

- Prevent Plaintiff's claims from being adjudicated on the merits;
- Shield co-conspirators from civil and criminal liability;

- Conceal the existence of a continuing enterprise of human trafficking, sexual violence, and financial crimes;
- Evade accountability for violations of federal statutes, including the Trafficking Victims Protection Reauthorization Act (TVPRA), RICO, and civil rights laws;
- Permanently silence Plaintiff through judicial coercion, economic strangulation, reputational destruction, and physical surveillance.

This obstruction scheme extended across courts, tribunals, state bar agencies, law enforcement, and international oversight bodies.

## 3. UNLAWFUL ACTS OF OBSTRUCTION

The Defendants obstructed justice through the following acts, among others:

a. Fabrication of judicial records, including forged affidavits, false certificates of service, perjured declarations, and default judgments;
b. Secret ex parte hearings in courts including San Mateo Superior Court, Los Angeles Superior Court, and Ontario Superior Court (Commercial List), excluding Plaintiff from due process;
c. Bribery of judicial officers, clerks, and public officials to block adjudication of trafficking claims and suppress evidence;
d. Suppression of exculpatory evidence, including trafficking certifications, medical documentation, and financial abuse records;
e. Retaliatory lawsuits designed to intimidate Plaintiff and deter legal action;
f. Collusion with state bar officials to obstruct investigations into attorney misconduct and enable continued abuse by defense counsel;
g. Manipulation of federal courts in SDNY, CDCA, and the Ninth Circuit via fraud, vexatious litigant designations, and improper removals;
h. Interference with treaty obligations and human rights inquiries, including the obstruction of Plaintiff's filings before the United Nations and Inter-American Commission on Human Rights.

## 4. VIOLATIONS OF LAW

Defendants' conduct constitutes obstruction of justice under both domestic criminal law and civil rights law, as well as international obligations. The conduct violated:

U.S. Federal Law:

- 18 U.S.C. § 1503 (Obstruction of justice);
- 18 U.S.C. § 1512 (Witness tampering);
- 18 U.S.C. § 1513 (Victim retaliation);
- 18 U.S.C. § 1962 (Civil RICO – predicate acts);
- Constitutional protections under the First and Fourteenth Amendments, including the right of access to courts, as recognized in *Gomez v. Toledo*, 446 U.S. 635 (1980);

Canadian Criminal Code:

- s. 139 (Obstruction of Justice);
- s. 465 (Conspiracy);
- s. 380 (Fraud);
- s. 423 (Intimidation);
- s. 131 (Perjury);
- s. 346 (Extortion);

Other Applicable Law:

- Ontario Human Trafficking Act, S.O. 2017, c. 14, s. 16;
- Ontario Rules of Civil Procedure, Rule 59.06 (fraudulently obtained judgments);
- International Law: Palermo Protocol, CEDAW, UDHR;
- Canadian Charter of Rights and Freedoms, ss. 7, 12, 15, 24.

5. ONGOING PATTERN OF OBSTRUCTION

Defendants' obstruction is ongoing, including:

- Continued use of illegal subpoenas and fraudulently obtained orders to monitor Plaintiff's location, finances, and personal networks;

- Interference with Plaintiff's international diplomatic protection applications and access to humanitarian remedies;
- Use of law enforcement proxies and private contractors to stalk, intimidate, and surveil Plaintiff;
- Systematic deprivation of housing, healthcare, and income to destabilize Plaintiff and suppress testimony.

6. DAMAGES

As a direct and proximate result of this obstruction enterprise, Plaintiff has suffered:

- Permanent denial of meaningful judicial redress;
- Unlawful enforcement of over $100 million USD in fraudulent judgments;
- Chronic PTSD, physical injury, and permanent disability due to retaliation and medical neglect;
- Total financial collapse and reputational devastation;
- Ongoing fear, endangerment, and denial of human dignity and liberty.

7. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. Declaratory relief that all rulings, judgments, orders, and sanctions obtained through obstruction are void ab initio;
b. General damages in the amount of $193,577,054.22 USD;
c. Special damages for protective, legal, and medical needs in the amount of $10,000,000.00 USD;
d. Lost earnings in the amount of $10,000,000.00 USD;
e. Punitive and aggravated damages in the amount of $500,000,000.00 USD;
f. Prejudgment interest at 10% compounded annually from May 23, 2014;
g. Full costs of suit, including attorneys' fees, expert fees, protective services, and security;
h. Restitution and disgorgement of all proceeds, assets, and benefits obtained through obstruction;

i. Permanent injunctive relief restraining Defendants from any further obstruction, surveillance, or retaliation;
j. Such further relief as this Honourable Court deems just, proper, and necessary to uphold Plaintiff's rights under U.S., Canadian, and international law.

## COUNT THIRTEEN : CIVIL CONSPIRACY

*(Against All Defendants)*

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe repeats, re-alleges, and incorporates by reference all preceding paragraphs and causes of action of this Statement of Claim as though fully set forth herein.

2. NATURE OF THE CLAIM: CIVIL CONSPIRACY

The Defendants, acting individually and in concert, entered into a deliberate, calculated, and unlawful agreement to:

- Traffic Plaintiff across international borders;
- Rape, torture, and sexually exploit Plaintiff for commercial profit, personal gratification, and political leverage;
- Obstruct justice, suppress legal remedies, and corrupt judicial processes to insulate themselves from liability;
- Engage in financial theft, asset conversion, and fraudulent seizure of Plaintiff's property and funds;
- Silence Plaintiff through physical intimidation, litigation abuse, ex parte orders, gag orders, and manufactured "vexatious litigant" designations;
- Eliminate any remaining access Plaintiff had to the courts, counsel, law enforcement, or international bodies.

The Defendants acted with specific intent to coordinate, conceal, and perpetuate criminal abuse, in violation of federal, provincial, and international law.
The Defendants' conspiracy was ongoing, transnational, and systemic, involving

numerous participants, multiple layers of coordination, and cross-border criminal activity directly targeting Plaintiff's life, safety, legal rights, financial stability, and reputation.

### 3. ELEMENTS OF CIVIL CONSPIRACY ESTABLISHED

This claim arises under federal common law, 28 U.S.C. § 1331; the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d); and is also supported by this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

This claim further invokes the Alien Tort Statute, 28 U.S.C. § 1350, for violations of customary international law, including the prohibition against slavery, human trafficking, torture, and judicial persecution of protected persons.

The Defendants' conduct satisfies the elements of civil conspiracy under:

- Ontario common law of conspiracy (*R.L. Crain Inc. v. Hendry*, [1988] 63 O.R. (2d) 248 (Ont. C.A.); *Canada Cement Lafarge Ltd. v. B.C. Lightweight Aggregate Ltd.*, [1983] 1 S.C.R. 452);
- Canadian tort of unlawful means conspiracy (*A.I. Enterprises Ltd. v. Bram Enterprises Ltd.*, 2014 SCC 12);
- U.S. federal civil conspiracy doctrine applicable under RICO, TVPA, and federal tort statutes;
- International customary law under the Palermo Protocol and CEDAW governing systemic trafficking conspiracies.

Specifically:
a. Agreement — The Defendants agreed amongst themselves to engage in unlawful conduct targeting Plaintiff.
b. Common Design — The Defendants jointly undertook a common plan to achieve their unlawful objectives.
c. Overt Acts — The Defendants each committed acts in furtherance of the conspiracy, including:

- Sexual assaults, trafficking, torture, extortion, and rape;
- Judicial bribery, ex parte hearings, fabricated evidence, and obstruction of court processes;

- Financial crimes including asset seizures, fraudulent Mareva injunctions, money laundering, and racketeering;
- Physical surveillance, threats of violence, and attempted murder solicitations;
- Suppression of Plaintiff's legal counsel through coercion, bribery, and abandonment.
  d. Intentional Harm to Plaintiff — The Defendants intended, foresaw, and acted with malice to cause Plaintiff financial ruin, physical harm, reputational destruction, and permanent deprivation of her legal rights.

e. Civil Rights Violation — The Defendants' coordinated actions also violated Plaintiff's constitutional right of access to courts under the First and Fourteenth Amendments, as recognized in *Gomez v. Toledo*, 446 U.S. 635 (1980).

4. SCOPE OF DEFENDANTS' PARTICIPATION

Lead Defendants include but are not limited to:

- Michael Lewis Goguen, as primary financier, trafficker, and sexual perpetrator;
- Sequoia Capital, Two Bear Capital, Two Bear Ranch, and affiliated entities, as funders, asset managers, and enablers of the conspiracy;
- Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, as primary legal saboteurs executing judicial corruption and litigation fraud;
- Glaser Weil LLP, Patricia Glaser, Jill Basinger, Paoli & Purdy LLP, Bisnar Chase LLP, Sherman Law, Brown & Charbonneau LLP, as co-counsel participating in legal malpractice, fraud upon the court, concealment of evidence, and coordinated abandonment of Plaintiff's claims;
- Ontario-based co-conspirators including Lenczner Slaght, Monique Jilesen, Sahar Telbi, Barbara Conway, and Cory Gilmore, who perpetrated jurisdictional fraud, obstructed enforcement proceedings, and executed unlawful enforcement of void California judgments in Ontario;
- State actors, judicial officers, government officials, law enforcement personnel, and bar regulators who provided state-sanctioned protection for the conspiracy through willful inaction, administrative obstruction, and institutional corruption.

## 5. DAMAGES SUFFERED

As a direct and proximate result of the Defendants' civil conspiracy, Plaintiff has suffered:

- Ongoing violations of bodily integrity through rape, torture, and sexual slavery;
- Permanent emotional trauma, C-PTSD, complex grief, suicidality, depression, and severe psychological harm;
- Loss of all personal assets, including real property, financial accounts, medical care access, and personal security;
- Destruction of Plaintiff's professional career, earning capacity, business opportunities, and financial independence;
- Total deprivation of access to the courts, counsel, or meaningful legal redress across multiple sovereign jurisdictions;
- Destruction of Plaintiff's reputation, public standing, dignity, and personal identity as a trafficking survivor and whistleblower.

## 6. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:
a. General damages in the amount of $193,577,054.22 USD;
b. Special damages for medical, psychological, and related expenses in the amount of $10,000,000.00 USD;
c. Loss of earnings in the amount of $10,000,000.00 USD;
d. Treble damages under RICO, TVPA, Canadian tort of unlawful means conspiracy, and international trafficking law;
e. Punitive damages in the amount of $500,000,000.00 USD to deter similar future conduct;
f. Prejudgment and post-judgment interest at the compounded rate of 10% per annum from May 23, 2014;
g. Permanent injunctive relief barring further harassment, judicial retaliation, stalking, interference with Plaintiff's legal rights, or further acts in furtherance of the conspiracy;
h. Equitable restitution, disgorgement, and constructive trust over all profits, legal fees,

assets, properties, and funds obtained through the conspiracy;
i. Attorneys' fees, expert costs, security protection, emergency relocation, and full legal costs of suit;
j. Referrals for criminal prosecution of all Defendants for their role in this conspiracy under Canadian, U.S., and international law;
k. Declaratory relief that Defendants' conduct constituted a civil conspiracy to violate Plaintiff's constitutional, statutory, and human rights;
l. Such other and further relief as this Honourable Court may deem just, proper, and necessary.

**COUNT FOURTEEN: CONSPIRACY TO COMMIT FRAUD ON THE COURT**

(Against All Defendants, Including Law Firms, Attorneys, Judicial Actors, and State Officers)

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe repeats, realleges, and incorporates by reference all preceding paragraphs and causes of action of this Complaint as though fully set forth herein.

2. NATURE OF THE CLAIM: SYSTEMIC FRAUD ON THE COURT

This cause of action arises under:

- Federal law prohibiting fraud upon the court, including the Supreme Court's holdings in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *United States v. Throckmorton*, 98 U.S. 61 (1878); and *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991);
- 42 U.S.C. § 1983, for the conspiracy to violate constitutional rights under colour of law, including the First and Fourteenth Amendments;
- 18 U.S.C. §§ 1961–1968 (RICO), identifying fraud on the court as a predicate act of racketeering in furtherance of a criminal enterprise;
- 18 U.S.C. § 371, federal conspiracy to defraud the United States;

- Federal supervisory and inherent judicial powers, which empower courts to vacate judgments obtained by corrupt means;
- 28 U.S.C. § 1367, for supplemental jurisdiction over related tort claims under state and international law;
- 28 U.S.C. § 1350, Alien Tort Statute, for acts that constitute international crimes against the administration of justice.

The Defendants, acting individually and as part of an integrated criminal enterprise, executed a deliberate and systemic conspiracy to corrupt, defraud, and sabotage the judicial machinery of the United States in multiple courts, including the SDNY, Central District of California, Northern District of California, the Ninth Circuit Court of Appeals, the California Supreme Court, and the Ontario Superior Court of Justice.

## 3. ELEMENTS OF FRAUD ON THE COURT MET AND EXCEEDED

Fraud on the court occurs when officers of the court engage in conduct so egregious that it “threatens the integrity of the judiciary itself” (*Hazel-Atlas*, 322 U.S. at 246). The following elements are satisfied:

### A. A Coordinated Conspiracy

The Defendants formed a calculated agreement to subvert justice, including:

- Submitting false declarations, forged documents, and manufactured evidence;
- Procuring and concealing ex parte hearings without Plaintiff's notice or participation;
- Bribing, coercing, or improperly influencing judges, clerks, law enforcement, and bar associations;
- Fraudulently designating Plaintiff a “vexatious litigant” to prevent access to courts;
- Denying fee waivers in bad faith after previously granting IFP status;
- Illegally sealing Plaintiff’s filings while disseminating them to opposing parties;
- Engineering venue transfers, unlawful removals, or docket sabotage to derail meritorious claims.

B. Participation of Judicial Officers and Court Personnel

This count encompasses acts of judicial fraud and betrayal of public trust by:

- California state court judges who vacated hearings, conducted ex parte proceedings, and issued void orders without notice;
- Ninth Circuit judges who denied meritorious writs while protecting co-conspirators;
- SDNY personnel who transferred Plaintiff's case to a hostile venue on fabricated grounds, violating 28 U.S.C. §§ 1391 and 1404(a);
- Coordinated denial of appeals and sealing of records designed to shield the enterprise.

C. Material Impact on Fundamental Rights

The conspiracy directly violated Plaintiff's:

- First Amendment right of access to courts;
- Fourteenth Amendment rights to due process and equal protection;
- Rights under 18 U.S.C. § 1595 (TVPA) to civil remedies for trafficking and coercion;
- Human rights under international law, including Article 8 of the UDHR (right to effective remedy) and Articles 2 and 6 of the ICCPR (access to impartial tribunal).

4. IDENTIFICATION OF CONSPIRATORS

This criminal conspiracy was executed by and through:

Legal Entities and Attorneys

- Quinn Emanuel Urquhart & Sullivan LLP (Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter);
- Glaser Weil LLP (Patricia Glaser, Jill Basinger);

- Paoli & Purdy LLP, Sherman Law, Bisnar Chase LLP, Nemecek & Cole LLP, and Goodwin Procter LLP;
- Wilson Sonsini Goodrich & Rosati LLP, Kirkland & Ellis LLP, and Sequoia Capital's general counsel;
  All of whom drafted, filed, or facilitated fraudulent pleadings, ex parte motions, and abandoned Plaintiff while colluding with opposing parties and courts.

State and Federal Judges, Officers, and Clerks

- Stephanie Bowick, Nina Shapirshteyn, Cory Gilmore, Barbara Conway, Danny Chou, and others who knowingly conducted void proceedings;
- Judges of the Ninth Circuit, who declined to review appeals on false jurisdictional grounds;
- Judges in SDNY and CDCA, who transferred and dismissed cases under fabricated pretenses.

Financial Sponsors and Beneficiaries

- Michael Lewis Goguen, financier and trafficker who directly funded legal abuse;
- Sequoia Capital, Two Bear Capital, and Two Bear Ranch, who laundered legal fees and paid for sabotage of Plaintiff’s lawsuits;
- Ontario co-conspirators who unlawfully enforced California orders barred under California law during appeals.

5. DAMAGES SUFFERED

As a direct and foreseeable consequence of this fraud on the court, Plaintiff has suffered:

- Nullification of valid motions and the permanent loss of legal redress;
- Unlawful enforcement of void orders and restraining judgments;
- Physical harm, asset loss, and displacement resulting from unlawful legal sabotage;
- Destruction of career, home, reputation, and personal identity;

- Ongoing trauma, endangerment, and deprivation of basic human dignity.

6. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. *Vacatur of all orders, judgments, and proceedings* obtained through fraud upon the court;
b. *Declaration that the proceedings were void ab initio*, as required by *Hazel-Atlas* and *Chambers*;
c. *Treble damages* under RICO and civil conspiracy laws in the amount of $580,731,162.66 USD;
d. *Punitive damages* in excess of $500,000,000.00 USD to deter systemic legal fraud and protect public trust;
e. *Injunctive relief* enjoining Defendants from future litigation abuse, harassment, or sabotage;
f. *Constructive trust and equitable disgorgement* of all assets, legal fees, and profits obtained by judicial fraud;
g. *Permanent disqualification of attorneys and judges* who violated ethical and legal standards;
h. *Criminal referral* to the DOJ, RCMP, FBI, UN Special Rapporteur on the Independence of Judges and Lawyers, and appropriate authorities for prosecution under domestic and international law;
i. *Attorneys' fees, expert costs, security expenses*, and full legal costs of suit;
j. Any other and further relief this Honourable Court deems just, necessary, and equitable to restore the rule of law.

**COUNT FIFTEEN: STATE-SPONSORED OBSTRUCTION AND RETALIATION**

(Against: Judicial Officers, U.S. Government Officials, and State Agencies — Injunctive and Declaratory Relief Only)

I. INCORPORATION OF PRIOR ALLEGATIONS
Plaintiff Amber Doe fully incorporates and re-alleges all preceding paragraphs and causes of action as though fully set forth herein.

## II. JURISDICTIONAL AND LEGAL BASIS

This cause of action is brought under:

- 42 U.S.C. § 1983 for violations of Plaintiff's rights to access the courts, due process, and equal protection under the First, Fifth, and Fourteenth Amendments;
- 28 U.S.C. § 2201 (Declaratory Judgment Act);
- 28 U.S.C. § 1350 (Alien Tort Statute) for violations of customary international law, including the prohibitions against trafficking, torture, and judicial persecution;
- The International Covenant on Civil and Political Rights (ICCPR);
- The Universal Declaration of Human Rights;
- The Palermo Protocol;
- The Canadian Charter of Rights and Freedoms (Sections 7, 12, 15, and 24), for reference under international human rights frameworks.

Plaintiff seeks only injunctive and declaratory relief from all judicial and governmental defendants named in this Count, in accordance with doctrines of sovereign and judicial immunity and Ex parte Young, 209 U.S. 123 (1908).

## III. SYSTEMIC STATE-SPONSORED OBSTRUCTION AND RETALIATION

The Defendants, acting in official capacities, conspired with private actors and legal entities to orchestrate and enforce a state-sponsored scheme of obstruction, retaliation, and suppression targeting Plaintiff, a known human trafficking survivor.

These coordinated acts included:

- Fraudulent dismissals of well-pleaded federal and state claims under TVPA, RICO, and 42 U.S.C. § 1983;
- Void vexatious litigant designations and unlawful denials of access to courts;
- Ex parte manipulation of calendars and rulings;
- Asset freezes and enforcement of judgments lacking personal or subject-matter jurisdiction;
- Sealing of filings to foreclose oversight, transparency, and appellate review;

- Refusal to investigate or prosecute attorney misconduct.

IV. RETALIATION IN VIOLATION OF FEDERAL RIGHTS
Defendants' actions:

- Obstructed Plaintiff's right of access to the courts under the First and Fourteenth Amendments (Christopher v. Harbury, 536 U.S. 403 (2002));
- Denied procedural and substantive due process in violation of the Fifth and Fourteenth Amendments;
- Targeted Plaintiff's protected status as a survivor of human trafficking, constituting a pattern of discriminatory animus and state-enabled violence.

V. RELIEF REQUESTED AGAINST JUDGES AND GOVERNMENT OFFICIALS
Plaintiff does not seek monetary damages from any judicial officer, U.S. government actor, or state official named in this Count. Plaintiff seeks the following injunctive and declaratory relief only:

A. Declaratory Relief

1. A declaration that all judgments, orders, designations, and rulings obtained through state-sponsored conspiracy and extrinsic fraud are void ab initio.
2. A declaration that judicial and state actors engaged in non-judicial conduct, outside the scope of their official duties, in conspiracy with private actors to obstruct Plaintiff's rights.

B. Injunctive Relief

1. Vacatur of all void orders, designations, asset seizures, and rulings issued against Plaintiff in the absence of jurisdiction.
2. A permanent injunction prohibiting any further retaliation, obstruction, or administrative manipulation targeting Plaintiff in any jurisdiction.
3. Structural relief in the form of independent review and investigation of Plaintiff's denied access to remedy, under supervision of an Article III court or special master.

C. Protective Relief

1. An order ensuring that Plaintiff's filings are no longer sealed, blocked, or administratively suppressed without cause.

2. An order guaranteeing Plaintiff's rights to pursue her claims and defenses without fear of retaliation, threats, or suppression by state actors.

D. Further Relief
Any other injunctive, equitable, or declaratory relief this Court deems just, necessary, and proper to safeguard Plaintiff's access to justice and protect her constitutional and international rights.

**COUNT SIXTEEN: MISFEASANCE IN PUBLIC OFFICE AND CONSPIRACY TO COMMIT FRAUD ON THE COURT**

(Against Hon. Justice Barbara Conway and Hon. Justice Cory Gilmore — In Personal Capacity Where Permitted, Otherwise for Declaratory and Injunctive Relief Only)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff Amber Doe repeats and re-alleges all preceding paragraphs as though fully set forth herein.

II. JURISDICTION AND LEGAL BASIS

2. This claim arises under:

   - 42 U.S.C. § 1983, for violations of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution;
   - 28 U.S.C. § 1350 (Alien Tort Statute), for violations of customary international law prohibiting slavery, human trafficking, torture, and judicial persecution of protected persons;
   - Federal common law, including doctrines prohibiting fraud upon the court, conspiracy to obstruct justice, and state-sponsored retaliation;
   - Customary international law and binding treaties including:
     - ICCPR (International Covenant on Civil and Political Rights);
     - CEDAW (Convention on the Elimination of All Forms of Discrimination Against Women);

- Palermo Protocol on human trafficking.

3. Judicial immunity does not extend to acts:
    - Undertaken in conspiracy with private parties;
    - Performed in complete absence of jurisdiction;
    - Executed in a non-judicial or administrative capacity. *(See Dennis v. Sparks, 449 U.S. 24 (1980); Forrester v. White, 484 U.S. 219 (1988); Stump v. Sparkman, 435 U.S. 349 (1978); Miller v. Gammie, 335 F.3d 889 (9th Cir. 2003)).*

## III. FACTUAL BACKGROUND

4. Defendants Conway and Gilmore, judges of the Ontario Superior Court of Justice (Commercial List), conspired with private actors—including Quinn Emanuel and Lenczner Slaght—to perpetrate fraud upon multiple courts by:
    - Knowingly asserting false jurisdiction over Plaintiff;
    - Issuing and enforcing illegal Mareva injunctions during active California appeals;
    - Freezing Plaintiff's trust accounts and survival assets, including those earmarked for medical and legal necessities;
    - Engaging in ex parte communications with defense counsel while issuing binding rulings;
    - Enforcing fraudulent judgments obtained through bribery, perjury, and suppression of material facts.

## IV. FRAUD ON THE COURT

5. Defendants engaged in extrinsic fraud by:
    - Knowingly concealing jurisdictional defects;
    - Misrepresenting the enforceability of an active-appeal judgment;

- ◦ Suppressing Plaintiff's pro se filings, evidence, and jurisdictional defenses;
- ◦ Transforming the Ontario court into a collection tool for a fraudulent California judgment.

6. These acts render all associated orders void ab initio. *(Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); United States v. Throckmorton, 98 U.S. 61 (1878)).*

V. VIOLATIONS OF CONSTITUTIONAL AND INTERNATIONAL LAW

7. The above conduct violated:

- ◦ First Amendment: right of access to courts;
- ◦ Fifth Amendment: deprivation of property without due process;
- ◦ Fourteenth Amendment: unequal treatment based on Plaintiff's gender and status as a trafficking victim;
- ◦ ICCPR Articles 2, 7, 14;
- ◦ CEDAW Articles 2, 5, 15;
- ◦ Palermo Protocol Articles 6 and 9;
- ◦ UDHR Articles 7, 8, and 10.

VI. RELIEF SOUGHT (INJUNCTIVE AND DECLARATORY ONLY AS TO JUDGES)

WHEREFORE, Plaintiff respectfully demands judgment against Hon. Justice Barbara Conway and Hon. Justice Cory Gilmore for the following equitable and non-monetary relief only:

A. Declaratory Relief
8. A declaration that:

- Defendants' acts were performed in complete absence of jurisdiction;

- Their conduct constitutes fraud upon the court and violation of fundamental rights;
- Judicial immunity does not apply where judges conspire with private actors or act in a non-judicial capacity.

B. Injunctive Relief
9. An order:

- Vacating all orders issued under Defendants' authority relating to Plaintiff;
- Permanently enjoining Defendants from issuing future orders affecting Plaintiff's person, assets, or procedural rights;
- Prohibiting further interference, intimidation, or extrajudicial actions against Plaintiff in any jurisdiction.

C. Further Equitable Relief
10. Any other equitable, restorative, protective, or injunctive remedies that this Court deems just and proper to:

- Restore Plaintiff's access to justice;
- Prevent recurrence of systemic abuse;
- Vindicate the rule of law and international human rights obligations.

**COUNT SEVENTEEN : CONSPIRACY TO CAUSE PLAINTIFF'S DEATH VIA DEPRIVATION OF MEDICAL TREATMENT**

AGAINST: All Defendants

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff re-alleges and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

## II. LEGAL BASIS AND JURISDICTION

This Count arises under the following authorities:

- 42 U.S.C. § 1983, for deprivation of constitutional rights under colour  of law, including the First, Fifth, and Fourteenth Amendments;
- Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), permitting direct constitutional tort claims against individual actors;
- 42 U.S.C. § 1985(3), prohibiting conspiracies to deprive individuals of equal protection or equal privileges and immunities under the law;
- 42 U.S.C. § 12132, the Americans with Disabilities Act, for denial of access to medical care and legal processes;
- Alien Tort Statute (ATS), 28 U.S.C. § 1350, for acts constituting attempted extrajudicial killing, torture, and inhumane treatment in violation of customary international law;
- Universal Declaration of Human Rights (Articles 3, 5, 7, 8, 25) and treaties ratified by the United States including the ICCPR, CAT, and Palermo Protocol.

## III. FACTUAL ALLEGATIONS

The Defendants—Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Nemecek and Cole LLP, Patricia Glaser, Glaser Weil LLP, Jill Basinger, William Paoli, Paoli & Purdy LLP, Bisnar Chase, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law, and other co-conspirators—acted in concert to carry out a deliberate and malicious conspiracy to deprive Plaintiff of life-saving medical care by:

- Freezing Plaintiff's assets to prevent medical access;
- Filing knowingly frivolous and harassing legal actions to exhaust Plaintiff's finances and defenses;

- Procuring fraudulent restraining orders, vexatious litigant designations, and ex parte judgments barring access to basic services;
- Blocking Plaintiff's court access, medical appointments, and surgery scheduling;
- Using fraudulent subpoenas to surveil Plaintiff's private health information and interfere with HIPAA-protected communications;
- Coordinating with judicial actors to deny hearings, seal critical filings, and issue retaliatory rulings with knowledge of Plaintiff's fragile health condition.

## IV. KNOWLEDGE, INTENT, AND FORESEEABILITY

The Defendants knew or should have known that:

- Plaintiff suffered from chronic life-threatening conditions requiring immediate medical attention;
- The systematic interference would likely result in medical deterioration and potential death;
- Denial of access to funds, shelter, and care would exacerbate Plaintiff's risk.

The Defendants acted with:

- Actual malice and reckless disregard for Plaintiff's life and civil rights;
- Intent to silence, discredit, and destroy Plaintiff's capacity to seek redress or survive.

## V. CONSPIRACY AND VIOLATIONS

The coordinated campaign constitutes:

- A civil conspiracy under 42 U.S.C. § 1985(3) to deprive Plaintiff of equal access to courts, housing, medical treatment, and due process;
- A Bivens-eligible constitutional deprivation of life, liberty, and property without due process of law;
- A violation of the Fourteenth Amendment Equal Protection Clause, by targeting Plaintiff based on sex, disability, and status as a survivor of human trafficking;

- A denial of access to the courts in violation of the First Amendment and Bounds v. Smith, 430 U.S. 817 (1977);
- An attempted extrajudicial killing in violation of international law actionable under the ATS (*see Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980)).

## VI. DAMAGES AND RELIEF SOUGHT

As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

- Acute medical complications and life-threatening deterioration;
- Extreme emotional distress, physical suffering, and continued endangerment;
- Loss of income, access to shelter, and security.

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

A. General Damages:
$193,577,054.22 for pain, suffering, and loss of constitutional protections.

B. Special Damages:
$10,000,000.00 for emergency medical care, relocation, and restoration of access to health services.

C. Lost Income and Earnings:
$10,000,000.00 due to loss of employment opportunities and earning potential.

D. Interest:
10% compound interest per annum on all damages from May 23, 2014, to date of satisfaction.

E. Costs and Attorneys' Fees:
All legal costs, attorneys' fees, experts, investigators, and litigation expenses incurred.

F. Protective and Emergency Relief:

- Immediate security protection for Plaintiff's person and property;
- Emergency housing and medical access facilitated by court order.

G. Additional Relief:
Any further equitable, declaratory, or injunctive relief the Court deems just and proper to preserve Plaintiff's life, safety, and rights under U.S. and international law.

## III. CONTRACT, LEGAL & FIDUCIARY DUTIES

### COUNT 18: BREACH OF WRITTEN CONTRACT, FRAUDULENT INDUCEMENT, AND TRAFFICKING-RELATED COERCION

(Against: Michael Lewis Goguen, and Sequoia Capital as financial beneficiary and co-conspirator)

Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

This cause of action arises under:

- Federal Diversity Jurisdiction, 28 U.S.C. § 1332;
- Supplemental Jurisdiction, 28 U.S.C. § 1367;
- Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§ 1589–1595;
- Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968;
- Alien Tort Statute (ATS), 28 U.S.C. § 1350;
- Customary international law and treaties, including the Palermo Protocol, Article 6.

A. THE WRITTEN CONTRACT

On or about May 23, 2014, Plaintiff was coerced under extreme duress, trafficking-related threats, and psychological manipulation into signing a written $40 million settlement agreement with Defendant Michael Lewis Goguen.

The contract, prepared and orchestrated by Goguen and agents of Sequoia Capital, purported to release Plaintiff's claims for human trafficking, sexual slavery, rape, forced labor, battery, false imprisonment, and related personal injuries in exchange for four (4) installment payments of $10 million USD each.

The execution of this contract occurred under unlawful conditions:

- Plaintiff was a trafficking victim held in a state of physical, emotional, and economic captivity;
- She lacked independent legal counsel, was under constant threat of harm, and was coerced into silence via non-disclosure clauses, extortionate pressure, and fear of retaliation;
- The contract was executed at the Rosewood Sand Hill Hotel—a known trafficking site used by Defendants—with a notary provided by Sequoia Capital's legal counsel, further entrenching their role.

B. CORRECTIVE STATEMENT OF FACTS

Although Defendant Goguen made the initial $10 million payment pursuant to the May 23, 2014 agreement, he subsequently clawed back the full amount under an illegal Mareva injunction issued in Ontario, based on a fraudulent California judgment, in direct violation of both California and Ontario law, which prohibit enforcement of such orders during pending appeals.

Moreover, Plaintiff's former attorneys — including Patricia Glaser (Glaser Weil LLP), William Paoli (Paoli & Purdy LLP), and Gregory Brown (Brown & Charbonneau LLP) — embezzled or misappropriated substantial sums from the original $10 million payment, leaving Plaintiff with no remaining benefit from that installment.

As a result, Defendants retained both the benefit of the release and the $10 million, while Plaintiff was defrauded, impoverished, and retraumatized. The full $40 million remains due and owing, plus interest and consequential damages.

C. FRAUDULENT INDUCEMENT AND COERCION

Plaintiff was fraudulently induced into signing the contract. Defendant Goguen and his associates:

- Concealed ongoing sexual exploitation, medical harm, and risk of disease;
- Misrepresented the legal effect of the settlement and withheld key factual information;
- Leveraged Plaintiff's trauma, captivity, and lack of legal protection to extract silence and release of claims;
- Utilized trafficking-based coercion, constituting a violation of TVPA § 1590 and § 1595.

The contract is voidable or unenforceable under federal and international law due to:

- Lack of capacity caused by trafficking trauma;
- Absence of voluntariness;
- Unconscionability and public policy violations barring enforcement of contracts procured via slavery, coercion, or forced labor.

## D. SEQUOIA CAPITAL'S LIABILITY AS TRAFFICKING BENEFICIARY

Sequoia Capital, through its executives, lawyers, and funding apparatus:

- Facilitated, witnessed, and financially benefitted from the execution of the coerced contract;
- Employed law firms (Quinn Emanuel, Wilson Sonsini, Goodwin Procter) to structure the agreement;
- Provided the notary, location, and legal logistics to shield Goguen;
- Derived tangible financial, reputational, and litigation benefit from suppressing Plaintiff's rights and avoiding public litigation.

Sequoia Capital is thus liable under:

- TVPA § 1595 as a knowing financial beneficiary of trafficking;
- RICO § 1962(d) for conspiracy to obstruct justice and engage in trafficking-related predicate acts;

- ATS (28 U.S.C. § 1350) for profiting from customary international law violations (slavery, torture, denial of legal remedy).

E. DAMAGES

As a direct and proximate result of Defendants' breach and trafficking-related coercion, Plaintiff has suffered:

- Loss of the full $40 million in contractual compensation, due to wrongful clawback and attorney embezzlement;
- Permanent physical injuries, reproductive harm, and neurological damage;
- Destruction of earning capacity;
- Severe emotional, psychological, and psychiatric trauma;
- Housing instability, medical deprivation, and professional annihilation caused by breach and retaliation.

F. APPLICABLE LAW & TREATIES

The following legal frameworks apply:

- TVPA, 18 U.S.C. §§ 1581–1595;
- Civil RICO, 18 U.S.C. §§ 1961–1968 (predicate acts include: fraud, extortion, obstruction, witness tampering, money laundering);
- Palermo Protocol, Art. 6 (obligation to ensure restitution and void contracts made under trafficking);
- International Covenant on Civil and Political Rights;
- Convention Against Torture;
- Universal Declaration of Human Rights, Arts. 3, 5, 7, and 8;
- State contract law (New York, California, Ontario, Delaware).

8. RELIEF REQUESTED

Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

a. Compensatory damages in the amount of $193,577,054.22 USD, representing the full unpaid $40 million under the contract plus consequential and non-economic damages;

b. Special damages for ongoing medical, relocation, therapy, and protective services in the amount of $10,000,000.00 USD;

c. Loss of earnings and destruction of earning capacity in the amount of $10,000,000.00 USD;

d. Prejudgment interest at 10% per annum compounded annually from May 23, 2014, to the date of judgment, in accordance with federal and state precedent:

*See* SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1097 (9th Cir. 2010);
*See also* United States v. Gordon, 393 F.3d 1044, 1058 (9th Cir. 2004);
*See* Matter of Westinghouse Elec. Corp., 76 B.R. 612, 615 (Bankr. S.D.N.Y. 1987).

e. Aggravated and punitive damages in an amount no less than $500,000,000.00 USD, based on the egregious nature of Defendants' racketeering, trafficking, and bad faith;

f. Statutory treble damages pursuant to 18 U.S.C. § 1964(c) (Civil RICO) and 18 U.S.C. § 1595 (TVPA);

g. Costs of suit, including litigation expenses and fees;

h. Attorney's fees, security costs, and emergency protection orders to prevent further harm or obstruction;

i. Permanent injunctive relief barring Defendants and their affiliates from engaging in further trafficking-related acts, harassment, or legal sabotage against Plaintiff;

j. Any other relief this Honorable Court deems just and equitable under the circumstances.

**COUNT 19: BREACH OF WRITTEN CONTRACT**

(Against: Glaser Weil LLP, Patricia Glaser, Jill Basinger; Bisnar Chase LLP, Brian Chase, Scott Ritsima; Sherman Law, Richard Sherman; Paoli and Purdy LLP, William Paoli and Court Purdy; The Law Firm of Rivers J. Morrell III; Rivers J. Morrell III, Brown & Charbonneau LLP, Gregory Brown)

Plaintiff hereby incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

This cause of action arises under:

- Federal Diversity Jurisdiction, 28 U.S.C. § 1332;
- Supplemental Jurisdiction, 28 U.S.C. § 1367;
- State contract law (California, New York, Ontario);
- Customary international legal obligations governing representation of survivors of human trafficking.

A. FORMATION OF WRITTEN CONTRACTS

Between 2012 and 2022, Plaintiff entered into written retainer agreements with the above-named Defendants for legal services related to:

- Enforcement of Plaintiff's $40 million written settlement agreement with Defendant Michael Goguen;
- Litigation and recovery related to sexual violence, forced labor, and trafficking-based injuries;
- Defense against retaliatory lawsuits, Mareva injunctions, and fraudulent judgments obtained by adversaries;
- Civil rights violations, legal malpractice by prior attorneys, and systemic legal obstruction.

Each Defendant voluntarily assumed contractual duties to act as Plaintiff's legal counsel, and each agreement established specific obligations of performance, communication, competence, confidentiality, and loyalty.

B. CONTRACTUAL TERMS & CONSIDERATION

The written agreements included provisions for:

- Contingency-based fees, hourly billing, or hybrid arrangements;
- Legal services to be rendered competently and in good faith, with full adherence to ethical and fiduciary duties;
- Attorney-client privilege protections, preservation of evidence, and diligent litigation conduct;
- Agreements by Plaintiff to cooperate, share privileged information, and fund reasonable litigation costs where required.

These contracts are legally binding, enforceable under state law, and were supported by mutual assent and consideration.

C. DEFENDANTS' BREACH OF WRITTEN CONTRACTS

Each named Defendant materially breached the written agreement(s) by:

1. Failing or refusing to perform legal services promised, including enforcement of Plaintiff's $40 million claim;
2. Abandoning Plaintiff during active proceedings without cause or court-approved withdrawal;
3. Diverting or misappropriating trust funds received as part of prior settlements or fee awards;
4. Failing to file timely motions, appeals, or protective claims, resulting in procedural losses;
5. Withholding critical case documents, destroying evidence, or mismanaging litigation strategy;
6. Engaging in collusive conduct with opposing counsel or parties, contrary to Plaintiff's interests.

Each breach substantially deprived Plaintiff of the benefit of the bargain and caused grave harm to her legal, economic, and personal safety interests.

D. DAMAGES

As a direct and proximate result of the foregoing breaches, Plaintiff has suffered:

- Irrecoverable legal and financial loss, including forfeiture of claims exceeding $40 million USD;
- Loss of trust funds and diverted settlement proceeds, including portions of the $10 million initial payment made under the Goguen agreement;
- Loss of legal redress, foreclosure of remedies, and sabotage of meritorious claims;
- Worsened personal and medical harm, caused by exposure to retaliation, unprotected threats, and ongoing financial ruin;
- Destruction of earning capacity, career, and civil protections.

E. RELIEF REQUESTED

Plaintiff demands judgment against the above-named Defendants, jointly and severally, as follows:

a. Compensatory damages in the amount of $40,000,000.00 USD, reflecting the full loss of enforcement, embezzled trust funds, and failed legal redress;

b. Consequential damages for personal, medical, and economic harm in the amount of $10,000,000.00 USD;

c. Prejudgment interest at a rate of 10% per annum compounded annually, from the date of each individual breach;

d. Costs of suit, including forensic accounting, litigation expenses, and expert fees;

e. Any other relief this Honorable Court deems just and appropriate under the circumstances.

**COUNT 20: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

(Against: All Retained Law Firms and Named Attorneys) Glaser Weil LLP, Bisnar Chase LLP, Sherman Law, Paoli & Purdy LLP, Brown & Charbonneau LLP, Rivers J. Morrell III Law Firm, Quinn Emanuel Urquhart & Sullivan LLP, Goodwin Procter LLP, Wilson Sonsini Goodrich & Rosati LLP, Nemecek & Cole, and Lenczner Slaght LLP, including named individual attorneys acting in personal and professional capacities)

1. Incorporation by Reference

Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

2. Jurisdictional Basis

This cause of action arises under:

- Federal Diversity Jurisdiction, 28 U.S.C. § 1332;
- Supplemental Jurisdiction, 28 U.S.C. § 1367;
- State common law in California, New York, Delaware, and Ontario, Canada;
- Civil RICO (18 U.S.C. §§ 1961–1968) – predicate acts including obstruction, fraud, wire fraud, and extortion;
- TVPA (18 U.S.C. §§ 1589–1595) – financial beneficiary liability and retaliation against trafficking victims.

3. Factual Allegations

Plaintiff entered into written retainer agreements with the following firms and attorneys, all of whom owed Plaintiff an implied covenant of good faith and fair dealing:

- Glaser Weil LLP: Patricia Glaser, Jill Basinger;
- Bisnar Chase LLP: Brian Chase, Scott Ritsema;
- Sherman Law: Richard Sherman;

- Paoli & Purdy LLP: William Paoli Court Purdy;
- Brown & Charbonneau LLP: Gregory Brown and associates;
- The Law Firm of Rivers J. Morrell III: Rivers Morrell;
- Quinn Emanuel Urquhart & Sullivan LLP: Diane Doolittle, John B Quinn, Bruce Van Dalsem, Kyle Batter and associates;
- Wilson Sonsini Goodrich & Rosati LLP Keith Eggleton : (specific counsel to be identified in discovery);
- Goodwin Procter LLP Anthony McCusker: (specific counsel to be identified in discovery);
- Nemecek & Cole: Frank Nemecek, John Cole, Claudia Stone, Marta Alcumbrac and others to be named;
- Lenczner Slaght LLP: Monique Jilesen, Sahar Telbi, Barbara Conway, Cory Gilmore.

Each of these parties undertook contractual, ethical, and fiduciary obligations to act in Plaintiff's best interests, to diligently pursue legal relief, and to refrain from engaging in actions that would sabotage or undermine Plaintiff's claims.

4. Breach of the Covenant

These Defendants breached the covenant of good faith and fair dealing by:

- Abandoning or sabotaging legal claims under coercion or influence from Michael Goguen, Sequoia Capital, and affiliated actors;
- Concealing conflicts of interest and collaborating with opposing parties to frustrate Plaintiff's access to justice;
- Failing to file appeals, suppressing evidence, or intentionally delaying meritorious proceedings;
- Participating in enforcement of a fraudulent California judgment and Ontario Mareva injunction that retroactively deprived Plaintiff of the initial $10 million settlement benefit;

- Engaging in retaliatory ex parte filings, strategic gag orders, and false statements before California and Ontario courts;
- Failing to protect Plaintiff's civil rights, including rights guaranteed under the U.S. Constitution and international human rights law.

5. Resulting Harm

As a direct and proximate result of the breach of the covenant of good faith and fair dealing, Plaintiff suffered:

- Total deprivation of legal compensation under the 2014 contract;
- Permanent economic losses, inability to enforce lawful rights, and obstruction of justice;
- Ongoing threats, retaliation, professional destruction, and denial of legal remedy;
- Physical, emotional, and psychological harm worsened by deliberate litigation abuse.

6. Remedies Sought

Plaintiff demands judgment against the above-named law firms and attorneys, jointly and severally, as follows:

a. Compensatory damages in excess of $100,000,000.00 USD for economic and emotional injuries arising from legal sabotage;

b. Restitution of all legal fees paid to Defendants under retainer agreements, plus interest;

c. Special damages for medical, housing, security, and relocation in the amount of $10,000,000.00 USD;

d. Prejudgment interest at 10% compounded annually from the date of breach to judgment;

e. Aggravated and punitive damages in excess of $250,000,000.00 USD to punish malice, oppression, bad faith, and betrayal of professional duties;

f. Treble damages under RICO, 18 U.S.C. § 1964(c), and TVPA, 18 U.S.C. § 1595;

g. Permanent injunctive relief prohibiting Defendants from interfering with Plaintiff's access to courts or harassing conduct;

h. Protective orders to secure the safety of Plaintiff and prevent further obstruction;

i. Costs of suit, litigation expenses, and attorneys' fees, and any further relief the Court deems just and proper.

**COUNT TWENTY-ONE: BREACH OF FIDUCIARY DUTY**

(Against: Glaser Weil LLP, Patricia Glaser, Jill Basinger; Bisnar Chase LLP, Brian Chase, Scott Ritsima; Sherman Law, Richard Sherman; Paoli & Purdy LLP, William Paoli; The Law Offices of Rivers J. Morrell III, Rivers J. Morrell III; Brown & Charbonneau LLP, Gregory Brown; Nemecek & Cole LLP, Frank W. Nemecek, Jonathan B. Cole, Marshall R. Cole, Michael W. Feenberg, Michael McCarthy, Mark Schaeffer, Claudia Stone, Marta Alcumbrac; Quinn Emanuel LLP, John Quinn, Kathleen Sullivan, Michael F. Grady, Christopher Tayback, William C. Price, Mark Holsher, Suong Nguyen, Joseph C. Sarles, Patrick Doolittle, Margaret Caruso, Michael Lifrak, Megan M. Kerr, Sara Pollack, Alex Gerbi, Ted Greeno, Aidan O'Rourke, Gregory Pantlin; Wilson Sonsini Goodrich & Rosati, Keith Eggleton; Goodwin Procter LLP, Anthony McCusker; Kirkland & Ellis LLP, David Klein; Baker Marquart LLP / Waymaker LLP, Ryan Baker, Christopher Reynolds; Day, Day & Brown, Alan Brown; Lenczner Slaght LLP, Monique Jilesen, Sahar Talebi)

Plaintiff Jane Doe repeats, repleads, and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

The Defendants listed above entered into binding fiduciary relationships with Plaintiff by virtue of their roles as attorneys, legal representatives, retained counsel, court officers, or fiduciaries engaged in representing Plaintiff in legal matters directly involving her claims of human trafficking, rape, torture, slavery, sexual abuse, judicial sabotage, and civil and criminal obstruction of justice in both Canada and the United States.

As fiduciaries, each Defendant owed Plaintiff the highest duties recognized under New York law, federal common law, and international human rights law, including but not limited to:

- Undivided loyalty;
- Full and honest disclosure;
- Zealous representation and competent legal advocacy;
- Confidentiality and protection of privileged communications;
- Candor toward the tribunal;
- Avoidance of actual and apparent conflicts of interest.

The Defendants willfully, maliciously, and repeatedly breached these duties through the following conduct:

a. Self-dealing and conflicts of interest, including secret coordination with Defendants Michael Goguen, Sequoia Capital, and affiliated co-conspirators;

b. Acceptance of bribes, inducements, or funding from opposing parties to undermine Plaintiff's legal position;

c. Concealment of hearing dates, court filings, and settlement proceedings from Plaintiff, leaving her unrepresented during critical litigation stages;

d. Abandonment in the midst of litigation, including ex parte withdrawal before trial and arbitration proceedings, without court leave or adequate notice;

e. Participation in illegal ex parte communications, fraudulent filings, and coordination with corrupted judges to engineer adverse rulings and vexatious litigant designations;

f. Collusion to obtain and enforce a fraudulent Mareva injunction, resulting in the illegal seizure of Plaintiff's assets and clawback of the original $10 million payment;

g. Suppression of exculpatory evidence and trafficking records, in direct violation of their duties and international treaty obligations;

h. Deliberate sabotage of meritorious claims for human trafficking, legal malpractice, and civil damages, thereby violating Plaintiff's right to access the courts under the First and Fourteenth Amendments and the Alien Tort Statute (28 U.S.C. § 1350);

i. Concealment of misconduct by other lawyers, including refusal to disclose malpractice, misappropriation, or falsified pleadings during appeals and arbitration;

j. Ongoing retaliation, defamation, and witness intimidation, knowingly placing Plaintiff at risk of further violence and deprivation of life-saving care.

This breach of fiduciary duty directly and proximately caused the following injuries:

- Financial devastation exceeding $193 million in cumulative economic losses;
- Destruction of Plaintiff's litigation standing, career, and access to justice;
- Emotional, psychological, and psychiatric trauma;
- Medical injury, reproductive harm, and delayed surgeries;
- Permanent harm to Plaintiff's legal claims and personal safety.

The above-named Defendants are jointly and severally liable for breach of fiduciary duty under:

- Pappas v. Tzolis, 20 N.Y.3d 228 (2012);
- Matter of Cooperman, 83 N.Y.2d 465 (1994);
- Restatement (Third) of the Law Governing Lawyers §§ 16, 49;
- Palermo Protocol (Art. 6), requiring restitution and voiding of trafficking-complicit agreements;
- Universal Declaration of Human Rights, Articles 3, 5, 7, and 8;
- Canadian Charter of Rights and Freedoms and Ontario Human Trafficking Act for cross-border fiduciary coordination.

Note: This Count is not limited to the attorneys and firms named above. Plaintiff reserves the right to amend this Complaint to include additional law firms, individual attorneys, agents, and conspirators discovered during Rule 26 discovery, subpoena compliance, or compelled disclosures.

PRAYER FOR RELIEF – COUNT TWENTY

Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General damages: $193,577,054.22 USD;
b. Special damages: $10,000,000.00 USD for relocation, medical care, therapy, and

protective services;
c. Loss of earnings and career: $10,000,000.00 USD;
d. Prejudgment interest at 10% per annum, compounded annually from May 23, 2014;
e. Punitive and aggravated damages: $500,000,000.00 USD;
f. Disgorgement of all legal fees, retainers, and compensation obtained through fraud or disloyalty;
g. Constructive trust and forfeiture over assets, judgments, and funds obtained in violation of fiduciary duties;
h. Injunctive relief preventing Defendants from further acts of retaliation, collusion, or judicial interference;
i. Attorneys' fees, costs of suit, expert fees, and disbursements;
j. Such further relief as this Court deems just and proper.

**COUNT TWENTY-TWO: LEGAL MALPRACTICE**

AGAINST:
Glaser Weil LLP; Patricia Glaser; Jill Basinger; Rivers J. Morrell III; The Law Offices of Rivers J. Morrell III; Gregory Brown; Brown & Charbonneau LLP; William Paoli; Paoli & Purdy LLP; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Richard Sherman; Sherman Law; Diane Doolittle; Quinn Emanuel Urquhart & Sullivan LLP; John Quinn; Michael F. Grady; William C. Price; Christopher Tayback; Margaret Caruso; Patrick Doolittle; Michael Lifrak; Sara Pollack; Megan M. Kerr; Alex Gerbi; Ted Greeno; Claudia Stone; Marta Alcumbrac; Jonathan B. Cole; Marshall R. Cole; Frank W. Nemecek; Michael W. Feenberg; Michael McCarthy; Mark Schaeffer; Alan Brown; Day Day & Brown; Anthony McCusker (Goodwin Procter); Keith Eggleton (Wilson Sonsini); David Klein (Kirkland & Ellis LLP); Ryan Baker; Christopher Reynolds (Baker Marquart LLP, now Waymaker LLP); Lenczner Slaght LLP; Monique Jilesen; Sahar Talebi; and all other presently unknown legal professionals to be named following discovery.

Plaintiff Amber Doe hereby repeats, realleges, and incorporates by reference all prior allegations in this Complaint as though fully set forth herein.

This action is brought against the above-named Defendants for gross legal malpractice, breach of professional duty, and intentional legal sabotage committed in connection with their direct or indirect representation of the Plaintiff, a survivor of human

trafficking, sexual slavery, forced labor, and judicial persecution. These attorneys acted in flagrant violation of their legal and ethical obligations, resulting in catastrophic and life-threatening consequences to Plaintiff's rights, liberty, and person.

1. Duty Owed

As licensed attorneys, officers of the court, and fiduciaries (whether retained or involved via intervention), each Defendant owed Plaintiff the non-delegable duty to:

- Provide competent legal counsel;
- Avoid all conflicts of interest;
- Preserve privileged communications;
- Uphold the highest standard of care and undivided loyalty;
- Refrain from obstructing justice or furthering criminal conspiracies.

These duties are recognized under:

- New York Judiciary Law §§ 487–488
- ABA Model Rules of Professional Conduct
- Ontario Rules of Professional Conduct
- California State Bar Rules
- Galambos v. Perez, 2009 SCC 48
- Norberg v. Wynrib, [1992] 2 SCR 226

2. Acts of Malpractice and Obstruction

Defendants willfully and maliciously committed legal malpractice through acts including but not limited to:

a. Failing to appear at critical hearings, trials, or arbitration;

b. Sabotaging litigation strategies, including destruction of evidence and deliberate withholding of filings;

c. Breach of confidentiality, including unauthorized disclosures of attorney-client communications to opposing parties and media;

d. Participating in conflicted representation, simultaneously representing Plaintiff and parties hostile to her interests;

e. Subverting settlements, including sabotage of a $40 million contract through bribery, coercion, and fraudulent litigation postures;

f. Facilitating ex parte communications with compromised judges and defendants;

g. Colluding with Michael Goguen, Sequoia Capital, and Quinn Emanuel to execute sham proceedings, obstruct appeals, and ensure Plaintiff's legal annihilation;

h. Actively engineering her legal defeat through fraudulent Mareva injunctions, vexatious litigant designations, and willful abandonment at trial.

3. Malpractice as Conspiracy

Certain Defendants—including Quinn Emanuel, Nemecek & Cole LLP, Lenczner Slaght, Wilson Sonsini, and Goodwin Procter—were never formally retained by Plaintiff, yet interfered with her legal representation, access to court, and claims enforcement by:

- Bribing retained counsel;
- Forcing withdrawals before key hearings (e.g., Paoli & Purdy);
- Coercing Plaintiff into unconscionable settlements and false judgments;
- Threatening lawyers who attempted to represent her zealously.

These acts constitute intentional interference with contractual relations, abuse of legal process, and civil conspiracy to obstruct justice, actionable under:

- 42 U.S.C. § 1983 (Deprivation of Due Process);
- TVPA, 18 U.S.C. §§ 1589–1595 (legal coercion & retaliation);
- RICO, 18 U.S.C. § 1962(d) (predicate acts: obstruction, extortion, wire fraud);
- Canadian Victims Bill of Rights, S.C. 2015, c. 13;
- Palermo Protocol (Art. 6 – Right to legal remedies & restitution).

4. Damages

As a direct and proximate result of the Defendants' collective and individual legal malpractice and sabotage, Plaintiff has suffered:

- Loss of meritorious claims valued at over $889 million USD;
- Irretrievable damage to her constitutional rights, bodily safety, reputation, and access to courts;
- Forfeiture of the $40 million settlement through fraudulent enforcement, embezzlement, and sabotage;
- Medical harm, including reproductive injury, untreated chronic conditions, and suicidal ideation;
- Permanent exile, homelessness, and surveillance under retaliatory orders issued through corrupted proceedings.

PRAYER FOR RELIEF (COUNT TWENTY-TWO)

Plaintiff respectfully demands judgment against all named and as-yet-unnamed Defendants, jointly and severally, for:

a. General Damages: $193,577,054.22 USD

b. Special Damages: $10,000,000.00 USD (medical, relocation, therapy, protective measures)

c. Loss of Earnings: $10,000,000.00 USD

d. Prejudgment Interest: 10% per annum compounded annually from May 23, 2014

e. Punitive and Exemplary Damages: $500,000,000.00 USD

f. Statutory Treble Damages:

- 18 U.S.C. § 1964(c) (RICO)
- TVPA, 18 U.S.C. § 1595

g. Constructive Trust and Full Disgorgement of all ill-gotten profits

h. Permanent Injunctions prohibiting all Defendants from further obstruction, retaliation, and participation in legal proceedings against Plaintiff

i. Mandatory Orders to compel full disclosure of case files, communications, and hidden affiliations

j. Attorneys' Fees, costs of suit, expert witnesses, and emergency protective costs

k. Further Relief as this Court deems just, equitable, and necessary in light of international and constitutional obligations to trafficking survivors

COUNT TWENTY-THREE: EXTORTION

AGAINST: Michael Lewis Goguen; Sequoia Capital; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; Glaser Weil LLP; William Paoli; Paoli & Purdy LLP; and all co-conspirators known and unknown.

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe repeats, re-alleges, and incorporates by reference all preceding paragraphs of this Statement of Claim as though fully set forth herein.

2. THE DEFENDANTS' EXTORTIONATE CONDUCT

Defendants, acting individually and in concert, engaged in a prolonged, coordinated, and unlawful campaign of extortion with the intent to financially ruin, silence, coerce, and endanger Plaintiff—a known human trafficking survivor and whistleblower.

This ongoing pattern of extortion involved, inter alia:

- a. Judicial Weaponization:
  Unlawful designation of Plaintiff as a "vexatious litigant" in California courts, without legal merit, to bar her access to justice and obstruct all legal recourse.
- b. Financial Duress:
  Imposition of fabricated sanctions and unlawful bond requirements—including a

fraudulent $50,000 bond by Judge Nico Dourbetas—to bankrupt Plaintiff and prevent judicial remedy.

- c. Fraudulent Proceedings & Legal Sabotage:
  Use of ex parte orders, forged restraining orders, malicious contempt charges, and false judgments to intimidate Plaintiff into silence regarding her trafficking, rape, and torture.

- d. Threats of Death and Physical Harm:
  Contracting private operatives to surveil, stalk, and attempt murder, including threats communicated via Goguen's security personnel and legal associates.

- e. Medical & Financial Coercion:
  Freezing of Plaintiff's bank accounts, theft of financial assets, and deliberate obstruction of medical care, leading to severe and irreversible deterioration of her health.

These acts constitute a methodical and transnational pattern of extortion that crossed state and international borders, and formed part of a broader racketeering scheme.

3. STATUTORY VIOLATIONS

The Defendants' conduct constitutes extortion and coercion in violation of:

- 18 U.S.C. § 1951 (Hobbs Act):
  Extortion by threats, force, coercion, and abuse of government authority affecting interstate commerce;

- 18 U.S.C. § 875(d):
  Transmission of threats in interstate commerce with intent to extort money, property, and silence speech;

- 18 U.S.C. § 1961(1):
  Extortion as a predicate act under the Racketeer Influenced and Corrupt Organizations Act (RICO);

- Criminal Code of Canada, RSC 1985, c C-46, s. 346:
  Extortion and coercion under Canadian criminal law;

- Ontario Torts of Extortion, Economic Duress, and Unlawful Means;

- Ontario Human Trafficking Act, S.O. 2017, c. 14, s. 16;

- A.I. Enterprises Ltd. v. Bram Enterprises Ltd., 2014 SCC 12;
- International Treaties Binding on the U.S. and Canada, Including:
  The Palermo Protocol, CEDAW, the Universal Declaration of Human Rights, and the Convention Against Torture (CAT).

4. PATTERN OF ORGANIZED, TRANSNATIONAL EXTORTION

This was not isolated misconduct but part of a transnational criminal enterprise operating across California, Montana, Alberta, Ontario, and New York.

Goals of this enterprise included:

- Silencing of Plaintiff's reports of human trafficking and sexual abuse;
- Obstruction of justice via judicial sabotage and economic strangulation;
- Elimination of Plaintiff's legal standing and credibility through retaliation;
- Psychological destruction and lethal endangerment of the Plaintiff.

5. DAMAGES SUFFERED BY PLAINTIFF

As a direct and proximate result of Defendants' acts of extortion, Plaintiff endured:

- a. Emotional & Psychological Trauma:
  Complex PTSD, anxiety, suicidal ideation, and psychological deterioration caused by life-threatening coercion and terror campaigns.
- b. Economic Destruction:
  Loss of housing, bank assets, income, legal remedies, and all financial stability due to unlawful seizures, fraudulent sanctions, and litigation abuse.
- c. Physical Injury & Medical Collapse:
  Denial of critical surgeries and life-saving medical treatment resulting in prolonged physical agony and risk to life.
- d. Systematic Denial of Legal Rights:
  Elimination of access to courts in Canada, the U.S., and international tribunals, in violation of domestic and international human rights law.

6. PRAYER FOR RELIEF (COUNT TWENTY-THREE)

WHEREFORE, Plaintiff respectfully demands judgment against all named Defendants, jointly and severally, as follows:

a. General Damages:
$193,577,054.22 USD for trauma, suffering, financial destruction, and ongoing harm;

b. Special Damages (Medical & Security):
$10,000,000.00 USD for surgeries, trauma therapy, emergency relocation, and protective services;

c. Loss of Earnings:
$10,000,000.00 USD representing lost future income, contracts, and economic capacity;

d. Prejudgment Interest:
10% compounded annually from May 23, 2014;

e. Punitive & Exemplary Damages:
$500,000,000.00 USD to deter future acts of extortion and punish Defendants' flagrant violations;

f. Costs of Suit:
All attorneys' fees, investigative expenses, security protection, and litigation costs;

g. Permanent Injunctive Relief:
Enjoining Defendants from further threats, retaliation, obstruction, surveillance, or interference with Plaintiff's liberty or person;

h. Mandatory Security Orders:
Court-ordered housing, relocation, protective services, medical care, and trauma recovery assistance;

i. Further Relief:
Any additional relief the Court deems just, proper, and necessary in the interests of justice and international law.

## IV. TORTS, NEGLIGENCE, PERSONAL INJURY

### COUNT TWENTY-FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Against: *Sequoia Capital; Michael Lewis Goguen; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Patricia Glaser; Glaser Weil LLP; Jill Basinger; Gregory Brown; Brown & Charbonneau LLP; William Paoli; Paoli & Purdy LLP; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Richard Sherman; Sherman Law; Anthony McCusker; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Nemecek & Cole LLP; Michael Strickland; Sitrick & Company; Chris Reynolds; Brian Nash; Michael Feenberg; Michael McCarthy; Mark Schaeffer; William Price; Ryan Baker; Alex Gerbi; Ted Greeno; Aiden O'Rourke; John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, Patrica Glaser, Jill Basinger, Frank Nemecek, Alex Spiro, Jon Cole, Marshall Cole, Marta Alcumbrac, Claudia Stone, Brian Chase, Scott Ritsima, Sara Cork, Gregory Brown, Richard Sherman, Sara Pollack, Joseph Sarles, Michale Lifrack, Patrick Doolittle, Rivers J Morrell, Alan Brown, and all co-conspirators known and unknown.*

Plaintiff Amber Doe hereby repeats and realleges all preceding paragraphs of this Complaint as though fully set forth herein.

1. EXTREME AND OUTRAGEOUS CONDUCT

Defendants, acting individually and in a coordinated criminal enterprise, engaged in a sustained, malicious, and transnational campaign of extreme and outrageous conduct designed to inflict terror, psychological collapse, and permanent trauma upon the Plaintiff—a known survivor of cross-border human trafficking, rape, torture, and systemic legal persecution.

This conduct includes, but is not limited to:

- Repeated acts of sexual slavery, rape, torture, forced prostitution, and coercive control spanning more than a decade;

- Deliberate legal sabotage, including false restraining orders, fraudulent vexatious litigant designations, fabricated contempt rulings, and obstruction of Plaintiff's access to any judicial forum;
- Fraudulent legal documents and ex parte filings knowingly submitted to courts with forged evidence, suborned perjury, and suppression of exculpatory materials;
- Abandonment by retained counsel at critical legal junctures, coupled with collusion between Plaintiff's attorneys and traffickers;
- Physical stalking, electronic surveillance, threats of lethal violence, and solicitation of Plaintiff's murder via private security forces hired by Defendant Goguen and coordinated by Quinn Emanuel attorneys;
- Systemic media retaliation, reputational blacklisting, and character assassination orchestrated through Sitrick & Company and their affiliates;
- Freezing of Plaintiff's bank accounts, refusal to release court-ordered medical funds, and manipulation of fraudulent financial judgments to obstruct life-saving care.

## 2. INTENT TO INFLICT EMOTIONAL DISTRESS

Defendants acted with actual malice, specific intent, and reckless indifference to Plaintiff's health, liberty, safety, and dignity. Their objective was to emotionally incapacitate, isolate, and erase Plaintiff by inflicting maximum psychological devastation, all while continuing to profit from the trafficking enterprise she attempted to expose.

This conduct exceeds all bounds of decency, and shocks the conscience of any civilized legal system.

## 3. LEGAL BASIS UNDER NEW YORK LAW

The conduct of the Defendants constitutes the tort of Intentional Infliction of Emotional Distress under New York law. The elements of this tort are:

1. Extreme and outrageous conduct;

**2.** Intent to cause (or reckless disregard of the risk of causing) severe emotional distress;

**3.** A causal connection between the conduct and the injury;

**4.** Severe emotional distress.

See:

- *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993);
- *Murphy v. American Home Products*, 58 N.Y.2d 293 (1983);
- *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135 (1985).

4. SUPPLEMENTAL AND FEDERAL JURISDICTION

This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367, as it arises from the same nucleus of operative facts as Plaintiff's federal claims under:

- The Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595;
- RICO, 18 U.S.C. § 1962(c);
- 42 U.S.C. § 1983;
- International human rights law, including the Palermo Protocol, CEDAW, and the Universal Declaration of Human Rights.

5. DAMAGES

As a direct and proximate result of Defendants' conduct, Plaintiff suffered catastrophic injuries, including:

- Complex Post-Traumatic Stress Disorder (C-PTSD), dissociative trauma, suicidal ideation;
- Total financial collapse, career destruction, and professional erasure;
- Loss of housing, medical care, and social safety nets;

- Severe physical deterioration resulting from chronic denial of trauma-informed care and secure shelter;
- Enduring terror, hyper-vigilance, and dehumanizing humiliation sustained through continued retaliation.

PRAYER FOR RELIEF – COUNT TWENTY-FOUR

WHEREFORE, Plaintiff respectfully demands that this Honourable Court enter judgment against all named Defendants, jointly and severally, and award:

a. General Damages:
$193,577,054.22 USD for severe emotional distress, psychiatric trauma, pain and suffering, and personal injury;

b. Special Damages:
$10,000,000.00 USD for trauma-informed medical care, security, relocation, housing, and therapeutic services;

c. Loss of Earnings:
$10,000,000.00 USD in permanent lost income and destroyed professional opportunities;

d. Prejudgment Interest:
10% per annum, compounded annually from May 23, 2014;

e. Punitive and Exemplary Damages:
No less than $500,000,000.00 USD to deter, punish, and condemn the Defendants' malicious and state-facilitated psychological torture;

f. Costs of Suit:
Full recovery of attorneys' fees, expert witness costs, litigation expenses, investigative services, and security protection;

g. Protective Injunctive Relief:
An immediate and permanent injunction against all Defendants from any future contact, interference, retaliation, or harassment;

h. Emergency Protective Orders:
Mandating provision of secure housing, trauma therapy, emergency relocation, and physical protection;

i. Such Further Relief as this Honourable Court deems just, necessary, and equitable under U.S., Canadian, and international law to vindicate Plaintiff's fundamental rights and dignity.

## COUNT TWENTY-FOUR: NEGLIGENT SUPERVISION

AGAINST DEFENDANTS:
Sequoia Capital; Sequoia Capital Operations, LLC; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; John Quinn; Diane Doolittle; Bruce Van Dalsem; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Goodwin Procter LLP; Anthony McCusker; Wilson Sonsini Goodrich & Rosati LLP; Paoli & Purdy LLP; William Paoli; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Nemecek & Cole LLP; Brown & Charbonneau LLP; Gregory Brown; Sherman Law; Richard Sherman; Sitrick & Company; Michael Sitrick; and all other named co-conspirators.

I. ALLEGATIONS

1. Plaintiff Amber Doe realleges and incorporates by reference all preceding paragraphs of this Statement of Claim as though fully set forth herein.

2. At all material times, each named Defendant had a non-delegable legal duty to exercise reasonable care in the supervision, monitoring, and regulation of their agents, attorneys, fiduciaries, contractors, and employees—particularly those involved in sensitive matters including legal representation, asset control, public relations, and physical security.

3. The Defendants collectively exercised control and authority over:

    - Corporate and financial entities that funded, concealed, and enabled human trafficking and systemic abuse;
    - Law firms and lawyers engaged in fraudulent litigation, obstruction of justice, and ethical malpractice;
    - Private security contractors and surveillance agents tasked with harassment, stalking, and intimidation of Plaintiff;

- Public relations firms used to defame, silence, and discredit Plaintiff through coordinated smear campaigns.

**4.** The Defendants knew or reasonably should have known that the individuals they employed, retained, or supervised were engaged in:

- Human trafficking, rape, torture, and sexual exploitation;
- Judicial corruption, bribery of judges, and fraud upon courts;
- Extortion, coercion, duress-based settlements, and unlawful seizure of Plaintiff's assets;
- Legal sabotage, vexatious litigant abuse, and concealment of material evidence;
- Retaliatory litigation, fraudulent ex parte orders, and systemic denial of Plaintiff's access to justice.

**5.** Defendants Sequoia Capital and Two Bear Capital financed and sustained the criminal enterprise through disbursement of venture funds, private equity, and other financial instruments without oversight, compliance protocols, or whistleblower protections.

**6.** Defendants Quinn Emanuel, Glaser Weil, Goodwin Procter, Wilson Sonsini, and related law firms permitted and sanctioned acts of legal malpractice, bribery, and fraud committed by partners and associates under their supervision—including John Quinn, Diane Doolittle, Patricia Glaser, Bruce Van Dalsem, and Anthony McCusker—and failed to investigate, report, or discipline misconduct.

**7.** These Defendants failed to:

- Investigate credible reports of criminality and corruption;
- Enforce compliance with legal ethics and professional duties;
- Terminate or restrain rogue actors despite foreseeable risk;
- Notify regulators or courts of known misconduct, fraud, and criminal abuse occurring under their supervision.

**8.** Their collective breach of duty resulted in catastrophic injury to Plaintiff, including:

- Physical harm: Rape, physical torture, permanent reproductive injury, chronic pain;
- Psychological harm: Severe C-PTSD, dissociation, depression, suicidal ideation, medical collapse;
- Economic devastation: Loss of all assets, destruction of Plaintiff's legal claims, professional ruin;
- Civil rights violations: Total deprivation of liberty, dignity, and access to justice across Canada, the United States, and international tribunals.

## II. LEGAL BASIS FOR LIABILITY

Defendants' acts and omissions constitute negligent supervision, breach of fiduciary duty, and failure to prevent foreseeable harm under the following legal authorities:

- U.S. Law:
  - *Trafficking Victims Protection Act (TVPA)*, 18 U.S.C. § 1595;
  - *Racketeer Influenced and Corrupt Organizations Act (RICO)*, 18 U.S.C. § 1962, 1964(c);
  - New York tort law on negligent supervision and failure to prevent abuse (e.g., *Doe v. Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014)).
- Canadian Law:
  - *Bazley v. Curry*, [1999] 2 S.C.R. 534;
  - *Jacobi v. Griffiths*, [1999] 2 S.C.R. 570;
  - The Canadian Charter of Rights and Freedoms (Sections 7, 12, and 15);
  - Canadian Victims Bill of Rights, S.C. 2015, c. 13;
  - Ontario Human Rights Code, R.S.O. 1990, c. H.19.
- International Law:
  - *Palermo Protocol to Prevent, Suppress and Punish Trafficking in Persons*;

- *Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW)*;
- *Universal Declaration of Human Rights*.

III. DAMAGES

WHEREFORE, Plaintiff respectfully requests judgment in her favor against all Defendants, jointly and severally, as follows:

a. General Damages:
$193,577,054.22 USD for emotional distress, physical trauma, psychological injury, reputational damage, and loss of liberty and dignity.

b. Special Damages:
$10,000,000.00 USD for surgeries, psychiatric care, trauma therapy, protective housing, security, and relocation expenses.

c. Lost Earnings:
$10,000,000.00 USD in past and future economic opportunity and income loss.

d. Punitive and Aggravated Damages:
$500,000,000.00 USD to punish Defendants' grossly negligent conduct and systemic abuse, per *Whiten v. Pilot Insurance Co.*, 2002 SCC 18.

e. Treble Damages:
As authorized by 18 U.S.C. § 1595 and § 1964(c), totaling not less than $252,000,000.00 USD.

f. Prejudgment Interest:
10% compounded annually from May 23, 2014, through entry of final judgment.

g. Attorneys' Fees and Costs of Suit:
Full recovery of litigation expenses, attorneys' fees, expert witness costs, and protective legal costs.

h. Protective Injunctive Relief:
Immediate court orders barring further retaliation, obstruction, surveillance, or harassment by any Defendant.

i. Security Protection Orders:
Court-directed provision of physical security, relocation, medical stabilization, and trauma recovery for Plaintiff.

j. Vacatur of Fraudulent Judgments:
Complete invalidation of all judgments, settlements, or legal instruments procured under fraudulent or coerced conditions.

k. Further Relief:
Any additional legal or equitable relief deemed appropriate by this Honourable Court under U.S., Canadian, and international law.

**COUNT TWENTY-FIVE: NEGLIGENT SUPERVISION / NEGLIGENT DIRECTION**

AGAINST DEFENDANTS:
Sequoia Capital; Sequoia Capital Operations, LLC; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; John Quinn; Diane Doolittle; Bruce Van Dalsem; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Goodwin Procter LLP; Anthony McCusker; Wilson Sonsini Goodrich & Rosati LLP; Paoli & Purdy LLP; William Paoli; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Nemecek & Cole LLP; Jonathan B. Cole; Marshall R. Cole; Michael W. Feenberg; Brown & Charbonneau LLP; Gregory Brown; Sherman Law; Richard Sherman; Sitrick & Company; Michael Sitrick; and all other named and yet-unknown co-conspirators.

I. ALLEGATIONS

1. Plaintiff Amber Doe realleges and incorporates by reference all preceding paragraphs of this Statement of Claim as though fully set forth herein.

2. At all relevant times, the above-named Defendants had a non-delegable legal and fiduciary duty to supervise, train, oversee, and direct their employees, attorneys, agents, contractors, partners, executives, and public relations operatives, to prevent foreseeable acts of criminality, fraud, and abuse—including acts of human trafficking, sexual violence, obstruction of justice, and judicial corruption.

3. The Defendants, individually and jointly, directed, sanctioned, or permitted the following acts to occur under their supervision and within the course and scope of employment or professional agency:

    - Systematic fraud on multiple courts through false pleadings, suborned perjury, and fraudulent ex parte orders;
    - Sex trafficking, sexual assault, and rape, enabled through coercive settlements, false legal representation, and gag orders;
    - Extortion, intimidation, and surveillance, carried out by private security teams, legal agents, and PR firms;
    - Legal malpractice and sabotage, including withdrawal of counsel, breach of fiduciary duty, and failure to act in Plaintiff's best interest;
    - Defamation and smear campaigns, directed by Defendants' agents (including Sitrick & Company) with supervisory approval.

4. The supervisory Defendants either actively directed or negligently failed to restrain these acts, despite:

    - Repeated, credible notice of misconduct;
    - Public records, court filings, and medical reports confirming ongoing injury;
    - A foreseeable risk of catastrophic harm to a known human trafficking survivor.

5. Senior partners, officers, and executives—including but not limited to John Quinn, Diane Doolittle, Patricia Glaser, Bruce Van Dalsem, Anthony McCusker, Jonathan B. Cole, and Gregory Brown—owed heightened duties of supervision and direction under federal and state law due to their leadership roles.

6. Defendants knew or ought to have known that their agents, associates, and firms were committing torts, violating fiduciary obligations, and using the legal system to terrorize a trafficking survivor.

7. In many cases, the Defendants affirmatively directed this conduct—whether by:

    - Assigning corrupt lawyers to sabotage Plaintiff's case;

- Revoking competent counsel immediately before trial and arbitration deadlines;
- Authorizing PR retaliation, coercive negotiations, or frivolous legal filings to obstruct access to justice.

8. Defendants Sequoia Capital and Two Bear Capital exercised control over co-defendants' financial and legal operations, directed misuse of corporate assets to fund retaliation, and failed to implement compliance or whistleblower protections.
9. Defendants' gross negligence in supervision and direction directly and proximately caused the following harm to Plaintiff:

- Severe emotional and psychological trauma (C-PTSD, suicidality, nervous system collapse);
- Physical injury from continued trafficking and lack of protection;
- Financial devastation, loss of career, housing, assets, and access to courts;
- Irreparable damage to reputation, liberty, and dignity under domestic and international human rights law.

## II. LEGAL BASIS FOR LIABILITY

Defendants are jointly and severally liable for negligent supervision and negligent direction under the following:

- U.S. Law:
  - *Restatement (Second) of Torts § 317* (Duty of Master to Control Conduct of Servant);
  - *Doe v. Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) – employer liability for tortious conduct of agents;
  - *TVPA*, 18 U.S.C. § 1595 – civil liability for knowingly benefitting from trafficking through acts or omissions;
  - *RICO*, 18 U.S.C. § 1962(c), § 1962(d) – enterprise liability based on managerial or supervisory roles.

- Canadian Law:
    - *Bazley v. Curry*, [1999] 2 S.C.R. 534 (negligent supervision in vicarious liability);
    - *Jacobi v. Griffiths*, [1999] 2 S.C.R. 570;
    - Canadian common law tort of negligent supervision and direction;
    - Canadian Charter (Sections 7, 12, 15);
    - Canadian Victims Bill of Rights, S.C. 2015, c. 13.
- International Law:
    - Palermo Protocol;
    - CEDAW;
    - Universal Declaration of Human Rights (Articles 3, 5, 8).

III. DAMAGES REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants, jointly and severally, and award the following:

a. General Damages
$193,577,054.22 USD for trauma, injury, reputational destruction, and deprivation of liberty and security.

b. Special Damages
$10,000,000.00 USD for psychiatric treatment, medical care, protective housing, and security services.

c. Loss of Earnings
$10,000,000.00 USD for career loss, destroyed income stream, and professional exile.

d. Punitive and Aggravated Damages
$500,000,000.00 USD for reckless supervision, willful direction of abuse, and systemic disregard of human rights.

e. Treble Damages
Under 18 U.S.C. §§ 1595 and 1964(c), totaling not less than $252,000,000.00 USD.

f. Prejudgment Interest
10% compounded annually from May 23, 2014, through the date of judgment.

g. Attorneys' Fees, Costs of Suit, and Disbursements
Full recovery of expert fees, investigator costs, trauma therapy consultation, and all litigation expenses.

h. Injunctive Relief
Orders barring all Defendants from any further supervision, direction, or contact with Plaintiff.

i. Security and Relocation Orders
Full court-supervised relocation, security, and recovery plan to ensure Plaintiff's survival and safety.

j. Vacatur of All Judgments and Legal Instruments
Procured through negligent direction or supervisory abuse.

k. Any Other Relief
As this Court deems just, equitable, and necessary to restore Plaintiff's rights under U.S., Canadian, and international law.

**COUNT TWENTY-SIX: WILLFUL AND WANTON MISCONDUCT**

AGAINST DEFENDANTS:
Michael Lewis Goguen; Sequoia Capital; Sequoia Capital Operations, LLC; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; John Quinn; Diane Moira Doolittle; Bruce Van Dalsem; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Goodwin Procter LLP; Anthony McCusker; Wilson Sonsini Goodrich & Rosati LLP; Paoli & Purdy LLP; William Paoli; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Nemecek & Cole LLP; Brown & Charbonneau LLP; Gregory Brown; Sherman Law; Richard Sherman; Sitrick & Company; Michael Sitrick; and all other named co-conspirators known and unknown.

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe realleges and incorporates by reference all preceding paragraphs of this Statement of Claim as though fully set forth herein.

## II. WILLFUL, WANTON, AND RECKLESS MISCONDUCT

The Defendants, individually and jointly, engaged in deliberate, egregious, and conscious misconduct with reckless indifference to Plaintiff's rights, safety, and life. Their conduct constitutes willful and wanton misconduct under applicable U.S., Canadian, and international law, rising beyond gross negligence to intentional and systemic abuse.

The Defendants knowingly participated in or enabled:

- The financing, perpetuation, and concealment of a cross-border human trafficking and sexual slavery enterprise;
- Repeated acts of rape, torture, coercion, and forced isolation, causing catastrophic emotional, physical, and psychological harm;
- Fraudulent legal proceedings designed to silence, isolate, and destroy Plaintiff's access to justice;
- Surveillance, stalking, intimidation, and solicitation of Plaintiff's murder by private security personnel;
- Obstruction of justice, bribery of judicial officers, and the perversion of court proceedings through fraudulent filings and malicious designations;
- Deprivation of medical care, economic sabotage, and purposeful destruction of Plaintiff's livelihood and dignity;
- Media retaliation, public defamation, and blacklisting of Plaintiff to destroy her personal and professional reputation.

The Defendants' conduct was not merely negligent or accidental — it was deliberate, executed with actual knowledge of the foreseeable harm, and carried out with malice, coercion, and depraved disregard for human rights, judicial integrity, and public safety.

## III. LEGAL BASIS FOR LIABILITY

Defendants' conduct constitutes willful and wanton misconduct under:

- New York common law and federal tort doctrine (see *Campbell v. State of New York*, 31 N.Y.2d 775 (1972); *Prozeralik v. Capital Cities Communications*, 82 N.Y.2d 466 (1993));
- Intentional tort theory supporting enhanced damages (see *Turk v. McCarthy*, 661 F. Supp. 1526 (S.D.N.Y. 1987));
- Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.;
- Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595;
- Canadian common law, including *Whiten v. Pilot Insurance Co.*, 2002 SCC 18 (willful misconduct justifying aggravated and punitive damages);
- Canadian Charter of Rights and Freedoms, §§ 7, 12, and 15;
- Canadian Victims Bill of Rights, S.C. 2015, c. 13;
- International law, including the Universal Declaration of Human Rights, the Palermo Protocol, the Convention Against Torture (CAT), and CEDAW.

## IV. DAMAGES

As a direct and proximate result of the Defendants' willful and wanton misconduct, Plaintiff has suffered:

- Severe emotional and psychological trauma, including complex PTSD, suicidal ideation, and permanent neuropsychiatric impairment;
- Catastrophic physical injury and deterioration, including untreated medical conditions, chronic pain, and life-threatening disability;
- Permanent financial and economic ruin, including the loss of homes, legal claims, career opportunities, income, and safety;
- Destruction of personal dignity, autonomy, and legal personhood;
- Ongoing terror, surveillance, and exposure to lethal retaliation.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages: $193,577,054.22 USD for pain, suffering, physical and emotional injury, loss of dignity, and trauma;

b. Special Damages: $10,000,000.00 USD for psychiatric care, surgeries, emergency medical treatment, relocation, housing, and security expenses;

c. Lost Earnings: $10,000,000.00 USD for loss of past, present, and future earning capacity;

d. Punitive and Exemplary Damages: Not less than $500,000,000.00 USD to punish and deter egregious violations of law, ethics, and decency;

e. Treble Damages: Pursuant to 18 U.S.C. §§ 1964(c) and 1595, totaling no less than $252,000,000.00 USD;

f. Prejudgment Interest: 10% per annum, compounded annually from May 23, 2014, through entry of judgment;

g. Attorneys' Fees and Costs of Suit: Full reimbursement of all legal fees, expert costs, security services, and litigation expenses;

h. Permanent Injunctive Relief: Enjoining Defendants from future retaliation, interference, or contact with Plaintiff;

i. Vacatur of Judgments and Legal Instruments: An order declaring void all judgments, orders, settlements, contracts, and gag orders arising from or procured through willful and wanton misconduct;

j. All Further Relief: As this Honourable Court deems just, proper, and necessary under U.S., Canadian, and international law.

**COUNT TWENTY-SEVEN: GROSS NEGLIGENCE**

(Against: Michael Lewis Goguen; Sequoia Capital; Sequoia Capital Operations, LLC; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; John B Quinn; Diane Moira Doolittle; Bruce Van Dalsem; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Goodwin Procter LLP; Anthony McCusker; Wilson Sonsini Goodrich & Rosati LLP; Keith Eggleton; Paoli & Purdy LLP; William Paoli; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Sherman Law LLP; Richard Sherman; Brown & Charbonneau LLP; Gregory Brown; Nemecek & Cole LLP; Frank W.

Nemecek; Jonathan B. Cole; Marshall R. Cole; Michael W. Feenberg; Claudia Stone; Marta Alcumbrac; The Law Offices of Rivers J. Morrell III; Rivers J. Morrell III; Sitrick & Company; Michael Sitrick; and all other named co-conspirators, whether named explicitly herein or to be identified during discovery.)

## I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff, Amber Doe, repeats, re-alleges, and incorporates by reference all prior paragraphs and preceding Counts of this Statement of Claim as though fully set forth herein.

## II. DUTY OF CARE OWED TO PLAINTIFF

At all relevant times, Defendants owed Plaintiff a non-delegable, affirmative duty of care, arising from:

- Their fiduciary status as attorneys, law firms, employers, publicists, investors, and corporate stewards;
- Their assumed authority and control over Plaintiff's legal, financial, medical, and personal affairs;
- Statutory obligations under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and international human rights law;
- Professional and ethical rules of conduct, including the New York Rules of Professional Conduct, the ABA Model Rules, and the Ontario Rules of Professional Conduct;
- Humanitarian and constitutional duties not to expose known trafficking victims to foreseeable harm, coercion, abuse, or medical endangerment.

Plaintiff, as a vulnerable, systemically persecuted survivor of international human trafficking, was owed the highest degree of care by Defendants who wielded overwhelming control over her liberty, health, reputation, and access to justice.

## III. BREACHES OF DUTY CONSTITUTING GROSS NEGLIGENCE

Defendants breached their duties to Plaintiff in a manner constituting gross negligence, wanton recklessness, and deliberate indifference, including:

a. Funding, Shielding, and Profiting from Human Trafficking
Defendants knowingly facilitated, enabled, and profited from a cross-border human trafficking enterprise involving sexual violence, forced isolation, coerced medical deprivation, and systemic retaliation.

b. Judicial Corruption and Obstruction of Justice
Defendants conspired to manipulate legal outcomes by bribing judges, falsifying records, issuing unlawful gag orders, and fraudulently designating Plaintiff a "vexatious litigant" to obstruct redress.

c. Medical Sabotage and Life-Threatening Neglect
Defendants recklessly interfered with Plaintiff's access to critical surgeries and urgent care by freezing her accounts, intimidating medical providers, and disrupting legal claims that would have funded care.

d. Malicious Prosecution and Legal Retaliation
Defendants prosecuted knowingly baseless civil and quasi-criminal claims against Plaintiff, coordinated false declarations and ex parte proceedings, and obstructed her ability to retain honest counsel.

e. Psychological Torture and Stalking
Defendants engaged in continuous psychological abuse through surveillance, intimidation, defamation, and the solicitation of murder-for-hire, exacerbating Plaintiff's trauma and endangering her life.

## IV. CULPABLE STATE OF MIND

Defendants' conduct reflects:

- Reckless disregard for foreseeable and catastrophic harm;
- Willful blindness to the ongoing abuse of a human trafficking survivor;
- Systemic apathy toward Plaintiff's life, safety, and constitutional rights;
- Intentional failure to implement protective or corrective mechanisms, despite repeated warnings, public knowledge, and internal discussions.

This gross negligence was not an aberration—it was institutionalized, normalized, and coordinated at the highest levels of corporate, legal, and financial power.

## V. DIRECT AND PROXIMATE DAMAGES

As a direct and proximate result of Defendants' gross negligence, Plaintiff has suffered:

- Permanent physical injuries, including internal organ damage, chronic pain, neurological degeneration;
- Complex psychological injuries, including PTSD, dissociation, severe anxiety, and depression;
- Financial ruin, including total loss of income, property, and professional standing;
- Reputational destruction, including blacklisting, defamatory publications, and career annihilation;
- Ongoing exposure to life-threatening danger, including forced medical neglect and credible murder threats.

## VI. DAMAGES SOUGHT

WHEREFORE, Plaintiff respectfully demands judgment against all named Defendants, jointly and severally, as follows:

a. General Damages:
$154,639,535.77 USD for emotional distress, catastrophic injury, deprivation of liberty, and loss of dignity.

b. Special Damages:
$10,000,000.00 USD for past and future medical care, surgeries, housing, relocation, and security.

c. Lost Earnings:
$10,000,000.00 USD for the loss of income, career trajectory, legal settlements, and professional capacity.

d. Prejudgment Interest:
10% per annum, compounded annually from May 23, 2014, pursuant to CPLR § 5001, Ontario Courts of Justice Act s. 128, and common law.

e. Attorneys' Fees and Costs:
Full reimbursement of all legal, investigative, and litigation costs, expert testimony, security, and trauma recovery expenses.

f. Punitive and Exemplary Damages:
No less than $500,000,000.00 USD, to deter gross misconduct and institutional recklessness.

g. Permanent Injunctive Relief:
Prohibiting Defendants from engaging in further abuse, interference, or retaliation.

h. Other Relief:
Such additional relief as this Honourable Court deems just, equitable, and necessary under U.S. law, Canadian law, and international human rights principles.

**COUNT TWENTY-EIGHT: PERSONAL INJURY**

(Against All Defendants)

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe, a Canadian citizen and internationally recognized survivor of human trafficking, hereby realleges and incorporates by reference all preceding paragraphs, sections, and Counts of this Statement of Claim as though fully set forth herein.

II. DEFENDANTS' DUTY OF CARE

At all relevant times, the following Defendants owed Plaintiff a direct, non-delegable duty of care under U.S., Canadian, and international law:

- Michael Lewis Goguen,
- Sequoia Capital and Sequoia Capital Operations, LLC,
- Two Bear Capital, Two Bear Ranch,
- Quinn Emanuel Urquhart & Sullivan LLP, John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter,
- Glaser Weil LLP, Patricia Glaser, Jill Basinger,
- Goodwin Procter LLP, Anthony McCusker,
- Wilson Sonsini Goodrich & Rosati LLP, Keith Eggleton,
- Nemecek & Cole LLP, Frank W. Nemecek, Jonathan B. Cole, Marshall R. Cole, Michael W. Feenberg, Claudia Stone, Marta Alcumbrac,
- Paoli & Purdy LLP, William Paoli,
- Bisnar Chase LLP, Brian Chase, Scott Ritsima,
- Brown & Charbonneau LLP, Gregory Brown,
- Sherman Law, Richard Sherman,
- The Law Offices of Rivers J. Morrell III, Rivers J. Morrell III,
- Sitrick & Company, Michael Sitrick,
- And all additional co-conspirators and parties yet to be named during discovery.

These Defendants, individually and collectively, owed Plaintiff a duty:

- To refrain from acts or omissions that would foreseeably cause personal injury;
- To protect her from foreseeable harm given her status as a known human trafficking victim;
- To comply with ethical, legal, and fiduciary obligations arising from professional, financial, legal, and security relationships.

## III. BREACHES CAUSING PERSONAL INJURY

The Defendants breached their duty through actions that were not only negligent, but deliberate, malicious, and in conscious disregard of human life and international law, including:

1. Human trafficking, sexual violence, rape, and torture, in violation of the TVPA, Palermo Protocol, and international law;
2. Systemic legal abuse and judicial sabotage, including fraudulent restraining orders, vexatious litigant designations, and obstruction of meritorious legal claims;
3. Medical interference, including the blocking of access to life-saving surgeries, psychological care, housing, and essential income;
4. Malicious prosecution and stalking, including illegal surveillance, coordinated online defamation, and solicitation of Plaintiff's murder;
5. Fraudulent legal instruments and coerced contracts, used to deprive Plaintiff of her assets, remedies, and safety.

## IV. RESULTING HARM

As a direct and proximate result of Defendants' coordinated misconduct, Plaintiff has suffered:

- Severe physical injuries, including permanent internal trauma, reproductive damage, chronic pain, and neurological impairment;
- Psychological devastation, including complex PTSD, depression, suicidal ideation, and long-term cognitive injury;
- Loss of income, housing, and professional standing, due to reputational destruction and retaliatory litigation;
- Endangerment and medical deprivation, resulting in accelerated deterioration of Plaintiff's health;
- Systemic denial of justice, liberty, and access to remedies under both domestic and international law.

## V. DAMAGES

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages
In the amount of $193,577,054.22 USD, for pain and suffering, permanent personal injury, loss of dignity, loss of liberty, and emotional devastation.

b. Special Damages
In the amount of $10,000,000.00 USD for medical, surgical, therapeutic, and security expenses, including protective relocation, 24-hour surveillance protection, and psychological recovery.

c. Loss of Earnings
In the amount of $10,000,000.00 USD for destroyed professional trajectory, long-term loss of income, and interference with settlement recoveries.

d. Prejudgment Interest
At 10% per annum, compounded annually, from May 23, 2014, pursuant to Ontario Courts of Justice Act, s. 128(1) and New York CPLR § 5001, and consistent with Bank of America Canada v. Mutual Trust Co., 2002 SCC 43.

e. Costs of Suit
Including all court costs, litigation expenses, expert witnesses, investigation, trauma consultants, and related disbursements.

f. Attorneys' Fees
Including security services, emergency housing, and protective legal coordination arising from the ongoing threat posed by Defendants' enterprise.

g. Punitive and Exemplary Damages
In an amount no less than $500,000,000.00 USD, to punish and deter future misconduct, pursuant to Whiten v. Pilot Insurance Co., 2002 SCC 18, Hill v. Church of Scientology of Toronto, [1995] 2 S.C.R. 1130, and Smith v. Wade, 461 U.S. 30 (1983).

h. Equitable Injunctive Relief
Permanent injunction enjoining all Defendants from:

- Contacting or surveilling Plaintiff;
- Interfering with her medical care, property, or legal actions;
- Enforcing any fraudulent judgment or legal instrument procured through deceit, duress, or obstruction.

i. Additional Relief
Any further relief this Honourable Court deems just, proper, and equitable under U.S. federal law, Canadian law, and international human rights frameworks, including but not limited to CEDAW, CAT, UDHR, and the Palermo Protocol.

# COUNT TWENTY-NINE DECEIT

(Against All Named Defendants, Including Attorneys and Media Operatives)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe* repeats, re-alleges, and incorporates by reference all preceding paragraphs of this Statement of Claim as though fully set forth herein.

II. FRAUDULENT MISREPRESENTATIONS AND OMISSIONS
2. The Defendants, individually, jointly, and in concert—including but not limited to Michael Lewis Goguen; Sequoia Capital; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; Glaser Weil LLP; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Nemecek & Cole LLP; Paoli & Purdy LLP; Bisnar Chase LLP; Sherman Law LLP; Brown & Charbonneau LLP; Patricia Glaser; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Gregory Brown; Richard Sherman; William Paoli; Brian Chase; Scott Ritsima; Anthony McCusker; Michael Sitrick, Sitrick & Company; Rivers Morrell III; Keith Eggleton; Claudia Stone; Marta Alcumbrac, Alan Brown, Day Day and Brown LLP Rivers J Morrell III The law Firm of Rivers J Morrell III, , and all other named co-defendants—willfully and maliciously committed acts of deceit.

3. The Defendants knowingly made false representations of fact and law to courts, law enforcement, the media, financial institutions, and Plaintiff herself, including but not limited to:
a. Misrepresenting the legality and enforceability of the coerced and fraudulent May 23, 2014 settlement agreement;
b. Misstating the procedural posture of legal cases in courts across jurisdictions to mislead Plaintiff and obstruct her claims;

c. Filing and relying upon forged documents, fabricated declarations, and false evidence to procure unlawful judgments;
d. Concealing systemic bribery, judicial corruption, and human trafficking from the courts and public;
e. Misrepresenting conflicted attorneys as fiduciary counsel acting in Plaintiff's best interest, while they were in fact colluding with co-defendants;
f. Issuing defamatory media statements and public relations releases designed to discredit Plaintiff and shield the criminal enterprise.

III. KNOWLEDGE AND INTENT TO DECEIVE
4. Defendants acted with full knowledge of the falsity of their statements, or in willful blindness, and with malicious intent to:
a. Mislead courts, authorities, and the public;
b. Prevent Plaintiff from obtaining justice;
c. Discredit and destroy Plaintiff as a witness and survivor;
d. Protect the trafficking and obstruction network from exposure.

IV. JUSTIFIABLE RELIANCE AND CAUSATION
5. Plaintiff reasonably relied upon the falsehoods of Defendants because they:
a. Were licensed legal professionals and fiduciaries;
b. Held themselves out as reputable and ethically bound officers of the court;
c. Operated within the legal system's formal structures of trust and authority.

6. As a direct and proximate result of the deceit, Plaintiff suffered:

- Irreparable personal injury and psychological trauma;
- Economic loss and destruction of her career;
- Loss of reputation and credibility;
- Denial of medical treatment and loss of liberty;
- Judicial sabotage and fraudulently procured gag orders.

V. FRAUD UPON THE COURT AND LEGAL FRAMEWORK
7. Defendants' conduct constitutes:
a. Fraud upon the court (Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); United States v. Throckmorton, 98 U.S. 61 (1878));

b. Common law deceit and misrepresentation (Bruno Appliance and Furniture, Inc. v. Hryniak, 2014 SCC 8; Performance Industries Ltd. v. Sylvan Lake Golf, 2002 SCC 19);
c. Breach of fiduciary duty and violations of legal ethics;
d. Violations of international law, including the Palermo Protocol, CEDAW, and the Canadian Charter of Rights and Freedoms and Victims Bill of Rights.

VI. DAMAGES AND RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages:
$193,577,054.22 USD for personal injury, trauma, reputational destruction, and loss of liberty.

b. Special Damages:
$10,000,000.00 USD for surgeries, trauma therapy, relocation, security, and medical care.

c. Lost Earnings:
$10,000,000.00 USD in lost income and permanently destroyed earning capacity.

d. Punitive and Exemplary Damages:
$500,000,000.00 USD to punish malicious deceit and deter future misconduct.

e. Prejudgment Interest:
10% per annum, compounded annually, from May 23, 2014, pursuant to *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43.

f. Costs of Suit:
Full recovery of attorneys' fees, expert witness fees, security, investigation, and litigation expenses.

g. Equitable and Injunctive Relief:

- Vacatur of all judgments, contracts, and orders obtained through fraud and deceit;
- Restitution of all funds and assets unlawfully obtained;
- Permanent injunction prohibiting all Defendants from further harassment, retaliation, or interference.

h. Security Protection Orders:

- Provision of housing, relocation, medical care, trauma treatment, and personal security services.

i. Any other relief this Honourable Court deems just and appropriate under U.S., Canadian, and international law.

**COUNT THIRTY: CONCEALMENT**

(Against All Named Defendants, Including Attorneys, Corporations, and Media Operatives)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe*hereby repeats, re-alleges, and incorporates by reference all preceding paragraphs of this Statement of Claim as if fully set forth herein.

II. OVERVIEW OF SYSTEMATIC CONCEALMENT

2. This cause of action arises from the Defendants' deliberate, coordinated, and egregious concealment of material facts, evidence, crimes, conflicts of interest, and fiduciary misconduct in furtherance of an unlawful enterprise involving human trafficking, sexual violence, judicial corruption, extortion, obstruction of justice, and systemic abuse of the Plaintiff.

3. The Defendants, including but not limited to Michael Lewis Goguen; Sequoia Capital; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; Glaser Weil LLP; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Nemecek & Cole LLP; Paoli & Purdy LLP; Bisnar Chase LLP; Sherman Law LLP; Brown & Charbonneau LLP; Patricia Glaser; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; William Paoli; Brian Chase; Scott Ritsima; Richard Sherman; Gregory Brown; Michael Sitrick and Sitrick & Company; Rivers Morrell III; Claudia Stone; Feenberg Day LLP; and other named co-conspirators, individually and in concert, knowingly withheld, suppressed, and concealed facts that they had a legal, ethical, and fiduciary duty to disclose to Plaintiff and to the courts.

III. ELEMENTS OF CONCEALMENT

4. Each Defendant:

a. Had actual knowledge of material facts regarding the trafficking, judicial fraud, coercive settlements, forgery, legal malpractice, conflicts of interest, and systemic abuse perpetrated against Plaintiff;

b. Had a legal, ethical, or fiduciary duty to disclose said facts to Plaintiff or to the court;

c. Willfully and maliciously concealed these facts with the intent to defraud, silence, sabotage, or destroy Plaintiff;

d. Benefited financially or professionally from said concealment;

e. Caused Plaintiff to suffer devastating harm due to the reliance on the incomplete, misleading, or fabricated record.

5. The acts of concealment were not passive omissions, but part of an active scheme to subvert justice, including:

- Failing to disclose conflicts of interest by Plaintiff's own legal representatives;
- Concealing Sequoia Capital's financial control over opposing firms and attorneys;
- Suppressing exculpatory evidence and testimony in judicial proceedings;
- Failing to disclose bribes to judges, forged declarations, and void judgments;
- Coordinating retaliatory litigation and defamatory media smears under cover of fraudulent legal processes;
- Obstructing Plaintiff's access to court by withholding filings, fraudulently designating her as a vexatious litigant, and vacating hearings without notice.

IV. LEGAL FRAMEWORK FOR LIABILITY

6. The Defendants' actions constitute:

a. Fraudulent Concealment under New York law (see *P.T. Bank Central Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373 (1st Dep't 2003));

b. Intentional Tort of Concealment under Canadian common law (see *Guindon v. Canada*, 2015 SCC 41);

c. Breach of Fiduciary Duty under both U.S. and Canadian law;
d. Violation of Rule 3.3 and 8.4 of the Model Rules of Professional Conduct (duty of candor to the tribunal and prohibition against dishonest conduct);
e. Fraud upon the court, vitiating all tainted judgments (see *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944));
f. Violation of the Canadian Charter of Rights and Freedoms, the Victims Bill of Rights, the Palermo Protocol, and international customary law guaranteeing access to justice, bodily autonomy, and legal remedy.

V. INJURIES CAUSED BY CONCEALMENT

7. As a direct and proximate result of the Defendants' willful concealment, Plaintiff suffered:

- Loss of access to courts and legal recourse;
- Permanent injury to her physical and mental health due to withheld medical care and institutional betrayal;
- Irreparable economic loss, reputational harm, and trauma;
- Destruction of public and private opportunities due to stigmatization and false legal narratives;
- Ongoing retaliation, threats to safety, and systemic sabotage across legal systems.

VI. DAMAGES AND RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages:
$193,577,054.22 USD for pain, suffering, trauma, reputational loss, and deprivation of liberty caused by the prolonged concealment of material facts.

b. Special Damages:
$10,000,000.00 USD for medical treatment, trauma recovery, investigative services, relocation, and protective infrastructure necessitated by Defendants' misconduct.

c. Lost Earnings:
$10,000,000.00 USD in past and future income lost due to suppression of Plaintiff's claims, evidence, and personhood.

d. Punitive and Exemplary Damages:
$500,000,000.00 USD to punish and deter the malicious, deliberate concealment of systemic trafficking, judicial sabotage, and fiduciary fraud.

e. Prejudgment Interest:
10% per annum compounded annually from May 23, 2014, as affirmed by *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43.

f. Costs of Suit:
Full legal costs, attorneys' fees, expert witness fees, security expenditures, and litigation expenses.

g. Equitable Relief:
- Vacatur of all judgments, gag orders, contracts, or court orders tainted by fraudulent concealment;
- Restitution and disgorgement of all gains or payments derived from the enterprise;
- Permanent injunction preventing Defendants from engaging in any further concealment, retaliation, or contact with Plaintiff.

h. Security and Protection Orders:
Mandated provision of housing, medical care, trauma therapy, and personal security protection.

i. Any other relief this Court deems just and appropriate, under U.S. law, Canadian law, and international conventions including the Universal Declaration of Human Rights, CEDAW, and the Palermo Protocol.

## COUNT THIRTY-ONE: TRESPASS TO CHATTELS

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Glaser Weil LLP, Bisnar Chase LLP, Sherman Law LLP, Nemecek & Cole LLP, Paoli & Purdy LLP, Brown & Charbonneau LLP, and all individually named co-defendants)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe*hereby repeats, realleges, and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

II. LEGAL STANDARD: TRESPASS TO CHATTELS

2. Under New York common law and Restatement (Second) of Torts § 217 and § 218, trespass to chattels occurs when one, without consent or justification, intentionally interferes with another's possessory interest in personal property and causes actual harm.

3. The tort is applicable to both tangible property (e.g., documents, devices, belongings) and intangible property (e.g., electronic data, communications, digital files, accounts).

III. UNLAWFUL INTERFERENCE WITH PLAINTIFF'S PROPERTY

4. Defendants, acting individually and in conspiracy, intentionally, wrongfully, and maliciously interfered with Plaintiff's property interests, including but not limited to:

a. Plaintiff's digital and physical legal files, case records, evidence archives, and legal strategies;
b. Financial and trust accounts, which were frozen, redirected, or looted through Mareva injunctions obtained by fraud, without jurisdiction or due process;
c. Medical records, unlawfully accessed and weaponized during litigation;
d. Electronic communications, including privileged emails and filings with attorneys, regulators, and law enforcement;
e. Devices and personal property, accessed or seized through fraud, coercion, or suborned court orders.

IV. SPECIFIC ACTS OF TRESPASS TO CHATTELS

5. Defendants' conduct included but was not limited to:

a. Unauthorized access, alteration, and deletion of Plaintiff's legal files, medical documentation, and supporting evidence;
b. Seizure or interference with critical documents protected by attorney-client privilege and work product doctrine;
c. Interception of Plaintiff's communications with law enforcement, witnesses, whistleblowers, and international authorities;
d. Blocking or sabotaging service of process, subpoenas, and notices;
e. Freezing or looting of bank accounts through fraudulent court orders, injunctions, and coerced settlements;

f. Misappropriation and misuse of Plaintiff's confidential records in public and private retaliation campaigns.

V. DAMAGES AND INJURY TO PLAINTIFF

6. As a direct and proximate result of Defendants' trespass to chattels, Plaintiff suffered:

a. Loss of access to legal defenses, communications, evidence, and procedural remedies;
b. Severe emotional distress, retraumatization, and physical endangerment;
c. Economic destruction, professional ruination, and reputational harm;
d. Ongoing threats to personal safety and interference with basic survival needs (housing, therapy, security).

VI. RECKLESSNESS, MALICE, AND OPPRESSION

7. Defendants acted:

a. With actual malice and intent to obstruct Plaintiff's ability to litigate, seek redress, or expose systemic abuse;
b. In concert and conspiracy, coordinated across firms and jurisdictions;
c. Under colour of law, through abuse of courts, corrupt attorneys, fraudulent injunctions, and perverted litigation tactics.

VII. LEGAL AUTHORITY AND LIABILITY

8. Defendants are liable under:

a. Common Law Tort of Trespass to Chattels under New York law;
b. 42 U.S.C. § 1983, to the extent that state actors and officers of the court participated under colour of law;
c. RICO predicate acts involving obstruction, interference with commerce, and retaliatory intimidation;
d. Canadian common law, where applicable, in concert with U.S. extraterritorial conduct affecting a Canadian citizen and cross-border enterprise.

VIII. DAMAGES AND RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages:
$193,577,054.22 USD for loss of use, interference with chattels, reputational destruction, pain and suffering.

b. Special Damages:
$10,000,000.00 USD for security, trauma recovery, medical care, investigation, and technology replacement.

c. Lost Earnings:
$10,000,000.00 USD due to impaired legal capacity and career destruction.

d. Punitive and Exemplary Damages:
$500,000,000.00 USD for willful, malicious, systemic abuse of Plaintiff's property rights.

e. Prejudgment Interest:
10% per annum, compounded annually from May 23, 2014, per *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43.

f. Costs of Suit:
All attorneys' fees, expert costs, and litigation expenses.

g. Equitable Relief:
- Mandatory turnover and return of all documents, records, and devices;
- Vacatur of all injunctions, gag orders, and asset freezes obtained through fraud;
- Permanent injunction against future interference, surveillance, or deprivation of Plaintiff's property.

h. Protective Orders and Security:
Immediate provision of safe housing, trauma therapy, secure devices, encrypted communications, and physical protection.

i. Any other relief this Court deems just, proper, and necessary under U.S., Canadian, and international law.

**COUNT THIRTY-TWO: CONVERSION**

(Against: Glaser Weil LLP, Patricia Glaser, Jill Basinger, Rivers Morrell, Gregory Brown, Brown & Charbonneau LLP, William Paoli, Paoli & Purdy LLP, Bisnar Chase LLP, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law, Quinn Emanuel Urquhart & Sullivan LLP, John Quinn, Diane Doolittle, Kyle Batter, Bruce Van Dalsem, Sequoia Capital, Michael Lewis Goguen, Two Bear Capital, Two Bear Ranch, and all other named Defendants)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe repeats*, realleges, and incorporates by reference all preceding paragraphs and prior Counts as if fully set forth herein.

II. UNLAWFUL CONVERSION OF PLAINTIFF'S PROPERTY

2. The Defendants, acting individually, jointly, and in conspiracy, intentionally exercised unlawful dominion and control over Plaintiff's tangible and intangible property without consent, legal authority, or justification.

3. Defendants' conduct constitutes conversion under New York common law, which prohibits the intentional exercise of control over property belonging to another, resulting in the deprivation of use, possession, or title.

4. Converted property includes, without limitation:
   a. Settlement funds contractually owed to Plaintiff under the May 23, 2014 written agreement;
   b. Bank accounts, trust assets, and financial instruments frozen and seized via fraudulent court orders;
   c. Legal case files, court pleadings, attorney communications, and confidential evidence;
   d. Medical records and health data unlawfully accessed, seized, or misused;
   e. Intellectual property, personal writings, research, and data systems necessary for Plaintiff's livelihood and legal defense.

III. FORMS OF CONVERSION

5. Defendants' conversion included, but was not limited to:
   a. Misappropriation of Settlement Funds
   Michael Goguen and Sequoia Capital willfully retained approximately $30

million owed under a signed settlement agreement, constituting direct financial conversion.

b. Fraudulent Asset Freezing

Plaintiff's Canadian accounts were unlawfully seized via Mareva injunctions obtained through false statements, perjury, ex parte communications, and jurisdictional fraud.

c. Confiscation of Legal and Medical Files

Legal materials, attorney-client communications, and confidential case strategies were withheld, destroyed, or used against Plaintiff in bad-faith litigation and retaliatory proceedings.

d. Exploitation of Intellectual Property

Plaintiff's private writings, research, and personal medical records were weaponized by Defendants for reputational destruction, economic exploitation, and blackmail.

e. Financing of Ongoing Criminal Enterprise

The misappropriated funds were used to further human trafficking, retaliatory litigation, PR defamation campaigns, and bribery of legal and judicial actors across multiple jurisdictions.

## IV. LEGAL ELEMENTS OF CONVERSION MET

6. Defendants' conduct meets all legal elements of conversion, including:
a. Unauthorized control and interference with Plaintiff's property;
b. Intentional deprivation of Plaintiff's right to use, possess, or recover her property;
c. Refusal to return or account for misappropriated assets and documents;
d. Direct causation of financial, reputational, emotional, and physical harm to Plaintiff.

7. Under New York law and supporting authorities (see *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400 (2d Cir. 2006); *Perry v. Manocherian*, 675 N.Y.S.2d 899 (1st Dep't 1998)), both tangible and intangible property (e.g., digital files, bank assets, IP) are protected under conversion claims when wrongful dominion results in harm.

## V. DAMAGES SUSTAINED

8. As a direct and proximate result of the Defendants' conversion, Plaintiff has suffered:

a. Loss of lawfully owed financial assets, including settlement funds and savings;
b. Loss of legal autonomy, capacity to litigate, and ability to seek redress;
c. Loss of earnings and career capacity, directly resulting from withheld assets;
d. Severe psychological and emotional injury, retraumatization, and endangerment;
e. Ongoing deprivation of shelter, healthcare, legal counsel, and basic survival needs.

## VI. DEFENDANTS' MALICE AND BAD FAITH

9. Defendants' acts of conversion were not incidental or accidental. Rather, they were:
a. Deliberate, strategic, and malicious, designed to coerce silence and perpetuate impunity;
b. Executed in concert across multiple jurisdictions, firms, and entities;
c. Rooted in abuse of legal process, fraud upon the court, and fiduciary betrayal;
d. Committed in violation of Plaintiff's constitutional rights, fiduciary protections, and international human rights guarantees.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages
$154,639,535.77 for conversion of Plaintiff's property, emotional suffering, and personal injury.

b. Special Damages
$10,000,000.00 for medical, security, and trauma recovery expenses.

c. Lost Earnings
$10,000,000.00 for lost income, economic potential, and career harm.

d. Punitive and Exemplary Damages
$500,000,000.00 USD to punish egregious abuse and deter further criminal misconduct.

e. Prejudgment Interest
10% per annum, compounded annually from May 23, 2014, through date of judgment.

f. Costs of Suit
All legal fees, expert witness fees, court costs, and litigation expenses.

g. Equitable Restitution
Mandatory return of all converted funds, documents, data, and assets, including restitution of unlawfully frozen accounts and seized records.

h. Injunctive Relief
Permanent injunction prohibiting further interference with Plaintiff's property, finances, and communications.

i. Emergency Protective Relief
Provision of immediate shelter, personal protection, secure communications, and trauma stabilization resources.

j. Any further relief this Court deems just, equitable, and appropriate under U.S., Canadian, and international law.

**COUNT THIRTY-THREE: BAD FAITH**

**(Against All Defendants)**

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe repeats*, realleges, and incorporates by reference all prior allegations, paragraphs, and causes of action as though fully set forth herein.

II. NATURE OF CLAIM: SYSTEMIC BAD FAITH

2. Defendants, jointly and individually, engaged in a pattern of deliberate, malicious, and systemic bad faith across fiduciary, contractual, professional, judicial, and governmental roles.

3. Defendants' misconduct constituted a coordinated abuse of power, including:

- Fiduciary breaches by legal professionals and firms;
- Dereliction of constitutional and statutory duties by public officials and state actors;
- Breach of settlement and retainer contracts;
- Judicial malfeasance including bias, fraud, and obstruction of justice.

4. This systemic bad faith was undertaken with intent to:

- Exploit Plaintiff as a human trafficking survivor;
- Obstruct Plaintiff's access to justice and legal redress;
- Enforce fraudulent judgments, asset seizures, and gag orders;
- Leave Plaintiff legally defenseless at critical litigation junctures;
- Conspire to pervert Canadian, U.S., and international legal systems to shield themselves from liability.

III. LEGAL BASIS FOR BAD FAITH UNDER U.S. LAW

**5.** Under U.S. and New York law, bad faith arises where a party acts with fraud, malice, dishonesty, or intent to deceive, particularly where fiduciary or professional duties are involved (see *Spires v. State*, 2015 WL 1588249 (N.D.N.Y. 2015); *In re Cohen*, 847 F.2d 593, 597 (9th Cir. 1988)).

**6.** Defendants' conduct also violated:

- 42 U.S.C. § 1983 – for state-sponsored denial of access to courts and constitutional protection;
- RICO statutes (18 U.S.C. §§ 1961–68) – for obstruction of justice through coordinated legal sabotage;
- New York Judiciary Law § 487 – for attorney deceit and collusion to injure a party to litigation;
- Restatement (Second) of Torts §§ 874, 901 – breach of fiduciary duties and bad-faith tort conduct;

- Federal and state ethical rules, including ABA Model Rules of Professional Conduct;
- Canadian Charter of Rights and Freedoms, Victims Bill of Rights, and relevant international conventions including CEDAW, Palermo Protocol, and CAT.

## IV. SPECIFIC ACTS OF BAD FAITH

7. Defendants' egregious and concerted actions include, without limitation:
a. Abandoning Plaintiff during pending litigation after accepting retainers and fiduciary duty;
b. Fraud upon the court to shield Michael Goguen and Sequoia Capital;
c. Secret ex parte communications and procedural sabotage to prevent Plaintiff's access to due process;
d. Filing unlawful subpoenas, engaging in stalking and surveillance, and weaponizing discovery against Plaintiff;
e. Manufacturing fraudulent vexatious litigant designations and unlawful gag orders;
f. Bribing over 40 Canadian and California judges to secure extrinsic fraud-based judgments;
g. Empowering Goguen's security teams to stalk, intimidate, and endanger Plaintiff, facilitated by counsel abandonment.

## V. DAMAGES SUFFERED

**8.** As a direct and proximate result of Defendants' bad faith, Plaintiff has endured:

- Severe trauma, including complex PTSD and neurological damage;
- Irretrievable financial ruin, deprivation of medical care, and career annihilation;
- Life-threatening retaliation, including homelessness, loss of legal protection, and targeted endangerment;
- Complete obstruction of remedies in U.S., Canadian, and international courts due to collusive legal conduct.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages: $193,577,054.22 USD for personal injury, loss of liberty, and psychological trauma;

b. Special Damages: $10,000,000.00 USD for medical expenses, relocation, trauma therapy, and security;

c. Lost Earnings: $10,000,000.00 USD for permanent economic loss;

d. Aggravated and Punitive Damages: $500,000,000.00 USD for systemic bad faith, judicial sabotage, and obstruction;

e. Prejudgment and Post-judgment Interest: 10% per annum, compounded annually from May 23, 2014;

f. Costs of Suit: Including attorneys' fees, expert witness fees, and litigation expenses;

g. Permanent Injunctive Relief: To bar further retaliation, fraud, abuse, or interference by Defendants;

h. Restitution and Disgorgement: Of all profits, contracts, fees, and benefits obtained through bad faith;

i. Emergency Protection Measures: Including personal security, housing, and medical care;

j. Further Relief: As this Honourable Court deems just, proper, and necessary under U.S., Canadian, and international law.

**COUNT THIRTY-FOUR: MONEY HAD AND RECEIVED**

(Against All Defendants for Equitable Restitution)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe repeats*, re-alleges, and incorporates by reference all preceding paragraphs, facts, and causes of action as though fully set forth herein.

II. NATURE OF CLAIM

2. This is an equitable action for Money Had and Received to recover funds, assets, and property wrongfully obtained and unjustly retained by the Defendants.

3. Defendants, individually and jointly, received and now retain money, assets, trust funds, property, and contractual payments that in equity and good conscience belong to Plaintiff.

4. At all times material, the Defendants acted with fraud, malice, bad faith, deceit, undue influence, coercion, and willful misconduct, and were not entitled in law or equity to the property they retained.

III. ELEMENTS OF LIABILITY UNDER U.S. AND NEW YORK LAW

5. Under New York law and federal common law, a cause of action for money had and received lies where:
   a. Defendant received money belonging to Plaintiff;
   b. Defendant benefitted from retention of said money;
   c. Circumstances make it unjust for the Defendant to retain it.
   (*See* Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, 731 F.2d 112 (2d Cir. 1984); *Board of Educ. of Cold Spring Harbor Cent. Sch. Dist. v. Rettaliata*, 78 N.Y.2d 128 (1991)).

6. Equitable restitution is proper where the funds were obtained:
   - Through fraud, duress, or coercion;
   - In breach of contract, breach of fiduciary duty, or through fraudulent inducement;
   - In the course of a coordinated criminal enterprise, including but not limited to human trafficking, racketeering, and obstruction of justice.

IV. UNJUST RETENTION OF PLAINTIFF'S PROPERTY

7. Defendants wrongfully received and retained Plaintiff's funds and property through:
a. Failure to disburse settlement funds contractually owed under the May 23, 2014 agreement;
b. Fraudulent injunctions that froze Plaintiff's bank accounts and assets in Alberta and Ontario;
c. Misappropriation of funds held in trust by legal counsel, including Quinn Emanuel, Glaser Weil, and Brown & Charbonneau;
d. Seizure and exploitation of Plaintiff's intellectual property, writings, and medical data for profit and coercive leverage;
e. Payment to attorneys and firms for malicious prosecution, legal sabotage, and obstruction, rather than legitimate legal services.

8. Defendants' continued retention of these funds and assets is unjust, unlawful, inequitable, and unconscionable.

V. DAMAGES

**9.** As a direct and proximate result of Defendants' unjust enrichment and unlawful retention of Plaintiff's money and property, Plaintiff has suffered:

- Deprivation of urgently needed funds for medical treatment, shelter, safety, and legal redress;
- Irreparable emotional, psychological, and physical harm;
- Obstruction of justice, denial of due process, and destruction of Plaintiff's legal claims and career.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. Restitution of All Funds and Property: Immediate return of all monies, property, trust assets, and intellectual property wrongfully retained by Defendants;

b. General Damages: $193,577,054.22 USD for loss, injury, and deprivation caused by Defendants' retention of Plaintiff's property;

c. Special Damages: $10,000,000.00 USD for medical care, relocation, and legal expenses directly related to the loss of access to her funds;

d. Lost Earnings: $10,000,000.00 USD in lost income caused by Defendants' unlawful control of Plaintiff's resources;

e. Prejudgment and Post-Judgment Interest: 10% per annum compounded annually from May 23, 2014 to the present;

f. Punitive and Exemplary Damages: $500,000,000.00 USD to punish egregious misconduct and deter future violations;

g. Costs of Suit: Including attorneys' fees, investigative costs, security fees, and expert witness compensation;

h. Equitable Relief: Including constructive trust, accounting, disgorgement of unlawful profits, and permanent injunction against further exploitation;

i. Emergency Protective Measures: Court-ordered relocation assistance, security personnel, and access to withheld medical treatment and documentation;

j. Such other and further relief as this Honourable Court may deem just, proper, and equitable under U.S., Canadian, and international law.

## V. INTERFERENCE & ECONOMIC TORTS

**COUNT THIRTY-FIVE: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

(Against: Michael Lewis Goguen, Sequoia Capital, Quinn Emanuel Urquhart & Sullivan LLP, John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, Goodwin Procter LLP, Wilson Sonsini Goodrich & Rosati LLP, Monique Jilesen, Lenczner Slaght LLP, and all co-conspirators named herein)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe* repeats, realleges, and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

II. NATURE OF THE CLAIM

2. This claim arises from Defendants' deliberate and malicious interference with Plaintiff's valid contractual and fiduciary relationships with:

- Legal counsel
- Medical providers
- Financial institutions
- Fiduciaries and agents acting in Plaintiff's interest.

3. Defendants' coordinated actions constituted intentional tortious interference under U.S. and Canadian law, executed to obstruct justice, deprive Plaintiff of medical treatment, and destroy her financial access and legal support.

III. VALID CONTRACTUAL RELATIONSHIPS INTERFERED WITH

4. Defendants intentionally and maliciously interfered with the following valid and ongoing contractual relationships:

A. Legal Representation Contracts:

- *The Law Offices of Rivers Morrell III* – terminated under coercion
- *Glaser Weil LLP* – representation sabotaged, fraud, attorney interference and Bribery.

- *Bisnar Chase LLP* – withdrawn due to threats, bribery, fraud , obstruction, and attorney. interference
- *Paoli & Purdy LLP* – revoked under pressure, obstruction, attorney and interference and fraud

B. Medical Care Contracts:

- Plaintiff had scheduled surgeries and trauma care with licensed medical providers under lawful consent and treatment plans;
- Quinn Emanuel lawyers (including Diane Doolittle and Bruce Van Dalsem) made ex parte telephone calls to Plaintiff's surgeons, intimidating and threatening them, resulting in the abandonment of Plaintiff's care and cancellation of procedures.

C. Financial and Banking Relationships:

- Plaintiff maintained accounts and fiduciary relationships with Canadian banks;
- Monique Jilesen and Lenczner Slaght LLP intervened without legal authority, directly contacting bank officers and misrepresenting Plaintiff's legal status, leading to the unlawful freezing and withdrawal of her funds.

IV. LEGAL ELEMENTS SATISFIED

5. The conduct of the Defendants satisfies all elements of tortious interference under New York, federal, and Canadian common law:

- Valid and enforceable contracts existed;
- Defendants had knowledge of those contracts;
- Defendants intentionally induced breach or abandonment;
- Plaintiff suffered substantial damages and irreparable harm.

V. DAMAGES AND INJURY RESULTING FROM INTERFERENCE

6. As a result of Defendants' interference, Plaintiff:
    - Was denied critical medical surgeries, leaving her in severe pain and permanent injury;

- Lost access to essential financial accounts, preventing her from securing housing, protection, and medication;
- Was forced into pro se legal status, without medical care or legal resources, while defending herself against a global trafficking enterprise;
- Endured public humiliation, trauma, physical deterioration, and repeated assassination threats with no protection.

## VI. MALICE AND CONTINUING INJURY

7. Defendants' actions were deliberate, malicious, and retaliatory, motivated by:
   - Desire to silence Plaintiff's testimony;
   - Obstruction of RICO and trafficking litigation;
   - Suppression of evidence linking Defendants to criminal enterprises.
8. Defendants violated duties of care, legal ethics, fiduciary obligations, and international human rights principles.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully demands judgment against the Defendants, jointly and severally, for:

a. General Damages:
$193,577,054.22 USD for deprivation of contractual rights, physical harm, and reputational injury;

b. Special Damages:
$10,000,000.00 USD for canceled surgeries, denied care, destroyed banking relationships, and trauma recovery expenses;

c. Loss of Earnings:
$10,000,000.00 USD for lost professional income, legal fees, and destroyed opportunities;

d. Punitive and Aggravated Damages:
$500,000,000.00 USD to deter such egregious and coordinated abuse of power;

e. Prejudgment and Postjudgment Interest:
10% compounded annually from May 23, 2014, through judgment;

f. Costs of Suit and Legal Expenses:
Attorneys' fees, investigators, medical and expert costs, and full litigation reimbursement;

g. Equitable Restitution and Vacatur:
Rescission of coerced terminations, reinstatement of damages, and nullification of illegal interference and asset seizures;

h. Permanent Injunction:
Prohibiting further interference with any medical, legal, or financial professional assisting Plaintiff;

i. Emergency Protection and Medical Restoration:
Court-ordered reinstatement of medical surgeries, treatment plans, and housing security;

j. All other relief deemed just and proper under U.S., Canadian, and international law.

**COUNT THIRTY-SIX: TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS**

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Goodwin Procter LLP, Anthony McCusker, Wilson Sonsini Goodrich & Rosati LLP, Keith Eggleton, Glaser Weil LLP, Patricia Glaser, Jill Basinger, Rivers Morrell, Paoli & Purdy LLP, William Paoli, Nemecek & Cole LLP, Frank Nemecek, Jonathan Cole, Marshall Cole, Marta Alcumbrac, Bisnar Chase LLP, Brian Chase, Scott Ritsima, Brown & Charbonneau LLP, Gregory Brown, Sherman Law LLP, Richard Sherman, Lenczner Slaght LLP, Monique Jilesen)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe* repeats, realleges, and incorporates by reference all prior paragraphs and Counts as though fully set forth herein.

## II. NATURE OF THE CLAIM: SYSTEMIC ECONOMIC SABOTAGE

2. This cause of action arises from the deliberate and unlawful actions of the above-named Defendants, who engaged in a pattern of tortious interference with Plaintiff's prospective economic advantage and existing business opportunities.

3. Defendants, with full knowledge of Plaintiff's economic dependencies and sources of livelihood, willfully and maliciously interfered with:

- Plaintiff's professional capacity to earn income;
- Plaintiff's ability to secure housing, medical care, and legal counsel;
- Plaintiff's access to the marketplace, banking, and professional contracts;
- Plaintiff's public reputation, economic standing, and access to financial institutions.

## III. ELEMENTS OF TORTIOUS INTERFERENCE MET

4. Defendants' conduct satisfies all legal elements under New York, U.S. federal, Ontario, and Canadian tort law regarding interference with economic relations, including:

- Existence of valid economic relationships or opportunities between Plaintiff and third parties;
- Defendants' knowledge of these relationships or opportunities;
- Intentional and unjustified interference with those relationships through unlawful or wrongful means;
- Causation of actual economic injury and damage to Plaintiff.

## IV. WRONGFUL ACTS OF ECONOMIC INTERFERENCE

The following Defendants engaged in specific acts of interference, in whole or in part:

A. Michael Lewis Goguen, Sequoia Capital, and Two Bear Capital/Ranch

- Blacklisted Plaintiff from tech, investment, and philanthropic circles;
- Used intimidation, surveillance, and extortion to block Plaintiff's access to investors, clients, and third-party sponsors;
- Funded malicious litigation to bankrupt Plaintiff and undermine her credibility.

B. Quinn Emanuel, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter

- Threatened Plaintiff's surgeons, employers, financial institutions, and legal representatives;
- Filed knowingly false ex parte motions to freeze Plaintiff's assets and collapse her legal efforts;
- Coordinated media defamation campaigns to poison professional relationships and donor networks.

C. Goodwin Procter LLP & Anthony McCusker

- Participated in Goguen's whitewashing operation and obstructed recovery of Plaintiff's settlement funds;
- Used their legal influence to block Plaintiff's professional reintegration and recovery in the corporate space.

D. Wilson Sonsini & Keith Eggleton

- Obstructed settlement enforcement and colluded with Quinn Emanuel to silence Plaintiff's economic claims;
- Interfered with Plaintiff's business dealings under false pretenses of fraud and noncompliance.

E. Glaser Weil, Patricia Glaser, Jill Basinger

- Retaliated against Plaintiff for filing malpractice and sexual harassment claims;
- Colluded with Goguen to void legal efforts to recover the original settlement and block economic redress.

F. Rivers Morrell, William Paoli, Frank Nemecek, Jonathan Cole, Marshall Cole, Marta Alcumbrac, Brian Chase, Scott Ritsima, Gregory Brown, Richard Sherman

- Accepted representation of Plaintiff under false pretenses, only to sabotage economic claims, abandon her before hearings, and assist opposing parties;
- Shared privileged business plans and recovery strategies with Defendants to sabotage Plaintiff's economic security.

G. Monique Jilesen & Lenczner Slaght LLP

- Interfered with Plaintiff's Canadian banking access and asset management, causing complete financial collapse and denied access to protective services.

## V. DAMAGES SUFFERED

5. As a direct and proximate result of Defendants' intentional interference, Plaintiff has suffered:

- Total loss of income and economic capacity;
- Destruction of business prospects and professional reputation;
- Blacklisting from philanthropic and business networks;
- Homelessness, hunger, and inability to access medical care;
- Permanent psychological injury and deprivation of basic human dignity.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the above-named Defendants, jointly and severally, as follows:

a. General Damages
$193,577,054.22 USD for economic deprivation, reputational harm, and related injuries;

b. Special Damages
$10,000,000.00 USD for medical expenses, housing, trauma care, and professional rehabilitation;

c. Loss of Earnings
$10,000,000.00 USD in past and future income lost directly due to Defendants' interference;

d. Punitive and Exemplary Damages
$500,000,000.00 USD for egregious and intentional economic sabotage;

e. Prejudgment and Postjudgment Interest
10% per annum, compounded annually, from May 23, 2014, until judgment;

f. Equitable Relief
Restitution, vacatur of unlawful asset freezes, and judicial declarations of economic sabotage;

g. Permanent Injunctive Relief
Barring further interference with Plaintiff's economic life, contracts, clients, employment, and banking relationships;

h. Costs and Legal Expenses
All legal fees, costs, expert witness fees, investigative costs, and related litigation expenses;

i. Any additional relief deemed just and appropriate under Canadian, U.S., and international law.

**COUNT THIRTY-SEVEN: INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS**

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Quinn Emanuel Urquhart & Sullivan LLP, John B. Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, Patricia Glaser, Jill Basinger, Glaser Weil LLP, William Paoli, Paoli & Purdy LLP, Brian Chase, Scott Ritsema, Bisnar Chase LLP, Richard Sherman, Sherman Law LLP, Gregory Brown, Brown & Charbonneau LLP, Frank Nemecek, Jonathan Cole, Marshall Cole, Michael Feenberg, Nemecek & Cole LLP, Monique Jilesen, Lenczner Slaght LLP, Anthony McCusker, Goodwin Procter LLP, Keith Eggleton, Wilson Sonsini Goodrich & Rosati LLP)

## I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe repeats*, realleges, and incorporates by reference all preceding allegations and causes of action as though fully set forth herein.

## II. NATURE OF CLAIM: INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

2. This Count arises from the Defendants' knowing, malicious, and unlawful interference with Plaintiff's existing and prospective economic relations, including:

    - Professional contracts;
    - Employment opportunities;
    - Settlement payments;
    - Financial accounts and trust assets;
    - Medical care financing and procedures;
    - Legal representation and litigation recovery;
    - Intellectual property and publishing opportunities.

3. The Defendants acted with actual malice and improper motives — not to compete lawfully or protect legal rights — but to economically cripple, defame, and obstruct Plaintiff, a whistleblower and human trafficking survivor.

## III. CULPABLE DEFENDANTS' ACTIONS

### A. Michael Lewis Goguen, Sequoia Capital, and Two Bear Capital

- Deliberately withheld and misappropriated $30M in settlement payments to obstruct Plaintiff's economic autonomy;
- Financed retaliatory litigation and judicial bribery to sabotage Plaintiff's access to employment, medical care, and legal restitution.

B. Quinn Emanuel, John Quinn, Diane Doolittle, Bruce Van Dalsem, and Kyle Batter

- Coordinated a targeted campaign of vexatious litigation, false gag orders, and malicious filings to brand Plaintiff unemployable;
- Issued unlawful subpoenas and harassed Plaintiff's potential employers and doctors with defamatory information;
- Threatened Plaintiff's surgeons via ex parte calls, preventing medical procedures that were prerequisites for returning to work.

C. Glaser Weil LLP, Patricia Glaser, Jill Basinger

- Colluded with Sequoia and Goguen to sabotage Plaintiff's economic and legal recovery through arbitration fraud and suppression of claims;
- Leaked defamatory and false statements to employers, journalists, and judicial officers to destroy Plaintiff's professional prospects.

D. Paoli & Purdy LLP, William Paoli

- Accepted representation of Plaintiff, then abruptly withdrew at a critical pretrial moment under illegal pressure and conflicts of interest, leaving Plaintiff economically vulnerable and legally defenseless.

E. Bisnar Chase LLP, Brian Chase, Scott Ritsema

- Retained to pursue legal recovery, but sabotaged claims through collusion with opposing counsel and withdrawal under coordinated coercion, frustrating Plaintiff's economic redress.

F. Sherman Law LLP, Richard Sherman

- Colluded with Goguen and other co-defendants to suppress evidence and misdirect proceedings to prevent financial recovery and impede Plaintiff's ability to seek damages from liable parties.

G. Brown & Charbonneau LLP, Gregory Brown

- Filed retaliatory counterclaims under false pretenses, misrepresented Plaintiff's legal standing, and obstructed her ability to access legal damages, impacting future earnings and litigation funding.

H. Nemecek & Cole LLP, Frank Nemecek, Jonathan Cole, Marshall Cole, Michael Feenberg

- Joined the sabotage of Plaintiff's active legal matters, interfering with settlements and retainer relationships by misrepresenting Plaintiff's position and aiding retaliatory counterlitigation.

I. Monique Jilesen & Lenczner Slaght LLP

- Illegally contacted Plaintiff's Canadian banks, causing asset freezes that paralyzed Plaintiff's ability to fund legal actions or maintain stability.

J. Anthony McCusker & Goodwin Procter LLP; Keith Eggleton & Wilson Sonsini Goodrich & Rosati LLP

- Used their legal authority to file fraudulent instruments and retaliatory gag orders, effectively preventing Plaintiff from speaking publicly, publishing her work, or restoring her public and economic reputation.

## IV. ELEMENTS SATISFIED UNDER LAW

4. The actions of Defendants satisfy all elements under New York and Ontario common law, as well as international law standards for intentional interference with economic relations:

- Valid Economic Expectancy: Plaintiff had actual and prospective relationships yielding income, legal fees, and professional opportunities;
- Defendants' Knowledge: Defendants knew of these relationships and dependencies;
- Intentional Interference: Defendants committed overt, unlawful acts to disrupt Plaintiff's economic dealings;
- Malice and Improper Motive: The actions were not protected or privileged — they were calculated to harm;
- Causation and Damage: Plaintiff was deprived of earnings, assets, legal funding, and public standing.

*See:*
*Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004);

*Bhasin v. Hrynew*, 2014 SCC 71;
*Reach Mkt. Direct Inc. v. TRW Inc.*, 135 F. Supp. 2d 682 (S.D.N.Y. 2001);
*Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986).

## V. DAMAGES SUFFERED

5. As a direct and proximate result of this intentional economic interference, Plaintiff has suffered:

- Complete financial collapse and inability to pursue lawful claims;
- Foreclosure of intellectual property licensing, publishing, and employment prospects;
- Long-term medical disability from denied treatment;
- Homelessness, reputational ruin, and chronic danger to life and safety.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against the Defendants, jointly and severally, as follows:

a. General Damages:
$193,577,054.22 USD for deprivation of economic security, income, and financial solvency;

b. Special Damages:
$10,000,000.00 USD for economic losses related to blocked surgeries, employment, publishing contracts, and lost investments;

c. Lost Earnings and Future Capacity:
$10,000,000.00 USD in direct lost income and future earning impairment;

d. Punitive and Exemplary Damages:
$500,000,000.00 USD to punish malicious interference and prevent recurrence;

e. Prejudgment Interest:
10% per annum compounded annually from May 23, 2014, pursuant to *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43;

f. Equitable Relief:
Rescission of all fraudulent interference instruments and injunction against further sabotage of Plaintiff's economic affairs;

g. Costs of Suit:
Full attorneys' fees, expert costs, investigative and litigation expenses;

h. Injunctive Relief:
Permanent injunction barring Defendants from contacting Plaintiff's employers, banks, medical providers, or financial partners;

i. Any further relief this Court deems just, necessary, and proper under U.S., Canadian, and international law.

## VI. CIVIL RIGHTS, DISCRIMINATION, AND DIGNITY VIOLATIONS

## COUNT THIRTY-EIGHT: RACIAL AND GENDER DISCRIMINATION

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Quinn Emanuel Urquhart & Sullivan LLP, John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, Patricia Glaser, Jill Basinger, Glaser Weil LLP, William Paoli, Paoli & Purdy LLP, Brian Chase, Scott Ritsema, Bisnar Chase LLP, Richard Sherman, Sherman Law LLP, Gregory Brown, Brown & Charbonneau LLP, Nemecek & Cole LLP, Monique Jilesen, Lenczner Slaght LLP, Goodwin Procter LLP, Wilson Sonsini Goodrich & Rosati LLP, and all other named Defendants)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe*repleads, realleges, and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

## II. NATURE OF CLAIM: RACIAL AND GENDER DISCRIMINATION

2. The Defendants engaged in a sustained and systemic pattern of racial and gender-based discrimination, rooted in animus toward Plaintiff's identity as a woman of colour , a trafficking survivor, and a vocal whistleblower against elite power structures.

3. The discrimination was not incidental. It was deliberate, targeted, and integral to the criminal enterprise. The Defendants treated Plaintiff with contempt, hostility, and denial of fundamental rights solely because of her race, gender, and social status.

4. Defendants exploited Plaintiff's gender and ethnicity to:

    - Discredit her testimony;
    - Defame her as "unstable," "delusional," or "unfit";
    - Obstruct access to legal representation;
    - Deny her medical care and housing;
    - Isolate her from judicial protection;
    - Undermine her credibility through racist and sexist tropes;
    - Intimidate her into silence through public humiliation and retaliation.

## III. CULPABLE DEFENDANTS' DISCRIMINATORY ACTS

### A. Michael Lewis Goguen

- Repeatedly weaponized Plaintiff's race and gender to dehumanize, exploit, and silence her;
- Made disparaging comments about Plaintiff's ethnicity and used her identity to justify coercion, abuse, and isolation;
- Referred to Plaintiff as "property," "broken," and "mentally unstable," echoing deeply racist, misogynistic rhetoric to delegitimize her as a human being.

### B. Sequoia Capital & Two Bear Capital

- Supported, financed, and protected Goguen's abuse;
- Refused to investigate credible allegations due to racial and gender-based assumptions that Plaintiff was a liar, grifter, or gold-digger;
- Made institutional decisions reflecting a white supremacist and misogynist culture that erased Plaintiff's humanity.

C. Quinn Emanuel (John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter)

- Filed pleadings depicting Plaintiff as unstable, dangerous, and vexatious in language steeped in racist and sexist dog whistles;
- Issued gag orders and subpoenas to silence a woman of colour  from speaking out against abuse;
- Deliberately abandoned representation when Plaintiff refused to "tone down" her accusations against elite white men.

D. Glaser Weil LLP (Patricia Glaser, Jill Basinger)

- Refused to pursue viable civil rights claims due to Plaintiff's racial and gender identity;
- Belittled Plaintiff's trauma and medical conditions, and used her emotional distress as evidence of alleged mental instability.

E. Paoli & Purdy LLP, Bisnar Chase LLP, Sherman Law LLP, Brown & Charbonneau LLP, Nemecek & Cole LLP

- All abruptly abandoned or turned against Plaintiff under pressure from wealthier white defendants, citing vague claims of "reputational risk" or "difficult client" stereotypes;
- Used racialized and gendered tropes to justify legal sabotage and defamation.

F. Monique Jilesen & Lenczner Slaght LLP

- Weaponized their position to isolate Plaintiff in Canadian courts, with repeated references to Plaintiff's "lack of credibility" and "dramatic behavior," reinforcing racist, misogynist stereotypes in legal filings;

- Participated in hearings in which Plaintiff was not allowed to speak, in violation of due process and equality rights.

G. Goodwin Procter LLP & Wilson Sonsini Goodrich & Rosati LLP

- Engaged in retaliatory filings designed to bankrupt and silence Plaintiff;
- Maintained internal communications mocking Plaintiff's appearance, speech, and emotional state;
- Made decisions regarding Plaintiff's cases that disproportionately penalized her for conduct routinely tolerated from white male litigants.

IV. LEGAL BASIS

5. The conduct of Defendants violates:

- Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d & § 2000e (discrimination on basis of race and sex);
- 42 U.S.C. § 1981 – Equal rights under the law;
- 42 U.S.C. § 1983 – Deprivation of constitutional rights under colour of law;
- Canadian Charter of Rights and Freedoms, §§ 7, 15 (equality and security of the person);
- Canadian Human Rights Act, RSC 1985, c. H-6;
- Ontario Human Rights Code, RSO 1990, c H.19, §§ 1, 5, 9;
- CEDAW, Universal Declaration of Human Rights, International Covenant on Civil and Political Rights, and Palermo Protocol — all of which prohibit discrimination based on race and gender, and obligate state and corporate actors to protect survivors of trafficking without prejudice.

V. DAMAGES SUFFERED

6. As a direct and proximate result of Defendants' racial and gender discrimination, Plaintiff suffered:

- Loss of legal representation due to racist and sexist exclusion;

- Psychological trauma from public humiliation, abandonment, and isolation;
- Loss of income, career prospects, and housing;
- Delayed or denied medical care based on prejudiced judgments;
- Reputational harm reinforced by discriminatory court records;
- Entrapment in a cycle of abuse and judicial retaliation that continues to this day.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages – $193,577,054.22 USD for emotional, psychological, reputational, and economic injuries;

b. Special Damages – $10,000,000.00 USD for medical, relocation, and legal costs necessitated by the discriminatory conduct;

c. Loss of Earnings – $10,000,000.00 USD in lost present and future income;

d. Punitive and Aggravated Damages – $500,000,000.00 USD for malicious discrimination and systemic abuse;

e. Equitable Relief – Vacatur of discriminatory rulings and court orders issued under racial and gender bias;

f. Injunctive Relief – Permanent orders barring Defendants from retaliation, continued defamation, or discriminatory litigation;

g. Prejudgment Interest – 10% per annum compounded annually from May 23, 2014;

h. Costs of Suit – Full attorneys' fees, expert witness fees, and litigation costs;

i. Emergency Protection – Secure housing, trauma-informed medical care, legal advocacy, and security from further discrimination;

j. Any further relief this Court deems just, proper, and necessary under U.S., Canadian, and international law.

# COUNT THIRTY-NINE: VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE U.S. CONSTITUTION

(First, Fifth, and Fourteenth Amendments)
(Against: SEQUOIA CAPITAL, Michael Lewis Goguen, Quinn Emanuel Urquhart & Sullivan LLP, John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, Sequoia Capital, Two Bear Capital, Patricia Glaser, Glaser Weil LLP, William Paoli, Paoli & Purdy LLP, Brian Chase, Scott Ritsema, Bisnar Chase LLP, Richard Sherman, Sherman Law LLP, Gregory Brown, Brown & Charbonneau LLP, Nemecek & Cole LLP, and all state actors, court officers, and co-conspirators acting under colour of law)

## I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe* repleads and realleges all prior paragraphs and causes of action as though fully set forth herein.

## II. NATURE OF THE CLAIM

2. Defendants, individually and in concert, violated Plaintiff's clearly established constitutional rights under:

- The First Amendment – freedom of speech, right to petition the government for redress, and freedom from retaliatory censorship;
- The Fifth Amendment – protection against deprivation of liberty and property without due process of law;
- The Fourteenth Amendment – equal protection and substantive due process.

3. These violations were not accidental—they were deliberate, systemic, and executed through colour of law, abuse of legal process, judicial fraud, and collusion between private parties and state actors.

## III. CULPABLE DEFENDANTS AND SPECIFIC CONSTITUTIONAL VIOLATIONS

### A. Michael Lewis Goguen

- Engaged in retaliatory gag orders, surveillance, and obstruction of Plaintiff's ability to speak publicly about her trafficking;
- Conspired with state and judicial actors to freeze Plaintiff's assets and suppress her filings without legal process.

B. Quinn Emanuel LLP (John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter)

- Participated in ex parte communications, filed fraudulent vexatious litigant orders to suppress Plaintiff's speech, and colluded with judges to prevent her access to courts;
- Acted under colour  of law by leveraging judicial cooperation to silence, punish, and deprive Plaintiff of redress.

C. Sequoia Capital & Two Bear Capital

- Funded litigation campaigns that involved unlawful ex parte orders, seizure of property, and systemic interference in Plaintiff's First and Fifth Amendment rights.

D. Patricia Glaser & Glaser Weil LLP

- Colluded in the fabrication of legal documents used to deny Plaintiff due process;
- Participated in silencing and abandoning Plaintiff to sabotage her access to justice.

E. Paoli & Purdy LLP, Bisnar Chase LLP, Sherman Law LLP, Brown & Charbonneau LLP, Nemecek & Cole LLP

- Engaged in willful sabotage of Plaintiff's legal claims, abandonment in violation of due process, and systemic suppression of evidence and legal filings protected by the First and Fifth Amendments.

F. Judges, Court Clerks, and State Officials (Names to be listed in final amended complaint)

- Acted under colour  of law to:
    - Freeze Plaintiff's accounts without hearing;

- Seal her pleadings and deny her access to the courts;
- Deny her in forma pauperis status on retaliatory grounds;
- Issue ex parte gag orders and enforce fraudulent judgments without due process.

## IV. VIOLATED CONSTITUTIONAL RIGHTS

4. First Amendment Violations
    - Plaintiff's rights to petition the government and access the courts were obstructed by:
        - Filing vexatious litigant designations based on protected speech;
        - Gag orders and secret hearings;
        - Threats to Plaintiff's safety in retaliation for whistleblowing.
5. Fifth Amendment Violations
    - Defendants deprived Plaintiff of her liberty, property, and legal protections without:
        - Adequate notice;
        - A meaningful opportunity to be heard;
        - Any legitimate state interest or lawful authority.
6. Fourteenth Amendment Violations
    - The unequal treatment of Plaintiff—due to her race, gender, pro se status, and status as a trafficking survivor—violated her right to equal protection of the law and access to unbiased judicial proceedings.

## V. LEGAL AUTHORITY

7. Defendants' conduct violated the following constitutional provisions and precedents:

- First Amendment, U.S. Const. amend. I (see *Houston v. Hill*, 482 U.S. 451 (1987); *BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002));
- Fifth Amendment, U.S. Const. amend. V (see *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Mathews v. Eldridge*, 424 U.S. 319 (1976));
- Fourteenth Amendment, U.S. Const. amend. XIV (see *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Plyler v. Doe*, 457 U.S. 202 (1982));
- 42 U.S.C. § 1983 – Liability for persons acting under colour of law who deprive others of constitutional rights;
- Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) – Remedy for constitutional violations by federal actors.

VI. DAMAGES SUFFERED

8. As a direct and proximate result of these constitutional violations, Plaintiff has suffered:

- Loss of liberty, due process, and access to the courts;
- Emotional distress and trauma;
- Loss of shelter, property, and income;
- Exposure to retaliatory surveillance, harassment, and danger to life;
- Deprivation of equal protection, medical care, and dignity.

VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. Compensatory Damages: $193,577,054.22 USD for violation of Plaintiff's First, Fifth, and Fourteenth Amendment rights;

b. Special Damages: $10,000,000.00 USD for medical treatment, protective services, housing, and trauma care;

c. Punitive Damages: $500,000,000.00 USD to punish egregious constitutional violations committed with malice;

d. Declaratory Relief: A judicial declaration that Defendants' conduct violated the U.S. Constitution;

e. Equitable Relief:

- Vacatur of all judgments obtained in violation of due process;
- Injunctive orders to prevent further constitutional violations;
- Permanent protection orders ensuring Plaintiff's safety and access to courts;

f. Attorney's Fees and Costs: As authorized by 42 U.S.C. § 1988;

g. Interest: Pre- and post-judgment interest at 10% per annum compounded annually from May 23, 2014;

h. Any other relief the Court deems just and proper under the Constitution, federal statutes, and international human rights law.

**COUNT FORTY: VIOLATION OF THE UNIVERSAL DECLARATION OF HUMAN RIGHTS (UDHR)**

(Against: Sequoia Capital; Michael Lewis Goguen; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; John Quinn; Diane Doolittle; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Bisnar Chase LLP; Brian Chase; Scott Ritsema; Sherman Law LLP; Richard Sherman; Paoli & Purdy LLP; William Paoli; Gregory Brown; Brown & Charbonneau LLP; Nemecek & Cole LLP; and all co-conspirators, including judicial officers, court clerks, law enforcement agents, and state actors who participated in or enabled the systemic violations described herein.)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe* repeats, realleges, and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

## II. NATURE OF THE CLAIM

2. The Defendants, individually and in conspiracy, committed gross and systemic violations of the Universal Declaration of Human Rights (UDHR)—a foundational instrument of international law ratified by the United States as a member of the United Nations and binding under customary international law.

3. These violations were executed through a global criminal enterprise involving human trafficking, legal abuse, sexual exploitation, deprivation of liberty, medical neglect, forced silence, judicial sabotage, and targeted persecution of Plaintiff—a Black, female, disabled, and trafficked survivor.

## III. SPECIFIC ARTICLES OF THE UDHR VIOLATED

4. Defendants' conduct violated the following articles of the UDHR:

- Article 1 – *"All human beings are born free and equal in dignity and rights."* → Plaintiff was denied equal dignity, freedom, and recognition before the law.
- Article 3 – *"Everyone has the right to life, liberty and security of person."* → Plaintiff's liberty, safety, and life were placed in jeopardy by Defendants' acts of trafficking, stalking, surveillance, and judicial obstruction.
- Article 5 – *"No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment."* → Defendants subjected Plaintiff to psychological torture, coercion, and degrading treatment through fabricated legal proceedings, denial of medical care, housing, and court access.
- Article 6 – *"Everyone has the right to recognition everywhere as a person before the law."* → Plaintiff was denied recognition and protection under law through illegal gag orders, vexatious designations, sealed pleadings, and judicial erasure.
- Article 7 – *"All are equal before the law and are entitled without any discrimination to equal protection of the law."* → Plaintiff was denied equal protection due to her race, gender, disability, and status as a trafficking victim.
- Article 8 – *"Everyone has the right to an effective remedy… for acts violating… fundamental rights."*

→ Plaintiff was obstructed from all effective remedies in Canadian and U.S. courts through coordinated sabotage and obstruction by Defendants.

- Article 10 – *"Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal."*
→ Defendants bribed, coerced, and conspired with judicial officers to ensure Plaintiff never received a fair hearing.

- Article 12 – *"No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence…"*
→ Plaintiff was subjected to unlawful surveillance, IP tracking, email seizures, and data theft through illegal ex parte subpoenas.

- Article 13 – *"Everyone has the right to freedom of movement and residence…"*
→ Plaintiff was forced into transience, denied housing, and targeted with fraudulent ex parte asset freezes and evictions.

- Article 16(2) – *"Marriage shall be entered into only with the free and full consent of the intending spouses."*
→ Plaintiff was trafficked into a forced marriage under a false identity.

- Article 19 – *"Everyone has the right to freedom of opinion and expression…"*
→ Defendants censored Plaintiff through gag orders, retaliatory lawsuits, and judicial suppression of speech.

- Article 25 – *"Everyone has the right to a standard of living adequate for the health and well-being of himself…"*
→ Defendants obstructed Plaintiff's access to food, shelter, medical treatment, and psychological care.

## IV. LEGAL BASIS

5. The UDHR is binding on the United States and Canada under customary international law and their ratification of:

- The Charter of the United Nations (1945);
- The International Covenant on Civil and Political Rights (ICCPR);
- The Convention Against Torture (CAT);

- The Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW);
- The Palermo Protocol on Human Trafficking.

6. Federal courts recognize the UDHR as a source of enforceable norms under the Alien Tort Statute (28 U.S.C. § 1350) and as persuasive authority in claims of egregious human rights violations (see *Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980); *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)).

## V. DAMAGES

7. As a direct and proximate result of Defendants' violations of Plaintiff's inalienable human rights, she has suffered:

- Permanent psychological trauma and CPTSD;
- Life-threatening denial of food, housing, and medical care;
- Systemic judicial retaliation and erasure of personhood;
- Deprivation of property, speech, and legal identity;
- Ongoing danger to life, liberty, and dignity.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages: $193,577,054.22 USD for egregious violations of Plaintiff's human dignity, safety, and freedom;

b. Special Damages: $10,000,000.00 USD for medical care, shelter, trauma therapy, and safe relocation;

c. Punitive and Exemplary Damages: $500,000,000.00 USD to deter future violations of fundamental human rights by private or public actors;

d. Equitable Relief:

- Vacatur of all fraudulent orders, judgments, settlements, and contracts;

- Disgorgement of all profits derived from trafficking, fraud, or legal suppression;

e. Declaratory Judgment: Recognizing that Defendants' conduct constitutes a violation of the UDHR and customary international law;

f. Protective Injunctions: Barring any further acts of retaliation, interference, or harassment;

g. Restitution: Immediate return of all seized, frozen, or misappropriated funds and personal property;

h. Attorneys' Fees and Costs of Suit;

i. Pre- and Post-Judgment Interest at 10% per annum, compounded annually;

j. Any such further relief as this Honourable Court deems just, proper, and necessary under U.S., Canadian, and international law.

COUNT ONE: VIOLATION OF THE LAW OF NATIONS AND CUSTOMARY INTERNATIONAL LAW- CRIMES AGAINST HUMANITY

(Against: Michael Lewis Goguen; Sequoia Capital; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; John Quinn; Diane Doolittle; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Sherman Law LLP; Richard Sherman; Paoli & Purdy LLP; William Paoli; Gregory Brown; Brown & Charbonneau LLP; Nemecek & Cole LLP; Lenczner Slaght LLP; Monique Jilesen; Sahar Telbi; Cory Gilmore; Barbara Conway; and all other co-conspirators and state actors known and unknown.)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber Doe* repeats, realleges, and incorporates by reference all prior paragraphs, facts, and causes of action as though fully set forth herein.

## II. NATURE OF THE CLAIM

2. This claim arises under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, and customary international law recognized in the Law of Nations, the Rome Statute of the International Criminal Court, and other binding international instruments.

3. The Defendants, acting individually and in concert, committed, enabled, conspired to commit, or aided and abetted crimes against humanity, including but not limited to:

- Enslavement (Rome Statute Art. 7(1)(c));
- Persecution on the basis of gender, race, and political identity (Art. 7(1)(h));
- Torture (Art. 7(1)(f));
- Rape and sexual violence (Art. 7(1)(g));
- Enforced disappearance and judicial erasure (Art. 7(1)(i));
- Other inhumane acts intentionally causing great suffering and bodily or mental harm (Art. 7(1)(k)).

4. These acts occurred as part of a widespread and systematic attack directed against Plaintiff as a known whistleblower, trafficking survivor, and political dissident, with full knowledge of the attack and its criminal nature by the Defendants.

## III. ELEMENTS OF CRIMES AGAINST HUMANITY UNDER INTERNATIONAL LAW

5. Defendants' conduct satisfies the elements of crimes against humanity under international legal standards:

- Widespread or systematic attack directed against a civilian population;
- Multiple acts of rape, sexual enslavement, persecution, forced disappearance, torture, and inhumane treatment;
- Intent and knowledge of participation in a coordinated scheme of human rights abuse;

- State complicity and private sector collusion through abuse of law enforcement, courts, and international boundaries to further the criminal enterprise;
- Purposeful denial of remedies, access to justice, and restoration, perpetuating ongoing suffering.

6. The acts committed were not isolated: they were repeated across jurisdictions (U.S. and Canada), involved collusion among private firms, lawyers, state officials, and judges, and were motivated by financial greed, discrimination, retaliation, and silencing.

IV. SPECIFIC CONDUCT SUPPORTING THIS CLAIM

7. The following constitute acts of crimes against humanity within the meaning of customary international law:

- Trafficking, rape, and sexual slavery perpetrated and covered up by Michael Goguen, funded by Sequoia Capital, and laundered through law firms and shell entities (Art. 7(1)(c), (g));
- State-enabled persecution through court systems—judicial sabotage, false designations, gag orders, malicious prosecution, and enforced disappearance of Plaintiff's identity and voice (Art. 7(1)(h), (i));
- Torture through legal abuse, forced pro se status, obstruction of medical care, trauma therapy, and ongoing threats to Plaintiff's life and liberty (Art. 7(1)(f), (k));
- Systemic gender-based violence and racial targeting of Plaintiff as a Black woman and trafficking survivor—targeted to deny her legal protection, identity, dignity, and redress (Art. 7(1)(h));
- Use of legal systems as weapons—fabricating court orders, freezing assets, coercing silence through economic duress and digital surveillance, all to facilitate continued enterprise crimes and evade justice (Art. 7(1)(k)).

V. LEGAL BASIS

8. These violations are justiciable in U.S. federal courts under:

- 28 U.S.C. § 1350 (Alien Tort Statute);

- Filártiga v. Peña-Irala, 630 F.2d 876 (2d Cir. 1980);
- Sosa v. Alvarez-Machain, 542 U.S. 692 (2004);
- Customary International Law recognized by the United Nations, including the Universal Declaration of Human Rights, CEDAW, Palermo Protocol, and Rome Statute;
- The U.S. Constitution, which prohibits cruel and unusual punishment, denial of due process, and equal protection.

9. The United States has a duty under jus cogens norms to prevent, punish, and provide redress for crimes against humanity, regardless of domestic jurisdictional defenses raised by Defendants.

## VI. DAMAGES

10. As a result of Defendants' crimes against humanity, Plaintiff has suffered:

- Permanent psychological trauma, CPTSD, and suicidal ideation;
- Physical injuries and denial of critical medical care;
- Total collapse of financial and personal security;
- Social, legal, and judicial erasure;
- Exposure to violence, death threats, stalking, and forced invisibility.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages: $250,000,000.00 USD for physical, psychological, and emotional suffering;

b. Special Damages: $25,000,000.00 USD for medical care, secure relocation, trauma therapy, and protective services;

c. Punitive and Exemplary Damages: $500,000,000.00 USD to punish and deter future crimes against humanity committed by private entities and legal actors;

d. Equitable and Declaratory Relief:

- Full vacatur of all fraudulent orders, contracts, and proceedings facilitating these violations;
- Restitution of all converted, seized, or hidden assets;
- Declaratory judgment affirming that Defendants' acts constitute crimes against humanity under customary international law;

e. Emergency Injunctive Relief: For Plaintiff's security, medical care, and relocation;

f. Referral to International Authorities: Including the U.N. Special Rapporteurs on Torture, Human Trafficking, and Violence Against Women, and to the Office of the Prosecutor of the International Criminal Court (ICC) for investigation and potential prosecution;

g. Attorneys' Fees, Litigation Costs, and Expert Fees;

h. Pre- and Post-Judgment Interest at the legal rate of 10% per annum, compounded annually;

i. Any further relief this Honourable Court may deem just, proper, and necessary under U.S., Canadian, and international law.

## VII. REPUTATIONAL & PRIVACY TORTS

## COUNT FORTY-TWO: DEFAMATION

(Against: Vox Media, The New York Post, Quinn Emanuel Urquhart & Sullivan LLP, Michael Lewis Goguen, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Nemecek & Cole LLP, Patricia Glaser, Glaser Weil LLP, Jill Basinger, and all other co-conspirators)

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe repeats, realleges, and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

## II. JURISDICTION AND VENUE

This cause of action arises under the common law of the State of New York, as well as federal constitutional protections under the First and Fourteenth Amendments and international human rights law where applicable. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) as multiple Defendants reside, conduct business, and published defamatory content within this jurisdiction.

## III. FACTUAL BASIS FOR CLAIM

Defendants, individually and in coordinated concert, published, republished, and widely disseminated knowingly false, malicious, and defamatory statements about Plaintiff in national and international media, legal pleadings, social media, and press communications from 2014 to the present, including but not limited to:

- That Plaintiff fabricated allegations of human trafficking, rape, and abuse;
- That Plaintiff is a “vexatious litigant,”Racist” “mentally ill,” “delusional,” or unfit to access the courts;
- That Plaintiff attempted to extort Michael Goguen;
- That Plaintiff is a criminal, fraudulent claimant, or untrustworthy individual;
- That Plaintiff has no credibility or factual basis for her claims.

The defamatory publications were knowingly false and intended to:

- Discredit Plaintiff’s identity as a survivor of human trafficking and abuse;
- Obstruct judicial scrutiny of the Defendants’ crimes;
- Intimidate and retaliate against Plaintiff for whistleblowing and legal action.

## IV. DEFENDANTS’ ROLE IN DISSEMINATION

- Vox Media and The New York Post: Published defamatory content with reckless disregard for truth or verification, often relying solely on statements from Defendant law firms or sealed pleadings.
- Quinn Emanuel Urquhart & Sullivan LLP: Orchestrated coordinated defamatory campaigns through court pleadings, extrajudicial PR efforts, and off-the-record leaks to the press.
- Michael Goguen: Directed and financed media and legal strategies to destroy Plaintiff's credibility as retaliation for reporting trafficking.
- Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter (Quinn Emanuel), and Patricia Glaser, Jill Basinger (Glaser Weil): Repeatedly included defamatory language in public court filings and gave implied authorization for media amplification.
- Nemecek & Cole LLP: Amplified defamatory allegations via pleadings and extrajudicial dissemination to professional and legal networks.

## V. ELEMENTS OF DEFAMATION (NEW YORK LAW)

Under New York common law, Defendants are liable for defamation where:

1. A false statement was made about the Plaintiff;
2. The statement was published to a third party without privilege or authorization;
3. There was fault amounting to at least negligence or actual malice;
4. The statement was defamatory per se or caused special damages.

The statements at issue were:

- False and known to be false;
- Published widely and repeatedly;
- Made with actual malice, defined as knowledge of falsity or reckless disregard for the truth;
- Defamatory per se, as they impute criminal conduct, mental illness, and unchastity.

## VI. DAMAGES SUFFERED

As a direct and proximate result of the Defendants' defamatory conduct, Plaintiff has suffered:

- Irreparable reputational harm, resulting in blacklisting from legal, medical, and advocacy circles;
- Severe emotional distress, including PTSD, humiliation, and psychological injury;
- Economic losses, including lost employment opportunities and legal representation;
- Social alienation, stalking, threats, and danger arising from the public dissemination of defamatory content.

## VII. RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages:
$193,577,054.22 USD for emotional distress, reputational harm, and loss of dignity.

b. Special Damages:
$10,000,000.00 USD for trauma therapy, crisis relocation, and medical care necessitated by reputational damage.

c. Lost Earnings:
$10,000,000.00 USD for long-term career devastation and economic losses.

d. Punitive Damages:
No less than $500,000,000.00 USD to punish Defendants' malicious conduct and deter future attacks against survivors.

e. Prejudgment and Post-Judgment Interest:
At the rate of 10% per annum, compounded annually from May 23, 2014, until judgment.

f. Injunctive Relief:

- Mandatory retractions published with equal prominence;
- Deletion of defamatory content from online archives and legal pleadings;
- A permanent cease and desist order prohibiting further defamatory publication.

g. Declaratory Relief:
That the published statements were false, defamatory, and violate Plaintiff's constitutional and human rights.

h. Costs of Suit:
Including attorneys' fees, investigative costs, expert witness fees, and litigation expenses.

i. Equitable Relief:
As this Court deems just and proper under U.S. federal law, New York law, and customary international law.

**COUNT FORTY-THREE: INVASION OF PRIVACY**
(Against: *Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Patricia Glaser, Glaser Weil LLP, Jill Basinger, Rivers Morrell, Gregory Brown, William Paoli, Paoli & Purdy LLP, Bisnar Chase LLP, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law LLP, Nemecek & Cole LLP, Michael Strickland, Sitrick & Company, Christopher Reynolds, Estate of David Fechheimer, and all individually named and co-conspiring defendants)*)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff Amber Doe fully incorporates and re-alleges all preceding paragraphs and causes of action in this Complaint as though fully set forth herein.

II. LEGAL BASIS FOR CLAIM

2. This claim arises under:
    - U.S. common law of invasion of privacy, including:
        - *Intrusion upon seclusion*;

        - *Public disclosure of private facts*.
    - Restatement (Second) of Torts §§ 652A–E, as adopted by federal and New York courts.
    - Fourth and Fourteenth Amendments of the U.S. Constitution, as incorporated through 42 U.S.C. § 1983.
    - Canadian Tort Law, as affirmed in *Jones v. Tsige*, 2012 ONCA 32.
    - International Human Rights Law, including:
        - *Universal Declaration of Human Rights* (Art. 12, 17);
        - *International Covenant on Civil and Political Rights* (Art. 17);
        - *CEDAW* and the *Palermo Protocol*.

## III. FACTUAL ALLEGATIONS

### A. Physical Surveillance and Stalking

3. Defendants, acting in concert, retained private security firms and intelligence contractors—including *Christopher Reynolds*, the *Estate of David Fechheimer*, and Sitrick-affiliated contractors—to follow, intimidate, and surveil Plaintiff across U.S., Canadian, and international borders.

### B. Digital Espionage and Hacking

4. *Goguen*, *Sequoia Capital*, *Quinn Emanuel*, and associated law firms authorized and orchestrated the hacking of Plaintiff's:
    - Email accounts;
    - Cloud storage (iCloud, Google Drive);
    - Encrypted legal case files;
    - Confidential medical and psychiatric data.
5. Defendants used fraudulent subpoenas and ex parte motions to acquire Plaintiff's IP logs and confidential correspondence with attorneys and physicians.

C. Medical and Financial Invasion

6. *Michael Goguen*, with aid from *Diane Doolittle*, *Glaser Weil LLP*, and others, illegally accessed and circulated:
   - Plaintiff's medical files (including records of gynecological trauma from rape);
   - Psychiatric assessments;
   - Surgical photographs;
   - Financial trust data.
7. *Two Bear Capital* and *Quinn Emanuel* enforced fraudulent Mareva injunctions that froze Plaintiff's accounts and exposed her to eviction, hunger, and loss of legal counsel.

D. Media Dissemination and Defamation

8. Defendants engaged *Sitrick & Company*, *Michael Strickland*, and *Vox Media* to seed defamatory, humiliating falsehoods about Plaintiff in public platforms, portraying her as:
   - Mentally unstable;
   - Racist
   - A prostitute;
   - A criminal/extortionist.
9. These stories were released knowing Plaintiff was a recognized human trafficking survivor and legal whistleblower.

E. Sexual Privacy Violations

10. Defendants republished and broadcast, without consent, graphic details of:
    - Plaintiff's rape injuries;
    - HPV exposure;
    - Reproductive trauma;

  - Sexual violence.

## IV. ELEMENTS OF INVASION OF PRIVACY ESTABLISHED

11. Defendants:

- Intentionally intruded upon Plaintiff's seclusion and private life;
- Publicly disclosed private, intimate facts with no public interest;
- Acted with actual malice, fraud, and criminal intent;
- Engaged in conduct that would offend any reasonable person.

12. Their actions meet the thresholds for both:

- *Intrusion upon seclusion* (covert surveillance, hacking, illegal data acquisition);
- *Public disclosure of private facts* (sexual trauma, psychiatric data, reputational ruin).

## V. DAMAGES

13. As a direct and proximate result of Defendants' intentional and malicious conduct, Plaintiff has suffered:

- Emotional and Psychological Harm:
  - Complex- PTSD, panic attacks, Anxiety, Parasomnia, depression, suicidal ideation.
- Reputational and Economic Loss:
  - Total loss of income, housing, and professional standing.
- Physical Endangerment:
  - Exposure to stalking, sexual violence, and retaliation.
- Constitutional and Human Rights Deprivation:
  - Loss of dignity, privacy, and bodily autonomy.

## VI. RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, as follows:

A. General Damages
$154,639,535.77 USD for emotional distress, reputational damage, and deprivation of liberty.

B. Special Damages
$10,000,000.00 USD for therapy, relocation, medical, and protective services.

C. Loss of Earnings
$10,000,000.00 USD for professional destruction and lost future income.

D. Prejudgment Interest
10% compound interest annually from May 23, 2014, until judgment.

E. Punitive and Aggravated Damages
No less than $500,000,000.00 USD to punish willful, malicious privacy violations.

F. Injunctive Relief

- Cease and desist orders;
- Permanent removal of all defamatory and unlawfully obtained content;
- Ban on future contact, surveillance, or digital intrusion.

G. Declaratory Relief
Declaration that Defendants violated Plaintiff's U.S. constitutional rights, international human rights, and privacy protections.

H. Costs of Suit
Full attorneys' fees, expert witness costs, investigation expenses, and protection services.

I. Further Relief
Any additional relief this Court deems just, proper, and necessary to remedy the unprecedented violations of law and humanity.

## COUNT FORTY-FOUR: STALKING

*(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Christopher Reynolds, Estate of David Fechheimer, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, John Quinn, Quinn Emanuel Urquhart & Sullivan LLP, and all co-conspirators known and unknown)*

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff Amber Doehereby fully incorporates, re-alleges, and restates all preceding paragraphs and Causes of Action in this Complaint as if fully set forth herein.

II. LEGAL BASIS FOR CLAIM

2. This Count arises under the following U.S. and international legal authorities:

- 18 U.S.C. § 2261A (Federal Interstate Stalking Statute) – criminalizes placing a person in reasonable fear through conduct that crosses state or national lines;
- 42 U.S.C. § 1983 – for violation of civil rights under colour  of law or in conspiracy with state actors;
- New York Penal Law § 120.45 et seq. – criminal stalking under state law;
- New York common law torts – including stalking, harassment, and intentional infliction of emotional distress;
- Fourth and Fourteenth Amendments – right to privacy, liberty, and bodily integrity;
- International law, including:
    - *Universal Declaration of Human Rights* (UDHR) – Articles 1, 3, 5, 7, 8;
    - *International Covenant on Civil and Political Rights* (ICCPR) – Articles 7 and 17;

- *CEDAW* and the *Palermo Protocol* – establishing stalking and coercive control as forms of gender-based violence and exploitation.

## III. FACTUAL ALLEGATIONS OF STALKING

3. From approximately 2014 to present, the above-named Defendants have engaged in a coordinated, transnational stalking campaign to terrorize, silence, and coerce Plaintiff Amber Doe.

4. This conduct included, but was not limited to:

### A. Physical Surveillance

- Deployment of known private intelligence contractors (*Christopher Reynolds*, *Estate of David Fechheimer*) to monitor Plaintiff's residence, travel, meetings, and safe houses in New York, California, Ontario, Europe, and international airports;
- Surveillance of Plaintiff's medical visits, court appearances, legal counsel meetings, and humanitarian advocacy efforts.

### B. Electronic Tracking & Cyber Surveillance

- Unlawful tracking of Plaintiff's IP addresses, phone location data, communications metadata, and digital footprints using spyware, data harvesting, and spoofed discovery tools;
- Unauthorized interception of confidential legal filings, psychiatric records, therapy notes, and encrypted communications.

### C. Coercive Discovery Abuse & Subpoena Fraud

- Issuance of fraudulent civil subpoenas through *Quinn Emanuel Urquhart & Sullivan LLP* and affiliated law firms to access confidential and privileged documents under false pretenses.

### D. Direct Harassment & Threats

- Sending harassing and threatening emails, texts, and calls;

- Repeated anonymous death threats, threats of rape, threats of rendition or institutionalisation, and organized smear campaigns online and offline;
- Appearances at or near Plaintiff's homes, medical providers, and public engagements to intimidate or surveil.

E. Retaliation and Coercion

- Retaliatory conduct to force Plaintiff into pro se status by driving away her retained counsel through intimidation;
- Coordinated with corporate media and public relations firms (*e.g., Sitrick & Company*) to malign Plaintiff's credibility and silence whistleblowing.

## IV. ELEMENTS OF STALKING ESTABLISHED

5. The Defendants' conduct satisfies all elements under federal and New York stalking law:

- Repeated and willful contact or pursuit of Plaintiff across jurisdictional lines;
- Intent to harass, surveil, or terrorize, with no lawful justification;
- Actual harm and reasonable fear suffered by Plaintiff, including fear for her life, bodily harm, and psychological collapse;
- Conduct committed with malice, fraud, and oppressive intent, as part of a broader racketeering and human trafficking enterprise.

## V. DAMAGES

6. As a direct and proximate result of Defendants' stalking campaign, Plaintiff has suffered:

- Severe emotional distress and trauma, including panic attacks, Complex-PTSD, insomnia, hypervigilance, and suicidality;
- Physical and medical complications worsened by stress and unsafe conditions;
- Economic and professional ruin, including loss of employment, isolation from legal counsel, and forced relocation;

- Total deprivation of privacy, dignity, bodily autonomy, and personal security;
- Ongoing threats to life, liberty, and bodily integrity.

VI. RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully seeks judgment against all Defendants, jointly and severally, as follows:

A. General Damages
$154,639,535.77 USD for stalking-related harm, emotional distress, and constitutional violations.

B. Special Damages
$10,000,000.00 USD for therapy, relocation, private security, and medical treatment.

C. Loss of Earnings
$10,000,000.00 USD for lost career opportunities and financial devastation caused by stalking and intimidation.

D. Prejudgment Interest
10% compound interest per annum from May 23, 2014, to the date of judgment.

E. Costs of Suit
Full reimbursement of legal fees, investigative costs, expert witness fees, and personal security expenses.

F. Punitive and Exemplary Damages
No less than $500,000,000.00 USD for intentional, malicious stalking across international borders.

G. Injunctive Relief

- Permanent restraining orders;
- Ban on surveillance, stalking, or contact with Plaintiff;
- Mandatory removal of surveillance infrastructure.

H. Court-Ordered Security Protection

- Immediate protective services, security detail, and medical/emergency relocation;

- Government or court-authorized bodyguard protection where applicable.

I. Declaratory Relief

- Judicial finding that Defendants' conduct constitutes stalking under U.S. federal law, New York law, and international human rights law;
- A finding that Plaintiff is a targeted victim of a stalking campaign linked to her status as a human trafficking survivor and whistleblower.

J. Further Relief

- As this Honorable Court deems just, proper, and necessary to ensure Plaintiff's protection, dignity, and access to justice.

**VIII. OTHER CLAIMS : CROSS-BORDER / SUPPLEMENTAL (ATS)**

**COUNT FORTY-SIX: VIOLATION OF THE CONSTITUTION OF CANADA**

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Glaser Weil LLP, Goodwin Procter LLP, Wilson Sonsini Goodrich & Rosati LLP, and all individually named co-Defendants)
*(Asserted via 28 U.S.C. § 1367 (supplemental jurisdiction) and/or 28 U.S.C. § 1350 (Alien Tort Statute))*

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doehereby re-alleges and incorporates by reference all preceding paragraphs, counts, and factual assertions as though fully set forth herein.

## II. LEGAL BASIS FOR CLAIM

This Cause of Action arises under the Constitution of Canada, including the Canadian Charter of Rights and Freedoms, which protects citizens and non-citizens within Canadian jurisdiction and whose violations may be actionable in U.S. courts under the Alien Tort Statute (ATS) or under supplemental jurisdiction, where such violations arise from the same nucleus of operative fact as Plaintiff's federal claims.

The following provisions of the Canadian Charter of Rights and Freedoms have been systematically violated by Defendants:

- Section 7 – Right to life, liberty, and security of the person, and the right not to be deprived thereof except in accordance with the principles of fundamental justice;
- Section 12 – Right to be free from cruel and unusual treatment or punishment;
- Section 15 – Right to equality before and under the law and the right to equal protection and benefit of the law without discrimination;
- Section 24(1) – Right to an effective remedy where Charter rights have been infringed or denied.

## III. CONDUCT CONSTITUTING CONSTITUTIONAL VIOLATIONS

Defendants, individually and in concert, engaged in a deliberate, coordinated, and transnational scheme involving human trafficking, judicial fraud, systemic retaliation, and abuse of state power, resulting in the complete abrogation of Plaintiff's Charter-protected rights.

Specific acts by Defendants include:

- Violations of Section 7 (Life, Liberty, and Security of the Person)
  Through forced servitude, judicial sabotage, retaliatory litigation, fraudulent injunctions, surveillance, and systemic intimidation, Defendants deprived Plaintiff of her physical safety, medical freedom, bodily autonomy, legal redress, and ability to live freely without coercion.
- Violations of Section 12 (Cruel and Unusual Treatment)
  Plaintiff was subjected to rape, sodomy, psychological torture, coerced labor, medical abuse, and unlawful confinement. These acts, orchestrated or facilitated

by Defendants, constitute cruel and unusual treatment under Canadian and international law.

- Violations of Section 15 (Equality Rights)
  Plaintiff was systematically denied equal protection and access to justice due to her gender, racial background, socioeconomic vulnerability, and survivor status. Defendants exploited her status as a trafficking victim to strip her of legal standing, credibility, and personhood.

- Violations of Section 24 (Remedies Clause)
  Defendants obstructed every meaningful legal avenue of redress through fraudulent restraining orders, secret hearings, perjured affidavits, denial of fee waivers, bribery of judges, and collusion with Canadian courts and officials. Plaintiff was effectively denied access to any impartial judicial process in Ontario, despite clear evidence of criminal and constitutional violations.

This unlawful conduct occurred within the jurisdiction of Canadian courts and government actors, and was financed, directed, or supported from within the United States. The transnational nature of the conspiracy brings this claim within the scope of the Alien Tort Statute and the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

## IV. DAMAGES

As a direct and proximate result of the above-described violations of the Canadian Constitution, Plaintiff has suffered:

- Complete loss of her liberty, safety, and bodily autonomy;
- Severe and ongoing PTSD, emotional trauma, and psychiatric injury;
- Medical harm and denial of critical healthcare access;
- Destruction of personal, professional, and legal rights;
- Reputational annihilation, economic devastation, and systemic silencing.

## V. PRAYER FOR RELIEF — COUNT FORTY-SIX

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, and requests the following relief:

A. General Damages
In the amount of $154,639,535.77 USD/CAD for severe emotional distress, deprivation of liberty, and physical and psychological harm.

B. Special Damages
In the amount of $10,000,000.00 USD/CAD for medical treatment, therapy, security, housing, and survivor services.

C. Loss of Earnings
In the amount of $10,000,000.00 USD/CAD for loss of income, business opportunities, and financial independence.

D. Compound Interest
At a rate of 10% per annum, compounded annually from May 23, 2014, to the date of judgment.

E. Punitive and Exemplary Damages
No less than $500,000,000.00 USD, to punish and deter Defendants' egregious constitutional misconduct and willful disregard of human dignity.

F. Treble Damages
As permitted under applicable U.S. and Canadian statutes, including but not limited to the Civil RICO Act, the Ontario Tort of Human Trafficking Act, and the Canadian Victims Bill of Rights.

G. Attorneys' Fees and Costs of Suit
Including expert witness fees, document recovery, forensic investigation, emergency medical shelter, and protective relocation.

H. Permanent Injunctive Relief
Enjoining all Defendants from engaging in any further retaliation, surveillance, obstruction, or abuse against Plaintiff.

I. Accounting and Disgorgement
Of all profits, proceeds, assets, and benefits derived from the human trafficking enterprise, judicial corruption, and systemic abuse.

J. Declaratory Relief
Declaring that Defendants' acts constitute violations of the Canadian Charter of Rights and Freedoms, international human rights law, and fundamental constitutional guarantees.

K. Any and All Further Relief
As this Honourable Court deems just, equitable, and necessary in the interest of justice, public safety, and international accountability.

**COUNT FORTY-SEVEN: VIOLATION OF THE CANADIAN VICTIMS BILL OF RIGHTS**

(Pursuant to the Canadian Victims Bill of Rights, S.C. 2015, c. 13)
(Asserted via 28 U.S.C. § 1350 (Alien Tort Statute) and/or 28 U.S.C. § 1367 (Supplemental Jurisdiction))

AGAINST:
Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Glaser Weil LLP, Patricia Glaser, Jill Basinger, William Paoli, Paoli & Purdy LLP, Bisnar Chase LLP, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law, Gregory Brown, Brown & Charbonneau LLP, Goodwin Procter LLP, Anthony McCusker, Wilson Sonsini Goodrich & Rosati LLP, and DOES 1–100.

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doehereby repeats, realleges, and incorporates by reference all preceding paragraphs, factual allegations, and Counts as though fully set forth herein.

II. LEGAL BASIS FOR CLAIM

This Cause of Action arises under the Canadian Victims Bill of Rights (CVBR), S.C. 2015, c. 13, which recognizes and affirms the rights of crime victims in Canada. The statute guarantees enforceable rights to protection, participation, information, restitution, and remedy.

Because Plaintiff's harms were directly caused by acts of transnational abuse, trafficking, and systemic obstruction—including events occurring within Canada and affecting Plaintiff as a trafficking survivor—the SDNY may properly exercise jurisdiction under:

- The Alien Tort Statute (28 U.S.C. § 1350), permitting claims for violations of international norms of justice and dignity;

- Supplemental Jurisdiction (28 U.S.C. § 1367), as the same facts underlie Plaintiff's U.S. constitutional, TVPRA, and RICO claims.

## III. VIOLATIONS OF SPECIFIC RIGHTS UNDER THE CVBR

The Defendants, acting individually and in concert, committed gross and systemic violations of the CVBR, including but not limited to the following:

- Section 8 – Right to Information:
  Defendants deliberately concealed the status, outcome, and contents of legal proceedings in Canada and the U.S. Plaintiff was denied access to court records, decisions, and notices, while secret ex parte judgments were entered that directly harmed her legal and personal interests.

- Section 9 – Right to Protection:
  Defendants facilitated ongoing surveillance, harassment, intimidation, and retaliation against Plaintiff in Canada and the U.S. They colluded to obstruct criminal complaints, undermined investigations into trafficking, and exploited judicial and law enforcement agencies to maintain Plaintiff's exposure to violent danger.

- Section 10 – Right to Participation:
  Plaintiff was barred from hearings, her filings were sealed or rejected, and judicial actors colluded with defense counsel to block her meaningful participation in the legal system. Her status as a trafficking survivor was ignored or weaponized against her.

- Section 16 – Right to Restitution and Remedy:
  Through fraudulent Mareva injunctions, denial of fee waivers, abuse of process, and secret judgments, Defendants intentionally denied Plaintiff access to legal counsel, remedies, compensation, and enforcement of her basic human rights. Her $40 million settlement was stolen, and every route to recovery was obstructed.

## IV. NATURE OF DEFENDANTS' CONDUCT

The actions of Defendants were deliberate, retaliatory, and malicious, and carried out with full awareness of Plaintiff's vulnerable status as a victim of human trafficking, sexual violence, and systemic exploitation. Rather than protect her rights under the CVBR, Defendants conspired to erase them.

The pattern of obstruction and abuse included:

- Repeated fraud upon the court in Ontario and California;
- Collusion with Canadian and U.S. judges and state actors to sabotage due process;
- Active interference with police and RCMP investigations;
- Harassment and surveillance of Plaintiff while litigating pro se under fear of death.

V. DAMAGES

As a direct and proximate result of the violations of the Canadian Victims Bill of Rights, Plaintiff has suffered catastrophic and continuing harm, including:

- Severe psychological trauma, PTSD, and emotional distress;
- Physical injury and deprivation of necessary medical treatment;
- Loss of career, housing, income, and basic security;
- Continued threats to her safety, liberty, and life;
- Deprivation of access to justice and irreparable reputational harm.

VI. PRAYER FOR RELIEF ~ COUNT FORTY-SEVEN

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all named Defendants, jointly and severally, and grant the following relief:

A. General Damages
In the amount of $193,577,054.22 USD/CAD, for the full extent of Plaintiff's emotional, physical, and reputational injuries caused by Defendants' systemic denial of her rights.

B. Special Damages
In the amount of $10,000,000.00 USD for medical care, psychiatric treatment, security measures, survivor recovery, and therapeutic services.

C. Loss of Earnings
In the amount of $10,000,000.00 USD for destruction of Plaintiff's career, opportunities, and earning potential.

D. Prejudgment and Post-Judgment Interest
At a rate of 10% per annum, compounded annually, from May 23, 2014, to the date of final judgment.

E. Punitive and Exemplary Damages
To be determined at trial but not less than $500,000,000.00 USD, based on the willful, egregious, and repeated violations of Plaintiff's statutory and human rights.

F. Attorneys' Fees and Legal Costs
Including forensic investigation, protective services, relocation assistance, and expert witness expenses.

G. Equitable Relief
An injunction prohibiting Defendants from continued retaliation, obstruction, or denial of Plaintiff's rights under the CVBR and international law.

H. Declaratory Relief
Declaring that Defendants' actions constitute violations of the Canadian Victims Bill of Rights, the law of nations, and internationally recognized human rights protections.

I. Such Further and Additional Relief
As this Honourable Court may deem just, equitable, and necessary in the interests of justice, deterrence, and the public conscience.

**COUNT FORTY-EIGHT: UNJUST ENRICHMENT**

(Against: Quinn Emanuel Urquhart & Sullivan LLP, Wilson Sonsini Goodrich & Rosati LLP, Goodwin Procter LLP, Nemecek & Cole LLP, Sherman Law, Glaser Weil LLP, Paoli & Purdy LLP, Bisnar Chase LLP, Rivers Morrell, Diane Doolittle, Anthony McCusker, Patricia Glaser, Jill Basinger, William Paoli, Ryan Baker, Michael Strickland, Sitrick & Company, Chris Reynolds, Brian Nash, Michael Feenberg, Michael McCarthy, Mark Schaeffer, Michael Frederick Grady, Bruce Eric Van Dalsem, John Quinn, Kathleen Sullivan, Christopher Taybak, William C. Price, Mark Holsher,

Suong Nguyen, Joseph Sarles, Megan M. Kerr, Patrick Doolittle, Margaret Caruso, Michael Lifrack, Sara Pollack, Jonathan B. Cole, Frank Nemecek, Marshall Cole, Joseph W. Scott, Alex Gerbi, Ted Greeno, Aiden O'Rourke, and all co-conspirators known and unknown)

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe incorporates by reference and re-alleges all preceding paragraphs, Causes of Action, and factual allegations as if fully set forth herein.

II. LEGAL BASIS FOR CLAIM

This Count arises under:

- Equity and common law of the United States and the State of New York (see *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777 (2012); *Paramount Film Distributing Corp. v. State of N.Y.*, 30 N.Y.2d 415 (1972));
- Canadian Common Law of Unjust Enrichment, see *Garland v. Consumers' Gas Co.*, 2004 SCC 25;
- Restatement (Third) of Restitution and Unjust Enrichment, § 1, § 3 (U.S. doctrine);
- 28 U.S.C. § 1367 (Supplemental Jurisdiction);
- Alien Tort Statute (28 U.S.C. § 1350) for cross-border human rights violations where unjust enrichment arises from violations of jus cogens norms (e.g., trafficking, torture, sexual violence);
- International Law, including the *Palermo Protocol*, *UDHR*, and *CEDAW*, where the enrichment was directly derived from exploitation of a trafficking victim.

III. FACTUAL ALLEGATIONS

Defendants knowingly, maliciously, and unlawfully accepted and retained monetary, legal, and reputational benefits that were procured by:

- Human trafficking, coercion, and systemic fraud upon the court;

- Obstruction of justice, retaliation, and extortion;
- Legal malpractice and abuse of fiduciary duty;
- Misappropriation of settlements, legal fees, and forced judgments.

Plaintiff directly conferred tangible and quantifiable financial benefits upon these Defendants, including:

- Retainers, legal fees, and forced settlements paid under duress;
- Forfeited proceeds from the breached $40,000,000.00 Goguen settlement;
- Costs of defending fraudulent actions initiated by Defendants to obstruct justice and retaliate against Plaintiff;
- Court-ordered fees from void or malicious rulings obtained by deceit, suppression of evidence, or bribery.

The aforementioned Defendants retained these benefits without legal justification and with full knowledge that:

- Plaintiff was trafficked and coerced into legal agreements;
- The funds were acquired through systems of sexual, legal, and economic exploitation;
- The retention of these proceeds violated domestic and international law.

## IV. ELEMENTS OF UNJUST ENRICHMENT SATISFIED

Under New York and Canadian law, Plaintiff must show:

1. Benefit conferred upon Defendants by Plaintiff;
2. Knowledge and acceptance of the benefit by Defendants;
3. Inequitable retention of the benefit without legal justification.

All elements are satisfied here:

- Plaintiff provided monetary compensation, legal victories, coerced settlements, and public credibility;

- Defendants knowingly received these benefits while violating Plaintiff's civil, constitutional, and human rights;
- No valid contract, consent, or lawful basis justifies Defendants' retention of these ill-gotten gains.

## V. DAMAGES

As a direct and proximate result of the unjust enrichment and unlawful retention of funds and benefits by Defendants, Plaintiff has sustained:

- Catastrophic economic injury;
- Destruction of financial independence and access to restitution;
- Psychological devastation from knowing her victimization funded her abusers' enrichment.

## VI. RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully demands judgment against all named Defendants, jointly and severally, as follows:

A. Restitution and Disgorgement
Immediate disgorgement of all:

- Legal fees,
- Retainer deposits,
- Settlement proceeds,
- Bribes,
- Illicit profits,
totaling no less than $40,000,000.00 USD, and including any assets obtained via enforcement of void or fraudulent judgments.

B. General Damages
$193,577,054.22 USD for economic harm, deprivation of justice, systemic abuse, and denial of restitution.

C. Special Damages
$10,000,000.00 USD for therapy, security, relocation, and medical intervention necessitated by financial destruction.

D. Loss of Earnings
$10,000,000.00 USD for lost business, legal representation, income, and future career damage.

E. Pre- and Post-Judgment Interest
At 10% compound annual interest from May 23, 2014, through the date of final judgment and full satisfaction.

F. Punitive Damages
In excess of $500,000,000.00 USD, for egregious, repeated, knowing exploitation of a human trafficking victim by licensed attorneys, law firms, and corporate actors.

G. Constructive Trust / Equitable Lien
Over all assets, accounts, or properties held by Defendants which were purchased or augmented by the unjustly retained funds.

H. Permanent Injunction
Enjoining Defendants from:

- Retaining or transferring said funds;
- Initiating retaliatory litigation;
- Engaging in any further exploitation of Plaintiff.

I. Costs of Suit
Including attorneys' fees, expert testimony, investigation, court costs, relocation, and protective security.

J. Other Relief
Any other legal or equitable relief this Honourable Court deems just and appropriate under U.S., Canadian, and international law.

**COUNT FORTY-EIGHT: VIOLATION OF THE ONTARIO HUMAN RIGHTS CODE AND THE CANADIAN HUMAN RIGHTS ACT**

(Asserted Pursuant to Supplemental Jurisdiction and/or the Alien Tort Statute, 28 U.S.C. § 1350)
(Against All Defendants Named in this Complaint)

Plaintiff Amber Doe hereby re-alleges and incorporates by reference all prior allegations of this Complaint as if fully set forth herein.

This cause of action arises under the Ontario Human Rights Code, R.S.O. 1990, c. H.19, and the Canadian Human Rights Act, R.S.C. 1985, c. H-6, both of which are asserted under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) and/or under the Alien Tort Statute, 28 U.S.C. § 1350, in light of the transnational nature of Defendants' conduct, which implicates international legal norms, universal human rights, and cross-border violations of law.

I. STATUTORY FRAMEWORK

Under the Ontario Human Rights Code, Plaintiff possessed rights to:

- Equal treatment in services, goods, facilities, and housing (Section 1);
- Equal opportunity in employment (Section 5(1));
- Freedom from reprisal or interference with the exercise of those rights (Section 9).

Under the Canadian Human Rights Act, Plaintiff was protected against:

- Discrimination in services, employment, and housing on the basis of sex, race, national origin, disability, and retaliation (Sections 3, 5, 7, 10);
- Sexual harassment, coercion, and retaliatory acts by both private and public actors;
- Systemic discriminatory practices including denial of services, access to legal remedies, and the imposition of unequal conditions in violation of federal norms.

II. DEFENDANTS' VIOLATIONS

The Defendants—individually and in coordinated concert—committed egregious, ongoing, and systemically abusive acts in both Ontario and federal Canadian jurisdictions. These acts included:

- Gender-based violence, including sexual exploitation, forced servitude, and economic deprivation targeted at Plaintiff as a female survivor of human trafficking;
- Denial of access to legal representation due to her gender, race, and survivor status, in violation of her right to equal treatment;
- Bribery of Ontario judges, including Justices Cory Gilmore and Barbara Conway, who participated in issuing fraudulent Mareva injunctions and ex parte rulings that froze Plaintiff's bank accounts and deprived her of shelter, food, and medical access;
- Suppression of evidence, refusal to hear claims, and obstruction of proceedings through collusion with law firms including Quinn Emanuel, Glaser Weil, and Goodwin Procter;
- Retaliation and reprisal, including systemic denial of housing, employment, medical services, and judicial redress;
- Publication of false and defamatory materials, discriminatory gag orders, and silencing tactics meant to suppress Plaintiff's identity, dignity, and access to equal justice.

III. LEGAL CONSEQUENCES

The Defendants' conduct constitutes:

- A flagrant violation of the Ontario Human Rights Code through denial of equal access to services, housing, legal process, and the courts;
- A violation of the Canadian Human Rights Act, through discrimination in federally regulated sectors, judicial sabotage, and systematic denial of redress;
- A transnational human rights violation, actionable under the Alien Tort Statute, as the acts committed constitute customary international law violations of human dignity, equality, and protection from gender-based violence;
- A violation of universal legal norms, including the Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW) and the International Covenant on Civil and Political Rights (ICCPR).

As a direct and proximate result of these violations, Plaintiff suffered:

- Severe physical injuries, psychological trauma, and emotional devastation;
- Loss of livelihood, housing, medical care, legal redress, and basic dignity;
- Ongoing fear, surveillance, and coercion amounting to constructive torture.

IV. PRAYER FOR RELIEF — COUNT FORTY-EIGHT

WHEREFORE, Plaintiff respectfully demands judgment against all named Defendants, jointly and severally, as follows:

a. General damages in the amount of $154,639,535.77 USD/CAD, for deprivation of dignity, bodily integrity, equal protection, and access to justice;

b. Special damages for housing loss, medical treatment, trauma recovery, and legal access in the amount of $10,000,000.00 USD;

c. Economic losses and lost earning capacity in the amount of $10,000,000.00 USD;

d. Punitive and aggravated damages not less than $500,000,000.00 USD, to punish Defendants for systemic, gender-based, and retaliatory abuse;

e. Prejudgment and post-judgment interest at 10% per annum, compounded annually, from May 23, 2014, to the date of final judgment;

f. Permanent injunctive relief prohibiting Defendants from future retaliation, surveillance, or deprivation of Plaintiff's rights;

g. Declaratory judgment that Defendants' conduct violated Plaintiff's rights under the Ontario Human Rights Code and the Canadian Human Rights Act;

h. Costs of suit, including attorneys' fees, security protection, expert witnesses, and emergency housing or medical access;

i. Any such other relief as the Court deems just, proper, and necessary to restore equity and protect transnational victims of systemic abuse.

**COUNT FORTY-NINE: CIVIL THEFT**

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Patricia Glaser, Glaser Weil LLP, Jill Basinger, William Paoli, Paoli & Purdy LLP, Nemecek & Cole LLP, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law, Goodwin Procter LLP, Wilson Sonsini Goodrich & Rosati LLP, Anthony McCusker, and all other individually named Defendants)

## I. INCORPORATION BY REFERENCE

Plaintiff Amber Doe re-alleges and incorporates by reference all prior allegations, Counts, and factual assertions as if fully set forth herein.

## II. LEGAL BASIS

This claim arises under the civil law of theft and conversion as recognized by:

- New York common law (*LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997); *Lundy v. Hochberg*, 202 A.D.3d 716 (2d Dep't 2022));
- California Penal Code §§ 484–487, 496, for extraterritorial predicate acts;
- Tort of Conversion and Theft under Canadian common law;
- Canadian Criminal Code (R.S.C. 1985, c. C-46), including §§ 322 (Theft), 380 (Fraud), and 361 (False Pretenses);
- 18 U.S.C. § 1962(c), (d) (RICO), civil theft as predicate act;
- 18 U.S.C. § 1595(a) (TVPRA) — theft in the context of human trafficking;
- International law, including the Universal Declaration of Human Rights (Art. 3, 8, 17), ICCPR, and the Palermo Protocol.

## III. FACTUAL ALLEGATIONS

Defendants engaged in intentional, knowing, and malicious appropriation of Plaintiff's tangible and intangible property for their own use and benefit, without Plaintiff's consent and under circumstances constituting criminal theft and conversion.

Specifically, Defendants took possession of:

A. Settlement Proceeds

The full $40,000,000 settlement from Michael Goguen, obtained under coercion, withheld by Quinn Emanuel and Sequoia-controlled attorneys, and never lawfully disbursed.

B. Legal and Medical Files

Plaintiff's confidential case files, attorney-client records, psychiatric evaluations, medical records, and evidentiary documents were stolen, withheld, destroyed, or used to sabotage litigation.

C. Asset Seizures

Personal funds, property, and savings held in Alberta, Canada, were frozen or seized under a fraudulent Mareva injunction issued ex parte via perjured affidavits orchestrated by Quinn Emanuel and Glaser Weil.

D. Evidence Suppression

Videos, witness statements, text messages, and forensic data corroborating Plaintiff's trafficking and abuse were intercepted, sealed, deleted, or sold to opposing parties.

E. Contractual Rights

Plaintiff's rights to perform, litigate, and recover were stolen via fraudulent stipulations, gag orders, and retaliation carried out by defense counsel acting as agents of Goguen and Sequoia.

IV. ELEMENTS OF CIVIL THEFT SATISFIED

Each Defendant:

- Intentionally took property belonging to Plaintiff;
- Had no legal right or consent to do so;
- Acted with knowledge and malice as part of a scheme to silence, dispossess, and obstruct Plaintiff;
- Has retained stolen property or profited therefrom without restitution.

Plaintiff has demanded return and redress, and Defendants have failed and refused to restore her stolen property.

The theft constitutes a pattern of racketeering and human rights abuse that is ongoing, retaliatory, and directly tied to the sexual exploitation, forced contracts, and extortion of a trafficking victim.

## V. DAMAGES

As a direct and proximate result of the civil theft, Plaintiff has suffered:

- Permanent loss of over $60 million in property and settlement assets;
- Destruction of her ability to recover, rebuild, or secure justice;
- Physical, psychological, and financial injury;
- Systemic deprivation of constitutional, civil, and economic rights.

## VI. PRAYER FOR RELIEF — COUNT FORTY-NINE

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all named Defendants, jointly and severally, and award the following relief:

A. Restitution and Disgorgement
Return of the full $40,000,000 in settlement funds and all converted property.

B. General Damages
$193,577,054.22 USD/CAD for civil theft, trauma, dispossession, and obstruction.

C. Special Damages
$10,000,000.00 USD for therapy, security, medical recovery, and survivor protection.

D. Lost Earnings
$10,000,000.00 USD in career and future opportunity losses caused by theft and interference.

E. Punitive Damages
No less than $500,000,000.00 USD, based on the deliberate, repeated, and organized nature of Defendants' theft and criminal enterprise.

F. Prejudgment and Post-Judgment Interest
At 10% compound interest annually from May 23, 2014 to judgment.

G. Equitable Relief

- Imposition of a constructive trust over all property acquired with stolen funds;
- Permanent injunction against future theft, retaliation, or obstruction.

H. Costs of Suit
Including court fees, investigators, document forensics, data recovery, and protective security.

I. Other Relief
Any additional relief this Court deems just, necessary, and appropriate to restore equity and deter transnational legal predation.

**COUNT FIFTY: CONSPIRACY TO DEFRAUD THE SUPREME COURT OF CANADA AND OBSTRUCT JUSTICE**

AGAINST:
Cory Gilmore, Barbara Conway, Quinn Emanuel Urquhart & Sullivan LLP, Lenczner Slaght LLP, Diane Doolittle, Monique Jilesen, Sahar Talebi, John Quinn, Kyle Batter, and all related legal agents and co-conspirators.

I. INCORPORATION OF PRIOR ALLEGATIONS

1. The Plaintiff, Amber Doe, repeats, re-alleges, and incorporates by reference all preceding allegations, facts, and causes of action in this Statement of Claim as if fully set forth herein.

II. JURISDICTIONAL AND LEGAL BASIS

2. This Count arises under:

- The common law tort of Civil Conspiracy (Hunt v. Carey Canada Inc., [1990] 2 SCR 959);
- The tort of Fraud on the Court (Maple Leaf Foods Inc. v. Schneider Corp. (1998), 42 OR (3d) 177 (CA));

- The Canadian Charter of Rights and Freedoms (Sections 7, 12, 15, and 24);
- International law obligations under the Universal Declaration of Human Rights, ICCPR, Palermo Protocol, and customary international law prohibiting obstruction of justice.

## III. CONSPIRACY TO DEFRAUD THE SUPREME COURT OF CANADA

3. The Defendants, including judicial officers, attorneys, and law firms, entered into an unlawful, coordinated conspiracy with the following objectives:

- To fabricate jurisdiction in Ontario;
- To pre-empt appellate review in California;
- To fraudulently enforce an invalid California judgment during its pending appeal;
- To circumvent statutory prohibitions on enforcement under California Code of Civil Procedure § 916;
- To fraudulently invoke Ontario Commercial List courts to enforce a judgment obtained through fraud upon California courts;
- To obstruct justice before the Supreme Court of Canada by suppressing exculpatory facts, jurisdictional defects, and California's statutory prohibitions on enforcement.

## IV. FACTUAL BACKGROUND OF THE FRAUD

4. The California judgment, obtained through extrinsic fraud, perjury, and judicial corruption, was actively under appeal.
5. Under California law, no judgment may be enforced while an appeal is pending. (California Code of Civil Procedure § 916).
6. Defendants Barbara Conway and Cory Gilmore knew:

- Plaintiff had not been lawfully served in Ontario;
- The Ontario Superior Court lacked personal jurisdiction over the Plaintiff;

- California law barred enforcement of the judgment pending appeal;
- The Mareva injunction directly prevented Plaintiff from funding her California appellate proceedings, obtaining medical care, or securing legal counsel.

7. Nevertheless, Conway, Gilmore, Quinn Emanuel, and Lenczner Slaght:

- Initiated fraudulent Mareva proceedings in Ontario;
- Executed ex parte administrative orders freezing Plaintiff's assets throughout Canada;
- Engaged in secret ex parte communications from the Ontario judicial bench email account, acknowledging improper service and lack of jurisdiction;
- Misrepresented these facts to the Supreme Court of Canada, suppressing the legal defects to shield their fraudulent Mareva orders from review.

## V. PARTICIPATION OF LEGAL CO-CONSPIRATORS

8. Quinn Emanuel Urquhart & Sullivan LLP, through John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, and other partners:

- Actively concealed the jurisdictional infirmities;
- Orchestrated the use of Ontario courts as a fraudulent collection arm for an unenforceable California judgment.

9. Lenczner Slaght LLP, through Monique Jilesen and Sahar Talebi:

- Participated directly in ex parte communications with Ontario judges;
- Misled the Commercial List Court regarding service, jurisdiction, and the status of the California appellate proceedings.

10. All Defendants acted willfully, knowingly, and maliciously to:

- Silence Plaintiff's claims;
- Eliminate her ability to challenge the underlying fraudulent judgment;
- Destroy her financial, medical, legal, and personal stability.

## VI. LEGAL VIOLATIONS AND ABUSES

11. This conspiracy constitutes:

- Fraud on the Court;
- Civil Conspiracy to Obstruct Justice;
- Tortious Interference with Appellate Rights and Medical Care;
- Abuse of Process and Bad Faith Litigation Conduct;
- Misfeasance in Public Office (by Conway and Gilmore);
- Violations of Charter Sections 7, 12, 15, and 24;
- Violations of International Law under the Universal Declaration of Human Rights and ICCPR.

## VII. SEVERE AND CATASTROPHIC INJURIES CAUSED

12. As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered:

- Total loss of all financial assets and liquid capital;
- Forced homelessness and deprivation of safe housing;
- Denial of urgent, life-threatening medical surgeries and care;
- Inability to secure legal representation to defend pending appeals;
- Ongoing physical suffering, emotional trauma, financial ruin, reputational injury, and systemic deprivation of access to justice.

## VIII. DAMAGES AND RELIEF SOUGHT

WHEREFORE, Plaintiff demands judgment against all named Defendants, jointly and severally, as follows:

### A. Compensatory Damages

- General damages in the amount of $154,639,535.77 USD for loss of assets, housing, medical care, legal defense, and constitutional access to justice;

- Special damages for legal costs, relocation expenses, surgical care, emergency housing, medical procedures, security, and ongoing protective needs.

B. Punitive and Exemplary Damages

- $100,000,000.00 CAD for willful fraud, judicial corruption, and conspiracy to obstruct justice at the highest levels of both Canadian and U.S. courts.

C. Declaratory Relief

- A declaration that the Ontario Mareva injunction and all related orders are void ab initio as products of judicial fraud and administrative conspiracy;
- A declaration that all Defendants engaged in actionable civil conspiracy to obstruct the Plaintiff's access to Canadian, California, and Supreme Court of Canada appellate remedies.

D. Injunctive Relief

- Permanent injunction restraining Defendants from:
  - Any further enforcement actions;
  - Continued judicial interference with Plaintiff's claims;
  - Harassment, surveillance, or intimidation.

E. Pre- and Post-Judgment Interest

- 10% compound interest per annum from May 23, 2014, to judgment and full satisfaction.

F. Costs of Suit

- All legal costs, expert witness fees, disbursements, attorney fees, security protection, and relocation costs incurred herein.

G. Equitable and Protective Relief

- Full restitution of all frozen, seized, or converted assets;
- Ongoing personal security, emergency housing, and medical support to protect Plaintiff's life and survival;

- Such other and further relief as this Honourable Court deems just, proper, and necessary to vindicate Plaintiff's constitutional and human rights.

**COUNT FIFTY-ONE: CIVIL RIGHTS VIOLATIONS UNDER Colour OF STATE LAW**

(42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986)
(Against All Named Private Defendants Acting Under Colour of State Law and Co-Conspirators — Excludes Judicial and Government Officials)

I. INCORPORATION OF PRIOR ALLEGATIONS
Plaintiff Amber Doe re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

II. JURISDICTIONAL BASIS
This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiff asserts violations of rights secured by the United States Constitution and federal civil rights statutes.

III. DEFENDANTS ACTING UNDER Colour OF STATE LAW
Plaintiff does not name or seek monetary relief from judicial officers or government agents under this Count. This Count targets only private Defendants who conspired with state actors and thus acted under colour of state law, including:

- Quinn Emanuel LLP and their attorneys
- Glaser Weil LLP and their attorneys
- Wilson Sonsini LLP and their attorneys
- Bisnar Chase LLP and their attorneys
- Nemecek & Cole LLP and their attorneys
- The Law Firm of Rivers J. Morrell III and their attorneys
- Alan Brown
- Day Day & Brown LLP and their attorneys
- Paoli & Purdy LLP and their attorneys

- Charbonneau & Brown LLP and their attorneys

IV. Colour OF LAW CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

These private Defendants, while functioning as officers of the court, abandoned adversarial roles and formed a coordinated extrajudicial alliance to systematically deprive Plaintiff of due process, equal protection, and access to courts.

Specifically:

1. Orange County Vexatious Litigant Order
These Defendants jointly endorsed and enforced a fraudulent vexatious litigant designation that imposed a $50,000 gag bond in favor of Michael Goguen, a billionaire known to these Defendants as Plaintiff's trafficker. This order was secured through sealed documents, perjured declarations, and denial of Plaintiff's right to be heard — violating her First and Fourteenth Amendment rights.

2. San Mateo Quasi-Criminal Trial
Defendants conspired to stage a contempt proceeding in absentia in San Mateo County, despite the trial court's lack of subject-matter jurisdiction due to active federal removal and ongoing appeals. The proceeding was void ab initio and designed to intimidate, punish, and silence Plaintiff without lawful process.

3. Fraudulent Glaser Judgment in Los Angeles County
These Defendants coordinated ex parte communications and backroom agreements with Judge Stephanie Bowick to suppress Plaintiff's scheduled hearing to vacate the multi-million dollar Glaser judgment. Tactics included improper denial of fee waivers, sealing of responsive filings, and issuance of adverse rulings with no notice or jurisdiction — a denial of due process orchestrated under colour of law.

4. Ongoing Obstruction in Federal and Appellate Courts
After Plaintiff lawfully removed her case to federal court, these same private Defendants colluded with state-aligned federal judges to issue void remand orders, seal filings, and destroy Plaintiff's record before the Ninth Circuit. These actions reflect a continued conspiracy to obstruct justice and retaliate against Plaintiff's protected legal activity.

V. LEGAL BASIS FOR LIABILITY

Pursuant to Dennis v. Sparks, 449 U.S. 24 (1980), Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), and Tower v. Glover, 467 U.S. 914 (1984), private attorneys and law firms who jointly act with state actors are liable under:

- 42 U.S.C. § 1983 – For deprivation of rights under colour  of law
- § 1985(2) and (3) – For conspiracies to obstruct justice and deny equal protection
- § 1986 – For failure to intervene and prevent known conspiracies

These Defendants jointly and severally participated in unlawful acts that would not have been possible but for their coordination with judges, court clerks, and state legal apparatuses.

VI. CONSTITUTIONAL VIOLATIONS

- First Amendment – Retaliation for court access, silencing through gag orders and contempt schemes
- Fifth Amendment – Deprivation of liberty and property without due process
- Fourteenth Amendment – Denial of equal protection and procedural due process through weaponized courts

VII. DAMAGES

As a direct and proximate result, Plaintiff has suffered:

- Irreparable injury to her health, legal identity, and bodily autonomy
- Total loss of income, shelter, medical access, and personal safety
- Psychological trauma, PTSD, and cognitive damage
- Reputational destruction and de facto legal exile through colour  of law abuse

VIII. PRAYER FOR RELIEF – COUNT FIFTY-ONE

WHEREFORE, Plaintiff respectfully demands judgment against the above-named private Defendants, jointly and severally:

a. Compensatory Damages: $193,577,054.22
b. Special Damages: $10,000,000.00 for care, security, and relocation
c. Punitive Damages: Not less than $500,000,000.00 to deter future abuse
d. Treble Damages: Pursuant to 42 U.S.C. § 1985(3)
e. Injunctive Relief: Prohibiting Defendants from any further conspiracy, retaliation, or obstruction
f. Declaratory Relief: Declaring that Defendants violated Plaintiff's rights under the Constitution
g. Costs and Fees: Pursuant to 42 U.S.C. § 1988, including pro se costs
h. Interest: Pre- and post-judgment interest at 10% compound from May 23, 2014
i. Further Relief: As this Court deems just and proper

**COUNT FIFTY-TWO: ABUSE OF PROCESS**

*(Common Law Tort – Malicious and Ulterior Use of Legal Process)*
AGAINST:
Michael Lewis Goguen, Sequoia Capital Operations, LLC, Two Bear Capital, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Glaser Weil LLP, Patricia Glaser, Jill Basinger, William Paoli, Paoli & Purdy LLP, Nemecek & Cole LLP, Brian Chase, Scott Ritsima, Bisnar Chase LLP, Richard Sherman, Sherman Law, Brown & Charbonneau LLP, Gregory G. Brown, Goodwin Procter LLP, Anthony McCusker, Wilson Sonsini Goodrich & Rosati LLP, Monique Jilesen, Sahar Talebi, Lenczner Slaght LLP, Barbara Conway, Cory Gilmore, and all other named Defendants.

1. Plaintiff repeats and realleges all prior paragraphs of this Complaint as if fully set forth herein.

2. This cause of action arises under the common law tort of Abuse of Process, which prohibits the misuse of the judicial system for ulterior, malicious, or retaliatory purposes unrelated to legitimate legal objectives.

3. The Defendants, individually and in conspiracy, willfully and maliciously abused judicial process as a tool of retaliation, coercion, intimidation, and obstruction, deploying legal mechanisms in bad faith to suppress Plaintiff's

lawful pursuit of justice, silence her speech, deprive her of redress, and insulate their criminal enterprise from exposure.

**4.** Specifically, Defendants engaged in the following acts of abuse of process:
a. Filing fraudulent restraining orders, based on fabricated declarations, false identities, and perjured testimony, designed to silence Plaintiff and block litigation;
b. Designating Plaintiff a "vexatious litigant" in state courts without a hearing, without statutory compliance, and without providing her any opportunity to defend or appear;
c. Seeking ex parte gag orders and sealing orders to preclude Plaintiff from filing pleadings or presenting evidence, thereby denying her fundamental due process;
d. Manipulating and abusing judicial assignments and clerk routing procedures to ensure her cases were funneled to known corrupt or complicit judges;
e. Forging or coercing "settlement agreements" under duress while Plaintiff was unrepresented and severely traumatized (e.g., the May 23, 2014 $40 million agreement orchestrated by Quinn Emanuel, Goodwin Procter, and Sequoia Capital);
f. Using judicial process to freeze Plaintiff's assets, revoke her housing, deny her medical access, and place her in direct danger — not as part of legitimate claims, but as retaliation for protected legal and public disclosures;
g. Weaponizing civil and quasi-criminal proceedings across multiple jurisdictions to obstruct Plaintiff's access to counsel, bar associations, appellate review, and media exposure.

**5.** The ulterior motive of these legal filings and judicial maneuvers was not the pursuit of justice, but rather to:

- Suppress Plaintiff's reports of sex trafficking, torture, and financial fraud;
- Shield the criminal enterprise operated by Michael Goguen, Sequoia Capital, and their legal operatives;
- Prevent Plaintiff from accessing courts, safety, media, law enforcement, or public redress;
- Harass and permanently silence a known whistleblower.

**6.** Under established federal and state law, Abuse of Process requires only two elements: (1) regularly issued legal process, and (2) misuse of that process for a purpose other than that which it was designed to accomplish. See, e.g., *Cook v.*

*Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994); *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984).

**7.** Defendants' actions constitute textbook abuse of process, designed to terrorize, impoverish, silence, and criminalize a vulnerable survivor of human trafficking and systemic corruption.

**8.** As a direct and proximate result of Defendants' malicious abuse of legal process, Plaintiff suffered:

- Ongoing threats to life and liberty;
- Denial of housing, medical care, and legal assistance;
- Destruction of reputation, career, and professional opportunities;
- Irreparable emotional, physical, and financial harm;
- Constitutional violations under the First, Fifth, Thirteenth, and Fourteenth Amendments.

PRAYER FOR RELIEF ON COUNT FIFTY-THREE

WHEREFORE, Plaintiff respectfully demands judgment against Defendants, jointly and severally, as follows:

1. Compensatory damages in the amount of $50,000,000.00 for harm caused by abuse of legal process;
2. Punitive damages in the amount of $100,000,000.00, to punish and deter future malicious weaponization of the courts;
3. Injunctive relief enjoining all Defendants from initiating or pursuing further abusive proceedings against Plaintiff;
4. Declaratory judgment affirming that Defendants' conduct constitutes Abuse of Process under federal and common law;
5. Pre-judgment interest at 10% per annum, compounded annually from May 23, 2014;
6. Legal costs, security personnel, medical monitoring, and any other relief this Court deems just and proper.

**COUNT FIFTY-THREE: VIOLATION OF THE CONVENTION ON THE ELIMINATION OF ALL FORMS OF DISCRIMINATION AGAINST WOMEN (CEDAW)**

*(Asserted under Customary International Law via the Alien Tort Statute, 28 U.S.C. § 1350, and/or Supplemental Jurisdiction)*
AGAINST:
Michael Lewis Goguen; Sequoia Capital Operations, LLC; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Anthony McCusker; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Paoli & Purdy LLP; William Paoli; Bisnar Chase LLP; Nemecek & Cole LLP; Brian Chase; Scott Ritsima; Rivers J. Morrell III Law Firm; Sherman Law; Richard Sherman; Lenczner Slaght LLP; Monique Jilesen; Sahar Talebi; Barbara Conway; Cory Gilmore; and all other named Defendants.

1. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

2. This cause of action arises under customary international law and treaty obligations recognized by the United States through its signature and continuing observance of the Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW), a foundational instrument of gender justice ratified by nearly every nation on earth, and binding upon the United States under evolving norms of customary international law and jus cogens principles, as enforceable through the Alien Tort Statute, 28 U.S.C. § 1350.

3. The Convention, adopted by the United Nations General Assembly in 1979 and signed by the United States in 1980, obligates all parties to eliminate discrimination against women in all fields, including in matters of violence, legal status, access to justice, and personal autonomy, and to provide effective remedies to victims of such violations.

4. CEDAW specifically prohibits:

    - Gender-based violence, including trafficking and sexual exploitation;
    - Systemic denial of legal redress and access to courts;

- Economic subjugation and reproductive coercion;
- Retaliation against women for asserting autonomy, legal rights, or exposing abuse.

5. The named Defendants, acting individually and in concert, have engaged in gross and systematic violations of Plaintiff's fundamental rights under CEDAW, including but not limited to:
a. Trafficking Plaintiff into sexual servitude, beginning at age 15 and continuing for decades, through coercion, deception, and organized enterprise activity;
b. Subjecting Plaintiff to rape, anal rape, forced drugging, and sexual exploitation, constituting extreme violations of bodily autonomy and gender-based dignity;
c. Coerced sterilization and denial of reproductive health care, including forced pregnancies, interference with medical treatment, and denial of post-assault care;
d. Legal sabotage through collusion between Defendants and judges, designed to deprive Plaintiff of legal representation, court access, or the ability to seek redress;
e. Gender-targeted character assassination through public defamation campaigns engineered to humiliate, discredit, and silence Plaintiff as a trafficking survivor and whistleblower;
f. Economic strangulation by cutting off access to bank accounts, litigation funds, housing, and medical care to retaliate against Plaintiff's attempt to flee, expose, or hold her traffickers accountable;
g. Suppression of voice and visibility, using retaliatory lawsuits, gag orders, and fraudulent legal process to erase Plaintiff's story and censor her rights-based speech.

6. These acts constitute not only severe violations of CEDAW, but also crimes against humanity and violations of peremptory international legal norms (jus cogens), including freedom from slavery, gender persecution, and torture.

7. The Alien Tort Statute, 28 U.S.C. § 1350, permits jurisdiction over civil claims for violations of "the law of nations" or "a treaty of the United States." Courts have recognized that systemic gender-based violence and denial of legal recourse fall within the ambit of actionable ATS claims when linked to customary international law. See *Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980); *Doe v. Unocal*, 395 F.3d 932 (9th Cir. 2002); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004).

8. The United States' signature and continuous endorsement of CEDAW, combined with the universal recognition of its provisions, render the rights contained therein binding upon Defendants acting under colour of state or enterprise influence, and their systematic deprivation of Plaintiff's rights actionable under the ATS and under this Court's supplemental jurisdiction.

PRAYER FOR RELIEF ON COUNT FIFTY-THREE

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

1. Declaratory relief that Defendants' actions constitute violations of the Convention on the Elimination of All Forms of Discrimination Against Women;
2. Compensatory damages in the amount of $75,000,000.00 for gender-based harm, medical trauma, psychological damage, economic loss, and pain and suffering;
3. Punitive damages in the amount of $150,000,000.00 for malicious, willful, and systemic gender-based abuse;
4. Equitable relief, including a mandatory injunction requiring Defendants to disclose the full scope of their trafficking and gender-targeted misconduct;
5. Injunctive relief, prohibiting any further retaliation, suppression, or gender-based silencing;
6. Prejudgment interest at a rate of 10% per annum, compounded annually, from May 23, 2014;
7. Costs of suit, including litigation security, protective measures, expert witnesses, and all necessary survivor support;
8. Any other relief this Court deems just and proper in equity or at law.

**COUNT FIFTY-FOUR: FAILURE TO PREVENT HUMAN TRAFFICKING**

(Against: Attorney General of California Rob Bonta, Attorney General of Ontario Doug Downey, California State Bar, Judicial Council of California, Maame Frimpong, Danny Chou, Susan Greenberg, Barbara Conway, Cory Gilmore, Nina Shapirshteyn, David O. Carter, Stephanie Bowick, Laura Taylor Swain, and all named government and judicial actors)

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe realleges and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

2. NATURE OF CLAIM: FAILURE TO PROTECT / STATE COMPLICITY

This cause of action arises under:

- Trafficking Victims Protection Act (TVPA), 22 U.S.C. § 7101 et seq.;
- Palermo Protocol, Articles 2–5 (UN Convention Against Transnational Organized Crime);
- CEDAW, Articles 2, 3, and 5;
- Universal Declaration of Human Rights, Articles 1, 3, 5, 7, 8;
- Alien Tort Statute (ATS), 28 U.S.C. § 1350;
- U.S. Constitution, Fifth and Fourteenth Amendments (Due Process, Equal Protection);
- Customary international law prohibiting slavery, trafficking, and state-sanctioned abuse.

Defendants were under a statutory, constitutional, and moral duty to prevent, investigate, and prosecute human trafficking, rape, torture, and systemic abuse against the Plaintiff.

Instead, they:

- Affirmatively refused to act despite direct notice of the crimes.
- Facilitated judicial sabotage, gag orders, forced representation, restraining orders, and vexatious litigant designations to silence Plaintiff.

- Protected perpetrators, obstructed enforcement of laws, denied access to legal remedy, and permitted trafficking proceeds to fund retaliatory litigation.
- Enabled and perpetuated Plaintiff's captivity, homelessness, medical deprivation, and prolonged re-traumatization across multiple jurisdictions.

3. DUTY UNDER DOMESTIC AND INTERNATIONAL LAW

Under the TVPA, state and federal actors have an obligation to combat human trafficking and ensure victim protection (22 U.S.C. §§ 7104–7105).

Under the Palermo Protocol, signatory governments (including the U.S. and Canada) are required to:

- Prevent trafficking;
- Protect victims;
- Investigate and prosecute perpetrators;
- Provide access to justice and redress.

Under CEDAW, state actors must eliminate all forms of discrimination and gender-based violence through state action and institutional reform.

Judicial officers, prosecutors, and regulators named herein not only failed to uphold these duties — they willfully aided and abetted the trafficking enterprise.

4. SPECIFIC ACTS OF STATE COMPLICITY

Defendants engaged in or enabled:

- Bribery coverups, refusing to discipline lawyers who trafficked, raped, and threatened Plaintiff.
- Fraudulent restraining orders, gag orders, and forced representation to silence and isolate Plaintiff.
- Denial of medical care, fee waivers, housing, and survival access despite known risks to life.
- Fraudulent enforcement of void judgments while Plaintiff was under trafficking coercion.

- Willful inaction by the Attorney General(s), State Bar(s), and Judicial Councils despite hundreds of filings, judicial complaints, and petitions.
- Suppression of evidence, sealed filings, and secret hearings used to retaliate against Plaintiff.

5. LEGAL STANDARD AND LIABILITY

State actors may be held liable under the Alien Tort Statute when their conduct violates customary international norms — including:

- The right to be free from slavery;
- The right to bodily integrity;
- The right to effective remedy;
- The duty of non-refoulement and protection of trafficking survivors.

Their systemic failure constitutes:

- State-sanctioned denial of rights;
- Constructive complicity in trafficking and torture;
- Abuse of sovereign immunity to shield criminal enterprise participants.

6. DAMAGES SUFFERED

As a direct and foreseeable result of Defendants' failure to prevent trafficking:

- Plaintiff was denied legal redress, exposed to retaliatory violence, and deprived of security;
- She suffered further exploitation, loss of liberty, medical collapse, suicidality, and systemic injustice;
- Her rights under domestic and international law were nullified by institutional corruption.

7. PRAYER FOR RELIEF

Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

- Declaratory relief that their actions constituted a violation of Plaintiff's rights under U.S. and international law;
- General and special damages as previously requested;
- Punitive damages against all public officials who acted with malice, fraud, or deliberate indifference;
- Permanent injunctive relief compelling systemic reform, disclosure of trafficking protections bypassed, and restitution of all denied remedies;
- Criminal referrals to the U.N. Special Rapporteur on Trafficking, U.S. DOJ Civil Rights Division, and the Office of the High Commissioner for Human Rights;
- Any such other relief the Court deems just and proper.

**COUNT FIFTY-FIVE: VIOLATION OF THE INTERNATIONAL COVENANT ON CIVIL AND POLITICAL RIGHTS (ICCPR)**

(Against All Defendants)

Legal Basis:

- Alien Tort Statute (28 U.S.C. § 1350) — permits federal jurisdiction over violations of binding international law norms;
- ICCPR, ratified by the United States (1992) and Canada, creating binding obligations under international and domestic law;
- Customary international law and jus cogens prohibitions against torture, arbitrary detention, and denial of due process.

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe repeats, realleges, and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

2. THE ICCPR: BINDING TREATY LAW

The International Covenant on Civil and Political Rights (ICCPR) is a binding multilateral treaty codifying fundamental rights and freedoms. The United States ratified the ICCPR in 1992, obligating it to uphold and not violate its provisions. Canada has also ratified the ICCPR and integrated many of its provisions into domestic law.

The ICCPR is enforceable under the Alien Tort Statute, which recognizes torts "committed in violation of the law of nations or a treaty of the United States."

## 3. RIGHTS VIOLATED UNDER THE ICCPR

The Defendants—acting individually and in concert, and under colour  of law and state authority—engaged in a sustained pattern of conduct that violated Plaintiff's rights under the following Articles of the ICCPR:

- Article 2 – Right to an effective remedy when rights are violated, including by persons acting in official capacity;
- Article 7 – Right to be free from torture and cruel, inhuman, or degrading treatment or punishment;
- Article 9 – Right to liberty and security of person; prohibition of arbitrary arrest or detention;
- Article 14 – Right to a fair and public hearing by a competent, independent, and impartial tribunal;
- Article 17 – Right to privacy, dignity, and protection from unlawful interference with one's correspondence, reputation, or home;
- Article 26 – Right to equal protection before the law and to be free from discrimination.

## 4. CONDUCT CONSTITUTING VIOLATIONS

Defendants' conduct that violated the above Articles includes, without limitation:

- Coordinated acts of rape, torture, trafficking, and enforced sexual slavery, including across international borders;

- Arbitrary detention in the form of judicial orders obtained without due process, notice, or hearing—rendered in ex parte or secret proceedings;
- Fabricated jurisdictional records, forged judgments, and suppression of Plaintiff's access to courts;
- Designation as a "vexatious litigant" and retaliatory restraining orders issued to silence and blacklist Plaintiff;
- Interference with housing, banking, communication, medical access, and other fundamental liberties without lawful justification;
- Judicial bias and collusion, including systemic denial of fee waivers, rejection of filings, sealing of meritorious claims, and refusal to vacate fraudulent judgments;
- Failure to provide remedy under U.S. or Canadian law, thereby violating Article 2 and compounding ICCPR breaches.

5. STATE ACTION AND INTERNATIONAL LIABILITY

Many of the violations were carried out under colour  of law by judicial officers, bar regulators, or government actors, or with their complicity and protection. These acts invoke state responsibility under the ICCPR and permit relief under the Alien Tort Statute.

6. RELIEF REQUESTED

As a direct and proximate result of these ICCPR violations, Plaintiff has suffered:

- Physical and psychological trauma from torture, abuse, and unlawful targeting;
- Arbitrary deprivation of liberty, access to courts, medical care, housing, and legal remedies;
- Ongoing denial of human dignity, privacy, freedom of speech, and safety.

Plaintiff respectfully seeks:

a. Declaratory judgment that Defendants' actions violated the ICCPR and customary international law;

b. Compensatory and punitive damages for physical, psychological, economic, and reputational harm;
c. Treble damages under RICO and TVPRA where ICCPR violations overlap with domestic statutory violations;
d. Injunctive relief enjoining further violations of ICCPR rights, including interference with housing, court access, or Plaintiff's speech;
e. Referral to international bodies for investigation, including the United Nations Human Rights Committee;
f. Costs of suit, including security measures, relocation, and protection services;
g. Such other and further relief as this Court deems just and proper.

COUNT FIFTY-SIX: DECLARATORY RELIEF

(28 U.S.C. § 2201 – Declaratory Judgment Act)
Against All Defendants

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe repeats, realleges, and incorporates by reference all prior allegations and causes of action as if fully set forth herein.

2. LEGAL BASIS

This Count is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration" in a case of actual controversy.

Plaintiff seeks declaratory relief in connection with the violations of her constitutional, statutory, and international rights, and the systemic misconduct committed by the named Defendants.

3. ACTUAL CONTROVERSY EXISTS

An actual and justiciable controversy exists between Plaintiff and Defendants, within the jurisdiction of this Court, regarding the following:

- The fraudulent nature of judicial orders and judgments entered in California and Ontario courts in violation of due process and constitutional safeguards;
- The unlawfulness of the "vexatious litigant" designations, gag orders, restraining orders, and sua sponte sealing orders entered against Plaintiff without proper notice, hearing, representation, or jurisdiction;
- The existence of a transnational criminal enterprise involving Defendants, designed to traffic, silence, exploit, and retaliate against Plaintiff;
- The unconstitutional deprivation of Plaintiff's access to the courts, counsel, housing, income, property, and medical care;
- The bad faith misuse of judicial process to obstruct Plaintiff's rights as a trafficking survivor, whistleblower, and civil rights complainant.

## 4. NEED FOR DECLARATORY JUDGMENT

A declaratory judgment is necessary to:

- Establish that fraudulent foreign and domestic judgments are void ab initio for lack of jurisdiction, fraud on the court, and due process violations;
- Declare that Defendants' conduct constitutes a violation of the U.S. Constitution, international human rights law, and statutory protections under TVPRA, VAWA, and RICO;
- Declare that the designation of Plaintiff as a vexatious litigant, the sealing of filings, and the issuance of ex parte gag orders were unconstitutional and in bad faith;
- Declare that Plaintiff is a survivor of human trafficking and systemic abuse, entitled to legal remedy, safety, and redress;
- Clarify the status of rights and wrongs in the record for use in future appellate proceedings, international complaints, and asylum-related filings, including potential relief under U.S. or Canadian law, or before the United Nations Human Rights bodies.

## 5. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter a declaratory judgment in her favour, stating:

a. That the California and Ontario judgments obtained against Plaintiff were entered in violation of due process, jurisdiction, and truth, and are thus null and void;
b. That Plaintiff's constitutional rights under the First, Fifth, Thirteenth, and Fourteenth Amendments have been violated by the Defendants;
c. That Defendants constitute a criminal enterprise under the definitions set forth in RICO (18 U.S.C. § 1961) and the TVPRA (18 U.S.C. § 1591 et seq.);
d. That the use of gag orders, vexatious designations, and sua sponte sealing orders constituted unconstitutional retaliation and suppression;
e. That Plaintiff is entitled to unfettered access to courts, legal counsel, and protective relief;
f. That Plaintiff has a protected legal and human right to speak publicly, seek redress, and expose trafficking and judicial abuse;
g. Any other declaratory relief this Court deems just and proper.

**COUNT FIFTY-SEVEN: INTENTIONAL INFLICTION OF CONSTITUTIONAL HARM**

(Against: All Government Actors, Judicial Officers, Bar Regulators, State Bar Entities, and All Co-Conspirators Acting Under Colour of Law)
Legal Basis:

- U.S. Constitution: First, Fifth, Thirteenth, and Fourteenth Amendments
- Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (limited application)
- 42 U.S.C. § 1983 (where applicable)
- 28 U.S.C. § 1331 (federal question jurisdiction)
- Alien Tort Statute, 28 U.S.C. § 1350 (customary international law violations)

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff realleges and incorporates by reference all preceding paragraphs, counts, and allegations as though fully set forth herein.

## 2. NATURE OF CLAIM

This cause of action is brought to redress the intentional, coordinated infliction of harm by government actors and their proxies through the abuse of power, state authority, and legal process for the specific purpose of depriving Plaintiff of her constitutional rights and liberties.

This is not mere negligence or isolated misconduct — it is deliberate constitutional sabotage targeting Plaintiff's bodily integrity, access to the courts, political speech, property, life, and liberty.

## 3. LEGAL RIGHTS VIOLATED

Defendants, acting under colour of law and/or in concert with state officials, violated the following constitutional protections:

- First Amendment: Retaliation against protected speech; gag orders; suppression of legal filings and survivor testimony; prior restraints.
- Fifth Amendment: Denial of due process; coerced settlements; void judgments executed without hearing or representation.
- Thirteenth Amendment: Continued enforcement of trafficking conditions and coercive control, including servitude and involuntary compliance.
- Fourteenth Amendment: Selective enforcement of laws; unequal protection; judicial bias; state-sanctioned abuse; denial of fair process.

## 4. STATE ACTION + INTENTIONALITY

This claim targets intentional conduct by state actors and their agents, including but not limited to:

- Judges issuing fraudulent, retaliatory orders to silence Plaintiff or deny access to courts;

- Attorney General offices refusing to investigate or intervene despite documented trafficking, coercion, and judicial misconduct;
- State Bars actively covering for corrupt lawyers and enabling litigation abuse;
- Government regulators and law enforcement ignoring statutory mandates to protect survivors;
- Repeated administrative obstruction and suppression of Plaintiff's constitutional claims.

5. DISTINCTION FROM IIED

While Count 24 alleges Intentional Infliction of Emotional Distress, this Count escalates that harm into constitutional magnitude, identifying:

- The state actor status of perpetrators;
- The core civil liberties targeted for annihilation;
- The systematic pattern of abuse across agencies and jurisdictions.

This is not just tortious—it is constitutionally unlawful.

6. DAMAGES AND RELIEF

As a direct result of Defendants' intentional infliction of constitutional harm, Plaintiff suffered:

- Catastrophic loss of civil rights, human dignity, and bodily autonomy;
- Medical collapse, psychiatric injury, trauma-related disability;
- Destruction of housing, employment, property, legal protections, and reputation;
- Total denial of redress across multiple courts and legal systems.

Plaintiff seeks:

- Declaratory relief affirming the constitutional violations committed by Defendants;

- Permanent injunctive relief barring Defendants from further retaliation, harassment, or denial of access to courts;
- Referral for criminal prosecution, impeachment, or administrative removal where applicable;
- Any further relief this Honorable Court deems just and proper.

**COUNT FIFTY-EIGHT: PATTERN OF RETALIATION AGAINST A WHISTLEBLOWER / VICTIM**

(Against: All Defendants, including state actors, judicial officers, and legal counsel engaged in retaliatory conduct)

Legal Basis:

- 18 U.S.C. §§ 1591–1595 (TVPRA: retaliation as a form of trafficking-related coercion and obstruction)
- 18 U.S.C. §§ 1512–1513 (witness tampering, intimidation, and retaliation as RICO predicate acts)
- 18 U.S.C. § 1961(1) (Racketeering predicates under RICO)
- U.S. Constitution, First and Fourteenth Amendments (protected speech, access to courts, equal protection)
- Federal common law and supplemental jurisdiction (28 U.S.C. §§ 1331, 1367)
- Alien Tort Statute, 28 U.S.C. § 1350 (customary international protections for trafficking victims and whistleblowers)

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doeincorporates by reference all preceding paragraphs, allegations, and counts as if fully set forth herein.

## 2. NATURE OF CLAIM

This cause of action arises from a sustained, organized campaign of retaliation against Plaintiff for:

- Reporting human trafficking, rape, sexual slavery, judicial corruption, and transnational criminal conduct;
- Seeking redress in civil and criminal courts in the United States, Canada, and international forums;
- Publicly identifying perpetrators, naming government actors, and attempting to protect others from harm.

The retaliation has been coordinated, ongoing, transnational, and systemic, constituting a direct violation of Plaintiff's civil, constitutional, and international rights.

## 3. FORMS OF RETALIATION

The Defendants, jointly and severally, engaged in a broad pattern of retaliatory conduct including but not limited to:

- Judicial designation of Plaintiff as a "vexatious litigant" in bad faith, without hearing or notice;
- Issuance of fraudulent restraining orders, secret ex parte rulings, and prior restraints suppressing testimony;
- Court orders sealing Plaintiff's filings, denying fee waivers, and blocking service of process;
- Destruction of Plaintiff's housing, assets, and access to banking, food, medical care, and communication;
- Solicitation of murder contracts, physical surveillance, and forced disappearance threats via private security (e.g., Matthew Marshall);
- Interference with legal counsel, including coercion, bribery, and abandonment of meritorious cases;
- Weaponization of the legal system to silence Plaintiff's testimony, suppress her evidence, and permanently prevent redress.

## 4. WHISTLEBLOWER PROTECTIONS AND TVPRA ENHANCEMENT

The Trafficking Victims Protection Reauthorization Act (TVPRA) prohibits retaliation against victims who report or attempt to report their abuse.

Defendants' actions not only violated the core prohibitions of the TVPRA (§ 1591 et seq.) but also constitute an aggravating enhancement, warranting treble damages under 18 U.S.C. § 1595.

## 5. RICO PREDICATE ACTS: RETALIATION & WITNESS TAMPERING

Under 18 U.S.C. §§ 1512–1513, retaliation against a witness or victim—including intimidation, threats, and obstruction of court access—is a predicate act of racketeering.
Plaintiff's sustained targeting for her role as a victim and whistleblower qualifies under:

- 18 U.S.C. § 1512: Witness tampering and obstruction
- 18 U.S.C. § 1513: Retaliation against witnesses, informants, or victims
- 18 U.S.C. § 1961(1): Civil RICO predicate acts

## 6. CONSTITUTIONAL VIOLATIONS

This campaign of retaliation further violated Plaintiff's First Amendment rights (freedom of speech, right to petition the courts), and Fourteenth Amendment rights (equal protection and due process).
The abuse of state mechanisms to suppress speech and testimony constitutes viewpoint discrimination and retaliatory censorship, prohibited by binding precedent including:

- *Hartman v. Moore*, 547 U.S. 250 (2006)
- *Zalewska v. Cty. of Sullivan*, 316 F.3d 314 (2d Cir. 2003)
- *Gomez v. Toledo*, 446 U.S. 635 (1980)

## 7. DAMAGES AND RELIEF

As a direct result of Defendants' pattern of retaliation, Plaintiff has suffered:

- Irreparable physical harm, mental trauma, homelessness, medical collapse, and financial ruin;
- Destruction of access to legal redress, counsel, employment, safety, and privacy;
- Permanent stigmatization and reputational harm as a "vexatious litigant" and "criminalized victim";
- Deprivation of constitutional rights, international protections, and statutory remedies under the TVPRA.

Plaintiff seeks:

- Declaratory judgment that Defendants engaged in unlawful retaliation against a whistleblower and victim;
- Treble and punitive damages under TVPRA and RICO;
- Permanent injunction barring further retaliatory action, including litigation abuse, surveillance, and housing interference;
- Equitable relief including unsealing of her filings, vacatur of all retaliatory orders, and reinstatement of her access to courts;
- Any other relief deemed just and proper by this Court.

**COUNT FIFTY-NINE: CONTINUING VIOLATIONS DOCTRINE / ONGOING CONSPIRACY**

(Equitable Tolling Doctrine; Patterned Abuse; Civil RICO; TVPRA; ATS; Supplemental Jurisdiction)
Against: All Defendants

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe re-alleges and incorporates by reference all preceding paragraphs, factual allegations, and causes of action as if fully set forth herein.

## 2. NATURE OF THE CLAIM: CONTINUING VIOLATIONS & SYSTEMIC ENTERPRISE

This Count arises from the persistent and uninterrupted course of unlawful conduct committed by Defendants, forming an ongoing conspiracy and continuing violation of Plaintiff's constitutional, statutory, and international human rights.

The wrongdoing was not episodic or isolated, but rather a deliberate and orchestrated continuum of sexual exploitation, legal obstruction, retaliatory sabotage, and state-sanctioned persecution — spanning for over two decades to the present day, across multiple jurisdictions and sovereign boundaries.

## 3. LEGAL FRAMEWORK & JURISDICTIONAL BASIS

This Count invokes the following legal authorities:

- Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. §§ 1581–1595
- Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968
- Alien Tort Statute (ATS), 28 U.S.C. § 1350
- 42 U.S.C. § 1983, § 1985
- Federal Common Law Conspiracy and Equitable Tolling Doctrines
- Canadian and international human rights law under supplemental jurisdiction (28 U.S.C. § 1367(a))

This Count is further supported by the Continuing Violations Doctrine, which recognizes that when a series of unlawful acts are part of an integrated and ongoing scheme, the statute of limitations is equitably tolled until the last overt act or the cessation of harm.

## 4. FACTUAL PATTERN: UNBROKEN CONTINUUM OF ABUSE

Defendants, acting individually and in concert, perpetuated a systemic and transnational criminal enterprise through:

- Human trafficking, rape, torture, and sexual slavery;
- Fraudulent legal instruments such as coerced settlement agreements (e.g., the May 23, 2014, $40 million Sequoia-Quinn Emanuel agreement);
- Judicial sabotage, including secret hearings, forged orders, and vexatious designations;
- Retaliation through gag orders, silencing of counsel, and media defamation campaigns;
- Unlawful asset freezes, Mareva injunctions, and seizure of property under void or unenforceable judgments;
- Re-trafficking through legal systems, depriving Plaintiff of access to courts, safety, housing, medical care, and public services;
- Interstate and international coordination of abuse between California, Ontario, Montana, New York, Washington D.C., and other forums;
- Attempted extrajudicial killing through deprivation of medical treatment, solicitation of murder-for-hire, and criminal negligence.

5. DEFENDANTS' LAST OVERT ACTS CONTINUE INTO THE PRESENT

The enterprise is not dormant — it is active and continuing. Defendants, as of 2025, are still:

- Enforcing void judgments across borders;
- Obstructing access to fair hearings in Canada and the U.S.;
- Withholding Plaintiff's funds, legal records, and identity documents;
- Engaging in judicial retaliation against Plaintiff in both federal and provincial courts;
- Coercing or bribing bar associations, judicial councils, and administrative agencies to prevent redress;
- Coordinating international interference to destroy Plaintiff's asylum, housing, and livelihood options.

These actions constitute current and ongoing violations, not time-barred acts.

## 6. EQUITABLE TOLLING MANDATED BY LAW AND JUSTICE

Because of the Defendants' fraudulent concealment, obstruction, and continuous retaliation, Plaintiff:

- Was prevented from filing timely claims through no fault of her own;
- Faced a hostile legal system corrupted by the very enterprise she seeks to expose;
- Continues to suffer fresh injuries and irreparable harm from the Defendants' ongoing conspiracy;
- Operates as a whistleblower under systemic siege, not merely a past victim.

As such, the statutes of limitation are tolled under:

- TVPRA, which permits tolling for victims of trafficking where fraud, threats, or duress prevent timely filing;
- RICO, where predicate acts continue and form a pattern of racketeering activity;
- Federal equitable tolling doctrines, applicable where misconduct actively prevents redress;
- International human rights law, which permits tolling for state-sanctioned persecution, torture, and discrimination.

## 7. DAMAGES AND INJUNCTIVE RELIEF REQUESTED

Plaintiff seeks:

a. A declaratory judgment recognizing the ongoing nature of the conspiracy and tolling of all applicable statutes of limitations;
b. Permanent injunction enjoining all Defendants from continuing any acts of retaliation, trafficking, obstruction, or litigation abuse;
c. Full damages, costs, equitable restitution, and treble recovery under applicable law;
d. Judicial recognition of the pattern of ongoing injury, for purposes of appellate preservation, asylum petitions, and international relief proceedings.

## 8. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

- Recognition that no statute of limitations bars this action under the Continuing Violations Doctrine;
- Entry of declaratory and injunctive relief dismantling the enterprise;
- Full general, special, and punitive damages as previously outlined in this Complaint;
- Preservation of rights for absent class members and whistleblowers similarly situated;
- Such other and further relief as this Honorable Court deems just and proper.

## COUNT SIXTY: CONTINUED HUMAN TRAFFICKING VIA JUDICIAL ENTERPRISE

(18 U.S.C. §§ 1590, 1591, 1595 – Against Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, and All Non-Immune Private and Institutional Co-Conspirators)

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.
2. This cause of action is brought under the Trafficking Victims Protection Act (TVPA), specifically 18 U.S.C. §§ 1590, 1591, and 1595, which prohibit the knowing recruitment, harboring, maintenance, coercion, and financial exploitation of human trafficking victims, including through non-physical means such as legal abuse, institutional coercion, economic strangulation, and judicial fraud.

3. Defendant Diane Doolittle, acting in her capacity as a senior partner at Quinn Emanuel Urquhart & Sullivan LLP, has knowingly and willfully participated in, conspired to facilitate, and financially profited from a criminal trafficking enterprise directed at Plaintiff, a recognized victim and whistleblower of transnational human trafficking and sexual exploitation.

4. Quinn Emanuel, in coordination with billionaire trafficker Michael Goguen and a network of co-conspiring legal actors, engaged in a coordinated campaign of psychological and legal coercion to isolate, control, economically destroy, and permanently silence Plaintiff.

5. Defendants used sham contracts, ex parte proceedings, fraudulent judicial orders, fabricated restraining orders, unlawful asset freezes, retaliatory gag orders, and blocked access to medical care and housing to forcibly re-dominate Plaintiff through state-sanctioned legal peonage, as defined by 18 U.S.C. § 1590.

6. These acts satisfy the definitions of "harboring," "maintaining," "obtaining labor or services by coercion," and "benefiting from a trafficking venture" under 18 U.S.C. §§ 1590 and 1591(a)(1)–(2).

7. Defendant Quinn Emanuel has received and continues to receive millions of dollars per month from known traffickers and child exploiters to litigate against Plaintiff in perpetuity, suppress investigations, and retaliate against her for exercising her constitutional and human rights.

8. The pattern of coercive abuse executed by Doolittle and her firm was not isolated or incidental—it was deliberate, systemic, and designed to replicate the psychological and economic captivity Plaintiff endured under her original traffickers.

9. Their continued legal onslaught constitutes post-escape trafficking, a form of continued coercion and control recognized under federal law.
See United States v. Estrada-Tepal, 57 F.4th 288 (2d Cir. 2022);
United States v. Callahan, 801 F.3d 606 (6th Cir. 2015);
Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017).

10. The U.S. Supreme Court in U.S. v. Kozminski, 487 U.S. 931 (1988),** confirmed that involuntary servitude can be imposed through abuse of legal authority and psychological coercion, both of which are central to this count.

11. Defendants further engaged in a joint enterprise with numerous judicial officers in both the United States and Canada, including Judges Bowick, Chou,

Dourbetas, Greenberg, Shapirshteyn, Ambler, Frimpong, Carter, Kim, and Malloy, as well as Justices Barbara Conway and Cory Gilmore in Ontario, to carry out this ongoing trafficking venture by misusing the judiciary as a coercive apparatus.

12. These judicial actors, though immune from monetary liability, operated as integral instruments of coercion, their ex parte rulings, secret hearings, and fabricated orders serving as the enforcement mechanisms of Plaintiff's captivity, suppression, and re-exploitation.

13. Plaintiff does not seek monetary damages against these judges, but instead seeks injunctive and declaratory relief under Ex Parte Young to void all orders obtained through trafficking-related fraud and judicial conspiracy, and to enjoin further acts of retaliation and deprivation under colour of law.

14. Defendants Quinn Emanuel and Doolittle are liable under 18 U.S.C. § 1595, which provides a civil right of action against any individual or entity who knowingly benefits from or participates in a trafficking venture that results in harm to the victim.

15. Plaintiff has suffered grave, ongoing injuries as a result of this judicial trafficking enterprise, including:

- Permanent loss of income, shelter, and property;
- Denial of access to the courts and right to be heard;
- Denial of critical medical care and food;
- Psychological harm and emotional terror;
- Unrelenting retaliation for whistleblowing and survival.

Plaintiff has endured this ongoing trafficking and retaliatory control for over eleven (11) years following her last trafficking event and violent sexual assault, during which she was brutally raped, silenced, and discarded. Rather than receiving protection and redress, Plaintiff was systematically re-traumatized by the legal system. Judicial officers, acting in conspiracy with Quinn Emanuel and Diane Doolittle, transformed the courts into instruments of legalized captivity, replicating the dynamics of trafficking through asset seizures, gag orders, retaliatory rulings, and obstruction of medical care, housing, and safety. This was not negligence. It was deliberate. It was coordinated. It was trafficking by state-sanctioned means, designed to ensure Plaintiff's isolation, economic destruction, and eventual death. The duration and

structure of this abuse exceed the statutory threshold of severity, and constitute prolonged trafficking under colour of law, as recognized under 18 U.S.C. §§ 1590 and 1591, and binding international human rights law.

PRAYER FOR RELIEF ON COUNT SIXTY

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment against Defendants Quinn Emanuel and Diane Doolittle for civil liability under 18 U.S.C. § 1595;

b. Declare that Plaintiff has been subjected to continued trafficking through abuse of legal process, psychological coercion, and judicial enterprise under §§ 1590 and 1591;

c. Enjoin the enforcement of any judgment, order, or legal instrument issued as part of the trafficking venture, including:

- The Ontario Mareva injunction;
- California contempt judgments;
- Any ex parte rulings, secret hearings, or fraudulent court actions initiated by Quinn Emanuel or its affiliates;

d. Award compensatory and punitive damages in an amount to be determined at trial;

e. Award treble damages under 18 U.S.C. § 1595 and 18 U.S.C. § 1964(c) (RICO);

f. Refer this matter for criminal investigation and disciplinary prosecution by the U.S. Department of Justice, California State Bar, and any appropriate international human rights body;

g. Grant any further relief the Court deems just, equitable, and necessary to dismantle the judicial trafficking apparatus and restore Plaintiff's rights, dignity, and safety.

h. Refer this matter to the United Nations Special Rapporteur on Trafficking in Persons, the Inter-American Commission on Human Rights, and any relevant international body charged with the enforcement of the UN Palermo Protocol, the Universal Declaration of Human Rights, and the Convention Against Torture, recognizing that the United States legal system, as administered by the named co-conspirators, has knowingly engaged in prolonged trafficking and psychological torture under colour of law, and that Plaintiff is entitled to international protection and redress as a trafficking survivor subjected to ongoing persecution.

# COUNT SIXTY, TWO: REFOULEMENT / JUDICIAL REFOULEMENT OF A TRAFFICKING SURVIVOR

*(8 U.S.C. § 1231(b)(3); Art. 33, UN Refugee Convention; ICCPR, Art. 14; CAT, Art. 3; Against All State and Institutional Defendants Who Returned, Transferred, or Channeled Plaintiff Into Corrupted Jurisdictions)*

Plaintiff re, alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

This cause of action is brought under the non, refoulement principle, recognized in both domestic statutory law (8 U.S.C. § 1231(b)(3)) and international treaty obligations binding on the United States (1951 Refugee Convention and 1967 Protocol; International Covenant on Civil and Political Rights ("ICCPR"), Art. 14; Convention Against Torture ("CAT"), Art. 3).

The principle of non, refoulement prohibits returning, transferring, or remanding a victim of persecution or torture to any forum where they face a substantial likelihood of renewed harm, retaliation, or denial of justice. This prohibition applies not only to physical deportation, but also to judicial transfers, removals, or dismissals that knowingly return a trafficking survivor to a hostile forum controlled by traffickers, corrupted judges, or state actors complicit in persecution.

## Factual Allegations of Refoulement

1. Federal courts including the Southern District of New York (Judge Laura Taylor Swain) and District of Columbia, Eastern District Of Pennsylvania Honorable Judge Paul S. Diamond Re: Amber Doe v. Sequoia Capital Operations LLC, et al., Case No. 2:25-cv-04734-PD by transfer orders issued in 2023–2025, have knowingly and deliberately remanded Plaintiff's trafficking claims back into the Central District of California, a forum Plaintiff has repeatedly pled is corrupted, bribed, and weaponized against her by trafficker Michael Goguen, Quinn Emanuel, and their judicial co, conspirators.

2. These courts acted with full awareness that California state courts had already declared Plaintiff a "vexatious litigant," denied all filings, enforced fraudulent judgments, and solicited her murder through collusive retaliation.

3. By compelling Plaintiff back into the very jurisdiction controlled by her traffickers and corrupted judges, Defendants engaged in judicial refoulement, functionally indistinguishable from deporting an asylum seeker back into the hands of persecutors.

4. Judge Swain's August 20, 2025 Transfer Order (Doe v. Sequoia Capital, 25, CV, 6169 (LTS)) explicitly cited prior California dismissals labeling Plaintiff "frivolous" and "vexatious," while ignoring the trafficking allegations. This order is paradigmatic refoulement: laundering fraudulent state court stigmas into federal proceedings to justify returning Plaintiff to persecution.

5. Refoulement is not limited to immigration contexts. Courts have applied its underlying due process and human rights principles to extradition, judicial transfers, and institutional practices where victims are knowingly sent into persecution. See *INS v. Cardoza, Fonseca*, 480 U.S. 421 (1987) (U.S. recognizes binding obligations under non, refoulement).

6. Plaintiff has repeatedly been denied fee waivers, TROs, e-filing rights, and access to judicial remedies in California. Federal judges are fully aware of these deprivations yet persist in transferring her filings there, thereby ensuring she is trapped in a closed, loop system of persecution with no neutral tribunal.

## Legal Basis

- Domestic Law: 8 U.S.C. § 1231(b)(3)(A) codifies the non, refoulement principle by prohibiting removal to any country where persecution is likely. Courts extending this principle must also prohibit judicial transfer to a persecutory jurisdiction when persecution is reasonably foreseeable.
- International Law:
    - *1951 Refugee Convention & 1967 Protocol* , Art. 33(1): “No Contracting State shall expel or return (‘refouler’) a refugee… to the frontiers of territories where his life or freedom would be threatened.”
    - *Convention Against Torture* , Art. 3: prohibits expulsion or return to states where torture is a foreseeable risk.
    - *ICCPR* , Art. 14 guarantees a right to a fair and impartial tribunal, which is violated when courts knowingly return a victim to hostile forums.
- Analogy in U.S. Jurisprudence: Courts recognize that even indirect acts (constructive deportations, coerced transfers, etc.) constitute refoulement where persecution is the foreseeable outcome. See *Khouzam v. Attorney General*, 549 F.3d 235 (3d Cir. 2008).

## Harm and Injury

As a direct and proximate result of judicial refoulement, Plaintiff has suffered and continues to suffer:

- Denial of access to a neutral tribunal;
- Continued enforcement of fraudulent judgments and gag orders leading to illegal imprisonment ;
- Escalating retaliation and deprivation of housing, medical care, and survival needs;
- Foreclosure of all legal remedies by channeling every filing back into corrupted jurisdictions;
- Psychological trauma equivalent to being forcibly returned to the custody of traffickers.

PRAYER FOR RELIEF ON COUNT SIXTY, TWO

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare that judicial transfers and dismissals returning Plaintiff to corrupted jurisdictions constitute refoulement in violation of U.S. statutory law, constitutional guarantees, and binding international treaties;

b. Void and enjoin all transfer orders, including but not limited to Judge Swain's August 20, 2025 Transfer Order in *Doe v. Sequoia Capital*, 25, CV, 6169 (LTS);

c. Enjoin any further federal or state court orders that transfer, remand, or compel Plaintiff to litigate in the Central District of California or other proven corrupted jurisdictions;

d. Refer this matter to the U.S. Department of Justice, Civil Rights Division, and to the United Nations Special Rapporteurs on Trafficking in Persons and Judicial Independence, for investigation and protective intervention;

e. Award compensatory and punitive damages against all non, immune institutional actors and private conspirators who procured or enforced refoulement orders;

f. Grant any further relief this Court deems just, equitable, and necessary to prevent continued persecution through judicial refoulement, including international protective measures and monitoring.

# STATEMENT

(On Billionaire Exploitation, Judicial Collusion, and State Complicity)

Verification. I, the undersigned, declare under penalty of perjury that the following is true and correct to the best of my knowledge, recollection, and belief.

## A. PREMIUM TRAFFICKING VALUE & ECONOMIC ENSLAVEMENT

1. Plaintiff alleges that billionaire perpetrators, among the wealthiest men on the planet, knowingly paid traffickers the highest premiums to ensure her continued captivity, compliance, and silence.

2. Plaintiff was exploited as a "highest earner" within this trafficking system, generating extraordinary profit margins for perpetrators, far beyond what had been seen before or since.

3. These inflated payments were not incidental; they were designed to keep Plaintiff under control and to incentivize traffickers to enforce compliance through coercion and violence.

4. This constitutes aggravated human trafficking under 18 U.S.C. §§ 1590–1591, where financial enticement was directly tied to Plaintiff's subjugation.

5. Such profiteering by billionaires, who would not notice the loss even if forced to disgorge the entirety of their unlawful gains, illustrates the asymmetry of power: Plaintiff's life was destroyed while perpetrators experienced no meaningful economic consequence.

# B. CONTRACTUAL SILENCE & BETRAYAL

6. Plaintiff had entered into an understanding with organized crime actors, including the Hells Angels, to remain silent so long as she was permanently left alone and not pursued.

7. Plaintiff never intended to disclose her abuse or seek redress, provided her survival and safety were secured.

8. This fragile peace was ruptured not by traffickers themselves, but by Defendants Michael Goguen and his legal representatives at Quinn Emanuel, Wilson Sonsini, and Goodwin Procter.

9. These attorneys, acting under color of authority and with financial inducements, coerced Plaintiff into firing her chosen counsel and submitting to their fabricated agreements.

10. This was not lawful representation; it was trafficking by legal substitution, weaponizing the attorney, client relationship as an instrument of control.

# C. JUDICIAL ENTERPRISE & UNJUST ENRICHMENT

11. Judges, acting under the color of law, joined this trafficking enterprise by enforcing fraudulent agreements, issuing fabricated rulings, and obstructing Plaintiff's attempts at lawful redress.

12. Through such rulings, judges unlawfully enriched themselves by accepting bribes, gifts, or favors tied to the avails of child sex trafficking.

13. This constitutes aiding and abetting under 18 U.S.C. § 2, conspiracy under 18 U.S.C. § 371, and knowing financial participation in trafficking under 18 U.S.C. § 1593A.

14. Plaintiff alleges that no less than forty, six judges across the United States and Canada participated in this retaliatory judicial enterprise, creating a historic and unparalleled instance of systemic corruption.

15. Plaintiff asserts that this coordinated misconduct was not negligence or error, but a deliberate, malicious campaign of persecution designed to silence, exploit, and ultimately annihilate her.

## D. STATE COMPLICITY & SYSTEMIC FAILURE

16. Plaintiff alleges that the Attorney General of California, Rob Bonta, knowingly facilitated and encouraged these acts by interfering with criminal investigations, protecting judicial allies, and refusing to prosecute clear violations of trafficking and racketeering statutes.

17. Plaintiff further alleges that state child protection systems in Canada directly enabled trafficking by returning her to abusers, even after she disclosed the abuse to a government social worker.

18. The justification given, fear that she might become a “street child” if not returned, was itself an act of cruelty and dereliction of duty, amounting to state complicity in child trafficking.

19. Plaintiff asserts that Canadian law enforcement officers accepted bribes from organized crime, including the Hells Angels, thereby facilitating her trafficking and obstructing escape.

20. These failures constitute violations of the Convention on the Rights of the Child, the Palermo Protocol, and binding obligations under the Convention Against Torture to protect trafficking victims and prevent refoulement to conditions of abuse.

## E. ONGOING HARMS

21. Plaintiff remains in danger, without access to safe shelter, medical care, or the basic resources necessary for survival.

22. Plaintiff’s siblings, likewise, are denied access to their own assets and safety due to retaliatory legal and financial mechanisms imposed by the trafficking enterprise.

23. Plaintiff lives under constant threat of malicious prosecution and wrongful incarceration, foreseeable outcomes designed to facilitate her eventual murder in custody, despite her innocence.

24. These conditions amount to continuing trafficking under U.S. federal law, and persecution under international human rights standards.

## F. SUPREME SEVERE CONDEMNATION

25. Plaintiff condemns, in the strongest terms, the judicial, legal, and political actors who participated in her trafficking, enrichment, and persecution.

26. Judges and attorneys who engaged in these acts under color of law have committed the most inhumane crime on the planet: re, trafficking a child sex trafficking victim through courts and institutions.

27. The Attorney General's alleged participation in this cover, up constitutes betrayal of oath, obstruction of justice, and facilitation of organized crime.

28. Plaintiff declares that the damages owed, though staggering in monetary terms, are negligible to the billionaires who caused them, yet catastrophic to her survival and existence.

29. Plaintiff further declares that this systemic debasement will be documented as a historical atrocity unless redressed by independent oversight and lawful adjudication.

# G. CLOSING DECLARATION

30. Plaintiff has never committed a crime.

31. Plaintiff has survived crimes so egregious they defy precedent in American and Canadian law.

32. Plaintiff stands today as living proof that judicial trafficking is possible, that state actors can conspire with billionaires and organized crime, and that survivors can be annihilated by legal process.

33. Plaintiff refuses to be erased and insists upon justice, redress, and international recognition of the systemic complicity in her trafficking and exploitation.

# MY ONLY REMAINING QUESTION

My only remaining question is the billionaires who abused and exploited me, paid traffickers the highest premium for me ensuring that the traffickers kept me compliant and under their control because I was bar none the highest earner, the likeness they had never seen before and I guarantee they have never seen again. These are the richest men on the planet. I was never planning on saying a word about anything that had happened to me. I had an oral contract with the hells angels that I would remain silent about all of the criminal acts perorated against me, so long as they forever left me alone and never tried to find me again.

It was Goguen and his lawyers from Quinn Emanuel, Wilson sonsini and Goodwin Procter who decided I had to fire my lawyer , that they could act as my lawyers and enter into their agreement. And then all of you moronic judges decided to engage in my trafficking unjustly enriching yourselves off of the avails of my rape, exploitation and child sex, trafficking. The perpetrators are the richest

men on the planet. Not a single one of them will even notice a difference in their lifetime after they pay the damages they owe me.

So why is it that this continues to go on erupting into greater chaos day after day? While I have no access to medical treatment for injuries caused by you psychopaths, I remain in danger, I have no safe shelter, my siblings have no access to their own assets, but you deleterious good for nothing, useless, corrupt judges purport everyone can continue to abuse and exploit me as long as you get your bribe money? I am sorry but that is not the way the world works you are public servants acting under the colour of the law appointed for the people by tech people and paid for by the people and every last one of you is waste fraud and abuse of the tax payers dollars. You are enemies of the state.

Judges acting under the colour of they law are literally aiding and abetting the most inhumane crime on the planet, The California Attorney general Rob Bonta is encouraging and participating in diabolical criminal acts and facilitating the cover, up. What is the point in this exercise in Machiavellian debaucherous criminal insanity ? There was never a stripper like me anywhere they trafficked me in the world and they exploited me beyond comprehension. All I could try to do was remain safe and unscathed by beating as frequently as possible. The other girls and women were not shuttled out the beauty pageants for the traffickers profit, none of them were sent out to global events and put on yachts and private islands with billionaire pedophiles. Most of the time they remained in their local vicinity, I would see the same girls at the same clubs for years when I was sent around the circuit. and if they did not earn much the hells angels moved them onto a street corner and/or into the massage parlours where they were trafficked until they were dead.

Just as the hells angels never had anyone as high vale that they could exploit to the extent they exploited me, it has never happened in the history of American nor Canadian law where 46 judges and counting, got on board to start abusing and exploiting a victim of sex crime and sex trafficking for their profit.

Nobody has every seen or heard of anything happening to anyone akin to what has happened to me. No lawyer that I have spoken to or who has reviewed the evidence has ever seen anything the likeness where 46 judges and counting all conspired to end a victims life.

I am literally enduring a debased attorney general aiding and abetting the relentless stalking via ordering law enfacement investigations halted and this prick of an AG running them California DOJ, orchestrating fake trials for my malicious prosecution and inevitable murder when taken into custody. When the truth is I have never committed a crime. It was judges and police in Canada accepting bribes from organised crime that allowed for me to be trafficked. I ran away the police came for me while I was still trying to formulate a plan to get to safety. they took me to child protective services. I told the social worker what was happening and the lazy good for nothing useless piece of garbage hired by the government to protect children that debased social worker sent me back to traffickers citing if she didn't I would become a "street child"

# CLOSING STATEMENT

(On Billionaire Exploitation, Judicial Collusion, and State Complicity)

I speak today as a survivor whose life was stolen at the age of fifteen and who has never stopped fighting for freedom. What I endured, and what continues to be inflicted upon me, is not simply personal tragedy, it is systemic atrocity.

## I. PREMIUM TRAFFICKING VALUE

The billionaires who abused and exploited me paid traffickers the highest premiums to guarantee my compliance and captivity. I was treated as a commodity of exceptional value , "the highest earner," generating profits they had never seen before and have never seen since.
They purchased my silence and my body with sums so large that, even now, disgorgement of their unlawful purchase of a human would not make a dent in their fortunes. Yet for me, the consequences were annihilation of liberty, health, and dignity.

## II. CONTRACTUAL SILENCE AND LEGAL BETRAYAL

I never intended to speak publicly about what was done to me. I had an understanding with the Hells Angels: I would remain silent so long as they left me alone. That fragile peace was shattered not by traffickers, but by Sequoia capital Michael Goguen and their " lawyers" at Quinn Emanuel, Wilson Sonsini, and Goodwin Procter, who forced me to fire my lawyer and submit to their fraudulent "agreement."
This was not contract; it was coercion. It was not representation; it was re, trafficking through the weaponization of law.

## III. JUDICIAL TRAFFICKING ENTERPRISE

What followed is unparalleled in American or Canadian law. No fewer than forty, six judges became instruments of my trafficking , issuing fabricated rulings, enforcing fraudulent contracts, and unjustly enriching themselves through bribes and favors tied to the avails of child sex slavery.
These judges acted not as neutral arbiters but as traffickers under color of law. Their rulings replicated the same captivity I had endured in strip clubs and brothels , only now enforced with gavels and orders rather than chains and fists.

## IV. STATE COMPLICITY AND ATTORNEY GENERAL'S ROLE

California Attorney General Rob Bonta has actively aided and abetted this criminal enterprise , ordering police to halt investigations, shielding judges from accountability, and facilitating cover, ups for his judicial allies.
Instead of protecting victims, the Attorney General has emboldened traffickers and their attorneys,

creating a culture of impunity where crimes of bribery, obstruction, and malicious prosecution flourish.

## V. CHILD PROTECTION FAILURE

In Canada, when I first ran from traffickers, the police captured me before I could secure safety. I told a government social worker the truth of what was happening. Her response was not rescue, but betrayal: she sent me back to my abusers, claiming that otherwise I would become a "street child." That decision was not protection. It was complicity. It ensured that I was thrust back into the hands of traffickers, left to suffer mutilation, rape, and exploitation at the hands of billionaires and organized crime.

## VI. ONGOING PERSECUTION

Today, I remain in danger. I have no safe shelter. I am denied medical care for injuries caused by these crimes. My siblings are denied access to their own assets. And still, judges orchestrate fake trials and malicious prosecutions designed to culminate in my wrongful incarceration and inevitable death.
This is not law. This is persecution. This is trafficking extended by the judiciary itself.

## VII. SUPREME SEVERE CONDEMNATION

We, the people, do not need corrupt judges like Mamie Frimpong, Danny Chou, Stephanie Bowick, Nico Dourbetes, Steve Kim, Nina Shapyrestyn and Elizabeth Lee, who claims to train judges across the nation on how to approach victims of human trafficking but is in actual fact training them how to retraumatize victims and who claim immunity as license to commit crimes.
We, the people, do not need an Attorney General like Rob Bonta, who obstructs investigations to protect corrupt judges.
We, the people, do not need a Department of Justice that stands idle while lawyers commit felonies in plain sight.
We, the people, need a judiciary that is not bought, a bar that is not corrupt, and a state that is not complicit in the most inhumane crime on this planet.

## VIII. FINAL DECLARATION

There has never been a trafficked stripper like me , exploited to the highest premium, then silenced by a legal cartel of billionaires, attorneys, and judges.
There has never been a precedent in U.S. or Canadian law where 46 judges collectively participated in trafficking a survivor for profit.
I have never committed a crime. Yet I am hunted, gagged, and persecuted by those sworn to uphold the law.

This is not justice. It is systemic debasement, and history will record it as a crime against humanity unless redressed now.

## Statement on Canadian Protection and U.S. Judicial Refoulement

I am a Canadian citizen and a survivor of international human trafficking, sexual exploitation, and systemic judicial corruption. My case stands as living proof that the judicial systems of the United States have been weaponized to re-traffic survivors by way of venue manipulation, fabricated vexatious orders, and malicious prosecutions designed to silence testimony.

Canada has not only the moral duty but the legal obligation to protect me, its national, from further persecution at the hands of U.S. courts corrupted by billionaires, criminal syndicates, and complicit law firms.

I declare the following facts and principles:

**1.** Safe Passage and Monitoring
The U.S. Marshals Service and FBI have the capacity to provide safe passage and protective monitoring. If Canada asserts its protective role, their failure to act would constitute complicity in trafficking and judicial persecution.

**2.** Judicial Refoulement as a Human Rights Crime
When U.S. courts transfer me back to California,  the very jurisdiction proven to be corrupted and hostile,  this is judicial refoulement. It is the functional equivalent of sending an asylum seeker back into the arms of their persecutors. Under the Convention Against Torture (Art. 3), such actions are unlawful.

**3.** International Oversight is Mandatory
These proceedings cannot be entrusted to the same judiciary already implicated in trafficking concealment. Independent monitoring by the UN Special Rapporteur on Trafficking in Persons, the Inter-American Commission on Human Rights, and other competent international bodies is the only safeguard against continued judicial persecution.

**4.** Magnitsky Sanctions Must Apply
Canadian law,  the Justice for Victims of Corrupt Foreign Officials Act (Magnitsky Act), mandates sanctions against foreign officials engaged in gross human rights abuses. U.S. judges, attorneys, and officials who knowingly profited from or enabled trafficking fall squarely within that definition. Canada cannot pretend neutrality; it must sanction these bad actors or be complicit.

**5.** Prohibition of Retaliatory Imprisonment
Any attempt to jail me under fabricated contempt orders or malicious prosecutions is nothing but state-sponsored trafficking and persecution. Canada, bound by the Charter of Rights and

Freedoms and international law, must intervene to prevent such retaliatory imprisonment of its citizen.

⚖️ Condemnation and Assertion of Rights

I have endured an additional eleven years of continued trafficking where judges and lawyers became my latest traffickers unjustly enriching themselves at the expense of my life health and safety, now laundered through judicial proceedings masquerading as law. The billionaires and law firms who trafficked me remain free, while I, the victim, am targeted for silencing, dispossession, and eventual death.

Canada cannot abdicate its role. The duty of protection is not optional. It is enshrined in the Charter, in the Palermo Protocol, in the Convention Against Torture, and in the ICCPR. Failure to act is a betrayal of every Canadian survivor of trafficking and every Canadian citizen who expects the state to defend them against foreign persecution.

I therefore declare:

- That judicial refoulement is a crime.
- That U.S. judges and lawyers engaged in my persecution are criminal actors under international law.
- That Canada must assert protective jurisdiction and enforce Magnitsky sanctions against these bad actors.
- That my safety, dignity, and survival are matters of national and international urgency.

This is not a request. This is a statement of law, fact, and principle. I will not be silenced. I will not be surrendered to my abusers by way of judicial trickery. I am a Canadian citizen, and I am entitled to protection.

⚖️ Statement ends here.

# 1. FACTUAL BACKGROUND

# VII.

2. A. Introduction to the Plaintiff's Ordeal

3. The Plaintiff, Amber Doe(hereinafter "Amber "), is a Canadian citizen and survivor of transnational human trafficking, systemic sexual exploitation, judicial corruption, and egregious deprivations of her civil, constitutional, and human rights.

4. From the age of fifteen,The Plaintiff, Amber Doe(hereinafter "Amber "), is a survivor of transnational human trafficking, systemic sexual exploitation, judicial corruption, and severe deprivation of her civil, constitutional, and human rights. From age fifteen, Amber was trafficked across borders by criminal syndicates, including the Hells Angels, and ultimately fell under the control of Michael Goguen, a U.S.-based billionaire and high-profile financier. Amber 's lived experience forms the foundation of this Action, asserting grave torts and violations of Canadian law, international human rights standards, and applicable treaties. The events detailed herein form a continuous pattern of abuse, fraud, and obstruction of justice, executed by Michael Goguen, his agents, Quinn Emanuel LLP, Sequoia Capital, and Canadian co-conspirators including Lenczner Slaght LLP, Monique Jilesen, Sahar Talebi, and members of the Ontario judiciary and legal system.

5. Amber was trafficked across international and interprovincial borders by organized criminal syndicates, including the Hells Angels, and ultimately fell under the coercive control of Defendant Michael Lewis Goguen, a billionaire financier and U.S.-based venture capitalist.

6. Amber 's lived experience, Human Trafficking Child sex- trafficking of sexual slavery, medical abuse, legal sabotage, and retaliatory litigation, forms the factual foundation for this Action, which asserts severe torts and statutory violations under Canadian law, international human rights standards, and binding treaties.

7. The harms committed were executed by Goguen and his agents, including Defendant law firm Quinn Emanuel Urquhart & Sullivan LLP, his financiers at Sequoia Capital, and Canadian co-conspirators, including but not limited to Lenczner Slaght LLP, Monique Jilesen, Sahar Talebi, and members of the Ontario judiciary.

8. B. Human Trafficking and Exploitation by Goguen His Co-Conspirators and Criminal Syndicates

9. At age fifteen, Amber was trafficked by a relative into the hands of the Hells Angels and subsequently funnelled into a high-end human trafficking circuit marketed as elite modelling.

10. By 2000, Amber was trafficked between strip clubs and elite private events, privates clubs luxury properties, sporting events, hostess bars, in the U.S. Virgin Islands, China, Japan, Guam, Puerto Rico, Florida, New York, Michigan, New Jersey, Arizona, Georgia, Montreal, Alberta, British Columbia, Manitoba, Ontario, Saskatchewan, Quebec, Europe and other locations, serving as nude entertainment for elite predators for the profit of the Hells Angels and other organized crime syndicates.

11. Between 2000 and 2013, Amber was transported across multiple jurisdictions, including the U.S. Virgin Islands, China, Japan, Guam, Puerto Rico, Florida, New York, Texas, Oklahoma, Louisiana, Arizona, Michigan, Alberta, Ontario, Quebec, and Europe, for the purpose of sexual exploitation at strip clubs, Hostess bars, Cabarets, luxury properties, sporting events, and Billionaire pedophiles private parties, generating revenue for organized crime syndicates.

12. After being trafficked to and From The Virgin Islands to billionaire pedophiles Amber was sent by plane to Texas, a few days after arrival In Dallas, Texas, Amber was introduced to Defendant Pedophilic serial rapist Michael Goguen by a VIP manager at a club controlled by organized crime. From approximately 2002 onward, Goguen exercised total coercive control over her person, body, communications, and finances. Goguen grooms Amber , promising to free her from traffickers if she submits to his demands.

13. Goguen forcibly inducted Amber into his private harem, subjected her to repeated sexual assaults, psychological manipulation, and drug-induced compliance, and trafficked her across state and national borders with the use of shell companies and private aircraft.

14. Amber was drugged and anally raped the first time by Goguen, while suffering from a head injury and retrograde amnesia after rival gang members assaulted her and

tried to take her under their control. Shortly after discharge from an ICU, Goguen knowing Amber s condition used Sequoia Capital resources to fly her to Toronto, Ontario, where he raped her anally in the Sheraton Gateway Hotel.

15. Goguen continued with the grooming and sexual abuse, forced sodomy, rape, emotional torture, coercive control, and financial manipulation. Goguen used aliases, shell companies instructed Amber to set up (Je Ne Se Que Enterprises, LLC; Every Girl Counts for him to hide payments for her expenses from his multiple  wives and the IRS. He used Sequoia Capital expense accounts, numbered companies, and offshore accounts to launder payments and evade tax liabilities, facilitating the sex-trafficking enterprise.

16. Amber is forced to submit to increasingly violent and degrading sexual acts, including being forced to beg Goguen to masturbate on her, forced sodomy for up to 6 hours, and being coerced to consume alcohol which he drugged with rohypnol drugs to increase her compliance and render her unconscious.

17. Goguen financed Goguen sex enterprises sex trafficking conspiracy using Sequoia Capital expense accounts, offshore accounts, and private banking instruments, engaging in money laundering and tax evasion in furtherance of the trafficking enterprise.

18. C. Medical Harm and Escalation of Violence

19. In around 2010, Amber was diagnosed with multiple high-risk strains of HPV, traced to Goguen’s history of unprotected sex with trafficked women, prostitutes, other mens wives, and teenage rape victims. Goguen knowingly concealed his STI status from Amber and others.

20. In 2012, Goguen inflicted a 7-inch anal tear during a violent sexual assault at a hotel in London, UK. Necessitating emergency surgery. He paid $100,000 via wire transfer for medical treatment to suppress the incident but evaded legal and criminal accountability.

21. Goguen admits to knowing he has been infected with HPV since his university days at Cornell allegedly infected by Socialite Dayssi Olarte de Kanavos who Goguen resumes sodomizing over 30 years later in 2012 while she is married to Hotelier Paul Kanavos.

22. Goguen attempted to coerce Amber into further sexual acts with other men while concealing her HPV infection. Upon her refusal, he escalated the violence and psychological abuse. Goguen Continued to coerce Amber to conceal her infection and continue spreading it to others. When Amber objected to this debased ideology, Goguen retaliated citing ion she cut ties with he would hire men to surveil and track her for the remainder of her life.

23. D. Coerced Settlement, Financial Exploitation and Financial Control

24. Full time stalking and surveillance of Amber begins by men hired by Goguen

25. 2013: Goguen stops paying Amber 's expenses and asserts he will continue abusing Amber forever because he "loves" her so he is "keeping her in an emotional cage", forcing her to retain an attorney.

26. In 2014, Amber Retained Attorney Rivers Morrell to help her end this abuse. Rivers Morrell demands mediation. Goguen contacts Amber , calling her attorney a criminal, asserting her attorney is stalking her, that he is the dangerous one and demanding she fire him and Goguen and his high powered lawyers will represent her. Amber , under duress, fires her attorney and is forced to rely on Sequoia Capitals lawyers (Quinn Emanuel) (Goodwin Procter), (Wilson Sonsini ).

27. Under distress, stalking, and surveillance, Amber was forced By Goguen and his lawyers to fire her sole legal representative Rivers J Morrell and sign a $40 million "Personal Injury Settlement Agreement" drafted by Sequoia Capitals attorneys at Quinn Emanuel, Goodwin Procter, and Wilson Sonsini. The legally binding written contract was signed May 23, 2014.

28. The agreement was executed at the Rosewood Sand Hill Hotel, a known trafficking site used by Goguen. No negotiation, Independent legal advice, or freedom from duress was provided to Amber . The legally Binding written contract was witnessed and notarized by Sequoia Capitals staff notary. Amber , coerced and unrepresented, signs a Settlement Agreement drafted by Quinn Emanuel, Goodwin Procter and Wilson Sonsini "Attorneys" for $40 million, payable in four $10 million instalments, in exchange for her silence and dismissal of her personal injury claims, it is witnessed and notarised across the street from. Sequoia Capital at the Rosewood Sand Hill Hotel Business centre by their Sequoia Capitals staff notary. All of the sex slaves from Goguen sex enterprises were housed at the Rosewood Sandhill hotel for years and they had an sex trafficking conspiracy operating out of the lobby jewellery store.

29. Only the first $10 million installment was paid. Goguen defaulted and resumed his campaign of harassment, surveillance, and retaliation. His former head of security currently serving time in federal prison for crimes Goguen instructed him and paid him to commit, Matthew Marshall, has since been incarcerated for crimes which include pretending to run the CIA off the records for Goguen. Mathew Marshall hired men to stalking Amber at the demand and Goguen. On multiple occasions Goguen instructed him to solicit her murder by organizing an assassination attempt against Amber .

30. E. Judicial Sabotage, Retaliation in U.S. Courts (2014–2025)

31. Fraudulent Bench trials and Cross-Border Conspiracy

32. In 2014-2019: Amber seeks to enforce the contract. Goguen and Quinn Emanuel launch a campaign of retaliation, including:

33. 2016-2019, Goguen and Quinn Emanuel begin bribing Bribing lawyers to abandon Amber ’s case (e.g., Glaser Weil LLP Patricia Glaser, Jill Basinger, Sherman Law Richard Sherman, Bisnar Chase Brian Chase Scott Ritsima, Paoli and Purdy, William Paoli).

34. Weeks prior to Trial Goguen Quinn Emanuel Lawyers travel to Las Vegas with Amber s attorney William Paoli he is provided bribe money to sabotage her case and not show up to trial.

35. $900.00 per hour Debased 85 year old court appointed referee from JAMS former judge Read Ambler Continues to perpetrate legal abuse against Amber while she is attempting to recover from surgery.

36. While Amber was incapacitated and recovering from major surgery, taking more than a dozen mind altering prescription medications, ordered to bed rest by her medical team. (tungsten poisoning, rods and plates in her bones, seizures, and bone marrow transplant) Plaintiff was in pro se due to attorney interference and bribery, San Mateo Judge John Grandseart denied Her meritorious motion to continue the trial until she recovered from surgery. Defendants held a fraudulent bench trial in San Mateo Superior Court presided over by bribed judge Danny Chou, producing a $14 million default judgment, an illegal unconstitutional gag order, and a fraudulent restraining order. All evidence was falsified and the testimony was manufactured by Quinn Emanuel and perjury was suborned by Quinn Emanuel.

37. Fraudulent gag order (restraining order) Drafted By Quinn Emanuel lawyers Signed by Judge Danny Chou issued without notice, silencing Amber .14 million Dollar fraudulent Judgement drafted By Quinn Emanuel, Signed By Bribed Diversity, Equality and Inclusion China Born "Judge" Danny Chou

38. Despite ongoing appeals and Amber ’s unavailability, the fraudulent judgment was enforced in Ontario, circumventing California laws staying judgment collection. Until the final appeal is heard in the Supreme court..

39. The Ontario Superior Court of Justice, via Judges Cordelia (Cory) Gilmore and Barbara Conway, issued an illegal Mareva injunction to freeze Amber ’s Alberta assets, knowingly relying on fabricated evidence of Ontario jurisdiction.

40. Monique Jilesen, Sahar Talebi, and the firm Lenczner Slaght LLP that “runs” The commercial list business court a branch of the Canadian government fabricated jurisdiction by using false addresses, bank records, and business filings Converting Amber from and Individual into a corporation for the purposes of defrauding the court.

41. Judges Barbara Conway And Cory Gilmore admitted in writing in ex-parte communications from their bench emails to the Quinn Emanuel lawyers that Amber had not been properly served but signed freezing orders regardless, denying her access

to funds, shelter basic life necessities and for urgent surgery, forcing Amber into homelessness in Los Angeles during the Global Corona virus pandemic.

42. Not only did the illegal Mareva injection rob amber of access to her fastest it robbed her siblings in western provinces of access to their personal assets and bank accounts with zero notice to them.

43. During this time, Quinn Emanuel intercepted Amber 's communications with law enforcement and obstructed criminal investigations.

44. Quinn Emanuel and Lenczner Slaght proceeded in bad faith before the Supreme Court of Canada. Amber is currently suing the Crown.

45. F. Systematic Attorney Sabotage and Fraudulent Proceedings

46. Amber 's attorneys, including Gregory Brown and Herb Fox, embezzled over $300,000 from her trust account and sabotaged appeal filings.

47. In Orange County Superior Court, Patricia Glaser, Glaser Weil LLP, and other co-defendants colluded with arbitrators and mediators to prevent a $40 million legal malpractice claim from proceeding.

48. Amber 's lawyers from Paoli and Purdy LLP failed to appear or submit responses despite having been Retained and paid. The JAMS arbitration firm was paid in full by Amber and so were the expert witnesses This led to another fraudulent multi-million dollar secret judgment.

49. 2022: Amber files a motion to vacate the San Mateo judgment for extrinsic fraud; Bribed Judge Who needs to be removed from the bench Danny Chou delays 90 days, then denies it, falsely citing timeliness, despite no statute of limitations on Extrinsic fraud upon the court.

50. Diane Doolittle, in open court, brazenly declares: “We don’t bribe judges.” Yet Nobody else mentioned a word about bribing judges.

51. In a retaliatory action filed by Attorney Rivers Morrell in 2016, Amber 's cross-complaint was sabotaged by judicial misconduct.

52. Amber 's cross-complaint was sabotaged by coordinated misconduct from all prior counsel, opposing counsel, and Judge Nico Dourbetas, who declared her a illegally at the behest of Quinn Emanuel and Goguen vexatious litigant in 2024.

53. In 2024, Judge Nico Dourbetas declared her a vexatious litigant and ordered a $50,000 bond, despite her status as a trafficked indigent woman residing in a shelter, after already having signed her fee waiver months prior after she provided the court evidence of indigence.

54. G. Federal Court Obstruction and International Denial of Justice

55. March 2023: Amber files suit in federal court against all defendants (judges, lawyers, Billionaire pedophiles and their corporations, California State Bar Ec ). Maame Frimpong dismissed the case three times, egregiously citing res judicata for all defendants who Amber had never ever sued based on Goguen's fraudulent San Mateo judgment.

56. Between 2023 and 2025, Amber filed federal complaints citing trafficking, constitutional violations, and fraud. Judges Maame Frimpong, Donal Malloy, Steve Kim, David O. Carter, Laura Taylor Swain, and others dismissed these cases under false legal pretexts, including improper use of res judicata despite no prior adjudication.

57. Diane Doolittle, partner at Quinn Emanuel, interfered in the Southern District of New York case through ex parte communications sending letters to Chief Judge Laura Taylor Swain via Fedex.

58. July 2023: Amber files in Southern District Federal Court in NY; Doolittle sends an Ex-Parte FedEx directly to Chief Judge Laura Taylor Swain citing Maame Frimpong Dismissed my case, Chief Judge automatically transfers the case back to California although she had already granted Amber s fee waiver and ordered the Marshalls to serve the summons and complaint on all defendants. and Corrupt magistrate Steve Kim demanded assignment of the Case by the Clerks, The clerks refused citing it was a discovery case not as 1983 civil rights claim and "judge" Steve Kim continued to make

demands of the clerks and Maame Frimpong dismissed the case again with no legal basis to do so.

59. Frimpong and Kim wrongly dismissed claims using manufactured jurisdictional arguments.

60. August 2023: Amber files in DC District Court Baptiste Vs Vox Media; Quinn Emanuel intercepts and forces the judge to dismiss the case. Amber files in Montana federal court (Goguen's residence); Old racist Article III Judge Donald Molloy, who previously jailed Goguen's former head of security, Matt Marshall, Assigns Himself to the case, then denies Amber 's right to proceed.

61. Amber 's filings in Washington, D.C., and Montana were intercepted and dismissed with no adjudication on the merits.

62. H. 2016-2024 Orange County Cross-Complaint and Judicial Persecution

63. 2016: Amber 's original attorney Rivers Morrell (forced out by Goguen) sues Amber , Goguen, Quinn Emanuel, and Goodwin Procter for $100M in Orange County Superior Court (Rivers Morrell v. Baptiste). Case is stayed pending San Mateo outcome.

64. Unscrupulous Lawyer Patricia Glaser Revoked Amber s Lawyers from Paoli and Purdy via bribery so he would sabotage Amber's 40 million dollar legal malpractice claim against Glaser Weil, which was set for mediation with the corrupt JAMS Arbitration firm.

Amber has paid the legal fees, arbitration fees and expert witness fees in full and Paoli fails to tell Amber that the mediation is scheduled. At Patty Glaser's request and interference The paoli and Purdy firm fails to show at the arbitration so Patty Glaser wins yet another fake judgement for millions when all she did was file a complaint and failed to even serve a single page of discovery.

65. Orange County : Amber pays 4 sets of lawyers to represent her in this case brought By Rivers Morrell. All lawyers failed to file even an answer on her behalf. By his time Patricia Glaser's "lawyers" Nemecek and Cole LLP are now representing 3 sets of Amber s former Lawyers, Glaser Weil Debased Pettifogging, CROOK Patty Glaser, Rivers Morrell and Paoli and Purdy LLP. Although None of these law firms did

any meaningful legal work on Amber ’s behalf, They all plan to split 100 million dollars from Goguen and Sequoia with the corrupt judge Nico Dourbetas.

66. July 2023 Amber files a cross-complaint, served on all defendants in The Orange County case.

67. Amber ’s fee waiver is granted by Judge Dourbetas at zoom hearing Sept 11, 2023, but Kyle Batter (Quinn Emanuel) announces a secret settlement between Rivers Morrell and Goguen at the same hearing.

68. Amber ’s motions are repeatedly denied with zero legal basis.Judge Nico Dourbetas signs Amber ’s fee waiver due to indigency, but later: Allows Quinn Emanuel to proceed while claiming the case is “stayed against Amber .”

69. July 2024 “Judge “ Nico Dourbetas Demands Amber post a $50K bond within 30 days to Goguen a billionaire pedophile and trafficker or her cross-complaint will be dismissed, knowing she is indigent, or face dismissal. This outrageous demand for bond is made of an indigent survivor of human trafficking residing in a shelter to post bond to the billionaire pedophilic serial rapist 8 years after the case was filed against Amber Goguen and his law firms for 100 million dollars

70. Amber files recusal motions against Dourbetas; denied three times. Multitudes of white supremacist corrupt debased lawyers from white shoe law firms file joinders to Quinn Emanuel's illegal request to sign Amber over as a vexatious litigant to deprive her of all access to justice against all participants in Amber ’s lifelong abuse and exploitation.

71. August 2024: Corrupt racist Judge Nico Dourbetas Dismisses her case and illegally declares her a vexatious litigant, banning her from access to all California courts.

72. Amber Appeals all of this to the California Fourth Appellate District court of appeals, all of her appeals systemically dismissed without any legal basis via Quinn Emanuel's undue influence, case disappears from the docket.

73. State Bar Of California Refuses to investigate any and all lawyers citing Amber has no right to even report the lawyers who embezzled hundreds of thousands per law firm from her attorneys client trust accounts and failed to adequately represent her.

74. Amber Files complaints against four corrupt California state judges with the judicial council, all complaints and the names of the Judges disappear from the system and she travels to San Francisco to the Judicial council where she is handed blank dismissals without the judges names on the investigation documents.

75. Judges Gilmore and Conway, in coordination with Quinn Emanuel and Lenczner Slaght, used falsified evidence and ex parte communications to freeze Amber ’s accounts and obstruct her access to justice.

76. Staff at her Canadian bank, under direction from Monique Jilesen, obstructed Amber ’s transactions and coordinated with the Defendants to facilitate asset theft and deprivation of essential medical care.

77. I. Retaliatory and Illegal Subpoenas

78. In 2025, Diane Doolittle issued subpoenas in a closed case with no service or jurisdiction, targeting Google, Verizon, Mint Mobile, T-Mobile, AT&T, Cox Communications, Medical providers and other platforms. Amber discovered these illegal subpoenas when contacted by Google’s and other corporations legal departments in May 2025.

79. J. Final Acts of Judicial Retaliation and Criminal Fraud

80. July 2024 Amber Files motion to vacate second fraudulent multi-million dollar judgement procured by her former lawyer Patrica Glaser and her "law firm" Glaser Weil LLP in the LA county Court in 2019. Amber only learned about this proceeding in Spring 2024 when researching at the LA court house.

81. July 2024- November 2024 "Judge" Stephanie Bowick refused to sign Amber s' Fee waiver on 3 occasions, Barring her from proceeding with the motion to vacate. "Judge" Stephanie Bowick then hosted a secret in Chambers hearing and Vacated Amber s Motion to Vacate the fraudulent multi- million dollar Judgement. This case was also removed to Federal court citing Civil rights violations and is now up on Appeal to the 9th circuit.

82. Susan Greenberg, August 2024: Fourth contempt hearing for “criminal defamation of billionaire pedophiles”in San Mateo. Judge Greenberg sets trial date for the week of September 31 2024, Amber appears in person for trial on the 31st the court demands Amber consult San Mateo private defenders’ office as her freedom and liberty are a stake for "criminal defamation" of a pedophilic serial rapist who victimised over 5000 girls and women globally since the mid 1990s. Amber agrees to contact the program and they fail to get back to her; October 17th Amber appears for the follow up hearing With Judge Greenberg on zoom, Attorney Katrina Steiner, an attorney Amber never met, never spoke to, appears unannounced in the courtroom, and claims to represent Amber .

83. October 2024–March 2025: Steiner does no discovery or trial preparation. Amber learns Steiner is a close friend of Judge Susan Greenberg. Amber requests to proceed pro se or with new counsel; denied via Marsden hearing March 2025.

84. Amber learns via alternative means that the California DEI Attorney General Rob Bonta and corrupt San Mateo Judge Danny Chou are close friends since university and clerked together for the California supreme court.

85. January–March 2025: New judge 40 year old Nina Shapirshteyn, denies all five of Amber ’s meritorious motions (motion to vacate fraudulent judgement, motion for new trial, motion to disqualify Quinn Emanuel for financial interest in Amber s malicious prosecution and corruption, Motion for Preliminary Injunction and TRO, Motion To vacate Unconstitutional fraudulent gag order, which prevents Amber from speaking about injuries to her own body. Shapirshteyn continues trial to March Citing the court is busy on another trial. Amber appears the morning of the rigged bench "Trial", demands to proceed pro se; illegally denied. Trial proceeds despite Amber ’s federal removal in January 2025.

86. March 2025: Amber is found “guilty” of contempt for "criminal defamation" of pedophilic serial rapist after a rigged trial which took place in absence of all jurisdiction by yet another bribed San Mateo judge.

87. Amber learns via the internet of her no-bail status and warrant for a misdemeanour contempt for "Criminal defamation" of billionaire pedophiles. A legal absurdity, as

serial rapists and murderers are routinely released on bail. Amber has zero criminal history and poses a danger to nobody.

88. Supreme Court of California Chief Judge Patrica Guerrero another Supreme court of California but can't read the LAW denies all of Amber 's writs! Writ of certiorari, Writ of mandamus, Writ of error, and preliminary injunctions, citing her illegal vexatious litigant designation will not be acted so she can proceed before the Supreme Court for relief.

89. Stephanie Bowick, Danny Chou, and Nina Shapirshteyn denied all of Amber 's motions, including motions to vacate fraudulent judgments and disqualify conflicted lawyers.

90. Judge Bowick refused to grant fee waivers and held secret hearings to dismiss Amber 's claims without notice.

91. Judge Shapirshteyn presided over a fraudulent quasi-criminal contempt trial in March 2025 and found Amber guilty in absentia, even though the matter had been removed to federal court.

92. April–May 2025 Illegal Subpoenas and Final Assault Despite discovery having closed 6 years ago (San Mateo case closed in 2019), Diane Doolittle serves illegal subpoenas with San Mateo Case Number via A&A Legal to Google, Yahoo, T-Mobile, AT&T, Verizon, Cox Communications and more, without serving Amber .

93. Amber learns of these subpoenas in late May 2025 from Google, which contacts her to ask if she plans to quash them.

94. This list of facts contains only 15 percent of the felonies committed. There is extensive Vicarious liability.

95. Amber 's four removed cases remain pending before the Ninth Circuit, where systemic obstruction persists.

96. The ultimate crime against Amber was Judge Jonathan Karesh forcing her to name members of organized crime syndicates with zero connection to the breach of contract case, in violation of Marcys law, forcing a victim of child sex trafficking to publicly name dangerous gang members involved in trafficking her, violating all laws

protections offered to victims of sex crime with zero protections in place for herself her siblings nor their minor children.

97. Governor Gavin Newsom and Attorney General Rob Bonta were notified of over 41 instances of judicial corruption, yet refused to intervene or investigate.

98. K. Conclusion

99. The foregoing facts establish a continuous, systemic, and coordinated enterprise of human trafficking, obstruction of justice, judicial sabotage, and financial expropriation, spanning multiple jurisdictions and involving private actors, state agents, and legal institutions.

100. These acts form the material foundation for the causes of action pleaded herein, including violations of the The United States Constitution, The Civil rights act, The Violence Against Women Act, The Canadian Charter of Rights and Freedoms, Ontario Human Rights Code, Canadian Victims Bill of Rights, Criminal Code of Canada, and international human rights law.

# DEMAND FOR JURY TRIAL

# VIII.

Plaintiff Amber DOE, a Canadian citizen and survivor of cross-border human trafficking, judicial persecution, and systemic abuse, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States Constitution (Seventh Amendment), 18 U.S.C. § 1595(b)(4) (TVPA civil jury rights), and applicable federal statutory and constitutional provisions.

This demand is made upon the following grounds:

1. The facts at issue involve grave allegations of:

- Human trafficking;
- Rape and sexual slavery;
- Torture and cruel, inhuman, and degrading treatment;
- Fraud upon domestic and foreign courts;
- Racketeering enterprise activity under 18 U.S.C. §§ 1961–1968 (RICO);
- Obstruction of justice, judicial corruption, bribery, and witness tampering;
- State-sponsored conspiracy to deny Plaintiff access to due process, equal protection, and constitutional rights under the U.S. Constitution, the Trafficking Victims Protection Act, and international human rights law.

2. These claims raise profound public questions concerning:

   - The abuse of the U.S. federal and state courts by private billionaires and complicit attorneys;
   - Systemic retaliation against a known survivor of human trafficking;
   - Corruption of judicial officers, regulatory bodies, law enforcement, and public officials in the United States and abroad.

3. Plaintiff asserts her inviolate right to have her claims adjudicated by a jury of her peers, as guaranteed under the Seventh Amendment to the U.S. Constitution and applicable statutes.

4. Given the magnitude of misconduct, scope of racketeering activity, state actor complicity, and the systemic obstruction of justice involved, trial by jury is necessary to ensure the integrity of the judicial process and public confidence in the rule of law.

WHEREFORE, Plaintiff demands that all triable issues of fact be determined by a jury in the U.S. District Court.

# PRAYER FOR RELIEF

# IX.

Statement Regarding Relief Sought from State Actors and Judicial Officers

Plaintiff expressly reiterates and clarifies that no monetary damages are sought against any current or former judicial officer, government official, or state actor in any capacity. All such individuals are named solely in their official capacity for the limited purposes of obtaining declaratory, injunctive, and equitable relief to remedy ongoing constitutional violations, abuse of process, and deprivation of federally protected rights under 42 U.S.C. §§ 1983, 1985, and 1986, the U.S. Constitution, and international human rights law. This action does not seek personal liability or damages from any judge, government officer, or public official protected by judicial or sovereign immunity.

WHEREFORE, Plaintiff Amber Doe respectfully demands judgment against all Defendants, jointly and severally, as follows:

I. COMPENSATORY DAMAGES:

- General damages in the amount of $889,000,000.00 to $1,207,000,000.00 USD, including but not limited to:
  - Severe physical, psychological, emotional, reputational, and economic harm;
  - Loss of earnings, medical expenses, pain and suffering, loss of enjoyment of life, and lost business opportunities.
- Special damages for:
  - Out-of-pocket costs, medical care, relocation expenses, housing loss, personal security, therapeutic care, protective services, and related expenses.

II. CONTRACTUAL DAMAGES:

- Breach of the May 23, 2014 Settlement Agreement in the amount of $40,000,000.00 USD, plus 10% compound interest accruing from May 23, 2014;
- Total contractual damages including interest: $154,639,535.77 USD.

III. PREJUDGMENT INTEREST:

- 10% compound interest per annum on all compensatory, contractual, and special damages, accruing from May 23, 2014, to final judgment.

IV. STATUTORY TREBLE DAMAGES:

- Treble damages under:
  - The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c);
  - The Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595;
  - Civil conspiracy, obstruction of justice, and related federal statutes;
- Not less than $252,000,000.00 USD.

V. PUNITIVE AND EXEMPLARY DAMAGES:

- Punitive damages in the amount of $500,000,000.00 USD, to punish and deter Defendants' willful, malicious, illegal wicked, reckless, and egregious misconduct.

VI. DECLARATORY RELIEF:

- Declaring that:
  - Defendants engaged in a coordinated transnational criminal enterprise involving human trafficking, judicial corruption, and obstruction of justice;
  - The foreign and domestic judgments obtained against Plaintiff are void, unenforceable, and obtained by extrinsic fraud;
  - Plaintiff is entitled to all protections, remedies, and recognition under the Trafficking Victims Protection Act, Civil RICO, U.S. Constitution, and international human rights conventions.

VII. PERMANENT INJUNCTIVE RELIEF:

- Enjoining all Defendants from:

    - Further retaliation, harassment, stalking, surveillance, or interference with Plaintiff's legal rights, safety, privacy, and survival;
    - Enforcing any judgments, orders, or legal instruments procured through fraud upon the court, judicial bribery, or coercion;
    - Requiring removal of all defamatory material and fraudulent judicial designations from all public and private records;
    - Ordering the production of all documents, records, files, subpoenas, surveillance reports, legal memoranda, and communications related to the Plaintiff.

VIII. RESTITUTION AND ACCOUNTING:

- Full disgorgement of all profits, fees, assets, and payments derived from:
    - Human trafficking activities;
    - Legal fees obtained through racketeering activity;
    - Bribes paid to judicial officers, public officials, or their proxies;
- Full forensic accounting of all financial and legal transactions involving Defendants' racketeering conduct.

IX. LEGAL COSTS AND FEES:

- Full reimbursement of:
    - All court costs, expert witness fees, protective security costs, and out-of-pocket litigation expenses;
    - Reasonable attorneys' fees pursuant to 18 U.S.C. § 1595, 18 U.S.C. § 1964(c), and other applicable laws;
    - Ongoing security protection, housing, and medical care to ensure Plaintiff's continued safety and survival.

X. EXPUNGEMENT AND VACATUR:

- Vacating and expunging all:

  - Fraudulent judgments, orders, vexatious litigant designations, and retaliatory rulings obtained through fraud upon the court;
  - Fraudulent legal filings in the United States, Canada, and international forums.

XI. CRIMINAL REFERRALS:

- Referral of all Defendants and co-conspirators for investigation and prosecution by:
  - The U.S. Department of Justice;
  - The Federal Bureau of Investigation (FBI);
  - The Department of Homeland Security (DHS);
  - State Attorneys General and relevant international criminal tribunals;
  - For violations including: human trafficking, racketeering, obstruction of justice, bribery of judicial officers, fraud, financial crimes, and conspiracy.

XII. JUDICIAL MISCONDUCT PROCEEDINGS:

- Referral of all judicial officers and state actors who participated in, facilitated, or tolerated this enterprise for:
  - Immediate disbarment, impeachment, removal from office, and permanent judicial disqualification;
  - Discipline under applicable rules governing judicial and legal misconduct.

XIII. ANY FURTHER RELIEF:

- Such further equitable, extraordinary, and injunctive relief as this Court may deem just, necessary, and proper to secure full justice, accountability, protection of Plaintiff's life, liberty, property, and to prevent ongoing violations of U.S. law, international law, and natural justice.

SIGNED ON SEPTEMBER 6TH, 2025
at Los Angeles, California.

*Amber Doe*

S/ Amber Doe

In service of a better humanity
Pro Se

## Human Trafficking




We the People
Article. I
HAVENLIGHT